## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRACY DEFENDERS FUND<br>600 Pennsylvania Avenue SE, #15180<br>Washington, DC 20003<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530<br><br>*Defendant*. | Civil Action No. 25-cv-02791 (CKK) |

## <u>SECOND AMENDED COMPLAINT</u>

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff Democracy Defenders Fund ("Plaintiff" or "DDF") seeks injunctive and other appropriate relief for the processing and release of agency records requested by Plaintiff from Defendant the United States Department of Justice ("DOJ" or "Defendant") on July 22, 2025 and July 28, 2025. Specifically, DDF seeks information from DOJ's investigative files of Jeffrey Epstein ("Epstein") and Ghislaine Maxwell ("Maxwell") that mention President Trump or his home in Mar-a-Lago (the "Epstein Files" or the "Files").

2.      The Epstein Files include information of great national significance, including information on President Trump's involvement (or lack thereof) with Epstein and Maxwell in relation to the sex crimes they perpetrated.

3.      Despite months of fanfare and promises to release DOJ's investigative files, DOJ in July unceremoniously announced that it would not be releasing any of the files.

4.      The outrageous nature of the alleged activity engaged in by Epstein and the failure of DOJ to release the Files has caused the public much outrage and alarm.

5.      The contents of the files also may elucidate any impact that mentions of President Trump in the Epstein Files may have had on DOJ's decision not to release these documents to the public.

6.      On July 22, 2025, Plaintiff filed a Freedom of Information Act ("FOIA") with the Criminal Division ("CRM") of DOJ seeking these files in order to provide the public information on actual or alleged federal government activity.

7.      On July 28, 2025, Plaintiff filed an additional FOIA request with CRM seeking additional files related to communications and records concerning Epstein and Maxwell and actions taken by the Department of Justice to review and make decisions about whether to disseminate such files.

8.      Plaintiff also filed a FOIA request identical to the July 28, 2025 request to CRM with the Office of the Attorney General ("OAG") and the Office of the Deputy Attorney General ("ODAG") on July 28, 2025.

9.      To date, CRM has not responded to either of DDF's requests to that office.[1]

10.     OAG and ODAG have not provided a substantive response to DDF's request to those offices. DOJ's Office of Information Policy ("OIP") has estimated that it will take OAG and ODAG 650 days to respond to DDF's request.

11.     The purpose of FOIA was "to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." S. Rep.

---

[1] DDF also sent similar FOIA requests to other DOJ offices, who have responded. DDF is currently working with the other offices to address the scope of its additional requests, as is warranted.

No. 813, 89th Cong., 1st Sess., 3 (1965). A goal of the statute was to ensure an "informed electorate," which was seen as "vital to the proper operations of a democracy." *Id.* at 2-3.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(E)(iii) and 28 U.S.C. §§ 1331, 2201, and 2202.

13.    Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C.§ 1391(e).

14.    Because Defendant has failed to comply with the applicable time-limit provisions of FOIA, DDF is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and is now entitled to judicial review.

## PARTIES

15.    Plaintiff DDF is a nonpartisan, non-profit section 501(c)(3) organization committed to defending and strengthening democracy while ensuring that all Americans can freely exercise their fundamental civil rights by defending the rule of law, fighting corruption, and protecting elections. DDF strategically uses FOIA and public records requests to gather and analyze information to shine a light on abuses of power. DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about information of national significance. The organization is incorporated under the laws of the District of Columbia.

16.    Defendant Department of Justice is a department of the Executive Branch of the United States Government, and an "agency" of the federal government within the meaning of 5 U.S.C. § 552(f)(1). DOJ is headquartered in Washington, D.C. DOJ has possession, custody, and control of records that DDF seeks.

## BACKGROUND

### *President Trump and the Epstein Files*

17.     The "Epstein Files" refers to the thousands of pages of documents related to two criminal investigations into sex trafficking by financier Jeffrey Epstein.[2] The content of the Files, including the people mentioned in them and whether they should be released to the public, has been a hotly contested topic of public conversation since Epstein's death in 2019.[3] Of particular interest has been the prospect of a "client list" naming Epstein's associates who were also involved in sex trafficking.[4]

18.     In the run-up to the 2024 election, President Trump announced that he would release documents related to Epstein's investigation and his client list,[5] making repeated promises over the years to release the Epstein files.[6]

19.     Following President Trump's inauguration, DOJ reportedly undertook a major review of the Epstein Files, with the apparent goal of releasing information about Epstein's associates.[7]

---

[2] Tracy Grant, *The Epstein Files: A Timeline*, BRITANNICA (Aug. 5, 2025), https://www.britannica.com/topic/The-Epstein-Files-A-Timeline.
[3] *Id.*
[4] Tom Geoghegan and James FitzGerald, *What do we know about the Epstein Files?*, BBC (Aug. 19, 2025), https://www.bbc.com/news/articles/c20r07dg6kro.
[5] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, THE GUARDIAN (July 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.
[6] Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC NEWS (July 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.
[7] *Memo on Epstein Investigation*, U.S. DEPARTMENT OF JUSTICE, FED. BUREAU OF INVESTIGATION, (July 7, 2025), https://www.justice.gov/opa/media/1407001/dl?inline.

20.     However, and despite Attorney General Bondi's assertion[8] in February 2025 that she had the list of Epstein's clients on her desk, on July 7, 2025, the Federal Bureau of Investigation ("FBI"), a component of DOJ, issued a memo stating that their "systematic review" of the Epstein Files "revealed no incriminating 'client list.'" *Memo on Epstein Investigation*, U.S. Department of Justice, Federal Bureau of Investigation, (July 7, 2025), at 1, https://www.justice.gov/opa/media/1407001/dl?inline ("FBI Memo"). The FBI Memo also asserted that "no credible evidence found that Epstein blackmailed prominent individuals as part of his actions." *Id.*

21.     The FBI concluded that no further disclosures from the Epstein Files were "appropriate or warranted," in part due to their containing sensitive information relating to Epstein's many victims, instead, sharing only "enhanced" footage of the area surrounding Epstein's cell at the time of his death. *Id.* at 1, 2.

22.     It was recently reported that Attorney General Bondi orchestrated a frenzied, urgent review of the Epstein Files in May 2025, months after stating she had the Epstein client list on her desk. Attorney General Bondi reportedly tasked nearly 1,000 FBI officials—during 24-hour shifts—with combing through tens of thousands of pages of documents related to Epstein and "flag[ging]" any mentions of the President.[9] Attorney General Bondi also reportedly personally

---

[8] Haliey Chi-Sing, *Bondi says Epstein client list 'sitting on my desk right now,' and is reviewing JFK, MLK files,* FOX NEWS (Feb. 21, 2025), https://www.foxnews.com/politics/bondi-says-epstein-client-list-sitting-my-desk-right-now-reviewing-jfk-mlk-files.

[9] *See, e.g.*, Alexander Bolton, *Durbin: FBI agents were told to 'flag' Epstein records that mentioned Trump*, THE HILL (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/. *See also* Senator Richard Durbin to Attorney General Bondi (July 18, 2025), https://www.judiciary.senate.gov/imo/media/doc/2025-07-18%20RJD%20Letter%20to%20AG%20Bondi%20re%20Epstein.pdf.

briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10].

### DDF'S First FOIA Request to DOJ's Criminal Division

23.     On July 22, 2025, DDF sent a FOIA request to the Criminal Division of DOJ seeking to uncover the requested information in furtherance of the public interest. A true and correct copy of the request is attached as Exhibit A.[11]

24.     Specifically, DDF requested the following records:

1.  All records relating to the Department of Justice's investigation(s) of Jeffrey Epstein that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, "Mar-a-Lago," or any code name, code word, pseudonym, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Jeffrey Epstein.

2.  All records relating to the Department of Justice's investigation(s) of Ghislaine Maxwell that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, "Mar-a-Lago," or any code name, code word, pseudonym, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Ghislaine Maxwell.

Exhibit A at 1.

25.     DDF requested a fee waiver under 5 U.S.C. § 552(a)(4)(A) and 28 C.F.R. § 16.10(k). Exhibit A at 2–4.

26.     DDF also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and DOJ's implementing regulations at 28 C.F.R. §§ 16.5(e)(1)(ii), (iv), all of which require DOJ to inform the requester of whether expedited processing will be granted within ten days of receiving

---

[10] Maggie Haberman and Glenn Thrush, *Attorney General Told Trump His Name Appeared in Epstein Files*, THE NEW YORK TIMES (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-epstein-files-named.html.
[11] Letter from Norm Eisen, Executive Chair and Founder, *et al.*, to Christina Butler, Chief, FOIA/PA Unit, Criminal Division, DOJ (July 22, 2025) ("Exhibit A").

the request. *Id.* at 4–7. Pursuant to FOIA and DOJ requirements, 5 U.S.C. § 552(a)(6)(E)(vi), 28 C.F.R. § 16.5(e)(3), DDF included the requisite, certified statement articulating the basis for its request for expedited processing. Exhibit A at 4–7.

27.    Although DOJ's Office of Public Affairs ("OPA") was copied on the original request, out of an abundance of caution, on July 23, 2025, DDF contacted OPA via its online FOIA portal, referencing the FOIA request to CRM and reiterating the request in support of its fee waiver and expedited processing requests. A true and correct copy of the confirmation of that submission is attached as Exhibit B.[12]

28.    On July 24, 2025, DDF emailed CRM's FOIA Officer requesting confirmation of receipt of the FOIA request, as well as a tracking number. A true and correct copy of that email is attached as Exhibit C.[13]

29.    On July 24, 2025, CRM's FOIA/PA Unit sent DDF an email confirming receipt of the July 22, 2025 FOIA request and providing a tracking number of CRM-302309194. A true and correct copy of that email is attached as Exhibit D.[14]

30.    FOIA requires federal agencies to respond to a request for records within twenty business days after receiving a request, 5 U.S.C. § 552(a)(6)(A)(i), in the absence of specified "unusual circumstances," *id.* § 552(a)(6)(B). Agencies' responses to FOIA requests must inform the requester whether the agency will comply with such request and the reasons therefore. *Id.*

31.    To date, DDF has not received any response from CRM indicating whether CRM will comply with the request or the timeframe for any CRM response, nor has CRM alleged any

---

[12] FOIA.gov confirmation (July 23, 2025) ("Exhibit B").
[13] Email from Gabriel Lezza, Senior Policy Strategist, to CRM FOIA Officer (July 24, 2025) ("Exhibit C").
[14] Email from CRM FOIA/PA Unit to Gabriel Lezza, Senior Policy Strategist, DDF (Aug. 12, 2025) ("Exhibit D").

"unusual circumstances" per 5 U.S.C. § 552(a)(6)(B) that would require an extension of the original August 19, 2025, deadline. CRM, OPA, or any other DOJ office have also not informed DDF of whether it will be granted expedited processing.

32.    To date, CRM has failed to produce a single record in response to Plaintiff's request.

### DDF'S Second FOIA Request to DOJ's Criminal Division

33.    On July 28, 2025, DDF sent a FOIA request to CRM seeking the below requested information in furtherance of the public interest. A true and correct copy of the request is attached as Exhibit F.[15]

34.    Specifically, DDF requested the following records:

1.    Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2.    Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

---

[15] Letter from Norm Eisen, Executive Chair and Founder, *et al.*, to Christina Butler, Chief, FOIA/PA Unit, Criminal Division, DOJ (July 28, 2025) ("Exhibit F").

3.      Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4.      Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Exhibit F at 1–2.

35.     DDF requested a fee waiver under 5 U.S.C. § 552(a)(4)(A) and 28 C.F.R. § 16.10(k). Exhibit F at 2–3.

36.     DDF also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and DOJ's implementing regulations at 28 C.F.R. §§ 16(e)(1)(ii), (iv), all of which require DOJ to inform the requester of whether expedited processing will be granted within ten days of receiving the request. *Id*. at 5–7; 28 C.F.R. § 16.15(4). Pursuant to FOIA and DOJ requirements, 5 U.S.C. § 552(a)(6)(E)(vi), 28 C.F.R. § 16.5(e)(3), DDF included the requisite, certified statement articulating the basis for its request for expedited processing. Exhibit F at 5–7.

37.     On July 28, 2025, DDF received confirmation that its request was being sent to the Criminal Division. A true and correct copy of this confirmation is attached as Exhibit G.[16]

38.     FOIA requires federal agencies to respond to a request for records within twenty business days after receiving a request, 5 U.S.C. § 552(a)(6)(A)(i), in the absence of specified

---

[16] FOIA.gov confirmation (July 28, 2025) ("Exhibit G").

"unusual circumstances," *id.* § 552(a)(6)(B). Agencies' responses to FOIA requests must inform

the requester whether the agency will comply with such request and the reasons therefore. *Id.*

39.    To date, CRM has not produced a single record in response to Plaintiff's request,

nor has CRM informed DDF of whether it will be granted expedited processing and a fee waiver.

### *DDF's FOIA Request to OAG and ODAG*

40.    On July 28, 2025, DDF sent a FOIA request to OAG and ODAG seeking to

uncover the requested information in furtherance of the public interest. A true and correct copy of

the request is attached as Exhibit H.[17]

41.    Specifically, DDF requested the following records:

> 1.  Records of all communications, including, but not limited to, letters,
> faxes, emails, voicemails, direct messages, or any form of electronic
> message, regardless of whether maintained on an official device or
> account or a personal device or account, that refer to "Jeffrey Epstein"
> or "Ghislaine Maxwell," or any code name, code word, pseudonym,
> or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine
> Maxwell," that were sent from, received by, or transmitted to any
> Department of Justice official including, but not limited to, Attorney
> General Pamela Bondi, Deputy Attorney General Todd Blanche,
> Principal Associate Deputy Attorney General Emil Bove, FBI
> Director Kash Patel, and FBI Deputy Director Dan Bongino. This
> includes any attachments, including, but not limited to, meeting
> agendas, minutes, notes, memos, briefing materials, drafts,
> presentations, or analyses created, received, or reviewed by agency
> personnel. This request includes direct correspondence as well as
> communications facilitated by or through third parties.
>
> 2.  Any communications, in any form, including audiovisual media such
> as digital video, VHS, DVD, or other similar format, discussing or
> explaining the process of how department officials should approach or
> address references to Donald Trump or Mar-a-lago appearing in any
> files related to the Jeffrey Epstein or Ghislaine Maxwell cases,
> including any communications that describe how to flag, categorize, or
> memorialize mentions of President Trump. This request includes, but

---

[17] Letter from Norm Eisen, Executive Chair and Founder, *et al.*, to Andrew Fiorillo, Acting
Chief, Initial Request Staff, Office of the Attorney General and Office of the Deputy Attorney
General (July 28, 2025) ("Exhibit H").

is not limited to, videos circulated on unclassified networks within the Department.

3.  Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting

4.  Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs

Exhibit H at 1–2.

42.     DDF requested a fee waiver under 5 U.S.C. § 552(a)(4)(A) and 28 C.F.R. § 16.10(k). Exhibit H at 2–5.

43.     DDF also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and DOJ's implementing regulations at 28 C.F.R. §§ 16.5(e)(1)(ii), (iv), all of which require OAG/ODAG to inform the requester of whether expedited processing will be granted within ten days of receiving the request. *Id.* at 5–7. Pursuant to FOIA and DOJ requirements, 5 U.S.C. § 552(a)(6)(E)(vi), 28 C.F.R. § 16.5(e)(3), DDF included the requisite, certified statement articulating the basis for its request for expedited processing. *Id.* at 5–8.

44.    On July 28, 2025, DDF concurrently submitted a request to OPA of DOJ seeking OPA's approval of expedited processing pursuant to 28 C.F.R. §§ 16.5(e)(1)(ii) and 16.5(e)(1)(iv). A true and correct copy of this request is attached as Exhibit I.[18]

45.    On August 7, 2025, OIP's Acting Chief sent DDF a letter confirming receipt of the July 28, 2025 FOIA request, and denying DDF's request for expedited processing under 28 C.F.R. § 16.5(e)(1)(ii). A true and correct copy of that letter is attached as Exhibit J.[19]

46.    OIP informed DDF that it forwarded DDF's request for expedited processing under 28 C.F.R. § 16.5(e)(1)(iv) to the Director of Public Affairs. Exhibit J at 1.

47.    OIP informed DDF that DDF's request fell within "unusual circumstances" pursuant to U.S.C. § 552(a)(6)(B)(i)-(iii) and would need to extend the time limit to respond to DDF's request beyond the ten additional days provided by the statute. *Id.*

48.    OIP assigned DDF's request to the complex track and suggested that DDF narrow the scope of their request to try to speed up OIP's response process. *Id.* at 1–2.

49.    On September 8, 2025, DDF emailed OIP requesting time to discuss narrowing the scope of the request. A true and correct copy of that email is attached as Exhibit K.[20]

50.    On September 17, 2025, DDF and OIP had a phone call to discuss the FOIA request to OAG and ODAG. In that call, OIP informed DDF that OAG and ODAG had received numerous similar requests for information related to Epstein and Maxwell and that a search is being conducted for information responsive to all of those requests. For this reason, narrowing DDF's

---

[18] Letter from Norm Eisen, Executive Chair and Founder, *et al.*, to Director, Office of Public Affairs, DOJ (July 28, 2025) ("Exhibit I").

[19] Letter from Andrew Fiorillo, Acting Chief, Office of Information Policy DOJ (August 7, 2025) ("Exhibit J").

[20] Email from Taryn Wilgus Null, Senior Counsel, to OIP FOIA Officer (September 8, 2025) ("Exhibit K").

request would not change the search that OAG and ODAG are conducting since they are simultaneously searching for information responsive to numerous requests and DDF's request is no broader than other requests that have been sent. Later that day, OIP emailed DDF memorializing their telephone conversation. OIP estimated that the average response for a complex request like DDF's is 650 days. OIP also informed DDF that they should expect to receive a letter addressing the Office of Public Affairs' expedition determination under 28 C.F.R. § 16.5(e)(1)(iv). A true and correct copy of that email is attached as Exhibit L.[21]

51.    To date, OIP (on behalf of OAG and ODAG) has not produced a single record in response to Plaintiff's request, nor has any DOJ office informed DDF of whether it will be granted a fee waiver.

52.    FOIA requires federal agencies to respond to a request for records within twenty business days after receiving a request, 5 U.S.C. § 552(a)(6)(A)(i), and up to an additional ten days when there are specified "unusual circumstances." *Id.* § 552(a)(6)(B)(i). Agencies' responses to FOIA requests must inform the requester whether the agency will comply with such a request and the reasons therefore. *Id.* § 552(a)(6)(A)(i)(I).

53.    To date, the Director of Public Affairs has not issued an expedited processing decision to Plaintiff under 28 C.F.R. § 16.5(e)(1)(iv).

---

[21] Email from Eric Hotchkiss, Senior government Information Specialist & Acting FOIA Public Liaison, DOJ (September 17, 2025) ("Exhibit L").

### *The National Significance of President Trump's Role in the Epstein Files*

54.     The requested records relate to matters of significant national public interest concerning President Trump's interactions with Epstein and Maxwell in relation to the sex crimes that they perpetrated.

55.     President Trump's interactions with Epstein and Maxwell, specifically any interactions that would merit mention in the Epstein files, raise serious ethical concerns regarding the federal government's decisions about whether to publicize the files. These concerns have been heightened by Deputy Attorney General Todd Blanche's recent meetings with Maxwell in jail to question her about information that might be contained in the requested files.[22] President Trump's relationship with Epstein and Maxwell is not fully understood, nor is the role that that relationship played in the federal government's decision not to publicize the files.

56.     The requested records would inform the public of any involvement that President Trump had with Epstein and Maxwell that was sufficient to merit a mention in the files, including in regard to any sex crimes that were perpetrated, and any crimes or related events that may have taken place at his home in Mar-a-Lago.

57.     The requested records would also shed light on the federal government's decision not to publicize the files despite President Trump's 2024 campaign promises to do so. Specifically, the requested records may reveal whether any mention of President Trump or Mar-a-Lago in the files may have affected President Trump's decision not to publicly release the Epstein files after repeatedly pledging to do so.

---

[22] *See, e.g.*, Rebecca Beitsch, *Maxwell attorney after second meeting with DOJ: 'The truth will come out,'* THE HILL (July 25, 2025), https://thehill.com/homenews/administration/5420763-ghislaine-maxwell-interview-blanche/.

58.     The contribution to the public's understanding that would be served by releasing the requested files is significant. The public has a right to know how the federal government is making decisions about whether and how to publicize information about serious crimes that were committed, and whether a friendship between the President and criminals Epstein and Maxwell has led the federal government to withhold information that would have otherwise been made public.

59.     Given that DDF is a nonpartisan, non-profit section 501(c)(3) organization, the request is entirely for non-commercial purposes. DDF does not seek these records for the purposes of commercial, trade, or profit interests. DDF requests these records for educational purposes—the organization intends to study the records responsive to these requests and to share its results with the public through investigative analyses, publications, press releases, or other mechanisms, including on DDF's website at https://www.democracydefendersfund.org.

### *Expedient Disclosure of the Requested Records is Warranted*

60.     This is a case of obvious "urgency to inform the public concerning actual or alleged Federal Government activity," 5 U.S.C. § 522(6)(E)(v), 28 C.F.R. § 16.5(e)(1)(ii), that is a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv).

61.     The urgency is clear even under DOJ's own standards for expedited processing: The existence of numerous articles published on a given subject can be helpful in establishing the requirement that there by an "urgency to inform the public on the topic." 28 C.F.R. § 16.5(e)(3).

Over the past eight months alone, hundreds of news articles on this Administration's handling of the Epstein files have been published.[23]

62.     High-profile actions by public officials further underscore this urgency. On August 5, 2025, a bi-partisan coalition of House members issued a subpoena requesting the same documents DDF has requested.[24] In early August, the President assembled the Vice President and high-level DOJ officials behind closed doors to discuss how to strategically address allegations

---

[23] *See, e.g.*, Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, FOX NEWS (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, FOX NEWS (July 16, 2025), https://www.foxnews.com/video/6375726865112; Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, THE NEW YORK TIMES (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, THE NEW YORK TIMES (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html; Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, THE NEW YORK TIMES (July 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html; Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* WALL ST. JOURNAL (July 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?g aa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* WALL ST. JOURNAL (July 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial Board, Editorial, *No Special Counsel for the Epstein Files*, WALL ST. JOURNAL (July 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at; *Trumps' "Epstein Files" Problem*, WASHINGTON POST PODCAST (Jul. 15, 2025), https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, WASHINGTON POST (July 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, WASHINGTON POST (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//.
[24] Subpoena from Representative James Comer, Chairman, House Committee on Oversight and Government Reform to Attorney General Bondi (Aug. 5, 2025), https://oversight.house.gov/release/chairman-comer-subpoenas-bill-and-hillary-clinton-former-u-s-attorneys-general-and-fbi-directors-and-records-related-to-jeffrey-epstein/.

that he is named in the Epstein Files.[25]  DOJ recently agreed to share with Congress documents

from the Epstein investigation,[26] and has since released over 33,000 pages of materials.[27] It is

speculated that this release only contains 1% of the documents DOJ maintains regarding Epstein,

and many of the released files were claimed to already be in the public record.[28] Last month, the

House Oversight Committee released several documents from Epstein's estate including a redacted

copy of a 238-page "birthday book" given to Epstein in 2003 for his fiftieth birthday.[29] The book

contains a letter allegedly signed by President Trump.[30] In the House of Representatives, there is

a bipartisan effort to pass a resolution directing the Justice Department to release all of its

investigative files.[31] Victims of Epstein's crimes met with lawmakers last month, and have called

for the release of all of the files held by the Department.[32]

---

[25] Alayna Treene, Josh Campbell, Paula Reid, Kristen Holmes, & Kaitlan Collins, *Top Trump officials will discuss Epstein strategy at Wednesday dinner hosted by Vance*, CNN (Aug. 6, 2025), https://edition.cnn.com/2025/08/05/politics/trump-blanche-epstein-maxwell-vance-bondi-patel-meeting.

[26] Jeremy Roebuck, *DOJ to begin sharing Epstein files with Congress on Friday, House member says*, WASHINGTON POST (Aug. 19, 2025), https://www.washingtonpost.com/national-security/2025/08/18/epstein-maxwell-documents-house-committee-subpoena-justice-bondi/.

[27] Emily Brooks, *Republicans release first batch of Epstein files*, THE HILL (Sept. 2, 2025), https://thehill.com/homenews/house/5482688-republicans-epstein-files-doj/.

[28] Francesca Chambers, Joey Garrison, Michael Loria & Josh Meyer, *First Bloc of Jeffery Epstein Documents Released by House; Epstein Victims Due to Testify*, USA TODAY (Sept. 2, 2025), https://www.usatoday.com/story/news/politics/2025/09/02/house-oversight-committee-release-epstein-files/85946963007/.

[29] Stuart Lau & Sarah Smith, *What's in the book of birthday message to Epstein*, BBC (Sept. 9, 2025), https://www.bbc.com/news/articles/cr5q68j2169o.

[30] Caitlin Yilek & Kaia Hubbard, *House panel releases more records from Jeffrey Epstein's estate, including letter allegedly written by Trump*, CNN (Sept. 8, 2025), https://www.cbsnews.com/live-updates/jeffrey-epstein-donald-trump-birthday-message-house-oversight/.

[31] Michael Gold, *Effort to Force a House Vote on Epstein Files Nears Success*, THE NEW YORK TIMES (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/epstein-house-vote.html.

[32] Stephen Groves, *Epstein Survivors Implore Congress to Act as Push For disclosure Builds*, AP NEWS (Sept. 3, 2025), https://apnews.com/article/jeffrey-epstein-survivors-congress-trump-5d980740245f935c994a90b8ce824642.

63.     It is imperative that these records be released so that the public has an unadulterated and transparent understanding of what is in the files, and not just what high-level officials want the public to hear.

64.     Indeed, in July, DOJ moved to unseal the grand jury transcripts from the Epstein indictment, citing "extensive public interest in the basis for the [FBI Memo's] conclusions" and noting that "transparency to the American public is of the utmost importance."[33]

65.     DOJ's 2024 Annual FOIA Report indicates that CRM, as of the time of the report, had 1,024 pending FOIA requests, with the oldest outstanding dating back to 2015.[34] The Annual Report also indicates that it can take CRM 2,194 days, or more than *six* years to respond to requests. Exhibit E at 45.

66.     Without expedited processing, CRM's response to DDF's FOIA requests is likely to take years, significantly undermining, if not eliminating, the purpose and value of the response.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

67.     To date, CRM has failed to notify DDF of any determination regarding its FOIA requests, including the scope of any responsive records the agency intends to produce or withhold and the reasons for any withholdings within the statutory timeline. CRM has also failed to produce the requested records or demonstrate that the requested records are lawfully exempt from production within the statutory timeline. Additionally, CRM has failed to respond to DDF's requests for fee waivers within the statutory timeline.

---

[33] United States' Motion to Unseal Grand Jury Transcripts at 1, *United States v. Epstein*, No. 1:19-cr-490 (S.D.N.Y. July 18, 2025), ECF No. 61, https://www.courtlistener.com/docket/15887848/61/united-states-v-epstein/.
[34] DOJ, Annual Freedom of Information Act Report (2024) at 54, 58, https://www.justice.gov/oip/department-justice-annual-foia-report-fy-2024 ("Exhibit E").

68.     OAG and ODAG have estimated that they will take 650 days to respond to DDF's requests. OIP denied DDF's request for expedited processing under 28 C.F.R. § 16.5(e)(1)(ii). Although OIP informed DDF on August 7, 2025 that it forwarded DDF's request for expedited processing under 28 C.F.R. § 16.5(e)(1)(iv) to the Director of Public Affairs, to date, the Director of Public Affairs has not responded to this request. Additionally, OAG and ODAG have failed to respond to DDF's request for fee waivers within the statutory timeline or produce the requested records.

69.     Through CRM's, OAG's, and ODAG's failure to respond to DDF's FOIA requests within the time period required by law, DDF has exhausted its administrative remedies and now seeks immediate judicial review. *See* 5 U.S.C. § 552(a)(6)(C)(i).

## CAUSES OF ACTION

### COUNT I

**Violation of the Freedom of Information Act, 5 U.S.C. § 552**
**Failure to Conduct Adequate Searches for Responsive Records**

1.     Plaintiff reasserts and re-alleges each and every allegation set forth above as if each was set forth herein.

2.     DDF properly requested records within the possession, custody, and control of the Defendant.

3.     DOJ is an agency subject to and within the meaning of FOIA, and it must therefore make reasonable efforts to search for requested records.

4.     DOJ has failed to promptly and adequately search for records responsive to DDF's FOIA requests.

5.     DOJ's failure to conduct adequate searches for responsive records violates FOIA.

6.      DDF has exhausted the applicable administrative remedies with respect to Defendant's wrongful failure to make reasonable efforts to search for the requested records.

7.      DDF is therefore entitled to injunctive and declaratory relief requiring DOJ to promptly make reasonable efforts to search for records responsive to DDF's FOIA requests.

## COUNT II

### Violation of the Freedom of Information Act, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Responsive Records

8.      Plaintiff reasserts and re-alleges each and every allegation set forth above as if each was set forth herein.

9.      DDF properly requested records within the possession, custody, and control of Defendant.

10.     DOJ is an agency subject to and within the meaning of FOIA, and it must release non-exempt portions of records requested under FOIA.

11.     DOJ is wrongfully withholding non-exempt agency records requested by DDF by failing to produce non-exempt records responsive to its FOIA requests.

12.     DOJ is wrongfully withholding non-exempt agency records requested by DDF by failing to segregate exempt information in otherwise non-exempt records responsive to DDF's FOIA requests.

13.     DOJ's failure to provide all non-exempt responsive records violates FOIA.

14.     DDF has exhausted the applicable administrative remedies with respect to Defendants' wrongful failure to make reasonable efforts to search for the requested records.

15.     DDF is therefore entitled to declaratory and injunctive relief requiring DOJ to promptly produce all non-exempt records responsive to its FOIA requests and provide indexes justifying the withholding of any responsive records withheld under claim of exemption.

20

## COUNT III

**Violation of the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(A)**
**Failure to Grant Requests for Waiver of Fees**

16.     Plaintiff reasserts and re-alleges each and every allegation set forth above as if each was set forth herein.

17.     DDF timely requested fee waivers for the production of responsive records because it intends to use these records to educate and inform the general public on the Epstein Files that mention President Trump and Mar-a-Lago, and DDF is a non-commercial requester.

18.     DOJ failed to respond to DDF's requests for fee waiver within the statutory time frame.

19.     DDF has exhausted the applicable administrative remedies with respect to Defendants' wrongful failure to make reasonable efforts to search for the requested records.

20.     DDF is therefore entitled to declaratory and injunctive relief as to Plaintiff's requests for a fee waiver.

## COUNT IV

**Violation of the Freedom of Information Act, 5 U.S.C. § 552**
**Failure to Grant Expedited Processing**

21.     Plaintiff reasserts and re-alleges each and every allegation set forth above as if each was set forth herein.

22.     By failing to grant Plaintiff's requests for expedited processing on Plaintiff's FOIA requests concerning matters of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence, 28 C.F.R. § 16.5(e)(1)(iv), and national urgent need to inform the public, 5 U.S.C. § 552(a)(6)(E)(iii), Defendant has violated FOIA.

21

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff requests that this Court:

(1)    Order DOJ to conduct a search or searches reasonably calculated to uncover all records responsive to DDF's FOIA requests;

(2)    Order DOJ to produce, within twenty days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to DDF's FOIA requests with indexes justifying the withholding of any responsive records withheld under claim of exemption;

(3)    Enjoin DOJ from continuing to withhold any and all non-exempt records responsive to DDF's FOIA requests;

(4)    Order DOJ to grant DDF's fee waiver requests in connection with its FOIA requests;

(5)    Provide for expedited proceedings in this action;

(6)    Award DDF the costs of this proceeding, including reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(7)    Grant DDF such other relief as the Court deems just and proper.

Dated:    October 3, 2025

Respectfully submitted,

*/s/ Taryn Wilgus Null*
Taryn Wilgus Null (# 985724)
Norman L. Eisen (#435051)
Tianna Mays (# 90005882)
Pooja Chaudhuri (# 888314523)
Jacob Kovacs-Goodman (# 90032363)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE, No. 15180
Washington, DC 20003
(202) 594-9958
Norman@democracydefenders.org
Taryn@democracydefenders.org
Tianna@democracydefenders.org
Pooja@democracydefenders.org
Jacob@democracydefenders.org

*Attorneys for Plaintiff*

# EXHIBIT A



July 22, 2025

Christina Butler
Chief, FOIA/PA Unit
Criminal Division, Department of Justice
950 Constitution Ave, NW
Washington, DC 20530-0001

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from the inception of the Department of Justice's investigations of Jeffrey Epstein and/or Ghislaine Maxwell to when this request is processed, of:

1. All records relating to the Department of Justice's investigation(s) of Jeffrey Epstein that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, "Mar-a-Lago," or any code name, code word, pseudonym, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Jeffrey Epstein.

2. All records relating to the Department of Justice's investigation(s) of Ghislaine Maxwell that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, "Mar-a-Lago," or any code name, code word, pseudonym, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Ghislaine Maxwell.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(A) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester'".[5] DDF's request meets all elements.

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of records concerning the Department's investigations into alleged criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including investigations conducted by the Criminal Division, the U.S. Attorney's Office for the Southern District of Florida, the U.S. Attorney's Office for the Southern District of New York and the Federal Bureau of Investigation ("FBI"), including any records the Department may have that name President Trump in relation to these matters. Even though President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[6] he promised repeatedly during his 2024 Presidential campaign that he would release these

---

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air For*ce, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).
[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/17/us/politics/timeline-trump-epstein.html.

files.[7] But, the fact that the Department has yet to release the investigation files has outraged many of Trump's supporters.[8] The existence and extent of such records is also currently a question of immense media speculation.[9]

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to investigations involving Jeffery Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[10] The Department's handling of the matter was further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[11] For instance, in February 2025, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[12] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[13] This has caused immense confusion amongst the public, which has been the subject of ongoing news media coverage.[14] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[15] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

---

[7] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga

[8] Luke Broadwater and Erica L. Green, *Trump's New Strategy on Epstein Fallout: Blame the Democrats*, *New York Times* (Jul. 16, 2025), https://www.nytimes.com/2025/07/16/us/politics/trump-epstein-attacks-supporters.html.

[9] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.

[10] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[11] *See*, *e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[12] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.

[13] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[14] *See*, *e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds*, Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

[15] Larry Neumeister, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and issuance of op-eds.[16] DDF maintains a dedicated website where it provides information related to its activities which can be accessed by the public.[17] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as a representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[18] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information."[19] The outrageous nature of the alleged

---

[16] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.
[17] *See* https://www.democracydefendersfund.org/news-resources.
[18] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).
[19] 5 C.F.R. 16.5(e)(1)(ii).

activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[20] and if so, whether that possibility may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[21]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[22] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[23] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

---

[20] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[21] *See, e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

[22] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.

[23] Democracy Defenders Fund, https://www.democracydefendersfund.org/.

2.  **The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox News,[24] New York Times,[25] Wall Street Journal,[26] and Washington Post,[27] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[28]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These

---

[24] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (Jul 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[25] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html; Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[26] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article*, Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[27] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[28] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC:    Director of Public Affairs, Office of Public Affairs
        United States Department of Justice,
        950 Pennsylvania Avenue NW.
        Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- 'Parent-child' relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[29] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[30] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.


Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

---

[29] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[30] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

# EXHIBIT B

DOJ.gov Freedom of Information Act (FOIA) Request



 An official website of the United States government
Here's how you know

UNITED STATES DEPARTMENT *of* JUSTICE

# FOIA.gov

MENU

**Thank you for visiting FOIA.gov, the government's central website for FOIA.** We'll continue to make improvements to the site and look forward to your input. Please submit feedback to National.FOIAPortal@usdoj.gov.

**Submission ID:** 2289646

# Success!

## Your FOIA request has been created and is being sent to the Office of Public Affairs.

You'll hear back from the agency confirming receipt in the coming weeks using the contact information you provided. If you have questions about your request, feel free to reach out to the agency FOIA personnel using the information provided below.

### Contact the agency

FOIA Requester Service Center

202-514-3642

Eric Hotchkiss, Acting FOIA Public Liaison

202-514-3642

Andrew Fiorillo, Acting Chief, Initial Request Staff, 6th Floor
441 G St, NW
Washington, DC 20530-0001

7/23/25, 3:28 PM
Case 1:25-cv-02791-CKK
Document 13-1
Filed 10/03/25
Page 36 of 218
DDF Unique Freedom of Information Act / DOJ Request

# Request summary

Request submitted on **July 23, 2025**.

The confirmation ID for your request is **2289646**.



The confirmation ID is only for identifying your request on FOIA.gov and acts as a receipt to show that you submitted a request using FOIA.gov. This number does not replace the information you'll receive from the agency to track your request. In case there is an issue submitting your request to the agency you selected, you can use this number to help.

## Contact information

**Name**
Gabriel Lezra

**Mailing address**
600 Pennsylvania Ave., S.E.
Washington, DC 20003
United States

**Phone number**
9176752509

**Company/organization**
Democracy Defenders Fund

**Email**
gabe@statedemocracydefenders.org

## Your request

This is a request in support of our fee waiver and expedited processing requests set forth in the attached request previously sent to the EOUSA, Tracking Number EOUSA-2025-005055, and the FBI, and Department's Criminal Division and are incorporated by reference as though fully set forth herein. We do not have official tracking numbers for

our requests to the FBI and Criminal Division, but the confirmation numbers are as follows: FBI - 2286601; and Criminal Division: 2286566.

---

# Additional information

EOUSA Copy of Crim. Epstein Records Request. DDF (July 21 25) (1).pdf

---

# Fees

**What type of requester are you?**
media

**Fee waiver**
yes

**Fee waiver justification**
Support for fee waiver is set forth in the attached request previously sent to the EOUSA, Tracking Number EOUSA-2025-0050505, and is incorporated by reference as though fully set forth herein. We sent identical requests to the FBI, and the Department's Criminal Division, which are also incorporated by reference as though fully set forth herein.

**The amount of money you're willing to pay in fees, if any**
0

---

# Request expedited processing

**Expedited processing**
yes

**Justification for expedited processing**
Support for expedited processing is set forth in the attached request previously sent to the EOUSA, Tracking Number EOUSA-2025-0050505, and is incorporated by reference as though fully set forth herein. We sent identical requests to the FBI, and the Department's Criminal Division, which are also incorporated by reference as though fully set forth herein.



## CONTACT

Office of Information Policy (OIP)
U.S. Department of Justice
441 G St, NW, 6th Floor
Washington, DC 20530
E-mail: National.FOIAPortal@usdoj.gov

Hero image credit ☐ CC3.0

| FREQUENTLY ASKED QUESTIONS

| DEVELOPER RESOURCES

| AGENCY API SPEC

| FOIA CONTACT DOWNLOAD

| FOIA DATASET DOWNLOAD

| ACCESSIBILITY

| PRIVACY POLICY

| POLICIES & DISCLAIMERS

| JUSTICE.GOV

| USA.GOV ☐

# EXHIBIT C



**Riley Pynnonen <riley@statedemocracydefenders.org>**

---

# Please Confirm FOIA Receipt
1 message

---

**Gabe Lezra** <gabe@statedemocracydefenders.org>                    Thu, Jul 24, 2025 at 4:10 PM
To: crm.foia@usdoj.gov
Bcc: riley@statedemocracydefenders.org

Dear FOIA Officer-

On January 22, 2025, Democracy Defenders Fund submitted a FOIA request to your office via the government-wide FOIA portal, confirmation #2286566. The request, and the FOIA portal receipt, are reattached below. To date, we have not received a response acknowledging receipt of this FOIA. We kindly request that you please confirm your receipt of this FOIA request and provide the FOIA tracking number as soon as possible.

Kind regards,

--



**Gabriel (Gabe) Lezra** (he/him/el)
**Democracy Defenders Action** (c4)
**Email:** gabe@statedemocracydefenders.org

---

**2 attachments**



**DOJ Copy of Crim. Epstein Records Request. DDF (July 21 25) (2).pdf**
490K

**FOIA.gov - Freedom of Information Act_ Create a request (3).pdf**
215K

# EXHIBIT D

 Gmail

**Riley Pynnonen <riley@statedemocracydefenders.org>**

---

## Please Confirm FOIA Receipt

---

**Gabe Lezra** <gabe@democracydefenders.org>                    Tue, Aug 12, 2025 at 12:24 PM
To: Riley Pynnonen <riley@statedemocracydefenders.org>

---------- Forwarded message ---------
From: **FOIA, CRM (CRM)** <CRM.FOIA@usdoj.gov>
Date: Thu, Jul 24, 2025 at 4:20 PM
Subject: RE: [EXTERNAL] Please Confirm FOIA Receipt
To: gabe@statedemocracydefenders.org <gabe@statedemocracydefenders.org>

Mr. Lezra,

The Criminal Division is in receipt of your request dated July 22, 2025, and it is assigned case number CRM-302309194.

Sincerely,

FOIA/PA Unit

Criminal Division

U.S. Department of Justice

---

**From:** Gabe Lezra <gabe@statedemocracydefenders.org>
**Sent:** Thursday, July 24, 2025 4:10 PM

**To:** FOIA, CRM (CRM) <CRM.FOIA@CRM.USDOJ.GOV>
**Subject:** [EXTERNAL] Please Confirm FOIA Receipt


Dear FOIA Officer-

On January 22, 2025, Democracy Defenders Fund submitted a FOIA request to your office via the government-wide FOIA portal, confirmation #2286566. The request, and the FOIA portal receipt, are reattached below. To date, we have not received a response acknowledging receipt of this FOIA. We kindly request that you please confirm your receipt of this FOIA request and provide the FOIA tracking number as soon as possible.


Kind regards,


--


**Gabriel (Gabe) Lezra** (he/him/el)
**Democracy Defenders Action** (c4)
**Email:** gabe@statedemocracydefenders.org


--



**Gabriel (Gabe) Lezra** (he/him/el)
**Senior Policy Strategist**
**Democracy Defenders Action (c4)**
**Email:** gabe@sdemocracydefenders.org

# EXHIBIT E

# U.S. Department of
# JUSTICE

## Fiscal Year 2024 Annual Freedom of Information Act Report



March 6, 2025

Office of Information Policy

## I.    BASIC INFORMATION REGARDING REPORT

1. *Name, title, address, and telephone number of person(s) to be contacted with questions about the Report.*

   Lindsay Steel
   Chief, FOIA Compliance Staff
   Office of Information Policy
   United States Department of Justice
   441 G Street, NW, 6th Floor
   Washington, DC  20530-0001
   (202) 514-3642
   Lindsay.Steel@usdoj.gov

2. *Provide an electronic link for access to the Report on the agency Web site.*

   http://www.justice.gov/oip/reports-1#s1

3. *Explain how to obtain a copy of the Report in paper form.*

   Contact Lindsay Steel at the address, telephone number, or e-mail listed above.

## II.    MAKING A FOIA REQUEST

1. *Names, addresses, and telephone numbers of all individual agency components that receive FOIA requests.*

   For the names, addresses, and telephone numbers, visit: https://www.foia.gov/agency-search.html.

2. *Brief description of why some requests are not granted and an overview of certain general categories of the agency's records to which the FOIA exemptions apply.*

   The Department of Justice is the Executive Branch's principal law enforcement authority.  As a result, many of the records maintained by the Department of Justice involve law enforcement matters.  The Department of Justice invokes the FOIA's two privacy exemptions, more than the rest of the other exemptions combined, to prevent unwarranted invasions of the personal privacy of individuals mentioned in law enforcement records.  The Department of Justice also protects the identities of confidential informants who provide information to investigators, as well as details about investigative techniques and procedures.  In the general litigation context, the Department of Justice protects information covered by the civil discovery privileges.

3. *Electronic link to agency FOIA regulations.*

   The Department of Justice FOIA Regulations contained in 28 C.F.R. §§ 16.1-16.12 (2023) can be accessed at http://www.justice.gov/oip/doj-foia-regulations.

### III.    DEFINITIONS, EXEMPTIONS, AND COMPONENT ACRONYMS

1.  *Definitions of terms used in this Report:*

    a. **Administrative Appeal** – a request to a federal agency asking that it review at a higher administrative level a FOIA determination made by the agency at the initial request level.

    b. **Average Number** – the number obtained by dividing the sum of a group of numbers by the quantity of numbers in the group.  For example, of 3, 7, and 14, the average number is 8.

    c. **Backlog** – the number of requests or administrative appeals that are pending at an agency at the end of the fiscal year that are beyond the statutory time period for a response.

    d. **Component** – for agencies that process requests on a decentralized basis, a "component" is an entity, also sometimes referred to as an Office, Division, Bureau, Center, or Directorate, within the agency that processes FOIA requests.  The FOIA now requires that agencies include in their Annual FOIA Report data for both the agency overall and for each principal component of the agency.

    e. **Consultation** – the procedure whereby the agency responding to a FOIA request first forwards a record to another agency or component within the same agency for its review because that other agency has an interest in the document.  Once the agency in receipt of the consultation finishes its review of the record, it responds back to the agency or component within the same agency that forwarded it.  That agency, in turn, will then respond to the FOIA requester.

    f. **Exemption 3 Statute** – a federal statute that exempts information from disclosure and which the agency relies on to withhold information under subsection (b)(3) of the FOIA.

    g. **FOIA Request** – a FOIA request is generally a request to a federal agency for access to records concerning another person (i.e., a "third-party" request), or concerning an organization, or a particular topic of interest.  FOIA requests also include requests made by requesters seeking records concerning themselves (i.e., "first-party" requests)

when those requesters are not subject to the Privacy Act, such as non-U.S. citizens.  Moreover, because all first-party requesters should be afforded the benefit of both the access provisions of the FOIA as well as those of the Privacy Act, FOIA requests also include any first-party requests where an agency determines that it must search beyond its Privacy Act "systems of records" or where a Privacy Act exemption applies, and the agency looks to FOIA to afford the greatest possible access.  All requests which require the agency to utilize the FOIA in responding to the requester are included in this Report.  Additionally, a FOIA request includes records referred to the agency for processing and direct response to the requester.  It does not, however, include records for which the agency has received a consultation from another agency.  (Consultations are reported separately in Section XII of this Report.)

h.  **Full Grant** – an agency decision to disclose all records in full in response to a FOIA request.

i.  **Full Denial** – an agency decision not to release any records in response to a FOIA request because the records are exempt in their entireties under one or more of the FOIA exemptions, or because of a procedural reason, such as when no records could be located.

j.  **Median Number** – the middle, not average, number.  For example, of 3, 7, and 14, the median number is 7.

k.  **Multi-Track Processing** – a system in which simple requests requiring relatively minimal review are placed in one processing track and more voluminous and complex requests are placed in one or more other tracks.  Requests granted expedited processing are placed in yet another track.  Requests in each track are processed on a first in/first out basis.

    i.  **Expedited Processing** – an agency will process a FOIA request on an expedited basis when a requester satisfies the requirements for expedited processing as set forth in the statute and in agency regulations.

    ii.  **Simple Request** – a FOIA request that an agency using multi-track processing places in its fastest (non-expedited) track based on the low volume and/or simplicity of the records requested.

iii. **Complex Request** – a FOIA request that an agency using multi-track processing places in a slower track based on the high volume and/or complexity of the records requested.

l. **Partial Grant/Partial Denial** – in response to a FOIA request, an agency decision to disclose portions of the records and to withhold other portions that are exempt under the FOIA, or to otherwise deny a portion of the request for a procedural reason.

m. **Pending Request or Pending Administrative Appeal** – a request or administrative appeal for which an agency has not taken final action in all respects.

n. **Perfected Request** – a request for records which reasonably describes such records and is made in accordance with published rules stating the time, place, fees (if any) and procedures to be followed.

o. **Processed Request or Processed Administrative Appeal** – a request or administrative appeal for which an agency has taken final action in all respects.

p. **Range in Number of Days** – the lowest and highest number of days to process requests or administrative appeals.

q. **Time Limits** – the time period in the statute for an agency to respond to a FOIA request (ordinarily twenty working days from receipt of a perfected FOIA request).

2. *Descriptions of the nine FOIA exemptions:*

a. **Exemption 1**: classified national defense and foreign relations information

b. **Exemption 2**: information that is related solely to the internal personnel rules and practices of an agency

c. **Exemption 3**: information that is prohibited from disclosure by another federal law

d. **Exemption 4**: trade secrets and other confidential business information

e. **Exemption 5**: inter-agency or intra-agency communications that are protected by legal privileges

f. **Exemption 6**: information involving matters of personal privacy

**g. Exemption 7**:  records or information compiled for law enforcement purposes, to the extent that the production of those records (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions, or (F) could reasonably be expected to endanger the life or physical safety of any individual

**h. Exemption 8**:  information relating to the supervision of financial institutions

**i. Exemption 9**:  geological information on wells

3. Agency Component Abbreviations

| Component Abbreviation | Component Name |
|---|---|
| ATJ | Office for Access to Justice |
| Antitrust | Antitrust Division |
| ATF | Bureau of Alcohol, Tobacco, Firearms, and Explosives |
| BOP | Federal Bureau of Prisons |
| Civil | Civil Division |
| Civil Rights | Civil Rights Division |
| COPS | Office of Community Oriented Policing Services |
| Criminal | Criminal Division |
| CRS | Community Relations Service |
| DEA | Drug Enforcement Administration |
| ENRD | Environment and Natural Resources Division |
| EOIR | Executive Office for Immigration Review |
| EOUSA | Executive Office for United States Attorneys |
| EOUST | Executive Office for United States Trustees |
| FBI | Federal Bureau of Investigation |
| FCSC | Foreign Claims Settlement Commission |
| JMD | Justice Management Division |
| NSD | National Security Division |
| OCDETF | Executive Office for Organized Crime Drug Enforcement Task Forces |
| OIG | Office of the Inspector General |
| OIP | Office of Information Policy |
| OJP | Office of Justice Programs |
| OLC | Office of Legal Counsel |

| OPR | Office of Professional Responsibility |
|---|---|
| OSG | Office of the Solicitor General |
| OVW | Office on Violence Against Women |
| PARDON | Office of the Pardon Attorney |
| PRAO | Professional Responsibility Advisory Office |
| Tax | Tax Division |
| USMS | United States Marshals Service |
| USNCB | United States National Central Bureau INTERPOL |
| USPC | United States Parole Commission |

## IV. EXEMPTION 3 STATUTES

| Statute | Type of Information Withheld | Case Citation | Agency / Component | Number of Times Relied upon by Agency / Component | Total Number of Times Relied upon by Agency Overall |
|---|---|---|---|---|---|
| 5 U.S.C. app. § 107(a)(2) | Confidential financial disclosure report pertaining to certain government employees | Meyerhoff v. EPA, 958 F.2d 1498, 1500- 02 (9th Cir. 1992); Boyd v. Exec. Off. for U.S. Attys, 161 F. Supp. 3d 1, 7 (D.D.C. 2015); Seife v. NIH, 874 F. Supp. 2d 248, 254 (S.D.N.Y. 2012). | Criminal | 2 | 3 |
| | | | EOUST | 1 | |
| 10 U.S.C. § 130(a) | Certain "technical data with military or space application in the possession of, or under the control of, the Department of Defense" | Newport Aeronautical Sales v. Dep't of the Air Force, 684 F.3d 160, 167-68 (D.C. Cir. 2012); Chenkin v. Dep't of the Army, No. 93-494, 1994 U.S. Dist. LEXIS 20907, at *8 (M.D. Pa. Jan. 14, 1994), aff'd, 61 F.3d 894 (3d Cir. 1995) (unpublished table decision). | FBI | 4 | 5 |
| | | | OIP | 1 | |
| 10 U.S.C. § 130b | Personally identifiable information pertaining to | Freedom Watch, Inc. v. NSA, 197 F. Supp. 3d 165, | FBI | 2 | 2 |

| | "any member of the armed forces assigned to an overseas unit, a sensitive unit, or a routinely deployable unit" and "any employee of the Department of Defense or of the Coast Guard whose duty station is with any such unit" | 174 (D.D.C. 2016); Hiken v. DOD, 521 F. Supp. 2d 1047, 1062 (N.D. Cal. 2007); O'Keefe v. DOD, 463 F. Supp. 2d 317, 325 (E.D.N.Y. 2006); Windel v. United States, No. A02-306, 2005 WL 846206, at *2 (D. Alaska Apr. 11, 2005). | | | |
|---|---|---|---|---|---|
| 10 U.S.C. § 130c | Certain "sensitive information of foreign governments" and certain international organizations | ACLU v. DOD, 389 F. Supp. 2d 547, 553-54 (S.D.N.Y. 2005); Nat'l Inst. of Mil. Just. v. DOD, 404 F. Supp. 2d 325, 335-37 (D.D.C. 2005), aff'd on other grounds, 512 F.3d 677 (D.C. Cir. 2008); Gerstein v. DOD, No. 03-5193, slip op. at 8 (N.D. Ca. Dec. 21, 2004). | FBI | 2 | 2 |
| 10 U.S.C. § 424 | Organization or any function of, and certain information pertaining to, employees of the Defense Intelligence Agency, the National Reconnaissance Office, and the National | Hamdan v. DOJ, 797 F.3d 759, 776 (9th Cir. 2015); Freedom Watch, Inc. v. NSA, 197 F. Supp. 3d 165, 174 (D.D.C. 2016); Wickwire Gavin, P.C. v. Def. Intel. Agency, 330 F. Supp. 2d | FBI | 4 | 4 |

| | Geospatial-Intelligence Agency | 592, 602 (E.D. Va. 2004). | | | |
|---|---|---|---|---|---|
| 10 U.S.C. § 1102(f) | Medical quality assurance records created by or for the Department of Defense as part of a medical quality assurance program | Goodrich v. Dep't of the Air Force, 404 F. Supp. 2d 48, 50-51 (D.D.C. 2005); Dayton Newspapers, Inc. v. Dep't of the Air Force, 107 F. Supp. 2d 912, 917 (S.D. Ohio 1999). | FBI | 1 | 1 |
| 10 U.S.C. § 3309 (formerly at 10 U.S.C. § 2305(g)) | Certain contractor proposals | Roman v. NSA, Nos. 09-2947, 09-4281, 09-3344, 09-2504, 09-5633, 2012 WL 569747, at *7 (E.D.N.Y. Feb. 22, 2012); Margolin v. NASA, No. 09-CV-00421-LRHVPC, 2011 WL 1303221, at *6 (D. Nev. Mar. 31, 2011). | FBI | 5 | 5 |
| 13 U.S.C. §§ 8(b), 9(a) | Certain census data | Baldrige v. Shapiro, 455 U.S. 345, 354-55 (1982). | FBI | 4 | 4 |
| 13 U.S.C. § 301(g) | Certain shippers' export declarations or successor documents | Afr. Fund v. Mosbacher, No. 92 Civ 289, 1993 WL 183736, at *5 (S.D.N.Y. May 26, 1993); Young Conservative Found., Inc. v. U.S. Dep't of Commerce, | FBI | 3 | 3 |

| | | No. 85-3982, 1987 WL 9244, at *2-3 (D.D.C. Mar. 25, 1987). | | | |
|---|---|---|---|---|---|
| 15 U.S.C. § 6801 | Nonpublic personal information of customers of financial institutions | Hodes v. HUD, 532 F. Supp. 2d 108, 117 (D.D.C. 2008). | FBI | 1 | 1 |
| 15 U.S.C. § 18a(h) | Information submitted in connection with the premerger notification provisions of the Hart-Scott-Rodino Antitrust Improvements Act of 1976. | N/A | Antitrust | 7 | 8 |
| | | | FBI | 1 | |
| 15 U.S.C. § 1314(g) | "Any documentary material, answers to written interrogatories, or transcripts of oral testimony" provided pursuant to certain civil investigative demands pertaining to antitrust investigations | Motion Picture Ass'n of Am. v. DOJ, No. 80 Civ. 6612, slip op. at 1 (S.D.N.Y. Oct. 6, 1981). | Antitrust | 2 | 3 |
| | | | FBI | 1 | |
| 54 U.S.C. § 100707 (formerly at 16 U.S.C. § 5937) | Information pertaining to: "endangered, threatened, rare, or commercially valuable" National Park System resources; "mineral | Hornbostel v. U.S. Dep't of the Interior, 305 F. Supp. 2d 21, 30 (D.D.C. 2003), summary affirmance granted, No. 03- 5257, 2004 | FBI | 2 | 2 |

| | or paleontological objects within units of the National Park System"; or "objects of cultural patrimony within units of the National Park System" | WL 1900562 (D.C. Cir. Aug. 25, 2004); Sw. Ctr. for Biological Diversity v. USDA, 170 F. Supp. 2d 931, 945 (D. Ariz. 2000), aff'd, 314 F.3d 1060, 1062 (9th Cir. 2002); Pease v. U.S. Dep't of Interior, No. 1:99CV113, slip op. at 2, 4 (D. Vt. Sept. 17, 1999). | | | |
|---|---|---|---|---|---|
| 18 U.S.C. § 798 | Certain classified information pertaining to the communication intelligence and cryptographic devices of the United States or any foreign government | Larson v. Dep't of State, 565 F.3d 857, 868-69 (D.C. Cir. 2009); N.Y. Times Co. v. DOJ, No. 14 Civ 03776, 2016 WL 5946711, at *6 (S.D.N.Y. Aug. 18, 2016); Adejumobi v. NSA, No. 07-1237, 2007 WL 4247878, at *3 (M.D. Fla. Dec. 3, 2007), aff'd per curiam, 287 F. App'x 770 (11th Cir. 2008); Winter v. NSA, 569 F. Supp. 545, 546-48 (S.D. Cal. 1983). | FBI | 1 | 1 |
| 18 U.S.C. §§ 2510, et seq. | Wiretap requests and the contents of any wire, oral, or electronic communication obtained through wiretaps | Payne v. DOJ, No. 96-30840, 1997 WL 450139, at *3 (5th Cir. July 11, 1997); Lam Lek Chong v. DEA, 929 | DEA | 26 | 156 |
| | | | EOUSA | 1 | |
| | | | FBI | 127 | |

| | | F.2d 729, 732-33 (D.C. Cir. 1991). | OCDETF | 2 | |
|---|---|---|---|---|---|
| 18 U.S.C. § 3123(d) | Certain court "order[s] authorizing or approving the installation and use of a pen register or a trap and trace device"; information pertaining to "the existence of the pen register or trap and trace device or the existence of the investigation" | Labow v. DOJ, 831 F.3d 523, 527-28 (D.C. Cir. 2016); ACLU v. DOJ, 2014 WL 4954121, at *11 (N.D. Cal. Sept. 30, 2014); Manna v. DOJ, 815 F. Supp. 798, 812 (D.N.J. 1993), aff'd on other grounds, 51 F.3d 1158 (3d Cir. 1995). | DEA | 15 | 93 |
| | | | FBI | 77 | |
| | | | OCDETF | 1 | |
| 18 U.S.C. § 3509(d) | Certain records containing identifying information pertaining to children involved in criminal proceedings | Corley v. DOJ, 998 F.3d 981, 982-85 (D.C. Cir. 2021). | EOUSA | 3 | 126 |
| | | | FBI | 123 | |
| 18 U.S.C. § 3521(b)(1)(g) | "[T]he identity or location of the person relocated or protected, or any other matter concerning the person or the program after weighing [various factors]," subject to certain exceptions | Bonadonna v. DOJ, 791 F. Supp. 2d 269, 270 (D. Mass. 2010), aff'd, No. 10 1595, 2011 WL 4770189 (1st Cir. Jan. 7, 2011). | FBI | 6 | 12 |
| | | | USMS | 6 | |
| 18 U.S.C. § 5038(a) | Records of juvenile delinquency proceedings | Lavado v. DEA, No. 90-5262, 1991 WL 119586, at *1 | FBI | 19 | 19 |

| | | (D.C. Cir. June 28, 1991). | | | |
|---|---|---|---|---|---|
| 26 U.S.C. §§ 6103, 6105 | Certain tax return information, to include Taxpayer Identification Numbers of third parties, and certain tax convention information | Nosal v. IRS, 523 F. Supp. 3d 72, 79 (D.D.C. 2021); Church of Scientology v. IRS, 484 U.S. 9, 15 (1987) (26 U.S.C. § 6103); Elec. Priv. Info. Ctr. v. IRS, 910 F.3d 1232, 1237 (D.C. Cir. 2018); Leonard v. U.S. Dep'of Treasury, 590 F. App'x. 141, 143-44 (3d Cir. 2014) (per curiam); Pac. Fisheries, Inc. v. IRS, 395 F. App'x. 438, 440 (9th Cir. 2010) (unpublished disposition) (26 U.S.C. §§ 6103, 6105). | ATF | 248 | 323 |
| | | | EOUSA | 1 | |
| | | | FBI | 48 | |
| | | | Tax | 26 | |
| 28 U.S.C. § 652(d) | "[C]onfidential dispute resolution communications" | Yelder v. DOD, 577 F. Supp. 2d 342, 346-47 (D.D.C. 2008). | ENRD | 1 | 1 |
| 31 U.S.C. § 3730(b)(2) | Records pertaining to civil actions for false claims against the United States Government | N/A | EOUSA | 1 | 2 |
| | | | FBI | 1 | |
| 31 U.S.C. § 5319 | Reports pertaining to | Yunes v. DOJ, 263 F. Supp. | DEA | 3 | 32 |

| | monetary instruments transactions filed under subchapter II of chapter 53 of title 31 and records of those reports | 3d 82, 87 (D.D.C. 2017)); Council on Am.-Islamic Rels., Cal. v. FBI, 749 F. Supp. 2d 1104, 1117 (S.D. Cal. 2010); Berger v. IRS, 487 F. Supp. 2d 482, 496-97 (D.N.J. 2007), affd on other grounds, 288 F. App'x 829 (3d Cir. 2008). | FBI | 28 | |
| | | | OCDETF | 1 | |
| 39 U.S.C. § 410(c)(2) | Commercial information which would not be disclosed under good business practice | Wickwire Gavin, P.C. v. USPS, 356 F.3d 588, 589, 597 (4th Cir. 2004); Am. Postal Workers Union, AFL-CIO v. USPS, 742 F. Supp. 2d 76, 81-83 (D.D.C. 2010); Reid v. USPS, No. 05-294, 2006 WL 1876682, at *5-9 (S.D. Ill. July 5, 2006); Robinett v. USPS, No. 02-1094, 2002 WL 1728582, at *5 (E.D. La. July 24, 2002). | FBI | 1 | 1 |
| 41 U.S.C. § 4702 (formerly at 41 U.S.C. § 253b(m)(1)) | Contractor proposals that are in the possession or control of an executive agency and that have not been set forth or incorporated by reference | Sinkfield v. HUD, No. 10-885, 2012 U.S. Dist. LEXIS 35233, at *13-15 (S.D. Ohio Mar. 15, 2012); Margolin v. NASA, No. 09- CV-00421, 2011 WL 1303221, at *6 (D. | BOP | 5 | 9 |
| | | | JMD | 4 | |

| | into contracts | Nev. Mar. 31, 2011); Hornbostel v. U.S. Dep't of the Interior, 305 F. Supp. 2d 21, 30 (D.D.C. 2003), summary affirmance granted, No. 03-5257, 2004 WL 1900562 (D.C. Cir. Aug. 25, 2004). | | | |
|---|---|---|---|---|---|
| 41 U.S.C. § 2102 (amending 41 U.S.C. § 423(a)(1)) | Contractor bid or proposal information; source selection information | Legal & Safety Employer Research, Inc. v. U.S. Dep't of the Army, No. Civ. S001748, 2001 WL 34098652, at *3-4 (E.D. Cal. May 4, 2001) (dictum). | BOP | 2 | 4 |
| | | | USMS | 2 | |
| 42 U.S.C. § 300aa-12(d)(4)(A) | "Except as provided in subparagraph (B), information submitted to a special master or the court in a proceeding on a petition [for compensation under the National Vaccine Injury Compensation Program] . . . without the express written consent of the person who submitted the information" | Long v. DOJ, 778 F. Supp. 2d 222, 234 (N.D.N.Y. 2011). | Civil | 19 | 19 |
| 42 U.S.C. § 2000g-2b | Conciliation assistance data received by the Community | N/A | CRS | 14 | 14 |

| | Relations Service | | | | |
|---|---|---|---|---|---|
| 34 U.S.C. § 10231 (formerly at 42 U.S.C. § 3789g) | Data received by the Bureau of Justice Statistics and used only for statistical or research purposes | N/A | OJP | 4 | 4 |
| 42 U.S.C. § 14132(b)(3) | Certain "stored DNA samples and DNA analyses" | Moore v. Nat'l DNA Index System, 662 F. Supp. 2d 136, 140 (D.D.C. 2009). | FBI | 3 | 3 |
| 49 U.S.C. § 114(r) (formerly at 49 U.S.C. § 114(s)) | Information obtained or developed in carrying out security under the authority of the Aviation and Transportation Security Act or under chapter 449 of this title | Magassa v. TSA, No. 19-01953, 2022 WL 971207, at *5 (D.D.C Mar. 31, 2022); Skurow v. DHS, 892 F. Supp. 2d 319, 329-30 (D.D.C. 2012); Gordon v. FBI, 390 F. Supp. 2d 897, 900 (N.D. Cal. 2004). | FBI | 2 | 2 |
| 50 U.S.C. § 3605 (formerly at 50 U.S.C. § 402 note) | Information pertaining to the functions or organization of NSA; certain information pertaining to NSA employees | ACLU v. DOJ, 681 F.3d 61, 72-75 (2d Cir. 2012); Elec. Priv. Info. Ctr. v. NSA, 678 F.3d 926, 931 (D.C. Cir. 2012); Houghton v. NSA, 378 F. App'x 235, 238-39 (3d Cir. 2010) (per curiam); Lahr v. NTSB, 569 F.3d 964, 985 (9th Cir. 2009). | FBI<br>OLC | 1<br>1 | 2 |

| 50 U.S.C. § 3507 (formerly at 50 U.S.C. § 403g) | Intelligence sources and methods; certain information pertaining to Agency employees, specifically: "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency" | Assassination Archives & Rsch. Ctr. v. CIA, No. 18-5280, 2019 WL 691517 (D.C. Cir. Feb. 15, 2019) (per curiam); ACLU v. DOJ, 681 F.3d 61, 72-75 (2d Cir. 2012); Berman v. CIA, 501 F.3d 1136, 1137-38, 1140 (9th Cir. 2007); Makky v. Chertoff, 489 F. Supp. 2d 421, 442 (D.N.J. 2007), aff'd on other grounds, 541 F. 3d 205 (3d Cir. 2008). | FBI | 13 | 14 |
| | | | OLC | 1 | |
| 50 U.S.C. § 3024(i)(1) (formerly at 50 U.S.C. § 403-1(i)(1)) | Intelligence sources and methods | CIA v. Sims, 471 U.S. 159, 167 (1985). | FBI | 1737 | 1744 |
| | | | JMD | 2 | |
| | | | OIP | 4 | |
| | | | OLC | 1 | |
| 50 U.S.C. § 3141(a) (formerly at 50 U.S.C. § 431) | [O]perational files of the Central Intelligence Agency | CIA v. Sims, 471 U.S. 159, 167, 174 n.19 (1985) (dictum); Wolf v. CIA, 569 F. Supp. 2d 1, 8 (D.D.C. 2008). | FBI | 1 | 1 |
| 50 U.S.C. § 3143 (formerly at 50 U.S.C. § 432a) | Operational files of the National Reconnaissance Office | Aftergood v. Nat'l Reconnaissance Off., 441 F. Supp. 2d 37, 46 (D.D.C. | FBI | 1 | 1 |

| | | 2006). | | | |
|---|---|---|---|---|---|
| 50 U.S.C. § 1702(a)(1) | Authorizes the President to "regulate . . . prevent or prohibit . . . importation or exportation of . . . any property in which any foreign country or a national thereof has any interest . . . by any person, or with respect to any property, subject to the jurisdiction of the United States" | Wis. Project on Nuclear Arms Control v. U.S. Dep't of Com., 317 F.3d 275, 284 (D.C. Cir. 2003). | FBI | 2 | 2 |
| Fed. R. Crim. P. 6(e) | Certain records that would reveal some secret aspect pertaining to grand jury proceedings | Sussman v. USMS, 494 F.3d 1106, 1113 (D.C. Cir. 2007); Sorin v. DOJ, No. 18-99, 2018 WL 6431027 (2d Cir. Dec. 6, 2018) (per curium); Widi v. McNeil, No. 12-CV-00188, 2016 WL 4394724, at *23 (D. Me. Aug 16, 2016); Durham v. U.S. Att'y Gen., No. 06-843, 2008 WL 620744, at *2 (E.D. Tex. Mar. 3, 2008); Cozen O'Connor v. U.S. Dep't of Treasury, 570 F. Supp. 2d 749, 776 (E.D. Pa. 2008). | DEA | 1 | 675 |
| | | | ENRD | 1 | |
| | | | EOUSA | 79 | |
| | | | FBI | 578 | |
| | | | JMD | 1 | |
| | | | NSD | 5 | |
| | | | OIP | 9 | |
| | | | OPR | 1 | |

| Fed. R. Crim. P. 32 | Presentence reports and recommendations | DOJ v. Julian, 486 U.S. 1, 9 (1988). | FBI | 1 | 1 |
|---|---|---|---|---|---|
| 5 U.S.C. § 13107 (formerly at 5 U.S.C. app § 105) | Financial disclosure reports and applications to inspect financial disclosure reports | NA | JMD | 3 | 3 |
| 5. U.S.C. § 407 (formerly at 5 U.S.C. app. 3 § 7(b)) | Names of employees who provide information or complaints to the Inspector General | Wash. Post Co. v. Special Inspector Gen. for Afg. Reconstr., 486 F. Supp. 3d 141, 166 (D.D.C. 2020). | OIG | 1 | 1 |
| 6 U.S.C. § 1504(d)(3)(B) | A cyber threat indicator or defensive measure shared with the Federal Government under the Cybersecurity Information Sharing Act of 2015 | N/A | FBI | 4 | 4 |
| 18 U.S.C. § 208(d)(1) | Providing that "a copy of any determination granting an exemption under subsection (b)(1) or (b)(3) [from application of penalties for acts affecting personal financial interests determined to constitute bribery, graft, or conflicts of interest] shall be made available to the public," but | Seife v. NIH, 874 F. Supp. 2d 248, 256 (S.D.N.Y. 2012). | EOUSA | 2 | 2 |

| | exempting from this disclosure requirement "any information contained in the determination that would be exempt from disclosure under section 552 of title 5" | | | | |
|---|---|---|---|---|---|
| 21 U.S.C. §§ 1903-1905 | All records generated or obtained in the implementation of the King Pin Act | N/A | DEA | 1 | 1 |
| Fed. R. Crim. P. 6(e), enacted by Act of July 30, 1977, Pub. L. No. 95-78, 91 Stat. 319 | Certain records that would reveal some secret aspect pertaining to grand jury proceedings. | N/A | Criminal | 1 | 1 |
| Fed. R. Crim. P. 6(e), enacted by Act of July 30, 1977, Pub. L. No. 95-78, §2, 91 Stat. 319 | Certain records that would reveal some secret aspect pertaining to grand jury proceedings | N/A | OCDETF | 1 | 1 |
| Pub. L. No. 112-55,125 Stat. 552,609-10 | Certain firearms database information | Everytown for Gun Safety Support Fund v. ATF, 984 F.3d 30 (2d Cir. 2020) | ATF | 251 | 251 |
| Pub. L. No. 112-55,125 Stat. 552,609-10 | Certain firearms database information | City of Chi. v. U.S. Dep't of the Treasury,423 F.3d 777,781-82 (7th Cir. 2005); P.W. Arms,Inc. v. United | ATF | 6 | 6 |

| | | States,No. 15-1990-JCC,2017 WL 319250,at *4 (W.D. Wash. Jan. 23,2017); Williams v. ATF,No. PWG-15-1969,2017 WL 3978580,at *5-6 (D. Md. Sept. 8,2017); Abdeljabbar v. ATF,74 F. Supp. 3d 158,173 (D.D.C. 2014). | | | |
|---|---|---|---|---|---|
| Treaty Between the United States of America and the Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters, U.S.-F.R.G., Oct. 14, 2003, S. TREATY DOC. NO. 108-27 (2004) | Evidence obtained by way of a treaty with a confidentiality clause. | N/A | Criminal | 1 | 1 |

## V.A. FOIA REQUESTS -- RECEIVED, PROCESSED AND PENDING FOIA REQUESTS

| Agency / Component | Number of Requests Pending as of Start of Fiscal Year | Number of Requests Received in Fiscal Year | Number of Requests Processed in Fiscal Year | Number of Requests Pending as of End of Fiscal Year |
|---|---|---|---|---|
| ATJ | 0 | 76 | 61 | 15 |
| Antitrust | 157 | 383 | 351 | 189 |
| ATF* | 752 | 2141 | 2145 | 748 |
| BOP* | 6,406 | 5,897 | 6,329 | 5,974 |
| Civil* | 514 | 564 | 296 | 782 |
| Civil Rights* | 458 | 414 | 483 | 389 |
| COPS* | 7 | 237 | 234 | 10 |
| Criminal* | 983 | 1,296 | 1,236 | 1,043 |
| CRS | 21 | 120 | 131 | 10 |
| DEA* | 2,014 | 1,612 | 3,337 | 289 |
| ENRD | 44 | 244 | 239 | 49 |
| EOIR* | 25,624 | 87,842 | 109,163 | 4,303 |
| EOUSA* | 1,900 | 3,610 | 3,757 | 1,753 |
| EOUST | 5 | 99 | 100 | 4 |
| FBI** | 8,731 | 18,218 | 20,145 | 6,804 |
| FCSC | 0 | 76 | 76 | 0 |
| JMD* | 184 | 263 | 381 | 66 |
| NSD* | 323 | 499 | 379 | 443 |
| OCDETF* | 5 | 92 | 80 | 17 |
| OIG* | 251 | 533 | 428 | 356 |
| OIP* | 1,402 | 3,001 | 2,876 | 1,527 |
| OJP* | 497 | 608 | 509 | 596 |
| OLC* | 647 | 169 | 103 | 713 |
| OPR | 38 | 160 | 153 | 45 |

| OSG* | 39 | 117 | 96 | 60 |
|---|---|---|---|---|
| OVW* | 66 | 144 | 107 | 103 |
| PARDON* | 66 | 78 | 84 | 60 |
| PRAO | 0 | 57 | 53 | 4 |
| Tax | 44 | 186 | 52 | 178 |
| USMS* | 365 | 3,300 | 3,293 | 372 |
| USNCB | 6 | 190 | 187 | 9 |
| USPC* | 23 | 301 | 316 | 8 |
| AGENCY OVERALL | 51,572 | 132,527 | 157,180 | 26,919 |

\* After reviewing their databases, the following components updated the number of requests pending as of the start of the Fiscal Year:  ATF, BOP, Civil, Civil Rights, COPS, Criminal, DEA, EOIR, EOUSA, JMD, NSD, OCDETF, OIG, OIP, OJP, OLC, OSG, OVW, PARDON, USMS, USPC.

\*\* The FBI adjusted the number pending at the start of the Fiscal Year to reflect first-party requests that were exempt from Privacy Act accessed and processed under the FOIA in Fiscal Year 2024.

**V.B.(1). DISPOSITION OF FOIA REQUESTS -- ALL PROCESSED REQUESTS**

| Agency / Component | Number of Full Grants | Number of Partial Grants / Partial Denials | Number of Full Denials Based on Exemptions | Number of Full Denials Based on Reasons Other than Exemptions | | | | | | | | | TOTAL |
| | | | | No Records | All Records Referred to Another Component or Agency | Request Withdrawn | Fee-Related Reason | Records not Reasonably Described | Improper FOIA Request for Other Reason | Not Agency Record | Duplicate Request | Other *Explain in Chart Below | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ATJ | 4 | 0 | 0 | 37 | 4 | 1 | 0 | 1 | 8 | 1 | 5 | 0 | 61 |
| Antitrust | 25 | 53 | 25 | 44 | 11 | 21 | 0 | 13 | 3 | 1 | 1 | 154 | 351 |
| ATF | 58 | 679 | 390 | 436 | 13 | 121 | 0 | 96 | 219 | 0 | 113 | 20 | 2,145 |
| BOP | 1,894 | 2,537 | 362 | 238 | 9 | 705 | 2 | 61 | 322 | 89 | 110 | 0 | 6,329 |
| Civil | 6 | 22 | 2 | 13 | 1 | 6 | 0 | 8 | 113 | 0 | 3 | 122 | 296 |
| Civil Rights | 83 | 85 | 28 | 114 | 25 | 108 | 1 | 16 | 17 | 1 | 5 | 0 | 483 |
| COPS | 74 | 31 | 0 | 108 | 0 | 6 | 0 | 0 | 4 | 0 | 11 | 0 | 234 |
| Criminal | 23 | 33 | 205 | 75 | 4 | 36 | 0 | 138 | 298 | 0 | 8 | 416 | 1,236 |
| CRS | 7 | 27 | 1 | 84 | 2 | 0 | 0 | 3 | 2 | 0 | 1 | 4 | 131 |
| DEA | 93 | 570 | 1,455 | 281 | 25 | 178 | 53 | 233 | 241 | 59 | 113 | 36 | 3,337 |
| ENRD | 44 | 55 | 3 | 95 | 4 | 6 | 12 | 2 | 0 | 1 | 0 | 17 | 239 |
| EOIR | 60,168 | 118 | 17 | 19,952 | 14 | 2,593 | 1 | 21 | 24,515 | 88 | 1,676 | 0 | 109,163 |
| EOUSA | 4 | 773 | 650 | 326 | 110 | 158 | 15 | 285 | 799 | 30 | 479 | 128 | 3,757 |
| EOUST | 6 | 10 | 15 | 39 | 0 | 3 | 3 | 9 | 15 | 0 | 0 | 0 | 100 |

| FBI | 1,044 | 6,105 | 1,318 | 7,158 | 24 | 368 | 149 | 56 | 3,201 | 27 | 117 | 578 | 20,145 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FCSC | 5 | 5 | 0 | 66 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 76 |
| JMD | 45 | 127 | 7 | 111 | 38 | 14 | 0 | 11 | 20 | 0 | 8 | 0 | 381 |
| NSD | 71 | 21 | 10 | 179 | 1 | 18 | 1 | 2 | 65 | 0 | 11 | 0 | 379 |
| OCDETF | 4 | 15 | 6 | 31 | 5 | 0 | 0 | 3 | 12 | 4 | 0 | 0 | 80 |
| OIG | 48 | 108 | 36 | 136 | 11 | 35 | 0 | 27 | 25 | 0 | 2 | 0 | 428 |
| OIP | 197 | 165 | 45 | 209 | 7 | 183 | 21 | 3 | 271 | 1 | 278 | 1,496 | 2,876 |
| OJP | 71 | 113 | 8 | 78 | 9 | 39 | 0 | 22 | 134 | 18 | 17 | 0 | 509 |
| OLC | 13 | 16 | 1 | 33 | 1 | 3 | 0 | 0 | 3 | 0 | 3 | 30 | 103 |
| OPR | 10 | 11 | 6 | 60 | 0 | 9 | 0 | 5 | 12 | 0 | 3 | 37 | 153 |
| OSG | 15 | 10 | 0 | 65 | 2 | 2 | 0 | 0 | 0 | 1 | 1 | 0 | 96 |
| OVW | 11 | 48 | 0 | 21 | 0 | 5 | 0 | 0 | 14 | 0 | 3 | 5 | 107 |
| PARDON | 19 | 15 | 1 | 39 | 1 | 0 | 0 | 3 | 4 | 1 | 1 | 0 | 84 |
| PRAO | 0 | 2 | 2 | 41 | 8 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 53 |
| Tax | 3 | 2 | 24 | 10 | 1 | 3 | 0 | 0 | 3 | 0 | 6 | 0 | 52 |
| USMS | 347 | 1,760 | 40 | 198 | 9 | 20 | 14 | 17 | 392 | 9 | 487 | 0 | 3,293 |
| USNCB | 5 | 27 | 9 | 103 | 0 | 0 | 0 | 0 | 43 | 0 | 0 | 0 | 187 |
| USPC | 160 | 18 | 1 | 124 | 0 | 2 | 1 | 0 | 1 | 8 | 0 | 1 | 316 |

| AGENCY OVERALL | 64,557 | 13,560 | 4,667 | 30,504 | 339 | 4,643 | 273 | 1,035 | 30,756 | 339 | 3,462 | 3,045 | 157,180 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**V.B.(2). DISPOSITION OF FOIA REQUESTS -- "OTHER" REASONS FOR "FULL DENIALS BASED ON REASONS OTHER THAN EXEMPTIONS"**

| Agency / Component | Description of "Other" Reasons for Denials from Chart B(1) | Number of Times "Other" Reason Was Relied Upon | TOTAL |
|---|---|---|---|
| ATJ | N/A | 0 | 0 |
| Antitrust | Aggregate Cases | 152 | 154 |
| | Court Sealed | 1 | |
| | Unable to Locate or Contact Requester | 1 | |
| ATF | Unable to Locate or Contact Requester | 20 | 20 |
| BOP | N/A | 0 | 0 |
| Civil | Aggregate Cases | 117 | 122 |
| | Directed Requester to Publicly Available Information | 3 | |
| | Unable to Locate or Contact Requester | 2 | |
| Civil Rights | N/A | 0 | 0 |
| COPS | N/A | 0 | 0 |
| Criminal | Directed Requester to Another Entity Subject to the FOIA | 408 | 416 |
| | Litigation | 1 | |
| | Referred Not Responsive | 1 | |
| | Unable to Locate or Contact Requester | 6 | |
| CRS | Directed Requester to Another Entity Subject to the FOIA | 2 | 4 |
| | Unable to Locate or Contact Requester. | 2 | |
| DEA | Aggregate Cases | 1 | 36 |
| | Unable to Locate or Contact Requester | 35 | |
| ENRD | Aggregate Cases | 5 | 17 |

| | Directed Requester to Publicly Available Information | 4 | |
| | Unable to Locate or Contact Requester | 8 | |
| EOIR | N/A | 0 | 0 |
| EOUSA | Court Sealed | 11 | 128 |
| | Directed Requester to Another Entity Subject to the FOIA | 53 | |
| | FOIA Rights Waived | 23 | |
| | Unable to Locate or Contact Requester | 41 | |
| EOUST | N/A | 0 | 0 |
| FBI | Court Sealed | 1 | 578 |
| | Directed Requester to Another Entity Subject to the FOIA | 11 | |
| | Referred Not Responsive | 3 | |
| | Unable to Locate or Contact Requester | 549 | |
| | Unable to Provide Records to Inmate Requester | 14 | |
| FCSC | N/A | 0 | 0 |
| JMD | N/A | 0 | 0 |
| NSD | N/A | 0 | 0 |
| OCDETF | N/A | 0 | 0 |
| OIG | N/A | 0 | 0 |
| OIP | Aggregate Cases | 354 | 1,496 |
| | Court Sealed | 1 | |
| | Directed Requester to Another Entity Subject to the FOIA | 1,056 | |
| | Directed Requester to Publicly Available Information | 76 | |
| | Referred Not Responsive | 7 | |
| | Unable to Locate or Contact Requester | 2 | |
| OJP | N/A | 0 | 0 |
| OLC | Aggregate Cases | 28 | 30 |

| | | | |
|---|---|---|---|
| | Directed Requester to Another Entity Subject to the FOIA | 2 | |
| OPR | Directed Requester to Another Entity Subject to the FOIA | 37 | 37 |
| OSG | N/A | 0 | 0 |
| OVW | Directed Requester to Another Entity Subject to the FOIA | 5 | 5 |
| PARDON | N/A | 0 | 0 |
| PRAO | N/A | 0 | 0 |
| Tax | N/A | 0 | 0 |
| USMS | N/A | 0 | 0 |
| USNCB | N/A | 0 | 0 |
| USPC | Unable to Provide Records to Inmate Requester | 1 | 1 |
| AGENCY OVERALL | | | 3,045 |

**V.B.(3). DISPOSITION OF FOIA REQUESTS -- NUMBER OF TIMES EXEMPTIONS APPLIED**

| Agency / Component | Ex. 1 | Ex. 2 | Ex. 3 | Ex. 4 | Ex. 5 | Ex. 6 | Ex. 7(A) | Ex. 7(B) | Ex. 7(C) | Ex. 7(D) | Ex. 7(E) | Ex. 7(F) | Ex. 8 | Ex. 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ATJ | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Antitrust | 0 | 0 | 9 | 2 | 7 | 44 | 27 | 0 | 2 | 4 | 1 | 0 | 0 | 0 |
| ATF | 0 | 14 | 502 | 178 | 57 | 707 | 170 | 1 | 674 | 1 | 232 | 6 | 0 | 0 |
| BOP | 0 | 11 | 6 | 26 | 136 | 2,706 | 38 | 2 | 2,701 | 2 | 451 | 690 | 0 | 0 |
| Civil | 0 | 0 | 19 | 0 | 23 | 23 | 0 | 0 | 19 | 0 | 0 | 0 | 0 | 0 |
| Civil Rights | 0 | 1 | 0 | 6 | 53 | 61 | 34 | 0 | 56 | 1 | 18 | 0 | 1 | 0 |
| COPS | 0 | 0 | 0 | 0 | 1 | 31 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 |
| Criminal | 1 | 0 | 4 | 1 | 14 | 141 | 92 | 0 | 143 | 3 | 6 | 0 | 0 | 0 |
| CRS | 0 | 0 | 14 | 0 | 16 | 24 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DEA | 23 | 115 | 38 | 121 | 236 | 1,299 | 220 | 5 | 1,336 | 201 | 1,029 | 706 | 0 | 1 |
| ENRD | 0 | 0 | 2 | 15 | 27 | 45 | 9 | 0 | 4 | 0 | 2 | 0 | 0 | 0 |
| EOIR | 0 | 5 | 0 | 2 | 48 | 128 | 2 | 0 | 9 | 0 | 5 | 0 | 0 | 0 |
| EOUSA | 1 | 0 | 82 | 8 | 273 | 1,306 | 92 | 0 | 1,199 | 23 | 47 | 29 | 0 | 0 |
| EOUST | 0 | 0 | 1 | 2 | 2 | 20 | 2 | 0 | 2 | 0 | 3 | 0 | 0 | 0 |
| FBI | 349 | 199 | 2,387 | 138 | 1,555 | 5,809 | 738 | 31 | 5,821 | 2,397 | 5,440 | 161 | 3 | 0 |
| FCSC | 0 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JMD | 2 | 3 | 10 | 37 | 32 | 125 | 4 | 0 | 10 | 1 | 20 | 2 | 0 | 0 |
| NSD | 16 | 0 | 5 | 4 | 5 | 19 | 4 | 0 | 14 | 3 | 7 | 1 | 0 | 0 |
| OCDETF | 0 | 0 | 4 | 0 | 9 | 20 | 4 | 0 | 20 | 10 | 17 | 4 | 0 | 0 |
| OIG | 3 | 0 | 1 | 0 | 8 | 127 | 11 | 0 | 120 | 2 | 5 | 5 | 0 | 0 |
| OIP | 27 | 0 | 14 | 2 | 96 | 188 | 35 | 0 | 64 | 2 | 49 | 34 | 0 | 0 |
| OJP | 0 | 0 | 4 | 74 | 10 | 110 | 2 | 0 | 35 | 1 | 11 | 1 | 0 | 0 |
| OLC | 1 | 0 | 1 | 2 | 13 | 14 | 0 | 0 | 3 | 0 | 1 | 0 | 0 | 0 |
| OPR | 0 | 0 | 1 | 0 | 5 | 17 | 0 | 0 | 10 | 0 | 0 | 0 | 0 | 0 |
| OSG | 0 | 0 | 0 | 0 | 5 | 9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OVW | 0 | 0 | 0 | 0 | 14 | 47 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PARDON | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PRAO | 0 | 0 | 0 | 0 | 1 | 2 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Tax | 0 | 0 | 26 | 0 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 |
| USMS | 0 | 14 | 8 | 14 | 52 | 1,505 | 15 | 0 | 1,509 | 3 | 993 | 773 | 0 | 0 |
| USNCB | 0 | 0 | 0 | 0 | 0 | 26 | 9 | 0 | 25 | 15 | 16 | 0 | 0 | 0 |
| USPC | 0 | 0 | 0 | 0 | 1 | 19 | 0 | 0 | 18 | 12 | 0 | 0 | 0 | 0 |
| AGENCY OVERALL | 423 | 362 | 3,138 | 632 | 2,701 | 14,580 | 1,509 | 39 | 13,798 | 2,681 | 8,353 | 2,412 | 4 | 1 |

**VI.A. ADMINISTRATIVE APPEALS OF INITIAL DETERMINATIONS OF FOIA REQUESTS -- RECEIVED, PROCESSED, AND PENDING ADMINISTRATIVE APPEALS**

| Agency / Component | Number of Appeals Pending as of Start of Fiscal Year | Number of Appeals Received in Fiscal Year | Number of Appeals Processed in Fiscal Year | Number of Appeals Pending as of End of Fiscal Year |
|---|---|---|---|---|
| OIP* | 372 | 2,577 | 2,479 | 470 |
| AGENCY OVERALL | 372 | 2,577 | 2,479 | 470 |

* After reviewing its database, OIP updated the number of appeals pending as of the start of the Fiscal Year.

**VI.B. DISPOSITION OF ADMINISTRATIVE APPEALS -- ALL PROCESSED APPEALS**

| Agency / Component | Number Affirmed on Appeal | Number Partially Affirmed & Partially Reversed/Remanded on Appeal | Number Completely Reversed/Remanded on Appeal | Number of Appeals Closed for Other Reasons | TOTAL |
|---|---|---|---|---|---|
| OIP | 1,291 | 76 | 437 | 673 | 2,477 |
| AGENCY OVERALL | 1,291 | 76 | 437 | 673 | 2,477 |

**VI.C.(1). REASONS FOR DENIAL ON APPEAL -- NUMBER OF TIMES EXEMPTIONS APPLIED**

| Agency / Component | Ex. 1 | Ex. 2 | Ex. 3 | Ex. 4 | Ex. 5 | Ex. 6 | Ex. 7(A) | Ex. 7(B) | Ex. 7(C) | Ex. 7(D) | Ex. 7(E) | Ex. 7(F) | Ex. 8 | Ex. 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OIP | 17 | 0 | 94 | 1 | 63 | 447 | 116 | 0 | 427 | 87 | 265 | 52 | 0 | 0 |
| AGENCY OVERALL | 17 | 0 | 94 | 1 | 63 | 447 | 116 | 0 | 427 | 87 | 265 | 52 | 0 | 0 |

**VI.C.(2). REASONS FOR DENIAL ON APPEAL - REASONS OTHER THAN EXEMPTIONS**

| Agency / Component | No Records | Records Referred at Initial Request Level | Request Withdrawn | Fee-Related Reason | Records not Reasonably Described | Improper Request for Other Reasons | Not Agency Record | Duplicate Request or Appeal | Request in Litigation | Appeal Based Solely on Denial of Request for Expedited Processing | Other *Explain in chart below |
|---|---|---|---|---|---|---|---|---|---|---|---|
| OIP | 217 | 0 | 3 | 11 | 133 | 56 | 0 | 50 | 33 | 0 | 894 |
| AGENCY OVERALL | 217 | 0 | 3 | 11 | 133 | 56 | 0 | 50 | 33 | 0 | 894 |

## VI.C.(3). REASONS FOR DENIAL ON APPEAL -- "OTHER" REASONS

| Agency / Component | Description of "Other" Reasons for Denials from Chart C(2) | Number of Times "Other" Reason Was Relied Upon | TOTAL |
|---|---|---|---|
| OIP | Affirmed Administrative Consolidation or Splitting of Request | 10 | 910 |
| | Affirmed Use of Unusual Circumstances | 2 | |
| | Agency Performed Adequate Search | 245 | |
| | Appeal Withdrawn | 21 | |
| | Component Has No Request | 14 | |
| | Exclusion Issue Raised | 33 | |
| | Improper Appeal | 102 | |
| | Moot | 224 | |
| | No Component Response to Adjudicate | 179 | |
| | Records Under Court Seal | 7 | |
| | Affirm Track Placement | 6 | |
| | Unable to Locate or Contact Requester | 1 | |
| | Untimely | 66 | |
| AGENCY OVERALL | | | 910 |

**VI.C.(4). RESPONSE TIME FOR ADMINISTRATIVE APPEALS**

| Agency / Component | Median Number of Days | Average Number of Days | Lowest Number of Days | Highest Number of Days |
|---|---|---|---|---|
| OIP | 56 | 68.82 | 0 | 339 |
| AGENCY OVERALL | 56 | 68.82 | 0 | 339 |

**VI.C.(5). TEN OLDEST PENDING ADMINISTRATIVE APPEALS**

| Agency / Component | | 10th Oldest Appeal | 9th | 8th | 7th | 6th | 5th | 4th | 3rd | 2nd | Oldest Appeal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| OIP | Date of Appeal | 03/01/2024 | 02/29/2024 | 02/23/2024 | 02/23/2024 | 01/31/2024 | 01/24/2024 | 01/19/2024 | 01/16/2024 | 01/16/2024 | 01/09/2024 |
| | Number of Days Pending | 147 | 148 | 152 | 152 | 168 | 173 | 176 | 179 | 179 | 183 |
| AGENCY OVERALL | Date of Appeal | 03/01/2024 | 02/29/2024 | 02/23/2024 | 02/23/2024 | 01/31/2024 | 01/24/2024 | 01/19/2024 | 01/16/2024 | 01/16/2024 | 01/09/2024 |
| | Number of Days Pending | 147 | 148 | 152 | 152 | 168 | 173 | 176 | 179 | 179 | 183 |

**VII.A. FOIA REQUESTS - RESPONSE TIME FOR ALL PROCESSED PERFECTED REQUESTS**

| Agency / Component | SIMPLE | | | | COMPLEX | | | | EXPEDITED PROCESSING | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Median Number of Days | Average Number of Days | Lowest Number of Days | Highest Number of Days | Median Number of Days | Average Number of Days | Lowest Number of Days | Highest Number of Days | Median Number of Days | Average Number of Days | Lowest Number of Days | Highest Number of Days |
| ATJ | 45 | 47.15 | < 1 | 154 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Antitrust | 4 | 7.94 | <1 | 65 | 13 | 119.86 | 1 | 1,497 | N/A | N/A | N/A | N/A |
| ATF | 27 | 109.22 | < 1 | 2,006 | 46 | 685.52 | < 1 | 2,504 | 8 | 16.38 | < 1 | 92 |
| BOP | 7 | 8.86 | < 1 | 123 | 240 | 411.47 | < 1 | 1,690 | 309 | 349.79 | 5 | 1,628 |
| Civil | 14 | 30.8 | 7 | 591 | 263 | 366 | < 1 | 1174 | 910 | 910 | 910 | 910 |
| Civil Rights | 20 | 23.95 | 2 | 97 | 451 | 503.88 | 13 | 1533 | N/A | N/A | N/A | N/A |
| COPS | 3 | 6.13 | < 1 | 60 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Criminal | 6 | 39.52 | < 1 | 1,231 | 65 | 296.83 | 1 | 2,194 | 409 | 442.83 | 251 | 817 |
| CRS | 37 | 52.5 | < 1 | 223 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| DEA | 4 | 7.5 | < 1 | 120 | 328 | 407.29 | < 1 | 1,696 | 858.5 | 731.5 | 91 | 1,243 |
| ENRD | 10 | 10.24 | 1 | 24 | 42 | 98.67 | 1 | 699 | 741.5 | 741.5 | 711 | 772 |
| EOIR | 17 | 83.08 | < 1 | 1,021 | 16 | 43.86 | < 1 | 522 | 21 | 70.43 | < 1 | 726 |
| EOUSA | 11 | 24.62 | < 1 | 875 | 21 | 223.29 | < 1 | 1,928 | 19 | 29.57 | 7 | 90 |
| EOUST | 1 | 2.71 | < 1 | 18 | 4 | 7.71 | < 1 | 18 | 10 | 7.67 | 2 | 11 |

| FBI | 3 | 19.73 | < 1 | 627 | 84 | 330.5 | < 1 | 2,734 | 46 | 459.88 | 5 | 2,464 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FCSC | 1 | 3.11 | < 1 | 19 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| JMD | 4 | 8.39 | < 1 | 142 | 144 | 318.13 | < 1 | 1,800 | N/A | N/A | N/A | N/A |
| NSD | 27 | 69.85 | < 1 | 1,121 | 805.5 | 849.27 | < 1 | 2,189 | N/A | N/A | N/A | N/A |
| OCDETF | 5 | 13.49 | < 1 | 110 | 17 | 34.43 | 5 | 146 | N/A | N/A | N/A | N/A |
| OIG | 5 | 6.84 | < 1 | 26 | 179.5 | 331.52 | 8 | 1,876 | N/A | N/A | N/A | N/A |
| OIP | 1 | 6.4 | < 1 | 1,202 | 681 | 650.57 | < 1 | 1,824 | 503 | 620.61 | < 1 | 1,752 |
| OJP | 5 | 8.43 | < 1 | 131 | 160 | 322.07 | < 1 | 1,821 | 338 | 485 | 3 | 1,041 |
| OLC | 12 | 25.15 | 2 | 353 | 28 | 287.81 | 3 | 2,663 | 815 | 866.29 | 10 | 2,646 |
| OPR | 5 | 15.24 | < 1 | 317 | 26 | 168.51 | 1 | 1,840 | N/A | N/A | N/A | N/A |
| OSG | 20 | 26.77 | < 1 | 94 | 75.5 | 188.04 | 12 | 1,239 | 80 | 70.71 | 16 | 142 |
| OVW | 30 | 66.34 | < 1 | 380 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| PARDON | 46 | 143.57 | < 1 | 1,395 | 171 | 619.81 | 8 | 1,621 | N/A | N/A | N/A | N/A |
| PRAO | 7 | 7.69 | < 1 | 17 | 33 | 33 | 33 | 33 | N/A | N/A | N/A | N/A |
| Tax | 3 | 9.21 | < 1 | 73 | 92.5 | 194.5 | < 1 | 622 | N/A | N/A | N/A | N/A |
| USMS | 8 | 10.8 | < 1 | 185 | 12 | 92.49 | < 1 | 1,260 | 303 | 325.93 | 11 | 896 |
| USNCB | 6 | 7.15 | < 1 | 76 | 348 | 348 | 348 | 348 | N/A | N/A | N/A | N/A |
| USPC | 5 | 12.85 | < 1 | 270 | 20 | 33.21 | < 1 | 271 | 57.5 | 57.5 | < 1 | 114 |

| AGENCY OVERALL | 13 | 72.24 | < 1 | 2,006 | 111 | 336.72 | < 1 | 2,734 | 51.5 | 238.46 | < 1 | 2,646 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

**VII.B. PROCESSED REQUESTS - RESPONSE TIME FOR PERFECTED REQUESTS IN WHICH INFORMATION WAS GRANTED**

| Agency / Component | SIMPLE | | | | COMPLEX | | | | EXPEDITED PROCESSING | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Median Number of Days | Average Number of Days | Lowest Number of Days | Highest Number of Days | Median Number of Days | Average Number of Days | Lowest Number of Days | Highest Number of Days | Median Number of Days | Average Number of Days | Lowest Number of Days | Highest Number of Days |
| ATJ | 29 | 27.75 | 8 | 45 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Antitrust | 4 | 10.5 | <1 | 65 | 113 | 362.04 | 1 | 1,497 | N/A | N/A | N/A | N/A |
| ATF | 68 | 147.41 | < 1 | 2,006 | 1,442 | 1,278.9 | 57 | 2,504 | 31.5 | 40.75 | 8 | 92 |
| BOP | 7 | 9 | < 1 | 123 | 189 | 332.39 | < 1 | 1,690 | 285 | 350.51 | 5 | 1,628 |
| Civil | 82 | 94 | 14 | 209 | 249 | 307.2 | 21 | 1,174 | N/A | N/A | N/A | N/A |
| Civil Rights | 26.5 | 32.88 | 6 | 97 | 148.5 | 307.55 | 15 | 1,533 | N/A | N/A | N/A | N/A |
| COPS | 7 | 8.7 | < 1 | 60 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Criminal | 37.5 | 168.71 | 1 | 1,219 | 556 | 734.43 | 34 | 2,194 | 251 | 251 | 251 | 251 |
| CRS | 85.5 | 88 | 5 | 223 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| DEA | 7 | 16.76 | < 1 | 120 | 440.5 | 534.22 | 1 | 1,696 | 927.5 | 898.5 | 797 | 942 |
| ENRD | 12 | 11.26 | 3 | 20 | 54 | 129.59 | 1 | 521 | 741.5 | 741.5 | 711 | 772 |
| EOIR | 26 | 96.52 | < 1 | 1,015 | 31 | 61.08 | < 1 | 483 | 20 | 60.86 | < 1 | 586 |
| EOUSA | 12 | 28.15 | < 1 | 875 | 256 | 503.13 | < 1 | 1,907 | 43 | 46.67 | 7 | 90 |

| EOUST | 1 | 2.2 | < 1 | 8 | 13 | 11.2 | 2 | 17 | 11 | 11 | 11 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FBI | 36 | 56.03 | < 1 | 627 | 216 | 411.76 | < 1 | 2,734 | 1,292 | 1,327.71 | 131 | 2,464 |
| FCSC | 1 | 3 | < 1 | 13 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| JMD | 8.5 | 14.47 | < 1 | 142 | 198.5 | 367.45 | < 1 | 1,800 | N/A | N/A | N/A | N/A |
| NSD | 16.5 | 42.57 | < 1 | 738 | 1,239.5 | 1,029.05 | < 1 | 2,189 | N/A | N/A | N/A | N/A |
| OCDETF | 8 | 17.92 | < 1 | 98 | 29 | 29.86 | 9 | 69 | N/A | N/A | N/A | N/A |
| OIG | 5 | 7.73 | < 1 | 26 | 208 | 318.6 | 22 | 1,876 | N/A | N/A | N/A | N/A |
| OIP | 6.5 | 31.79 | < 1 | 827 | 364 | 586.84 | 3 | 1,805 | 538.5 | 687.21 | 5 | 1,752 |
| OJP | 8 | 9.12 | < 1 | 44 | 147 | 293.31 | < 1 | 1,720 | 398 | 514.2 | 3 | 1,041 |
| OLC | 15 | 46.14 | 6 | 353 | 752 | 1,033.11 | 215 | 2,663 | 618 | 837.67 | 10 | 2,646 |
| OPR | 14 | 58.56 | 3 | 317 | 137 | 540.4 | 20 | 1,840 | N/A | N/A | N/A | N/A |
| OSG | 33 | 34.27 | 3 | 94 | 229 | 360.2 | 19 | 1,239 | N/A | N/A | N/A | N/A |
| OVW | 27 | 65.47 | < 1 | 380 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| PARDON | 72.5 | 305.44 | < 1 | 1,395 | 1,445.5 | 1,012 | 75 | 1,621 | N/A | N/A | N/A | N/A |
| PRAO | 13 | 13 | 10 | 16 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Tax | 12 | 12 | 10 | 14 | 476 | 483.67 | 353 | 622 | N/A | N/A | N/A | N/A |
| USMS | 8 | 10.74 | < 1 | 185 | 22 | 129.31 | < 1 | 1,239 | 306 | 347.77 | 11 | 896 |
| USNCB | 11 | 14.35 | 2 | 76 | 348 | 348 | 348 | 348 | N/A | N/A | N/A | N/A |

| USPC | 13.5 | 16.15 | < 1 | 270 | 20 | 28.73 | < 1 | 229 | N/A | N/A | N/A | N/A |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AGENCY OVERALL | 25 | 90.71 | < 1 | 2,006 | 194 | 374.87 | < 1 | 2734 | 41 | 195.72 | < 1 | 2,646 |

**VII.C. PROCESSED SIMPLE REQUESTS - RESPONSE TIME IN DAY INCREMENTS**

| Agency / Component | <1-20 Days | 21-40 Days | 41-60 Days | 61-80 Days | 81-100 Days | 101-120 Days | 121-140 Days | 141-160 Days | 161-180 Days | 181-200 Days | 201-300 Days | 301-400 Days | 401+ Days | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ATJ | 12 | 9 | 12 | 8 | 3 | 0 | 2 | 1 | 0 | 0 | 0 | 0 | 0 | 47 |
| Antitrust | 75 | 3 | 3 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 82 |
| ATF | 664 | 228 | 103 | 67 | 74 | 56 | 32 | 25 | 30 | 21 | 68 | 37 | 121 | 1,526 |
| BOP | 1,500 | 53 | 13 | 7 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1,579 |
| Civil | 120 | 2 | 3 | 1 | 2 | 0 | 2 | 2 | 3 | 1 | 3 | 0 | 1 | 140 |
| Civil Rights | 75 | 48 | 14 | 8 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 147 |
| COPS | 221 | 8 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 230 |
| Criminal | 429 | 90 | 36 | 8 | 2 | 3 | 3 | 2 | 2 | 5 | 5 | 2 | 14 | 601 |
| CRS | 53 | 12 | 16 | 9 | 13 | 9 | 8 | 1 | 2 | 0 | 3 | 0 | 0 | 126 |
| DEA | 606 | 12 | 6 | 3 | 3 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 631 |
| ENRD | 118 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 119 |
| EOIR | 45,233 | 10,957 | 3,523 | 2,272 | 2,030 | 1,718 | 1,542 | 1,212 | 1,223 | 1,178 | 4,975 | 3,334 | 4,743 | 83,940 |
| EOUSA | 570 | 69 | 15 | 10 | 6 | 12 | 4 | 4 | 2 | 4 | 13 | 1 | 2 | 712 |
| EOUST | 56 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 56 |
| FBI | 6,053 | 793 | 456 | 261 | 197 | 112 | 70 | 56 | 41 | 27 | 46 | 12 | 4 | 8,128 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FCSC | 76 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 76 |
| JMD | 104 | 5 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 111 |
| NSD | 87 | 49 | 18 | 12 | 15 | 8 | 7 | 3 | 6 | 3 | 3 | 4 | 6 | 221 |
| OCDETF | 41 | 7 | 1 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 51 |
| OIG | 166 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 168 |
| OIP | 1,946 | 50 | 18 | 10 | 3 | 5 | 0 | 1 | 1 | 0 | 2 | 2 | 5 | 2,043 |
| OJP | 137 | 2 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 141 |
| OLC | 33 | 7 | 4 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 46 |
| OPR | 82 | 4 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 | 1 | 0 | 91 |
| OSG | 31 | 19 | 6 | 3 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 61 |
| OVW | 31 | 17 | 4 | 7 | 9 | 6 | 8 | 1 | 0 | 0 | 5 | 2 | 0 | 90 |
| PARDON | 10 | 10 | 7 | 5 | 3 | 4 | 1 | 1 | 1 | 0 | 0 | 1 | 3 | 46 |
| PRAO | 52 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 52 |
| Tax | 25 | 2 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 29 |
| USMS | 1,273 | 181 | 5 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 1,462 |
| USNCB | 140 | 1 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 143 |
| USPC | 198 | 50 | 5 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 256 |
| AGENCY OVERALL | 60,217 | 12,691 | 4,272 | 2,698 | 2,371 | 1,936 | 1,682 | 1,310 | 1,312 | 1,240 | 5,126 | 3,397 | 4,899 | 103,151 |

## VII.C. PROCESSED COMPLEX REQUESTS - RESPONSE TIME IN DAY INCREMENTS

| Agency / Component | <1-20 Days | 21-40 Days | 41-60 Days | 61-80 Days | 81-100 Days | 101-120 Days | 121-140 Days | 141-160 Days | 161-180 Days | 181-200 Days | 201-300 Days | 301-400 Days | 401+ Days | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ATJ | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Antitrust | 166 | 11 | 9 | 6 | 10 | 10 | 3 | 1 | 2 | 1 | 4 | 6 | 23 | 252 |
| ATF | 92 | 8 | 5 | 2 | 0 | 0 | 2 | 2 | 2 | 0 | 1 | 1 | 88 | 203 |
| BOP | 633 | 317 | 229 | 189 | 121 | 77 | 87 | 104 | 93 | 68 | 286 | 218 | 1,656 | 4,078 |
| Civil | 2 | 2 | 1 | 0 | 1 | 1 | 1 | 2 | 0 | 2 | 6 | 3 | 9 | 30 |
| Civil Rights | 4 | 6 | 16 | 21 | 23 | 16 | 11 | 10 | 8 | 7 | 17 | 9 | 155 | 303 |
| COPS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Criminal | 8 | 42 | 32 | 9 | 9 | 5 | 3 | 2 | 3 | 3 | 5 | 5 | 42 | 168 |
| CRS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DEA | 134 | 155 | 130 | 87 | 83 | 52 | 42 | 41 | 48 | 61 | 243 | 208 | 936 | 2,220 |
| ENRD | 25 | 30 | 22 | 8 | 7 | 3 | 0 | 5 | 0 | 1 | 2 | 1 | 12 | 116 |
| EOIR | 208 | 59 | 22 | 19 | 12 | 13 | 15 | 9 | 1 | 1 | 14 | 1 | 2 | 376 |
| EOUSA | 584 | 96 | 55 | 26 | 29 | 23 | 15 | 19 | 11 | 6 | 60 | 43 | 214 | 1,181 |
| EOUST | 17 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17 |
| FBI | 2,874 | 845 | 397 | 217 | 173 | 175 | 128 | 124 | 124 | 107 | 473 | 301 | 2,796 | 8,734 |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FCSC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| JMD | 12 | 27 | 21 | 22 | 10 | 7 | 19 | 9 | 7 | 2 | 20 | 7 | 76 | 239 |
| NSD | 4 | 1 | 1 | 3 | 1 | 1 | 1 | 1 | 0 | 3 | 11 | 4 | 53 | 84 |
| OCDETF | 8 | 2 | 1 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 14 |
| OIG | 3 | 24 | 21 | 23 | 12 | 7 | 3 | 4 | 7 | 6 | 17 | 16 | 65 | 208 |
| OIP | 52 | 36 | 40 | 8 | 8 | 7 | 2 | 7 | 1 | 3 | 12 | 12 | 282 | 470 |
| OJP | 6 | 35 | 17 | 15 | 7 | 8 | 8 | 5 | 8 | 11 | 22 | 24 | 35 | 201 |
| OLC | 14 | 15 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 3 | 1 | 8 | 42 |
| OPR | 20 | 12 | 0 | 0 | 0 | 0 | 3 | 0 | 1 | 0 | 1 | 1 | 7 | 45 |
| OSG | 3 | 5 | 3 | 4 | 1 | 0 | 3 | 0 | 1 | 0 | 3 | 1 | 4 | 28 |
| OVW | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PARDON | 3 | 1 | 2 | 3 | 3 | 1 | 0 | 1 | 3 | 1 | 1 | 0 | 12 | 31 |
| PRAO | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Tax | 4 | 0 | 1 | 0 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 4 | 16 |
| USMS | 886 | 192 | 35 | 24 | 21 | 23 | 13 | 13 | 8 | 9 | 31 | 34 | 119 | 1,408 |
| USNCB | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| USPC | 30 | 15 | 6 | 1 | 2 | 1 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 57 |
| AGENCY OVERALL | 5,792 | 1,937 | 1,066 | 688 | 538 | 432 | 360 | 360 | 328 | 291 | 1,234 | 899 | 6,598 | 20,523 |

**VII.C. PROCESSED EXPEDITED REQUESTS - RESPONSE TIME IN DAY INCREMENTS**

| Agency / Component | <1-20 Days | 21-40 Days | 41-60 Days | 61-80 Days | 81-100 Days | 101-120 Days | 121-140 Days | 141-160 Days | 161-180 Days | 181-200 Days | 201-300 Days | 301-400 Days | 401+ Days | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ATJ | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Antitrust | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ATF | 12 | 3 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 16 |
| BOP | 11 | 7 | 15 | 0 | 2 | 1 | 2 | 2 | 0 | 1 | 13 | 6 | 49 | 109 |
| Civil | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 |
| Civil Rights | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| COPS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Criminal | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 1 | 3 | 6 |
| CRS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DEA | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 9 | 12 |
| ENRD | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 2 |
| EOIR | 153 | 45 | 25 | 19 | 10 | 4 | 4 | 10 | 2 | 6 | 20 | 1 | 12 | 311 |
| EOUSA | 4 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7 |
| EOUST | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| FBI | 5 | 7 | 3 | 0 | 0 | 2 | 1 | 0 | 0 | 0 | 0 | 1 | 7 | 26 |

| FCSC | o | o | o | o | o | o | o | o | o | o | o | o | o | o |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JMD | o | o | o | o | o | o | o | o | o | o | o | o | o | o |
| NSD | o | o | o | o | o | o | o | o | o | o | o | o | o | o |
| OCDETF | o | o | o | o | o | o | o | o | o | o | o | o | o | o |
| OIG | o | o | o | o | o | o | o | o | o | o | o | o | o | o |
| OIP | 4 | 1 | 3 | 1 | 1 | 13 | o | 1 | 1 | o | 2 | 1 | 36 | 64 |
| OJP | 2 | 1 | o | o | o | o | 1 | o | o | 1 | o | 1 | 5 | 11 |
| OLC | 1 | o | o | o | o | o | o | o | o | o | o | 1 | 5 | 7 |
| OPR | o | o | o | o | o | o | o | o | o | o | o | o | o | o |
| OSG | 1 | 1 | 1 | 1 | 2 | o | o | 1 | o | o | o | o | o | 7 |
| OVW | o | o | o | o | o | o | o | o | o | o | o | o | o | o |
| PARDON | o | o | o | o | o | o | o | o | o | o | o | o | o | o |
| PRAO | o | o | o | o | o | o | o | o | o | o | o | o | o | o |
| Tax | o | o | o | o | o | o | o | o | o | o | o | o | o | o |
| USMS | 1 | 1 | 1 | o | o | o | o | o | o | o | 4 | 2 | 5 | 14 |
| USNCB | o | o | o | o | o | o | o | o | o | o | o | o | o | o |
| USPC | 1 | o | o | o | o | 1 | o | o | o | o | o | o | o | 2 |
| AGENCY OVERALL | 198 | 67 | 49 | 21 | 18 | 21 | 8 | 14 | 3 | 8 | 43 | 14 | 134 | 598 |

## VII.D. PENDING REQUESTS -- ALL PENDING PERFECTED REQUESTS

| Agency / Component | SIMPLE | | | COMPLEX | | | EXPEDITED PROCESSING | | |
|---|---|---|---|---|---|---|---|---|---|
| | Number Pending | Median Number of Days | Average Number of Days | Number Pending | Median Number of Days | Average Number of Days | Number Pending | Median Number of Days | Average Number of Days |
| ATJ | 15 | 73 | 91.73 | 0 | N/A | N/A | 0 | N/A | N/A |
| Antitrust | 4 | 146 | 179.5 | 183 | 328 | 419.91 | 1 | 299 | 299 |
| ATF | 0 | N/A | N/A | 742 | 170 | 360.63 | 4 | 120 | 117 |
| BOP | 54 | 9 | 68.61 | 5,749 | 388 | 474.59 | 171 | 634 | 654.53 |
| Civil | 62 | 20 | 88.56 | 562 | 354 | 350.24 | 4 | 412.5 | 491 |
| Civil Rights | 82 | 20 | 37.01 | 307 | 446 | 470.42 | 0 | N/A | N/A |
| COPS | 8 | 4 | 24 | 0 | N/A | N/A | 0 | N/A | N/A |
| Criminal | 193 | 437 | 538.58 | 810 | 815.5 | 833.09 | 21 | 1,170 | 963.95 |
| CRS | 10 | 27.5 | 63.8 | 0 | N/A | N/A | 0 | N/A | N/A |
| DEA | 23 | 3 | 4.61 | 207 | 57 | 225.25 | 4 | 728.5 | 693 |
| ENRD | 9 | 2 | 2 | 40 | 51 | 149.2 | 0 | N/A | N/A |
| EOIR | 4,180 | 16 | 47.7 | 29 | 20 | 74.45 | 9 | 19 | 58.89 |
| EOUSA | 36 | 22 | 81.94 | 1,699 | 557 | 657.88 | 18 | 514 | 425.11 |
| EOUST | 0 | N/A | N/A | 1 | 2 | 2 | 0 | N/A | N/A |

| FBI | 1,562 | 104 | 206.93 | 5,208 | 395 | 532.59 | 34 | 508.5 | 685.79 |
|---|---|---|---|---|---|---|---|---|---|
| FCSC | 0 | N/A | N/A | 0 | N/A | N/A | 0 | N/A | N/A |
| JMD | 0 | N/A | N/A | 66 | 132 | 275.45 | 0 | N/A | N/A |
| NSD | 272 | 65.5 | 390.5 | 128 | 554 | 758.03 | 1 | 54 | 54 |
| OCDETF | 3 | 10 | 11 | 14 | 4.5 | 53.86 | 0 | N/A | N/A |
| OIG | 4 | 86 | 297 | 352 | 164 | 254.97 | 0 | N/A | N/A |
| OIP | 175 | 419 | 617.97 | 1,263 | 398 | 553.12 | 89 | 372 | 522.76 |
| OJP | 8 | 8 | 41.88 | 570 | 275.5 | 504.14 | 18 | 783 | 658.44 |
| OLC | 56 | 236 | 341.36 | 549 | 1,327 | 1,252.47 | 108 | 1,252 | 1,291.14 |
| OPR | 0 | N/A | N/A | 45 | 372 | 505.04 | 0 | N/A | N/A |
| OSG | 9 | 58 | 82 | 47 | 40 | 126.51 | 4 | 166 | 161.5 |
| OVW | 77 | 202 | 289.65 | 11 | 996 | 1,067.91 | 1 | 352 | 352 |
| PARDON | 28 | 249.5 | 311.93 | 28 | 170.5 | 225.07 | 0 | N/A | N/A |
| PRAO | 3 | 3 | 2.67 | 1 | 11 | 11 | 0 | N/A | N/A |
| Tax | 0 | N/A | N/A | 172 | 127 | 157.02 | 0 | N/A | N/A |
| USMS | 44 | 9 | 11.82 | 287 | 86 | 139.76 | 6 | 344.5 | 391.5 |
| USNCB | 2 | 1 | 1 | 3 | 119 | 96.33 | 0 | N/A | N/A |
| USPC | 6 | 4 | 3.83 | 2 | 9.5 | 9.5 | 0 | N/A | N/A |

| Agency Overall | 6,925 | 32 | 131.71 | 1,9075 | 387 | 525.74 | 493 | 609 | 751.3 |

## VII.E. PENDING REQUESTS -- TEN OLDEST PENDING PERFECTED REQUESTS

| Agency / Component | | 10th Oldest Request | 9th | 8th | 7th | 6th | 5th | 4th | 3rd | 2nd | Oldest Request |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ATJ | Date of Receipt | 08/19/2024 | 06/14/2024 | 06/14/2024 | 06/13/2024 | 03/24/2024 | 02/23/2024 | 01/27/2024 | 01/27/2024 | 10/27/2023 | 10/22/2023 |
| | Number of Days Pending | 29 | 73 | 73 | 74 | 131 | 152 | 170 | 170 | 231 | 235 |
| Antitrust | Date of Receipt | 10/03/2019 | 09/12/2019 | 09/06/2019 | 08/27/2019 | 07/29/2019 | 07/19/2019 | 06/24/2019 | 03/08/2019 | 03/05/2019 | 02/01/2019 |
| | Number of Days Pending | 1,245 | 1,260 | 1,264 | 1,271 | 1,292 | 1,298 | 1,316 | 1,391 | 1,394 | 1,415 |
| ATF | Date of Receipt | 10/04/2017 | 10/04/2017 | 05/30/2017 | 02/24/2017 | 01/17/2017 | 06/15/2016 | 03/15/2016 | 01/14/2016 | 12/31/2015 | 07/23/2015 |
| | Number of Days Pending | 1,745 | 1,745 | 1,834 | 1,900 | 1,927 | 2,073 | 2,138 | 2,179 | 2,188 | 2,298 |
| BOP | Date of Receipt | 12/18/2017 | 11/21/2017 | 11/13/2017 | 11/13/2017 | 11/10/2017 | 09/26/2017 | 05/22/2017 | 02/27/2017 | 07/21/2016 | 08/28/2015 |
| | Number of Days | 1,695 | 1,713 | 1,719 | 1,719 | 1,719 | 1,751 | 1,839 | 1,899 | 2,048 | 2,272 |

| | Pending | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Civil | Date of Receipt | 07/26/2021 | 07/14/2021 | 07/09/2021 | 06/24/2021 | 06/22/2021 | 06/11/2021 | 06/10/2021 | 01/27/2021 | 01/14/2021 | 12/22/2020 |
| | Number of Days Pending | 796 | 804 | 807 | 817 | 819 | 825 | 826 | 920 | 927 | 941 |
| Civil Rights | Date of Receipt | 02/25/2020 | 02/18/2020 | 02/13/2020 | 02/11/2020 | 01/27/2020 | 12/10/2019 | 10/24/2019 | 08/22/2019 | 05/17/2019 | 05/06/2019 |
| | Number of Days Pending | 1,150 | 1,155 | 1,157 | 1,159 | 1,170 | 1,200 | 1,231 | 1,274 | 1,341 | 1,350 |
| COPS | Date of Receipt | N/A | N/A | 09/25/2024 | 09/24/2024 | 09/24/2024 | 09/24/2024 | 09/24/2024 | 08/14/2024 | 08/02/2024 | 05/02/2024 |
| | Number of Days Pending | 0 | 0 | 1 | 4 | 4 | 4 | 4 | 32 | 40 | 103 |
| Criminal | Date of Receipt | 06/23/2016 | 06/17/2016 | 06/16/2016 | 06/16/2016 | 05/25/2016 | 04/27/2016 | 03/17/2016 | 10/28/2015 | 10/21/2015 | 09/25/2015 |
| | Number of Days Pending | 2,067 | 2,071 | 2,072 | 2,072 | 2,087 | 2,107 | 2,136 | 2,231 | 2,236 | 2,253 |
| CRS | Date of Receipt | 09/27/2024 | 09/25/2024 | 09/24/2024 | 08/29/2024 | 08/28/2024 | 08/13/2024 | 08/02/2024 | 07/15/2024 | 01/27/2024 | 08/03/2023 |

|  |  | 1 | 3 | 4 | 21 | 22 | 33 | 40 | 54 | 170 | 290 |
|---|---|---|---|---|---|---|---|---|---|---|---|
|  | Number of Days Pending | 1 | 3 | 4 | 21 | 22 | 33 | 40 | 54 | 170 | 290 |
| DEA | Date of Receipt | 03/05/2020 | 11/05/2019 | 12/05/2019 | 11/05/2019 | 10/01/2019 | 05/29/2019 | 05/20/2019 | 05/08/2019 | 10/31/2018 | 07/17/2018 |
| DEA | Number of Days Pending | 1,143 | 1,191 | 1,203 | 1,223 | 1,247 | 1,334 | 1,340 | 1,348 | 1,476 | 1,550 |
| ENRD | Date of Receipt | 01/24/2024 | 10/31/2023 | 09/19/2023 | 03/27/2023 | 03/27/2023 | 07/18/2022 | 04/07/2022 | 01/10/2022 | 11/30/2021 | 11/12/2021 |
| ENRD | Number of Days Pending | 173 | 200 | 255 | 380 | 380 | 528 | 621 | 682 | 709 | 720 |
| EOIR | Date of Receipt | 10/27/2021 | 10/11/2021 | 10/04/2021 | 10/04/2021 | 09/28/2021 | 09/23/2021 | 08/16/2021 | 06/23/2021 | 04/22/2021 | 01/21/2021 |
| EOIR | Number of Days Pending | 731 | 742 | 746 | 747 | 751 | 754 | 770 | 818 | 849 | 924 |
| EOUSA | Date of Receipt | 05/19/2017 | 05/19/2017 | 05/17/2017 | 05/12/2017 | 05/12/2017 | 05/11/2017 | 05/01/2017 | 04/11/2017 | 04/04/2017 | 03/22/2017 |
| EOUSA | Number of Days Pending | 1,840 | 1,840 | 1,842 | 1,845 | 1,845 | 1,846 | 1,848 | 1,868 | 1,873 | 1,882 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **EOUST** | Date of Receipt | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 09/26/2024 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| **FBI** | Date of Receipt | 11/17/2014 | 11/14/2014 | 11/10/2014 | 10/21/2014 | 10/08/2014 | 09/23/2014 | 09/23/2014 | 08/19/2014 | 07/30/2014 | 04/29/2014 |
| | Number of Days Pending | 2,468 | 2,469 | 2,472 | 2,486 | 2,494 | 2,505 | 2,505 | 2,529 | 2,543 | 2,607 |
| **FCSC** | Date of Receipt | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **JMD** | Date of Receipt | 12/07/2021 | 11/22/2021 | 11/17/2021 | 06/29/2021 | 04/12/2021 | 02/23/2021 | 02/01/2021 | 10/30/2020 | 03/03/2020 | 10/26/2017 |
| | Number of Days Pending | 704 | 714 | 717 | 814 | 868 | 902 | 917 | 976 | 1,145 | 1,730 |
| **NSD** | Date of Receipt | 05/18/2017 | 05/10/2017 | 05/05/2017 | 04/03/2017 | 12/15/2016 | 10/20/2016 | 04/12/2016 | 03/09/2016 | 11/23/2015 | 03/31/2015 |
| | Number | 1,841 | 1,847 | 1,850 | 1,874 | 1,947 | 1,985 | 2,118 | 2,142 | 2,214 | 2,378 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | of Days Pending | | | | | | | | | | |
| OCDETF | Date of Receipt | 09/21/2024 | 09/16/2024 | 09/16/2024 | 09/16/2024 | 09/11/2024 | 08/31/2024 | 08/30/2024 | 01/08/2024 | 12/11/2023 | 07/20/2023 |
| | Number of Days Pending | 5 | 10 | 10 | 10 | 13 | 19 | 20 | 184 | 202 | 300 |
| OIG | Date of Receipt | 07/09/2020 | 07/08/2020 | 04/09/2020 | 02/24/2020 | 02/05/2020 | 12/17/2019 | 12/16/2019 | 05/14/2019 | 10/18/2018 | 02/21/2018 |
| | Number of Days Pending | 1,055 | 1,056 | 1,118 | 1,151 | 1,163 | 1,195 | 1,196 | 1,344 | 1,485 | 1,652 |
| OIP | Date of Receipt | 08/14/2017 | 08/03/2017 | 07/26/2017 | 07/25/2017 | 07/24/2017 | 07/10/2017 | 05/11/2017 | 05/04/2017 | 02/06/2017 | 01/10/2017 |
| | Number of Days Pending | 1,781 | 1,788 | 1,794 | 1,795 | 1,796 | 1,806 | 1,846 | 1,851 | 1,913 | 1,931 |
| OJP | Date of Receipt | 12/19/2017 | 12/12/2017 | 11/24/2017 | 10/20/2017 | 10/03/2017 | 09/20/2017 | 06/15/2017 | 05/12/2017 | 03/06/2017 | 03/01/2016 |
| | Number of Days Pending | 1,694 | 1,699 | 1,711 | 1,734 | 1,746 | 1,755 | 1,822 | 1,845 | 1,894 | 2,148 |
| OLC | Date of | 08/27/2014 | 08/27/2014 | 07/31/2014 | 07/14/2014 | 06/11/2014 | 06/03/2014 | 04/29/2014 | 04/18/2014 | 04/09/2014 | 02/27/2014 |

|  |  |  |  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|
|  | Receipt |  |  |  |  |  |  |  |  |  |  |
|  | Number of Days Pending | 2,523 | 2,523 | 2,542 | 2,555 | 2,577 | 2,583 | 2,600 | 2,614 | 2,621 | 2,650 |
| OPR | Date of Receipt | 10/18/2021 | 06/11/2021 | 05/06/2021 | 12/14/2020 | 10/16/2020 | 10/28/2019 | 06/17/2019 | 08/10/2018 | 07/01/2016 | 07/01/2016 |
|  | Number of Days Pending | 738 | 825 | 850 | 947 | 963 | 1,229 | 1,321 | 1,532 | 2,061 | 2,061 |
| OSG | Date of Receipt | 08/24/2021 | 09/18/2023 | 06/06/2023 | 07/24/2023 | 07/06/2023 | 06/20/2022 | 02/21/2023 | 05/06/2022 | 01/05/2022 | 11/04/2021 |
|  | Number of Days Pending | 248 | 259 | 259 | 298 | 310 | 359 | 404 | 600 | 685 | 725 |
| OVW | Date of Receipt | 06/25/2019 | 06/25/2019 | 04/11/2019 | 01/28/2019 | 07/19/2017 | 02/17/2016 | 02/17/2016 | 02/17/2016 | 02/17/2016 | 09/19/2016 |
|  | Number of Days Pending | 1,315 | 1,315 | 1,367 | 1,419 | 1,799 | 1,809 | 1,809 | 1,809 | 1,809 | 2,007 |
| PARDON | Date of Receipt | 01/20/2023 | 12/05/2022 | 10/30/2022 | 10/13/2022 | 07/19/2022 | 07/19/2022 | 05/01/2022 | 07/12/2021 | 01/12/2021 | 11/26/2020 |
|  | Number of Days | 425 | 456 | 479 | 491 | 522 | 522 | 604 | 806 | 929 | 953 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Pending | | | | | | | | | | |
| PRAO | Date of Receipt | N/A | N/A | N/A | N/A | N/A | N/A | 09/27/2024 | 09/25/2024 | 09/24/2024 | 09/13/2024 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 3 | 4 | 11 |
| Tax | Date of Receipt | 03/23/2023 | 03/20/2023 | 02/22/2023 | 10/11/2022 | 09/12/2022 | 08/25/2022 | 03/03/2022 | 01/31/2022 | 01/12/2022 | 09/13/2018 |
| | Number of Days Pending | 382 | 385 | 403 | 493 | 513 | 524 | 646 | 668 | 680 | 1,509 |
| USMS | Date of Receipt | 05/03/2022 | 04/19/2022 | 03/25/2022 | 12/14/2021 | 01/06/2022 | 11/08/2021 | 10/29/2021 | 10/19/2021 | 08/04/2021 | 01/01/2021 |
| | Number of Days Pending | 603 | 613 | 630 | 679 | 684 | 723 | 729 | 737 | 789 | 935 |
| USNCB | Date of Receipt | N/A | N/A | N/A | N/A | N/A | 09/30/2024 | 09/27/2024 | 09/23/2024 | 03/26/2024 | 02/05/2024 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 5 | 119 | 165 |
| USPC | Date of Receipt | N/A | N/A | 09/27/2024 | 09/25/2024 | 09/25/2024 | 09/24/2024 | 09/24/2024 | 09/24/2024 | 09/19/2024 | 09/06/2024 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Number of Days Pending | 0 | 0 | 1 | 3 | 3 | 4 | 4 | 4 | 7 | 16 |
| | Number of Days Pending | 29 | 73 | 73 | 74 | 131 | 152 | 170 | 170 | 231 | 235 |
| AGENCY OVERALL | Date | 07/31/2014 | 07/30/2014 | 07/14/2014 | 06/11/2014 | 06/03/2014 | 04/29/2014 | 04/29/2014 | 04/18/2014 | 04/09/2014 | 02/27/2014 |
| | Number of Days Pending | 2,542 | 2,543 | 2,555 | 2,577 | 2,583 | 2,600 | 2,607 | 2,614 | 2,621 | 2,650 |

## VIII.A. REQUESTS FOR EXPEDITED PROCESSING

| Agency / Component | Number Granted | Number Denied | Median Number of Days to Adjudicate | Average Number of Days to Adjudicate | Number Adjudicated Within Ten Calendar Days |
|---|---|---|---|---|---|
| ATJ | 0 | 0 | N/A | N/A | 0 |
| Antitrust | 0 | 11 | 5 | 5.82 | 9 |
| ATF | 28 | 261 | 2 | 5.81 | 249 |
| BOP | 65 | 110 | 5 | 8.22 | 147 |
| Civil | 0 | 3 | 15 | 50.67 | 1 |
| Civil Rights | 0 | 0 | N/A | N/A | 0 |
| COPS | 0 | 0 | N/A | N/A | 0 |
| Criminal | 3 | 32 | 14 | 33.66 | 17 |
| CRS | 0 | 0 | N/A | N/A | 0 |
| DEA | 0 | 128 | 8 | 37.36 | 68 |
| ENRD | 0 | 6 | 7.5 | 7.33 | 6 |
| EOIR | 249 | 2,174 | 2 | 7.49 | 2,192 |
| EOUSA | 9 | 103 | 3 | 5.33 | 98 |
| EOUST | 3 | 4 | 1 | 2.14 | 7 |
| FBI | 31 | 789 | 1 | 5.04 | 745 |
| FCSC | 0 | 0 | N/A | N/A | 0 |
| JMD | 0 | 6 | 4 | 7.33 | 5 |
| NSD | 1 | 5 | 18 | 16.33 | 1 |
| OCDETF | 0 | 0 | N/A | N/A | 0 |
| OIG | 0 | 5 | 7 | 8 | 3 |
| OIP | 71 | 145 | 4 | 7.2 | 173 |
| OJP | 14 | 38 | 4 | 13.92 | 42 |
| OLC | 6 | 10 | 16.5 | 18.56 | 6 |
| OPR | 0 | 2 | 7.5 | 7.5 | 2 |

| | | | | |
|---|---|---|---|---|
| OSG | 1 | 0 | 28 | 28 | 0 |
| OVW | 0 | 0 | N/A | N/A | 0 |
| PARDON | 0 | 0 | N/A | N/A | 0 |
| PRAO | 0 | 0 | N/A | N/A | 0 |
| Tax | 0 | 0 | N/A | N/A | 0 |
| USMS | 15 | 236 | 5 | 91.96 | 151 |
| USNCB | 0 | 0 | N/A | N/A | 0 |
| USPC | 0 | 0 | N/A | N/A | 0 |
| AGENCY OVERALL | 496 | 4,068 | 2 | 12.73 | 3,922 |

## VIII.B. REQUESTS FOR FEE WAIVER

| Agency / Component | Number Granted | Number Denied | Median Number of Days to Adjudicate | Average Number of Days to Adjudicate |
|---|---|---|---|---|
| ATJ | 0 | 0 | N/A | N/A |
| Antitrust | 0 | 0 | N/A | N/A |
| ATF | 0 | 0 | N/A | N/A |
| BOP | 7 | 1 | 7 | 25.75 |
| Civil | 0 | 0 | N/A | N/A |
| Civil Rights | 0 | 0 | N/A | N/A |
| COPS | 0 | 0 | N/A | N/A |
| Criminal | 0 | 0 | N/A | N/A |
| CRS | 0 | 0 | N/A | N/A |
| DEA | 0 | 9 | 47 | 78.22 |
| ENRD | 31 | 21 | 1 | 1 |
| EOIR | 1,489 | 29 | 1 | 11.87 |
| EOUSA | 4 | 30 | 1.5 | 47.03 |
| EOUST | 0 | 5 | 1 | 1.2 |
| FBI | 11 | 1,692 | 1 | 12.85 |
| FCSC | 0 | 0 | N/A | N/A |
| JMD | 0 | 0 | N/A | N/A |
| NSD | 0 | 0 | N/A | N/A |
| OCDETF | 0 | 0 | N/A | N/A |
| OIG | 0 | 0 | N/A | N/A |
| OIP | 0 | 0 | N/A | N/A |
| OJP | 0 | 0 | N/A | N/A |
| OLC | 0 | 0 | N/A | N/A |
| OPR | 0 | 0 | N/A | N/A |
| OSG | 0 | 0 | N/A | N/A |

| | | | |
|---|---|---|---|
| OVW | 0 | 0 | N/A | N/A |
| PARDON | 0 | 0 | N/A | N/A |
| PRAO | 0 | 0 | N/A | N/A |
| Tax | 0 | 0 | N/A | N/A |
| USMS | 593 | 231 | 1 | 10.48 |
| USNCB | 0 | 0 | N/A | N/A |
| USPC | 0 | 0 | N/A | N/A |
| AGENCY OVERALL | 2,135 | 2,018 | 1 | 12.31 |

## IX. FOIA PERSONNEL AND COSTS

| Agency / Component | PERSONNEL | | | COSTS | | |
|---|---|---|---|---|---|---|
| | Number of "Full-Time FOIA Employees" | Number of "Equivalent Full-Time FOIA Employees" | Total Number of "Full-Time FOIA Staff" | Processing Costs | Litigations-Related Costs | Total Costs |
| ATJ | 0 | 2 | 2 | $71,297.00 | $712.90 | $72,009.90 |
| Antitrust | 3 | 3.6 | 6.6 | $1,275,223.18 | $51,387.81 | $1,326,610.99 |
| ATF | 20 | 1 | 21 | $5,312,471.37 | $106,836.00 | $5,419,307.37 |
| BOP | 8 | 9 | 17 | $2,505,409.00 | $557,395.00 | $3,062,804.00 |
| Civil | 3 | 1.26 | 4.26 | $536,832.00 | $2,608,913.00 | $3,145,745.00 |
| Civil Rights | 11 | 0 | 11 | $2,169,272.00 | $393,543.00 | $2,562,815.00 |
| COPS | 1 | 0 | 1 | $122,000.00 | $0.00 | $122,000.00 |
| Criminal | 10 | 3.6 | 13.6 | $1,677,900.02 | $1,363,772.25 | $3,041,672.27 |
| CRS | 1 | 0.5 | 1.5 | $184,422.00 | $50,000.00 | $234,422.00 |
| DEA | 11 | 5 | 16 | $1,716,832.00 | $770,618.00 | $2,487,450.00 |
| ENRD | 2 | 1.38 | 3.38 | $851,273.70 | $87,576.38 | $938,850.08 |
| EOIR | 33 | 32 | 65 | $6,127,550.48 | $15,325.00 | $6,142,875.48 |

| | | | | | |
|---|---|---|---|---|---|
| EOUSA | 29 | 0.85 | 29.85 | $4,276,009.50 | $5,900,000.00 | $10,176,009.50 |
| EOUST | 1 | 0.7 | 1.7 | $365,120.22 | $0.00 | $365,120.22 |
| FBI | 247 | 8 | 255 | $52,559,186.44 | $1,697,816.00 | $54,257,002.44 |
| FCSC | 0 | 0.03 | 0.03 | $3,900.00 | $0.00 | $3,900.00 |
| JMD | 4 | 1.88 | 5.88 | $731,322.00 | $80,704.00 | $812,026.00 |
| NSD | 2 | 1.75 | 3.75 | $630,848.00 | $255,063.00 | $885,911.00 |
| OCDETF | 1 | 0 | 1 | $194,837.00 | $3,507.00 | $198,344.00 |
| OIG | 6 | 2 | 8 | $723,252.00 | $180,813.00 | $904,065.00 |
| OIP | 35 | 1.89 | 36.89 | $7,235,778.00 | $1,887,506.00 | $9,123,284.00 |
| OJP | 4 | 1.5 | 5.5 | $1,101,320.96 | $52,487.58 | $1,153,808.54 |
| OLC | 0 | 2.18 | 2.18 | $269,479.65 | $146,044.70 | $415,524.35 |
| OPR | 2 | 2.25 | 4.25 | $294,594.80 | $86,472.20 | $381,067.00 |
| OSG | 2 | 2 | 4 | $301,197.48 | $1,105.84 | $302,303.32 |
| OVW | 0 | 0.75 | 0.75 | $250,000.00 | $0.00 | $250,000.00 |
| PARDON | 1 | 1.4 | 2.4 | $185,881.00 | $0.00 | $185,881.00 |
| PRAO | 0 | 0.25 | 0.25 | $68,785.00 | $0.00 | $68,785.00 |
| Tax | 0 | 0.95 | 0.95 | $235,170.46 | $963,641.33 | $1,198,811.79 |
| USMS | 7 | 6 | 13 | $2,239,223.07 | $311,750.00 | $2,550,973.07 |

| | | | | | |
|---|---|---|---|---|---|
| USNCB | 1 | 0.01 | 1.01 | $233,575.00 | $0.00 | $233,575.00 |
| USPC | 1 | 0 | 1 | $210,758.00 | $0.00 | $210,758.00 |
| AGENCY OVERALL | 446 | 93.73 | 539.73 | $94,660,721.33 | $17,572,989.99 | $112,233,711.32 |

## X. FEES COLLECTED FOR PROCESSING REQUESTS

| Agency / Component | Total Amount of Fees Collected | Percentage of Total Costs |
|---|---|---|
| ATJ | $0.00 | 0.00% |
| Antitrust | $0.00 | 0.00% |
| ATF | $0.00 | 0.00% |
| BOP | $0.00 | 0.00% |
| Civil | $0.00 | 0.00% |
| Civil Rights | $0.00 | 0.00% |
| COPS | $0.00 | 0.00% |
| Criminal | $0.00 | 0.00% |
| CRS | $0.00 | 0.00% |
| DEA | $1,723.60 | 0.07% |
| ENRD | $4,850.00 | 0.52% |
| EOIR | $0.00 | 0.00% |
| EOUSA | $17,895.00 | 0.18% |
| EOUST | $460.00 | 0.13% |
| FBI | $8,862.80 | 0.02% |
| FCSC | $0.00 | 0.00% |

| JMD | $0.00 | 0.00% |
|---|---|---|
| NSD | $0.00 | 0.00% |
| OCDETF | $0.00 | 0.00% |
| OIG | $0.00 | 0.00% |
| OIP | $0.00 | 0.00% |
| OJP | $0.00 | 0.00% |
| OLC | $0.00 | 0.00% |
| OPR | $0.00 | 0.00% |
| OSG | $0.00 | 0.00% |
| OVW | $0.00 | 0.00% |
| PARDON | $0.00 | 0.00% |
| PRAO | $0.00 | 0.00% |
| Tax | $0.00 | 0.00% |
| USMS | $2,213.42 | 0.09% |
| USNCB | $0.00 | 0.00% |
| USPC | $12.00 | 0.01% |
| AGENCY OVERALL | $36,016.82 | 0.03% |

## XI.A. NUMBER OF TIMES SUBSECTION (C) USED

| Agency / Component | Number of Times Subsection Used |
|---|---|
| ATJ | 0 |
| Antitrust | 0 |
| ATF | 0 |
| BOP | 0 |
| Civil | 0 |
| Civil Rights | 0 |
| COPS | 0 |
| Criminal | 0 |
| CRS | 0 |
| DEA | 7 |
| ENRD | 0 |
| EOIR | 0 |
| EOUSA | 0 |
| EOUST | 0 |
| FBI | 41 |
| FCSC | 0 |

| | |
|---|---|
| JMD | o |
| NSD | o |
| OCDETF | o |
| OIG | o |
| OIP | o |
| OJP | o |
| OLC | o |
| OPR | o |
| OSG | o |
| OVW | o |
| PARDON | o |
| PRAO | o |
| Tax | o |
| USMS | o |
| USNCB | o |
| USPC | o |
| AGENCY OVERALL | 48 |

## XI.B. NUMBER OF SUBSECTION (A)(2) POSTINGS

| Agency / Component | Number of Records Posted by the FOIA Office | Number of Records Posted by Program Offices |
|---|---|---|
| ATJ | 0 | 0 |
| Antitrust | 1 | 973 |
| ATF | 94 | 46 |
| BOP | 18 | 100 |
| Civil | 134 | 1 |
| Civil Rights | 4 | 8,362 |
| COPS | 0 | 32 |
| Criminal | 4 | 16 |
| CRS | 0 | 0 |
| DEA | 0 | 2,000 |
| ENRD | 0 | 134 |
| EOIR | 59,010 | 62 |
| EOUSA | 0 | 0 |
| EOUST | 6 | 39 |
| FBI | 13 | 25 |

| | | |
|---|---|---|
| FCSC | 0 | 0 |
| JMD | 0 | 217 |
| NSD | 0 | 0 |
| OCDETF | 0 | 0 |
| OIG | 84 | 118 |
| OIP | 182 | 540 |
| OJP | 3 | 22,334 |
| OLC | 25 | 0 |
| OPR | 4 | 0 |
| OSG | 0 | 147 |
| OVW | 0 | 0 |
| PARDON | 0 | 0 |
| PRAO | 0 | 0 |
| Tax | 12 | 265 |
| USMS | 1 | 1 |
| USNCB | 1 | 0 |
| USPC | 0 | 0 |
| AGENCY OVERALL | 59,596 | 35,412 |

## XII.A. BACKLOGS OF FOIA REQUESTS AND ADMINISTRATIVE APPEALS

| Agency / Component | Number of Backlogged Requests as of End of Fiscal Year | Number of Backlogged Appeals as of End of Fiscal Year |
|---|---|---|
| ATJ | 10 | 0 |
| Antitrust | 170 | 0 |
| ATF | 610 | 0 |
| BOP | 5,679 | 0 |
| Civil | 576 | 0 |
| Civil Rights | 339 | 0 |
| COPS | 3 | 0 |
| Criminal | 971 | 0 |
| CRS | 7 | 0 |
| DEA | 119 | 0 |
| ENRD | 23 | 0 |
| EOIR | 1,521 | 0 |
| EOUSA | 1,601 | 0 |
| EOUST | 0 | 0 |
| FBI | 6,052 | 0 |
| FCSC | 0 | 0 |

| | | |
|---|---|---|
| JMD | 56 | 0 |
| NSD | 326 | 0 |
| OCDETF | 3 | 0 |
| OIG | 262 | 0 |
| OIP | 1,423 | 211 |
| OJP | 530 | 0 |
| OLC | 688 | 0 |
| OPR | 42 | 0 |
| OSG | 45 | 0 |
| OVW | 74 | 0 |
| PARDON | 56 | 0 |
| PRAO | 0 | 0 |
| Tax | 149 | 0 |
| USMS | 230 | 0 |
| USNCB | 2 | 0 |
| USPC | 0 | 0 |
| AGENCY OVERALL | 21,567 | 211 |

**XII.B. CONSULTATIONS ON FOIA REQUESTS -- RECEIVED, PROCESSED, AND PENDING CONSULTATIONS**

| Agency / Component | Number of Consultations Received from Other Agencies that were <u>Pending</u> at the Agency as of <u>Start</u> of the Fiscal Year | Number of Consultations <u>Received</u> from Other Agencies During the Fiscal Year | Number of Consultations Received from Other Agencies that were <u>Processed</u> by the Agency During the Fiscal Year | Number of Consultations Received from Other Agencies that were <u>Pending</u> at the Agency as of <u>End</u> of the Fiscal Year |
|---|---|---|---|---|
| ATJ | 0 | 0 | 0 | 0 |
| Antitrust | 3 | 24 | 19 | 8 |
| ATF* | 7 | 91 | 94 | 4 |
| BOP* | 5 | 31 | 32 | 4 |
| Civil* | 89 | 112 | 113 | 88 |
| Civil Rights | 3 | 90 | 87 | 6 |
| COPS | 0 | 14 | 14 | 0 |
| Criminal* | 84 | 49 | 34 | 99 |
| CRS | 0 | 21 | 21 | 0 |
| DEA* | 188 | 108 | 279 | 17 |
| ENRD | 3 | 53 | 52 | 4 |

| | | | |
|---|---|---|---|
| EOIR | 0 | 14 | 14 | 0 |
| EOUSA* | 103 | 283 | 247 | 139 |
| EOUST | 0 | 5 | 5 | 0 |
| FBI* | 73 | 153 | 151 | 75 |
| FCSC | 0 | 0 | 0 | 0 |
| JMD | 1 | 77 | 78 | 0 |
| NSD* | 36 | 157 | 179 | 14 |
| OCDETF | 0 | 21 | 18 | 3 |
| OIG | 0 | 0 | 0 | 0 |
| OIP* | 106 | 181 | 158 | 129 |
| OJP | 1 | 46 | 45 | 2 |
| OLC* | 26 | 54 | 57 | 23 |
| OPR | 0 | 19 | 19 | 0 |
| OSG* | 5 | 24 | 22 | 7 |
| OVW | 0 | 0 | 0 | 0 |
| PARDON | 0 | 0 | 0 | 0 |
| PRAO | 1 | 19 | 19 | 1 |
| Tax* | 3 | 17 | 7 | 13 |

| | | | | |
|---|---|---|---|---|
| USMS* | 5 | 109 | 108 | 6 |
| USNCB | 0 | 5 | 5 | 0 |
| USPC* | 1 | 3 | 4 | 0 |
| AGENCY OVERALL | 743 | 1,780 | 1,881 | 642 |

*After reviewing their databases, the following components updated the number of consultations pending as of the start of the Fiscal Year: ATF, BOP, Civil, Criminal, DEA, EOUSA, FBI, NSD, OIP, OLC, OSG, Tax, USMS, and USPC.

## XII.C. CONSULTATIONS ON FOIA REQUESTS -- TEN OLDEST CONSULTATIONS RECEIVED FROM OTHER AGENCIES AND PENDING AT THE AGENCY

| Agency / Component | | 10th Oldest Consultation | 9th | 8th | 7th | 6th | 5th | 4th | 3rd | 2nd | Oldest Consultations |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ATJ | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Antitrust | Date | N/A | N/A | 07/31/2024 | 05/31/2024 | 05/15/2024 | 03/20/2024 | 12/27/2023 | 12/20/2023 | 10/31/2023 | 04/27/2023 |
| | Number of Days Pending | 0 | 0 | 42 | 83 | 94 | 134 | 191 | 195 | 229 | 357 |
| ATF | Date | N/A | N/A | N/A | N/A | N/A | N/A | 09/20/2024 | 09/17/2024 | 07/30/2024 | 06/28/2024 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 6 | 9 | 43 | 64 |
| BOP | Date | N/A | N/A | N/A | N/A | N/A | N/A | 09/24/2024 | 09/13/2024 | 05/07/2024 | 11/30/2023 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 11 | 100 | 209 |
| Civil | Date | 05/19/2023 | 05/01/2023 | 03/31/2023 | 03/29/2023 | 03/02/2023 | 01/25/2023 | 01/24/2023 | 01/23/2023 | 12/01/2022 | 10/27/2022 |
| | Number of Days | 341 | 355 | 376 | 378 | 397 | 422 | 423 | 424 | 458 | 481 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Pending | | | | | | | | | | |
| Civil Rights | Date | N/A | N/A | N/A | N/A | 09/30/2024 | 09/27/2024 | 09/16/2024 | 09/03/2024 | 02/15/2024 | 01/17/2024 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 1 | 1 | 10 | 19 | 157 | 178 |
| COPS | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Criminal | Date | 03/26/2021 | 03/23/2021 | 12/23/2020 | 12/22/2020 | 12/21/2020 | 11/25/2020 | 11/16/2020 | 03/04/2020 | 12/30/2019 | 12/30/2019 |
| | Number of Days Pending | 879 | 882 | 940 | 941 | 942 | 959 | 966 | 1,144 | 1,188 | 1,188 |
| CRS | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DEA | Date | 05/30/2023 | 11/08/2022 | 04/20/2022 | 11/10/2021 | 10/01/2021 | 04/07/2021 | 02/24/2021 | 01/23/2020 | 01/16/2020 | 06/24/2019 |
| | Number of Days Pending | 335 | 473 | 612 | 721 | 748 | 871 | 901 | 1,172 | 1,176 | 1,316 |
| ENRD | Date | N/A | N/A | N/A | N/A | N/A | N/A | 09/17/202 | 09/16/202 | 08/08/20 | 06/27/202 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 4 | 4 | 24 | 4 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 9 | 10 | 36 | 65 |
| EOIR | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| EOUSA | Date | 10/13/2022 | 10/04/2022 | 05/24/2022 | 05/23/2022 | 05/10/2022 | 02/07/2022 | 02/02/2022 | 01/06/2022 | 06/16/2021 | 05/16/2021 |
| | Number of Days Pending | 491 | 497 | 588 | 589 | 598 | 663 | 666 | 684 | 822 | 843 |
| EOUST | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| FBI | Date | 08/11/2023 | 06/02/2023 | 05/19/2023 | 03/15/2023 | 03/15/2023 | 03/15/2023 | 03/14/2023 | 03/10/2023 | 02/21/2023 | 01/11/2023 |
| | Number of Days Pending | 284 | 332 | 341 | 388 | 388 | 388 | 389 | 391 | 404 | 431 |
| FCSC | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | of Days Pending | | | | | | | | | | |
| JMD | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| NSD | Date | 03/16/2023 | 02/09/2023 | 05/20/2022 | 10/26/2021 | 10/18/2021 | 09/08/2021 | 05/05/2021 | 03/03/2021 | 02/25/2021 | 02/02/2021 |
| | Number of Days Pending | 387 | 411 | 590 | 732 | 738 | 765 | 851 | 896 | 900 | 916 |
| OCDETF | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 09/30/2024 | 09/25/2024 | 09/10/2024 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 3 | 14 |
| OIG | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OIP | Date | 09/29/2021 | 09/07/2021 | 08/06/2021 | 07/15/2021 | 06/02/2021 | 05/26/2021 | 05/14/2021 | 04/16/2021 | 03/05/2021 | 04/23/2020 |
| | Number of Days Pending | 750 | 766 | 787 | 803 | 832 | 836 | 844 | 864 | 894 | 1,108 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| OJP | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 09/24/2024 | 04/24/2020 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 1,107 |
| OLC | Date | 01/05/2024 | 12/20/2023 | 12/12/2023 | 12/04/2023 | 11/29/2023 | 11/09/2023 | 10/31/2023 | 10/27/2023 | 10/10/2023 | 08/22/2023 |
| | Number of Days Pending | 185 | 195 | 201 | 207 | 210 | 222 | 229 | 231 | 244 | 277 |
| OPR | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OSG | Date | N/A | N/A | N/A | 07/25/2024 | 07/08/2024 | 05/30/2024 | 05/08/2024 | 05/06/2024 | 12/07/2023 | 12/04/2023 |
| | Number of Days Pending | 0 | 0 | 0 | 46 | 59 | 84 | 99 | 101 | 204 | 207 |
| OVW | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PARDON | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | of Days Pending | | | | | | | | | | |
| PRAO | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 09/23/2024 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| Tax | Date | 02/16/2024 | 01/31/2024 | 11/21/2023 | 10/31/2023 | 10/23/2023 | 10/23/2023 | 10/20/2023 | 03/09/2023 | 06/28/2022 | 04/01/2022 |
| | Number of Days Pending | 156 | 168 | 215 | 229 | 235 | 235 | 236 | 392 | 565 | 625 |
| USMS | Date | N/A | N/A | N/A | N/A | 09/30/2024 | 09/24/2024 | 09/10/2024 | 09/06/2024 | 08/01/2024 | 07/26/2024 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 1 | 4 | 14 | 16 | 41 | 45 |
| USNCB | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| USPC | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| AGENCY OVERALL | Date | 11/25/2020 | 11/16/2020 | 04/24/2020 | 04/23/2020 | 03/04/2020 | 01/23/2020 | 01/16/2020 | 12/30/2019 | 12/30/2019 | 06/24/2019 |
| | Number of Days Pending | 959 | 966 | 1,107 | 1,108 | 1,144 | 1,172 | 1,176 | 1,188 | 1,188 | 1,316 |

**XII.D.(1). COMPARISON OF NUMBERS OF REQUESTS FROM PREVIOUS AND CURRENT ANNUAL REPORT --
REQUESTS RECEIVED AND PROCESSED**

| Agency / Component | NUMBER OF REQUESTS RECEIVED | | NUMBER OF REQUESTS PROCESSED | |
|---|---|---|---|---|
| | Number Received During Fiscal Year from Last Year's Annual Report | Number Received During Fiscal Year from Current Annual Report | Number Processed During Fiscal Year from Last Year's Annual Report | Number Processed During Fiscal Year from Current Annual Report |
| ATJ | 3 | 76 | 2 | 61 |
| Antitrust | 172 | 383 | 145 | 351 |
| ATF | 1,734 | 2,141 | 1,774 | 2,145 |
| BOP | 5,146 | 5,897 | 4,229 | 6,329 |
| Civil | 474 | 564 | 118 | 296 |
| Civil Rights | 377 | 414 | 314 | 483 |
| COPS | 180 | 237 | 176 | 234 |
| Criminal | 1,049 | 1,296 | 966 | 1,236 |
| CRS | 53 | 120 | 36 | 131 |
| DEA | 1,634 | 1,612 | 1,646 | 3,337 |
| ENRD | 148 | 244 | 150 | 239 |
| EOIR | 70,475 | 87,842 | 104,290 | 109,163 |
| EOUSA | 3,247 | 3,610 | 3,289 | 3,757 |

| | | | | |
|---|---|---|---|---|
| EOUST | 64 | 99 | 62 | 100 |
| FBI | 18,803 | 18,218 | 19,359 | 20,145 |
| FCSC | 28 | 76 | 28 | 76 |
| JMD | 297 | 263 | 298 | 381 |
| NSD | 402 | 499 | 439 | 379 |
| OCDETF | 59 | 92 | 65 | 80 |
| OIG | 284 | 533 | 294 | 428 |
| OIP | 2,209 | 3,001 | 2,318 | 2,876 |
| OJP | 460 | 608 | 360 | 509 |
| OLC | 127 | 169 | 99 | 103 |
| OPR | 116 | 160 | 117 | 153 |
| OSG | 73 | 117 | 81 | 96 |
| OVW | 79 | 144 | 37 | 107 |
| PARDON | 49 | 78 | 5 | 84 |
| PRAO | 25 | 57 | 26 | 53 |
| Tax | 94 | 186 | 72 | 52 |
| USMS | 2,606 | 3,300 | 2,807 | 3,293 |
| USNCB | 172 | 190 | 167 | 187 |

| USPC | 295 | 301 | 296 | 316 |
|---|---|---|---|---|
| AGENCY OVERALL | 110,934 | 132,527 | 144,065 | 157,180 |

## XII.D.(2). COMPARISON OF NUMBERS OF REQUESTS FROM PREVIOUS AND CURRENT ANNUAL REPORT -- BACKLOGGED REQUESTS

| Agency / Component | Number of Backlogged Requests as of End of the Fiscal Year from Previous Annual Report | Number of Backlogged Requests as of End of the Fiscal Year from Current Annual Report |
|---|---|---|
| ATJ | 1 | 10 |
| Antitrust | 135 | 170 |
| ATF | 642 | 610 |
| BOP | 6,003 | 5,679 |
| Civil | 375 | 576 |
| Civil Rights | 427 | 339 |
| COPS | 0 | 3 |
| Criminal | 878 | 971 |
| CRS | 7 | 7 |
| DEA | 1,707 | 119 |
| ENRD | 28 | 23 |
| EOIR | 21,623 | 1,521 |
| EOUSA | 1,920 | 1,601 |
| EOUST | 0 | 0 |
| FBI | 6,727 | 6,052 |
| FCSC | 0 | 0 |
| JMD | 159 | 56 |
| NSD | 288 | 326 |
| OCDETF | 1 | 3 |
| OIG | 226 | 262 |
| OIP | 1,283 | 1,423 |
| OJP | 431 | 530 |
| OLC | 638 | 688 |
| OPR | 34 | 42 |

| OSG | 21 | 45 |
|---|---|---|
| OVW | 50 | 74 |
| PARDON | 33 | 56 |
| PRAO | 0 | 0 |
| Tax | 24 | 149 |
| USMS | 263 | 230 |
| USNCB | 2 | 2 |
| USPC | 1 | 0 |
| AGENCY OVERALL | 43,927 | 21,567 |

**XII.E.(1). COMPARISON OF NUMBERS OF ADMINISTRATIVE APPEALS FROM PREVIOUS AND CURRENT ANNUAL REPORT -- APPEALS RECEIVED AND PROCESSED**

| Agency / Component | NUMBER OF APPEALS RECEIVED | | NUMBER OF APPEALS PROCESSED | |
|---|---|---|---|---|
| | Number Received During Fiscal Year from Last Year's Annual Report | Number Received During Fiscal Year from Current Annual Report | Number Processed During Fiscal Year from Last Year's Annual Report | Number Processed During Fiscal Year from Current Annual Report |
| OIP | 2,044 | 2,577 | 2,126 | 2,479 |
| AGENCY OVERALL | 2,044 | 2,577 | 2,126 | 2,479 |

**XII.E.(2). COMPARISON OF NUMBERS OF ADMINISTRATIVE APPEALS FROM PREVIOUS AND CURRENT ANNUAL REPORT -- BACKLOGGED APPEALS**

| Agency / Component | Number of Backlogged Appeals as of End of the Fiscal Year from Previous Annual Report | Number of Backlogged Appeals as of End of the Fiscal Year from Current Annual Report |
|---|---|---|
| OIP | 240 | 211 |
| AGENCY OVERALL | 240 | 211 |

# EXHIBIT F



July 28, 2025

Christina Butler
Chief, FOIA/PA Unit
Criminal Division, Department of Justice
950 Constitution Ave, NW
Washington, DC 20530-0001

   Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from January 20, 2025, to when this request is processed, of:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General

Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4.  Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or

---

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).

activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of documents and communications related to criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including records the Department may have that name clients and associates of Epstein and records that may name President Trump in relation to these matters. These records may also reveal to the public a potential attempt to cover up negative or potentially criminal conduct, including by President Trump. The existence and extent of such records, and the government's response to their collection and dissemination, are currently a question of immense media speculation.[6] In February 2025, Attorney General Bondi said in an interview with Fox News that the Epstein client list was, "sitting on my desk right now to review."[7] It was recently reported that Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President.[8] Then in July, the Department issued a memo noting, "this systematic review revealed no incriminating 'client list."[9] However, the Wall Street Journal has reported that the Attorney General personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] Given contradictory statements made by the Department, and the fact that President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[11] disclosure of these records would conclusively show whether the Department has the information it now purports that it does not have, and, if such records exist, whether Donald Trump's name appears in any of the documents related to Jeffery Epstein. This release is also important to understand whether any undue political influence by the President has affected the Department's ability or willingness to release documents related to Jeffrey Epstein. Prior to being elected to a second term, the President promised repeatedly during his campaign that he would release these files.[12] Yet, in the face of increased pressure to release the full array of documents, the President has continued to evade the issue.[13] Disclosure of these documents is therefore necessary to provide a

[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.
[7] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025),
https://www.bbc.com/news/articles/ckgl4dl334go.
[8] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trump*, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/
[9] US Department of Justice, Memo on Epstein Investigation, Jul. 2025,
https://www.justice.gov/opa/media/1407001/dl?inline.
[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1
[11] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/19/us/politics/timeline-trump-epstein.html.
[12] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga
[13] Chris Cameron, Trump Really Wants to Stop Talking About Epstein: A Timeline, NY Times (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-epstein-distraction-timeline.html.

full record of what communications occurred, and whether any such communications might have resulted in abnormalities in the Department's statements or actions concerning the existence of Epstein's "Client List."

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to the investigations involving Jeffrey Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[14] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[15] As noted above, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[16] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[17] This has caused immense confusion amongst the public, which has been the subject of ongoing new media coverage.[18] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[19] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and the issuance of op-eds.[20] DDF maintains a dedicated website

---

[14] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[15] *See, e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025),
https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[16] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025),
https://www.bbc.com/news/articles/ckgl4dl334go.

[17] US Department of Justice, Memo on Epstein Investigation, Jul. 2025,
https://www.justice.gov/opa/media/1407001/dl?inline.

[18] *See, e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025)
https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

[19] Larry Neumeister, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

[20] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from*

where it provides information related to its activities, which can be accessed by the public.[21] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[22] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[23] and if so, whether that may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[24]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

---

*Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.
[21] *See* https://www.democracydefendersfund.org/news-resources.
[22] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).
[23] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.
[24] *See, e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[25] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[26] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

## 2. The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox

---

[25] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.
[26] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

News,[27] New York Times,[28] Wall Street Journal,[29] and Washington Post,[30] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[31]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

---

[27] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[28] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html; Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[29] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[30] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[31] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC:    Director of Public Affairs, Office of Public Affairs
       United States Department of Justice,
       950 Pennsylvania Avenue NW.
       Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- 'Parent-child' relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[32] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[33] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.


Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

---

[32] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[33] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

# EXHIBIT G

 An official website of the United States government
Here's how you know

 UNITED STATES DEPARTMENT *of* JUSTICE

 **FOIA.gov**

MENU

**Thank you for visiting FOIA.gov, the government's central website for FOIA.** We'll continue to make improvements to the site and look forward to your input. Please submit feedback to National.FOIAPortal@usdoj.gov.

**Submission ID:** 2295986

# Success!

## Your FOIA request has been created and is being sent to the Criminal Division.

You'll hear back from the agency confirming receipt in the coming weeks using the contact information you provided. If you have questions about your request, feel free to reach out to the agency FOIA personnel using the information provided below.

**Contact the agency**

FOIA Requester Service Center

202-616-0307

Alison Epstein, FOIA Public Liaison

202-616-0307

Christina Butler
Chief, FOIA/PA Unit
Criminal Division, Department of Justice
950 Constitution Ave, NW
Washington, DC 20530-0001

# Request summary

Request submitted on **July 28, 2025**.

The confirmation ID for your request is **2295986**.



The confirmation ID is only for identifying your request on FOIA.gov and acts as a receipt to show that you submitted a request using FOIA.gov. This number does not replace the information you'll receive from the agency to track your request. In case there is an issue submitting your request to the agency you selected, you can use this number to help.

## Contact information

**Name**
Gabriel Lezra

**Mailing address**
600 Pennsylvania Ave. S.E.
Washington, D.C. 20003
United States

**Phone number**
9176752509

**Company/organization**
Democracy Defenders Fund

**Email**
gabe@statedemocracydefenders.org

## Your request

DOJ-OIP-FY25 Freedom of Information Act (FOIA) request

See attached.

---

## Additional information

DDF. CRIM FOIA EPSTEIN COMMUNICATIONS (July 28 25).pdf

---

## Fees

### What type of requester are you?
media

### Fee waiver
yes

### Fee waiver justification
See attached.

---

## Request expedited processing

### Expedited processing
yes

### Justification for expedited processing
See attached.



### CONTACT

Office of Information Policy (OIP)

U.S. Department of Justice

441 G St, NW, 6th Floor

Washington, DC 20530

E-mail: National.FOIAPortal@usdoj.gov

Hero image credit ↗ CC3.0

| FREQUENTLY ASKED QUESTIONS

| DEVELOPER RESOURCES

| AGENCY API SPEC

| FOIA CONTACT DOWNLOAD

| FOIA DATASET DOWNLOAD

| ACCESSIBILITY

| PRIVACY POLICY

| POLICIES & DISCLAIMERS

| JUSTICE.GOV

| USA.GOV ↗

# EXHIBIT H

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the

---

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Forc*e, 566 F.2d 242, 261 (D.C. Cir. 1977).

government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of documents and communications related to criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including records the Department may have that name clients and associates of Epstein and records that may name President Trump in relation to these matters. These records may also reveal to the public a potential attempt to cover up negative or potentially criminal conduct, including by President Trump. The existence and extent of such records, and the government's response to their collection and dissemination, are currently a question of immense media speculation.[6] In February 2025, Attorney General Bondi said in an interview with Fox News that the Epstein client list was, "sitting on my desk right now to review."[7] It was recently reported that Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President.[8] Then in July, the Department issued a memo noting, "this systematic review revealed no incriminating 'client list.'"[9] However, the Wall Street Journal has reported that the Attorney General personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] Given contradictory statements made by the Department, and the fact that President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[11] disclosure of these records would conclusively show whether the Department has the information it now purports that it does not have, and, if such records exist, whether Donald Trump's name appears in any of the documents related to Jeffery Epstein. This release is also important to understand whether any undue political influence by the President has affected the Department's ability or willingness to release documents related to Jeffrey Epstein. Prior to being elected to a second term, the President promised repeatedly during his campaign that he would release these files.[12] Yet, in the face of increased pressure to release the full array of documents, the President has

---

[4] 28 C.F.R. 16.10(k)(1).

[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).

[6] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.

[7] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025),
https://www.bbc.com/news/articles/ckgl4dl334go.

[8] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trum*p, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/

[9] US Department of Justice, Memo on Epstein Investigation, Jul. 2025,
https://www.justice.gov/opa/media/1407001/dl?inline.

[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1

[11] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/17/us/politics/timeline-trump-epstein.html.

[12] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga

continued to evade the issue.[13] Disclosure of these documents is therefore necessary to provide a full record of what communications occurred, and whether any such communications might have resulted in abnormalities in the Department's statements or actions concerning the existence of Epstein's "Client List."

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to the investigations involving Jeffrey Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[14] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[15] As noted above, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[16] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[17] This has caused immense confusion amongst the public, which has been the subject of ongoing new media coverage.[18] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[19] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional

---

[13] Chris Cameron, Trump Really Wants to Stop Talking About Epstein: A Timeline, NY Times (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-epstein-distraction-timeline.html.

[14] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[15] *See*, *e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[16] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.

[17] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[18] *See*, *e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

[19] Larry Neumeister, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

broadcast media, podcasts, and the issuance of op-eds.[20] DDF maintains a dedicated website where it provides information related to its activities, which can be accessed by the public.[21] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[22] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[23] and if so, whether that may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[24]–under FOIA's expedited processing

---

[20] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.
[21] *See* https://www.democracydefendersfund.org/news-resources.
[22] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).
[23] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.
[24] *See, e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[25] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[26] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

### 2. The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox

---

[25] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.
[26] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

6

News,[27] New York Times,[28] Wall Street Journal,[29] and Washington Post,[30] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[31]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

---

[27] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[28] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;

Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[29] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[30] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[31] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC:    Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- 'Parent-child' relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[32] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[33] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.


Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

---

[32] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[33] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

# EXHIBIT I



July 28, 2025

Director, Office of Public Affairs
Department of Justice
950 Pennsylvania Avenue NW.
Washington, DC 20530-0001
Attention: Andrew Fiorillo, Acting Chief, Initial Request Staff

RE: Freedom of Information Act Request; Expedited Processing Request Notice

Dear FOIA Officer:

Democracy Defenders Fund ("DDF") submitted the enclosed request for records to the FOIA offices of the Office of the Attorney General, Office of the Deputy Attorney General, and identical requests for records to the Criminal Division, Federal Bureau of Investigations, and the Executive Office of the U.S. Attorneys today, July 28, 2025. Each request seeks expedited processing pursuant to 28 C.F.R. 16.5(e)(1)(ii) and (e)(iv). Pursuant to 28 C.F.R. 16.5(e)(2), we are concurrently submitting these requests with the Office of Public Affairs for approval of expedited processing pursuant to 28 C.F.R. 16.5(e)(1)(iv). The basis for expedited processing is set forth in the enclosures. DDF respectfully requests your prompt response to this matter.

If you have any questions about this request or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.
Sincerely,

 /s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

Enclosures



July 28, 2025

Andrew Fiorillo,
Acting Chief, Initial Request Staff
Office of the Attorney General
   and Office of the Deputy Attorney General
6th Floor
441 G St, NW
Washington, DC 20530-0001

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from January 20, 2025, to when this request is processed, of:

1.  Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2.  Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the

---

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Forc*e, 566 F.2d 242, 261 (D.C. Cir. 1977).

government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of documents and communications related to criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including records the Department may have that name clients and associates of Epstein and records that may name President Trump in relation to these matters. These records may also reveal to the public a potential attempt to cover up negative or potentially criminal conduct, including by President Trump. The existence and extent of such records, and the government's response to their collection and dissemination, are currently a question of immense media speculation.[6] In February 2025, Attorney General Bondi said in an interview with Fox News that the Epstein client list was, "sitting on my desk right now to review."[7] It was recently reported that Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President.[8] Then in July, the Department issued a memo noting, "this systematic review revealed no incriminating 'client list."[9] However, the Wall Street Journal has reported that the Attorney General personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] Given contradictory statements made by the Department, and the fact that President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[11] disclosure of these records would conclusively show whether the Department has the information it now purports that it does not have, and, if such records exist, whether Donald Trump's name appears in any of the documents related to Jeffery Epstein. This release is also important to understand whether any undue political influence by the President has affected the Department's ability or willingness to release documents related to Jeffrey Epstein. Prior to being elected to a second term, the President promised repeatedly during his campaign that he would release these files.[12] Yet, in the face of increased pressure to release the full array of documents, the President has

---

[4] 28 C.F.R. 16.10(k)(1).

[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).

[6] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.

[7] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025),
https://www.bbc.com/news/articles/ckgl4dl334go.

[8] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trump*, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/

[9] US Department of Justice, Memo on Epstein Investigation, Jul. 2025,
https://www.justice.gov/opa/media/1407001/dl?inline.

[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1

[11] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/17/us/politics/timeline-trump-epstein.html.

[12] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga

continued to evade the issue.[13] Disclosure of these documents is therefore necessary to provide a full record of what communications occurred, and whether any such communications might have resulted in abnormalities in the Department's statements or actions concerning the existence of Epstein's "Client List."

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to the investigations involving Jeffrey Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[14] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[15] As noted above, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[16] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[17] This has caused immense confusion amongst the public, which has been the subject of ongoing new media coverage.[18] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[19] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional

---

[13] Chris Cameron, Trump Really Wants to Stop Talking About Epstein: A Timeline, NY Times (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-epstein-distraction-timeline.html.
[14] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.
[15] *See, e.g.,* Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025),
https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.
[16] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025),
https://www.bbc.com/news/articles/ckgl4dl334go.
[17] US Department of Justice, Memo on Epstein Investigation, Jul. 2025,
https://www.justice.gov/opa/media/1407001/dl?inline.
[18] *See, e.g.,* Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025)
https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.
[19] Larry Neumeister, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

broadcast media, podcasts, and the issuance of op-eds.[20] DDF maintains a dedicated website where it provides information related to its activities, which can be accessed by the public.[21] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[22] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[23] and if so, whether that may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[24]–under FOIA's expedited processing

---

[20] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.

[21] *See* https://www.democracydefendersfund.org/news-resources.

[22] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

[23] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[24] *See, e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[25] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[26] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

## 2. The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox

---

[25] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.
[26] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

News,[27] New York Times,[28] Wall Street Journal,[29] and Washington Post,[30] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[31]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

---

[27] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[28] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[29] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[30] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[31] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC:     Director of Public Affairs, Office of Public Affairs
        United States Department of Justice,
        950 Pennsylvania Avenue NW.
        Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- 'Parent-child' relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[32] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[33] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.


Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

---

[32] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[33] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).



July 28, 2025

Christina Butler
Chief, FOIA/PA Unit
Criminal Division, Department of Justice
950 Constitution Ave, NW
Washington, DC 20530-0001

      Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from January 20, 2025, to when this request is processed, of:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General

Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or

---

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).

activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of documents and communications related to criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including records the Department may have that name clients and associates of Epstein and records that may name President Trump in relation to these matters. These records may also reveal to the public a potential attempt to cover up negative or potentially criminal conduct, including by President Trump. The existence and extent of such records, and the government's response to their collection and dissemination, are currently a question of immense media speculation.[6] In February 2025, Attorney General Bondi said in an interview with Fox News that the Epstein client list was, "sitting on my desk right now to review."[7] It was recently reported that Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President.[8] Then in July, the Department issued a memo noting, "this systematic review revealed no incriminating 'client list."[9] However, the Wall Street Journal has reported that the Attorney General personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] Given contradictory statements made by the Department, and the fact that President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[11] disclosure of these records would conclusively show whether the Department has the information it now purports that it does not have, and, if such records exist, whether Donald Trump's name appears in any of the documents related to Jeffery Epstein. This release is also important to understand whether any undue political influence by the President has affected the Department's ability or willingness to release documents related to Jeffrey Epstein. Prior to being elected to a second term, the President promised repeatedly during his campaign that he would release these files.[12] Yet, in the face of increased pressure to release the full array of documents, the President has continued to evade the issue.[13] Disclosure of these documents is therefore necessary to provide a

---

[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.
[7] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025),
https://www.bbc.com/news/articles/ckgl4dl334go.
[8] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trum*p, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/
[9] US Department of Justice, Memo on Epstein Investigation, Jul. 2025,
https://www.justice.gov/opa/media/1407001/dl?inline.
[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1
[11] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/19/us/politics/time-trump-epstein.html.
[12] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga
[13] Chris Cameron, Trump Really Wants to Stop Talking About Epstein: A Timeline, NY Times (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-epstein-distraction-timeline.html.

full record of what communications occurred, and whether any such communications might have resulted in abnormalities in the Department's statements or actions concerning the existence of Epstein's "Client List."

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to the investigations involving Jeffrey Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[14] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[15] As noted above, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[16] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[17] This has caused immense confusion amongst the public, which has been the subject of ongoing new media coverage.[18] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[19] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and the issuance of op-eds.[20] DDF maintains a dedicated website

---

[14] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[15] *See, e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[16] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.

[17] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[18] *See, e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

[19] Larry Neumeister, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

[20] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from*

where it provides information related to its activities, which can be accessed by the public.[21] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[22] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[23] and if so, whether that may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[24]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

---

*Qatar? C'Mon, Man!*, New York Times (May 14, 2025),  https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.

[21] *See* https://www.democracydefendersfund.org/news-resources.

[22] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

[23] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[24] *See, e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[25] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[26] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

## 2. The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox

---

[25] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.
[26] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

News,[27] New York Times,[28] Wall Street Journal,[29] and Washington Post,[30] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[31]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

---

[27] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[28] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html; Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[29] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[30] *Trump's "Epstein Files" Problem*,  Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[31] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.


Sincerely,

 /s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist


CC:    Director of Public Affairs, Office of Public Affairs
       United States Department of Justice,
       950 Pennsylvania Avenue NW.
       Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- 'Parent-child' relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[32] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[33] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.


Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

---

[32] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[33] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).



July 28, 2025

Michael G. Seidel
Section Chief
Record/Information Dissemination Section
200 Constitution Drive
Winchester, VA 22602

      Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from January 20, 2025, to when this request is processed, of:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General

Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or

---

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).

activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of documents and communications related to criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including records the Department may have that name clients and associates of Epstein and records that may name President Trump in relation to these matters. These records may also reveal to the public a potential attempt to cover up negative or potentially criminal conduct, including by President Trump. The existence and extent of such records, and the government's response to their collection and dissemination, are currently a question of immense media speculation.[6] In February 2025, Attorney General Bondi said in an interview with Fox News that the Epstein client list was, "sitting on my desk right now to review."[7] It was recently reported that Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President.[8] Then in July, the Department issued a memo noting, "this systematic review revealed no incriminating 'client list."[9] However, the Wall Street Journal has reported that the Attorney General personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] Given contradictory statements made by the Department, and the fact that President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[11] disclosure of these records would conclusively show whether the Department has the information it now purports that it does not have, and, if such records exist, whether Donald Trump's name appears in any of the documents related to Jeffery Epstein. This release is also important to understand whether any undue political influence by the President has affected the Department's ability or willingness to release documents related to Jeffrey Epstein. Prior to being elected to a second term, the President promised repeatedly during his campaign that he would release these files.[12] Yet, in the face of increased pressure to release the full array of documents, the President has continued to evade the issue.[13] Disclosure of these documents is therefore necessary to provide a

---

[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.
[7] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025),
https://www.bbc.com/news/articles/ckgl4dl334go.
[8] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trum*p, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/
[9] US Department of Justice, Memo on Epstein Investigation, Jul. 2025,
https://www.justice.gov/opa/media/1407001/dl?inline.
[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1
[11] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/19/us/politics/timeline-trump-epstein.html.
[12] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga
[13] Chris Cameron, Trump Really Wants to Stop Talking About Epstein: A Timeline, NY Times (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-epstein-distraction-timeline.html.

full record of what communications occurred, and whether any such communications might have resulted in abnormalities in the Department's statements or actions concerning the existence of Epstein's "Client List."

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to the investigations involving Jeffrey Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[14] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[15] As noted above, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[16] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[17] This has caused immense confusion amongst the public, which has been the subject of ongoing new media coverage.[18] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[19] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and the issuance of op-eds.[20] DDF maintains a dedicated website

---

[14] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.
[15] *See, e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.
[16] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.
[17] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.
[18] *See, e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.
[19] Larry Neumeister, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.
[20] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from*

where it provides information related to its activities, which can be accessed by the public.[21] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[22] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[23] and if so, whether that may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[24]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

---

*Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.

[21] *See* https://www.democracydefendersfund.org/news-resources.

[22] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

[23] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[24] *See, e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[25] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[26] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

2. **The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox

---

[25] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.
[26] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

News,[27] New York Times,[28] Wall Street Journal,[29] and Washington Post,[30] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[31]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

[27] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[28] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html; Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[29] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[30] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[31] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC:    Director of Public Affairs, Office of Public Affairs
       United States Department of Justice,
       950 Pennsylvania Avenue NW.
       Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- 'Parent-child' relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[32] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[33] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.


Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

---

[32] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[33] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).



July 28, 2025

Kevin Krebs
Assistant Director, FOIA/Privacy Unit
Executive Office of the U.S. Attorneys
175 N Street, NE, Suite 5.400
Washington, DC 20530-0001

 Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from January 20, 2025, to when this request is processed, of:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General

Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or

---

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).

activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of documents and communications related to criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including records the Department may have that name clients and associates of Epstein and records that may name President Trump in relation to these matters. These records may also reveal to the public a potential attempt to cover up negative or potentially criminal conduct, including by President Trump. The existence and extent of such records, and the government's response to their collection and dissemination, are currently a question of immense media speculation.[6] In February 2025, Attorney General Bondi said in an interview with Fox News that the Epstein client list was, "sitting on my desk right now to review."[7] It was recently reported that Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President.[8] Then in July, the Department issued a memo noting, "this systematic review revealed no incriminating 'client list."[9] However, the Wall Street Journal has reported that the Attorney General personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] Given contradictory statements made by the Department, and the fact that President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[11] disclosure of these records would conclusively show whether the Department has the information it now purports that it does not have, and, if such records exist, whether Donald Trump's name appears in any of the documents related to Jeffery Epstein. This release is also important to understand whether any undue political influence by the President has affected the Department's ability or willingness to release documents related to Jeffrey Epstein. Prior to being elected to a second term, the President promised repeatedly during his campaign that he would release these files.[12] Yet, in the face of increased pressure to release the full array of documents, the President has continued to evade the issue.[13] Disclosure of these documents is therefore necessary to provide a

[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.
[7] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025),
https://www.bbc.com/news/articles/ckgl4dl334go.
[8] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trump*, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/
[9] US Department of Justice, Memo on Epstein Investigation, Jul. 2025,
https://www.justice.gov/opa/media/1407001/dl?inline.
[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1
[11] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/19/us/politics/trump-epstein-timeline.html.
[12] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga
[13] Chris Cameron, Trump Really Wants to Stop Talking About Epstein: A Timeline, NY Times (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-epstein-distraction-timeline.html.

full record of what communications occurred, and whether any such communications might have resulted in abnormalities in the Department's statements or actions concerning the existence of Epstein's "Client List."

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to the investigations involving Jeffrey Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[14] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[15] As noted above, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[16] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[17] This has caused immense confusion amongst the public, which has been the subject of ongoing new media coverage.[18] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[19] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and the issuance of op-eds.[20] DDF maintains a dedicated website

---

[14] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[15] *See, e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025),
https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[16] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025),
https://www.bbc.com/news/articles/ckgl4dl334go.

[17] US Department of Justice, Memo on Epstein Investigation, Jul. 2025,
https://www.justice.gov/opa/media/1407001/dl?inline.

[18] *See, e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025)
https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

[19] Larry Neumeister, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

[20] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from*

4

where it provides information related to its activities, which can be accessed by the public.[21] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[22] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[23] and if so, whether that may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[24]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

---

*Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.

[21] *See* https://www.democracydefendersfund.org/news-resources.

[22] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

[23] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[24] *See, e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[25] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[26] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

## 2. The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox

---

[25] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.
[26] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

News,[27] New York Times,[28] Wall Street Journal,[29] and Washington Post,[30] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[31]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

---

[27] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[28] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[29] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[30] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[31] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

 /s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC:    Director of Public Affairs, Office of Public Affairs
       United States Department of Justice,
       950 Pennsylvania Avenue NW.
       Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- 'Parent-child' relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[32] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[33] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.


Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

---

[32] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[33] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

# EXHIBIT J



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

August 7, 2025

Gabriel Lezra
Democracy Defenders Fund                    Re:     FOIA-2025-06084
gabe@statedemocracydefenders.org                     ADF:ERH

Dear Gabriel Lezra:

        This is to acknowledge receipt of your Freedom of Information Act (FOIA) request
dated and received in this Office on July 28, 2025, in which you requested records of the
Offices of the Attorney General and Deputy Attorney General concerning Jeffrey Epstein and
Ghislaine Maxwell since January 20, 2025.

        You have requested expedited processing of your request pursuant to the Department's
standard permitting expedition for requests involving "[a]n urgency to inform the public about
an actual or alleged federal government activity, if made by a person primarily engaged in
disseminating information." See 28 C.F.R. § 16.5(e)(1)(ii) (2018).  Based on the information
you have provided, I have determined that your request for expedited processing under this
standard should be denied.  This Office cannot identify a particular urgency to inform the
public about an actual or alleged federal government activity beyond the public's right to know
about government activities generally.

        You have also requested expedited processing of your request pursuant to the
Department's standard involving "[a] matter of widespread and exceptional media interest in
which there exist possible questions about the government's integrity which affect public
confidence." See 28 C.F.R. § 16.5(e)(1)(iv) (2018).  Pursuant to Department policy, we
directed your request to the Director of Public Affairs, who makes the decision whether to
grant or deny expedited processing under this standard. See id. § 16.5(e)(2).  Please be advised
that as of the date of this letter, a decision on your expedition request is still pending. Once a
determination has been made, we will promptly notify you. Nevertheless, please be advised
that your request has been assigned to an analyst in this Office and our processing of it has
been initiated.

        To the extent that your request requires a search in another Office, consultations with
other Department components or another agency, and/or involves a voluminous amount of
material, your request falls within "unusual circumstances."  See 5 U.S.C. § 552 (a)(6)(B)(i)-
(iii) (2018).  Accordingly, we will need to extend the time limit to respond to your request
beyond the ten additional days provided by the statute.  For your information, we use multiple
tracks to process requests, but within those tracks we work in an agile manner, and the time
needed to complete our work on your request will necessarily depend on a variety of factors,
including the complexity of our records search, the volume and complexity of any material
located, and the order of receipt of your request.  At this time, we have assigned your request

-2-

to the complex track. In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records so that it can be placed in a different processing track. You can also agree to an alternative time frame for processing, should records be located, or you may wish to await the completion of our records search to discuss either of these options. Any decision with regard to the application of fees will be made only after we determine whether fees will be implicated for this request.

If you have any questions or wish to discuss the processing of your request, you may contact this Office by telephone at the above number, by e-mail at doj.oip.foia@usdoj.gov, or you may write to the Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001. Lastly, you may contact our Acting FOIA Public Liaison, Eric Hotchkiss, at the telephone number listed above to discuss any aspect of your request.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, MD 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with this Office's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically submitted within ninety days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." If possible, please provide a copy of your original request and this response letter with your appeal.

Sincerely,

for
Andrew D. Fiorillo
Acting Chief, Initial Request Staff
on behalf of
Sean O'Neill
Chief of Staff

# EXHIBIT K

 Gmail

Riley Pynnonen <riley@democracydefenders.org>

---

## FOIA-2025-06084

---

**Taryn Wilgus Null** <taryn@democracydefenders.org>                     Mon, Sep 8, 2025 at 12:50 PM
To: doj.oip.foia@usdoj.gov
Cc: Ginny Canter <ginny@democracydefenders.org>, Gabe Lezra <gabe@democracydefenders.org>, Chris Swartz <chris@democracydefenders.org>, Riley Pynnonen <riley@democracydefenders.org>, Pooja Chaudhuri <pooja@democracydefenders.org>, Sana Sinha <sana@democracydefenders.org>, Jacob Kovacs-Goodman <jacob@democracydefenders.org>

Hi there,

I am responding to the August 7, 2025 letter in response to FOIA-2025-06084.  I would like to have a discussion about potentially reducing the scope of this request.  I can be reached at 301-741-9316 but it would be best if you could reply all to this email to schedule a call, given that some of my colleagues should be included in any conversation about the scope of the requests.

Thank you,
Taryn

**Taryn Wilgus Null** (she/her)
*Senior Counsel*

**Democracy Defenders Fund**
Email: taryn@democracydefenders.org
Phone: (301) 741-9316


democracydefendersfund.org

# EXHIBIT L

Democracy Defenders Fund Mail - FOIA-2025-06084



**Riley Pynnonen <riley@democracydefenders.org>**

---

## FOIA-2025-06084

---

**Taryn Wilgus Null** <taryn@democracydefenders.org>                                  Wed, Sep 17, 2025 at 10:09 AM
To: "Hotchkiss, Eric (OIP)" <Eric.Hotchkiss@usdoj.gov>
Cc: "ginny@democracydefenders.org" <ginny@democracydefenders.org>, "gabe@democracydefenders.org" <gabe@democracydefenders.org>,
"chris@democracydefenders.org" <chris@democracydefenders.org>, "riley@democracydefenders.org" <riley@democracydefenders.org>,
"pooja@democracydefenders.org" <pooja@democracydefenders.org>, "sana@democracydefenders.org" <sana@democracydefenders.org>,
"jacob@democracydefenders.org" <jacob@democracydefenders.org>

Thank you, Eric, and thank you again for your time this morning.  We will look forward to receiving the supplemental acknowledgment letter addressing the Office of Public Affairs expedition determination.

Thanks,
Taryn

**Taryn Wilgus Null** (she/her)
*Senior Counsel*

**Democracy Defenders Fund**
Email: taryn@democracydefenders.org
Phone: (301) 741-9316

democracydefendersfund.org

On Wed, Sep 17, 2025 at 10:03 AM Hotchkiss, Eric (OIP) <Eric.Hotchkiss@usdoj.gov> wrote:

> Hi again Taryn,
>
>
> Thanks for talking with me this morning. This is to memorialize our conversation. First, you clarified that you had also submitted your request to the Federal Bureau of Investigation. We agreed that your request was seeking records from the Offices of the Attorney General and Deputy Attorney General. I provided an estimate for our response of 650 days which is based solely on our average processing time for a complex request (as reported in our FY24 annual FOIA report here: https://www.justice.gov/oip/department-justice-annual-foia-report-fy-2024). This estimate is based on limited information and subject to change. Finally, I advised that you should expect to receive our supplemental acknowledgment letter addressing the Office of Public Affairs expedition determination under DOJ's standard iv soon.

Please let me know if you have any questions.


Thank you for your time,

Eric

---

**From:** Hotchkiss, Eric (OIP)
**Sent:** Monday, September 15, 2025 10:14 AM
**To:** 'Taryn Wilgus Null' <taryn@democracydefenders.org>
**Cc:** ginny@democracydefenders.org; gabe@democracydefenders.org; chris@democracydefenders.org; riley@democracydefenders.org; pooja@democracydefenders.org; sana@democracydefenders.org; jacob@democracydefenders.org
**Subject:** RE: [EXTERNAL] FOIA-2025-06084


9:30 would be great. You can call me at 202-616-5456.


Talk to you then,

Eric

---

**From:** Taryn Wilgus Null <taryn@democracydefenders.org>
**Sent:** Monday, September 15, 2025 10:09 AM
**To:** Hotchkiss, Eric (OIP) <Eric.Hotchkiss@usdoj.gov>
**Cc:** ginny@democracydefenders.org; gabe@democracydefenders.org; chris@democracydefenders.org; riley@democracydefenders.org; pooja@democracydefenders.org; sana@democracydefenders.org; jacob@democracydefenders.org
**Subject:** Re: [EXTERNAL] FOIA-2025-06084


Hi Eric,


We are available this Wednesday either 9:30-10:30am or 12-12:30pm.  What would be best for you?


Thank you,

Taryn

**Taryn Wilgus Null** (she/her)
*Senior Counsel*

**Democracy Defenders Fund**
Email: taryn@democracydefenders.org
Phone: (301) 741-9316

democracydefendersfund.org

On Mon, Sep 15, 2025 at 7:51 AM Hotchkiss, Eric (OIP) <Eric.Hotchkiss@usdoj.gov> wrote:

Good morning Taryn,

I'd be happy to schedule a call to discuss your request. I'm generally available 6-3 M-Th this week with a few exceptions (unavailable Tues 10-12 and Wed 11-12 and 1-2), and the same hours M-F next week.  Let me know your availability for a meeting.

Thank you,

Eric Hotchkiss

Senior Government Information Specialist &

Acting FOIA Public Liaison

Department of Justice

Office of Information Policy

Office: 202-616-5456

**From:** Taryn Wilgus Null <taryn@democracydefenders.org>
**Sent:** Monday, September 8, 2025 12:50 PM
**To:** DOJ.OIP.FOIA (SMO) <DOJ.OIP.FOIA@usdoj.gov>
**Cc:** Ginny Canter <ginny@democracydefenders.org>; Gabe Lezra <gabe@democracydefenders.org>; Chris Swartz <chris@democracydefenders.org>; Riley Pynnonen <riley@democracydefenders.org>; Pooja Chaudhuri <pooja@democracydefenders.org>; Sana Sinha <sana@democracydefenders.org>; Jacob Kovacs-Goodman <jacob@democracydefenders.org>
**Subject:** [EXTERNAL] FOIA-2025-06084

Hi there,

I am responding to the August 7, 2025 letter in response to FOIA-2025-06084. I would like to have a discussion about potentially reducing the scope of this request. I can be reached at 301-741-9316 but it would be best if you could reply all to this email to schedule a call, given that some of my colleagues should be included in any conversation about the scope of the requests.

Thank you,

Taryn

**Taryn Wilgus Null** (she/her)
*Senior Counsel*

**Democracy Defenders Fund**
Email: taryn@democracydefenders.org
Phone: (301) 741-9316

democracydefendersfund.org