**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEMOCRACY DEFENDERS FUND<br>600 Pennsylvania Avenue SE, #15180<br>Washington, DC 20003<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530<br><br>*Defendant*. | Civil Action No. 25-cv-02791 |

**THIRD AMENDED COMPLAINT**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff Democracy Defenders Fund ("Plaintiff" or "DDF") seeks injunctive and other appropriate relief for the processing and release of agency records requested by Plaintiff from Defendant the United States Department of Justice ("DOJ" or "Defendant") on July 22, 2025, and July 28, 2025. Specifically, DDF seeks information from DOJ's investigative files of Jeffrey Epstein ("Epstein") and Ghislaine Maxwell ("Maxwell") that mention President Trump or his home in Mar-a-Lago (the "Epstein Files" or the "Files").

2. The Epstein Files include information of great national significance, including information on President Trump's involvement (or lack thereof) with Epstein and Maxwell in relation to the sex crimes they perpetrated.

3. Despite months of fanfare and promises to release DOJ's investigative files, DOJ in July unceremoniously announced that it would not be releasing any of the files.

4. The outrageous nature of the alleged activity engaged in by Epstein and the failure of DOJ to release the Files has caused the public much outrage and alarm.

5. The contents of the files also may elucidate any impact that mentions of President Trump in the Epstein Files may have had on DOJ's decision not to release these documents to the public.

6. On July 22, 2025, Plaintiff filed Freedom of Information Act ("FOIA") requests with the Criminal Division ("CRM") of DOJ, Executive Office of the U.S. Attorneys ("EOUSA"), and Federal Bureau of Investigation ("FBI") seeking these files in order to provide the public information on actual or alleged federal government activity.

7. On July 28, 2025, Plaintiff filed additional FOIA requests with CRM, EOUSA, FBI, the Office of the Attorney General ("OAG"), and the Office of the Deputy Attorney General ("ODAG") seeking information related to communications and records concerning Epstein and Maxwell and actions taken by the Department of Justice to review and make decisions about whether to disseminate such files.

8. On August 6, 2025, Plaintiff filed FOIA requests with the Federal Bureau of Prisons ("BOP"), OAG, and ODAG seeking information related to communications and records concerning the transfer of Ghislaine Maxwell between places of imprisonment, along with records related to waiver of the BOP policy that convicted sex offenders such as Maxwell be housed in at least low-security-level institutions.

9. To date, CRM has not responded to either of DDF's requests to that office.

10. OAG and ODAG have not provided substantive responses to DDF's requests to those offices. DOJ's Office of Information Policy ("OIP") has estimated that it will take OAG and ODAG 650 days to respond to DDF's July 28 request.

11. EOUSA has not provided substantive responses to DDF's requests.

12. FBI has not provided substantive responses to DDF's requests.

13. BOP has not provided substantive responses to DDF's request.

14. While a limited number of files have been released since Plaintiff filed its FOIA requests, such files have been selectively released by members of political parties. Although the recently passed Epstein Files Transparency Act purports to compel DOJ to release the Epstein Files, this legislation 1) addresses only a limited scope of documents and 2) contains numerous justifications for withholding such documents. Accordingly, it is not clear that the documents requested by DDF will be released.

15. The public is entitled to review the entirety of these files, not just those deemed acceptable for release by members of dominant political parties. Under FOIA, Plaintiff is entitled to review all requested records that are not otherwise exempt from FOIA's disclosure requirements.

16. The purpose of FOIA is "to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." S. Rep. No. 813, 89th Cong., 1st Sess. 3 (1965). A goal of the statute is to ensure an "informed electorate," which was seen as "vital to the proper operation of a democracy." *Id.* at 2–3.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action pursuant to 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(E)(iii) and 28 U.S.C. §§ 1331, 2201, and 2202.

18. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C.§ 1391(e).

19. Because Defendant has failed to comply with the applicable time-limit provisions of FOIA, DDF is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and is now entitled to judicial review.

## PARTIES

20. Plaintiff DDF is a nonpartisan, non-profit section 501(c)(3) organization committed to defending and strengthening democracy while ensuring that all Americans can freely exercise their fundamental civil rights by defending the rule of law, fighting corruption, and protecting elections. DDF strategically uses FOIA and public records requests to gather and analyze information to shine a light on abuses of power. DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about information of national significance. The organization is incorporated under the laws of the District of Columbia.

21. Defendant Department of Justice is a department of the Executive Branch of the United States Government, and an "agency" of the federal government within the meaning of 5 U.S.C. § 552(f)(1). DOJ is headquartered in Washington, D.C. DOJ has possession, custody, and control of records that DDF seeks.

## BACKGROUND

### *President Trump and the Epstein Files*

22. The "Epstein Files" refers to the thousands of pages of documents related to two criminal investigations into sex trafficking by financier Jeffrey Epstein.[1] The content of the Files, including the people mentioned in them and whether they should be released to the public, has

---

[1] Tracy Grant, *The Epstein Files: A Timeline*, Britannica (Aug. 5, 2025), https://www.britannica.com/topic/The-Epstein-Files-A-Timeline.

been a hotly contested topic of public conversation since Epstein's death in 2019.[2] Of particular interest has been the prospect of a "client list" naming Epstein's associates who were also involved in sex trafficking.[3]

23. In the run-up to the 2024 election, President Trump announced that he would release documents related to Epstein's investigation and his client list,[4] making repeated promises over the years to release the Epstein files.[5]

24. Following President Trump's inauguration, DOJ reportedly undertook a major review of the Epstein Files, with the apparent goal of releasing information about Epstein's associates.[6]

25. However, and despite Attorney General Bondi's assertion[7] in February 2025 that she had the list of Epstein's clients on her desk, on July 7, 2025, the FBI, a component of DOJ, issued a memo stating that their "systematic review" of the Epstein Files "revealed no incriminating 'client list.'"[8] The FBI Memo also asserted that "no credible evidence found that Epstein blackmailed prominent individuals as part of his actions." *Id.*

---

[2] *Id.*

[3] Tom Geoghegan and James FitzGerald, *What do we know about the Epstein Files?*, BBC (Aug. 19, 2025), https://www.bbc.com/news/articles/c20r07dg6kro.

[4] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (July 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[5] Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (July 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[6] *Memo on Epstein Investigation*, U.S. Department of Justice, Fed. Bureau of Investigation, (July 7, 2025), https://www.justice.gov/opa/media/1407001/dl?inline.

[7] Haliey Chi-Sing, *Bondi says Epstein client list 'sitting on my desk right now,' and is reviewing JFK, MLK files,* Fox News (Feb. 21, 2025), https://www.foxnews.com/politics/bondi-says-epstein-client-list-sitting-my-desk-right-now-reviewing-jfk-mlk-files.

[8] Memo on Epstein Investigation, U.S. Department of Justice, FBI (July 7, 2025), at 1, https://www.justice.gov/opa/media/1407001/dl?inline ("FBI Memo").

26. The FBI concluded that no further disclosures from the Epstein Files were "appropriate or warranted," in part due to their containing sensitive information relating to Epstein's many victims, instead, sharing only "enhanced" footage of the area surrounding Epstein's cell at the time of his death. *Id.* at 1–2.

27. It was recently reported that Attorney General Bondi orchestrated a frenzied, urgent review of the Epstein Files in May 2025, months after stating she had the Epstein client list on her desk. Attorney General Bondi reportedly tasked nearly 1,000 FBI officials—during 24-hour shifts—with combing through tens of thousands of pages of documents related to Epstein and "flag[ging]" any mentions of the President.[9] Attorney General Bondi also reportedly personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10].

28. On November 12, 2025, Democrats on the House Oversight Committee released a subset of emails obtained through their investigation of Jeffrey Epstein.[11] The released emails suggest that Donald Trump was aware of Epstein's sexual misconduct.[12]

---

[9] *See, e.g.*, Alexander Bolton, *Durbin: FBI agents were told to 'flag' Epstein records that mentioned Trump*, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/. *See also* Letter from Senator Richard Durbin to Attorney General Bondi (July 18, 2025), https://www.judiciary.senate.gov/imo/media/doc/2025-07-18%20RJD%20Letter%20to%20AG%20Bondi%20re%20Epstein.pdf.

[10] Maggie Haberman and Glenn Thrush, *Attorney General Told Trump His Name Appeared in Epstein Files*, The New York Times (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-epstein-files-named.html.

[11] Kaitlan Collins, Epstein Mentioned Trump Multiple Times in Private Emails, New Release Shows, CNN (Nov. 12, 2025), https://www.cnn.com/2025/11/12/politics/epstein-trump-emails-oversight-committee.

[12] *Id.*

29. It was recently reported that the Department of Justice possesses additional files related to its investigation of Epstein.[13] These files include photographs and videos related to the investigation Epstein and may implicate public figures, including President Trump.[14]

***DDF'S First FOIA Request to DOJ's Criminal Division***

30. On July 22, 2025, DDF sent a FOIA request to the Criminal Division of DOJ seeking to uncover the requested information in furtherance of the public interest. A true and correct copy of the request is attached as Exhibit A.[15]

31. Specifically, DDF requested the following records:

> 1. All records relating to the Department of Justice's investigation(s) of Jeffrey Epstein that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, "Mar-a-Lago," or any code name, code word, pseudonym, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Jeffrey Epstein.
>
> 2. All records relating to the Department of Justice's investigation(s) of Ghislaine Maxwell that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, "Mar-a-Lago," or any code name, code word, pseudonym, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Ghislaine Maxwell.

Exhibit A at 1.

32. DDF requested a fee waiver under 5 U.S.C. § 552(a)(4)(A) and 28 C.F.R. § 16.10(k). Exhibit A at 2–4.

---

[13] Epstein Victims' Attorney Reacts to Never Before Seen Emails: "Not Surprised", MS NOW (Nov. 12, 2025) (video clip), https://www.ms.now/ana-cabrera-reports/watch/epstein-victims-attorney-reacts-to-never-before-seen-emails-not-surprised-251869765543

[14] *Id.*

[15] Letter from Norm Eisen, Executive Chair and Founder, et al., to Christina Butler, Chief, FOIA/PA Unit, Criminal Division, DOJ (July 22, 2025) ("Exhibit A").

33. DDF also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and DOJ's implementing regulations at 28 C.F.R. § 16.5(e)(1)(ii), (iv), all of which require DOJ to inform the requester of whether expedited processing will be granted within ten days of receiving the request. *Id.* at 4–7. Pursuant to FOIA and DOJ requirements, 5 U.S.C. § 552(a)(6)(E)(vi), 28 C.F.R. § 16.5(e)(3), DDF included the requisite, certified statement articulating the basis for its request for expedited processing. Exhibit A at 4–7.

34. Although DOJ's Office of Public Affairs ("OPA") was copied on the original request, out of an abundance of caution, on July 23, 2025, DDF contacted OPA via its online FOIA portal, referencing the FOIA request to CRM and reiterating the request in support of its fee waiver and expedited processing requests. A true and correct copy of the confirmation of that submission is attached as Exhibit B.[16]

35. On July 24, 2025, DDF emailed CRM's FOIA Officer requesting confirmation of receipt of the FOIA request, as well as a tracking number. A true and correct copy of that email is attached as Exhibit C.[17]

36. On July 24, 2025, CRM's FOIA/PA Unit sent DDF an email confirming receipt of the July 22, 2025 FOIA request and providing a tracking number of CRM-302309194. A true and correct copy of that email is attached as Exhibit D.[18]

37. FOIA requires federal agencies to respond to a request for records within twenty business days after receiving a request, 5 U.S.C. § 552(a)(6)(A)(i), in the absence of specified

---

[16] FOIA.gov Confirmation (July 23, 2025) ("Exhibit B").
[17] Email from Gabriel Lezra, Senior Policy Strategist, DFF to CRM FOIA Officer (July 24, 2025) ("Exhibit C").
[18] Email from CRM FOIA/PA Unit to Gabriel Lezra, Senior Policy Strategist, DDF (July 24, 2025) ("Exhibit D").

"unusual circumstances," *id.* § 552(a)(6)(B). Agencies' responses to FOIA requests must inform the requester whether the agency will comply with such request and the reasons therefore. *Id.*

38. On October 10, 2025, DDF sent a letter to CRM to follow up on DDF's request for expedited processing. A true and correct copy of this letter is attached as Exhibit E.[19]

39. To date, DDF has not received any response from CRM indicating whether CRM will comply with the request or the timeframe for any CRM response, nor has CRM alleged any "unusual circumstances" per 5 U.S.C. § 552(a)(6)(B) that would require an extension of the original August 19, 2025 deadline. CRM, OPA, or any other DOJ office have also not informed DDF of whether it will be granted expedited processing.

40. To date, CRM has failed to produce a single record in response to Plaintiff's request.

***DDF'S Second FOIA Request to DOJ's Criminal Division***

41. On July 28, 2025, DDF sent a FOIA request to CRM seeking to uncover the requested information in furtherance of the public interest. A true and correct copy of the request is attached as Exhibit F.[20]

42. Specifically, DDF requested the following records:

> 1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to,

---

[19] Letter from Norm Eisen, Executive Chair and Founder, et al., to Christina Butler, Chief, FOIA/PA Unit, Criminal Division, DOJ (October 10, 2025) ("Exhibit E").
[20] Letter from Norm Eisen, Executive Chair and Founder, et al., to Christina Butler, Chief, FOIA/PA Unit, Criminal Division, DOJ (July 28, 2025) ("Exhibit F").

> meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.
>
> 2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.
>
> 3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.
>
> 4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Exhibit F at 1–2.

43. DDF requested a fee waiver under 5 U.S.C. § 552(a)(4)(A) and 28 C.F.R. § 16.10(k). Exhibit F at 2–3.

44. DDF also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and DOJ's implementing regulations at 28 C.F.R. § 16.5(e)(1)(ii), (iv), all of which require DOJ to inform the requester of whether expedited processing will be granted within ten days of receiving the request. Exhibit F at 5–7; 28 C.F.R. § 16.5(4). Pursuant to FOIA and DOJ requirements, 5

U.S.C. § 552(a)(6)(E)(vi), 28 C.F.R. § 16.5(e)(3), DDF included the requisite, certified statement articulating the basis for its request for expedited processing. Exhibit F at 5–7.

45. On July 28, 2025, DDF received confirmation that its request was being sent to the Criminal Division. A true and correct copy of this confirmation is attached as Exhibit G.[21]

46. FOIA requires federal agencies to respond to a request for records within twenty business days after receiving a request, 5 U.S.C. § 552(a)(6)(A)(i), in the absence of specified "unusual circumstances," *id.* § 552(a)(6)(B). Agencies' responses to FOIA requests must inform the requester whether the agency will comply with such request and the reasons therefore. *Id.*

47. On October 10, 2025, DDF sent a letter to CRM to follow up on DDF's request for expedited processing. Exhibit E.

48. To date, CRM has not produced a single record in response to Plaintiff's request, nor has CRM informed DDF of whether it will be granted expedited processing and a fee waiver.

***DDF's First FOIA Request to OAG and ODAG***

49. On July 28, 2025, DDF sent a FOIA request to OAG and ODAG seeking to uncover the requested information in furtherance of the public interest. A true and correct copy of the request is attached as Exhibit H.[22]

50. Specifically, DDF requested the following records:

> 1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any

---

[21] FOIA.gov Confirmation (July 28, 2025) ("Exhibit G").

[22] Letter from Norm Eisen, Executive Chair and Founder, et al., to Andrew Fiorillo, Acting Chief, Initial Request Staff, Office of the Attorney General and Office of the Deputy Attorney General (July 28, 2025) ("Exhibit H").

Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs

Exhibit H at 1–2.

51. DDF requested a fee waiver under 5 U.S.C. § 552(a)(4)(A) and 28 C.F.R. § 16.10(k). Exhibit H at 2–5.

52. DDF also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and DOJ's implementing regulations at 28 C.F.R. § 16.5(e)(1)(ii), (iv), all of which require OAG/ODAG to inform the requester of whether expedited processing will be granted within ten days of receiving the request. Exhibit H at 5–7. Pursuant to FOIA and DOJ requirements, 5 U.S.C. § 552(a)(6)(E)(vi), 28 C.F.R. § 16.5(e)(3), DDF included the requisite, certified statement articulating the basis for its request for expedited processing. Exhibit H at 5–8.

53. On July 28, 2025, DDF concurrently submitted a request to OPA of DOJ seeking OPA's approval of expedited processing pursuant to 28 C.F.R. § 16.5(e)(1)(ii), (iv). A true and correct copy of this request is attached as Exhibit I.[23]

54. On August 7, 2025, OIP's Acting Chief sent DDF a letter confirming receipt of the July 28, 2025 FOIA request, and denying DDF's request for expedited processing under 28 C.F.R. § 16.5(e)(1)(ii). A true and correct copy of that letter is attached as Exhibit J.[24]

55. OIP informed DDF that it forwarded DDF's request for expedited processing under 28 C.F.R. § 16.5(e)(1)(iv) to the Director of Public Affairs. Exhibit J at 1.

56. OIP informed DDF that DDF's request fell within "unusual circumstances" pursuant to U.S.C. § 552(a)(6)(B)(i)–(iii) and would need to extend the time limit to respond to DDF's request beyond the ten additional days provided by the statute. Exhibit J at 1.

57. OIP assigned DDF's request to the complex track and suggested that DDF narrow the scope of their request to try to speed up OIP's response process. Exhibit J at 1–2.

[23] Letter from Norm Eisen, Executive Chair and Founder, et al., to Director, Office of Public Affairs, DOJ (July 28, 2025) ("Exhibit I").
[24] Letter from Andrew Fiorillo, Acting Chief, Office of Information Policy DOJ, to Gabriel Lezra, Senior Policy Strategist, DDF (Aug. 7, 2025) ("Exhibit J").

58. On September 8, 2025, DDF emailed OIP requesting time to discuss potentially narrowing the scope of the request. A true and correct copy of that email is attached as Exhibit K.[25]

59. On September 17, 2025, DDF and OIP had a phone call to discuss the FOIA request to OAG and ODAG. In that call, OIP informed DDF that OAG and ODAG had received numerous similar requests for information related to Epstein and Maxwell and that a search is being conducted for information responsive to all of those requests. For this reason, narrowing DDF's request would not change the search that OAG and ODAG are conducting since they are simultaneously searching for information responsive to numerous requests and DDF's request is no broader than other requests that have been sent. Exhibit R at 2 ¶5. Later that day, OIP emailed DDF memorializing their telephone conversation. OIP estimated that the average response for a complex request like DDF's is 650 days. OIP also informed DDF that they should expect to receive a letter addressing the Office of Public Affairs' expedition determination under 28 C.F.R. § 16.5(e)(1)(iv). A true and correct copy of that email is attached as Exhibit L.[26]

60. To date, OIP (on behalf of OAG and ODAG) has not produced a single record in response to Plaintiff's request, nor has any DOJ office informed DDF of whether it will be granted a fee waiver.

61. FOIA requires federal agencies to respond to a request for records within twenty business days after receiving a request, 5 U.S.C. § 552(a)(6)(A)(i), and up to an additional ten days when there are specified "unusual circumstances." *Id.* § 552(a)(6)(B)(i). Agencies' responses to

---

[25] Email from Taryn Wilgus Null, Senior Counsel, DDF to OIP FOIA Officer (Sep. 8, 2025) ("Exhibit K").

[26] Email from Eric Hotchkiss, Senior Government Information Specialist & Acting FOIA Public Liaison, DOJ to Taryn Wilgus Null, Senior Counsel, DDF (Sep. 17, 2025) ("Exhibit L").

FOIA requests must inform the requester whether the agency will comply with such a request and the reasons therefore. *Id.* § 552(a)(6)(A)(i)(I).

62. On October 10, 2025, DDF sent a letter to OAG and ODAG to follow up on its request to expedite processing of DDF's request. A true and correct copy of this letter is attached as Exhibit M.[27]

63. To date, the Director of Public Affairs has not issued an expedited processing decision to Plaintiff under 28 C.F.R. § 16.5(e)(1)(iv).

64. To date, OAG, ODAG, and OIP have not issued a fee waiver decision to Plaintiff.

***DDF's First FOIA Request to EOUSA***

65. On July 22, 2025, DDF sent a FOIA request to EOUSA seeking to uncover the requested information in furtherance of the public interest. A true and correct copy of the request is attached as Exhibit N.[28]

66. Specifically, DDF requested the following records:

1. All records relating to the Department of Justice's investigation(s) of Jeffrey Epstein that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, "Mar-a-Lago," or any code name, code word, pseudonym, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Jeffrey Epstein.

2. All records relating to the Department of Justice's investigation(s) of Ghislaine Maxwell that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, "Mar-a-Lago," or any code name, code word, pseudonym, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Ghislaine Maxwell.

---

[27] Letter from Norm Eisen, Executive Chair and Founder, et al., to Andrew Fiorillo, Acting Chief, Initial Request Staff, Office of the Attorney General and Office of the Deputy Attorney General (October 10, 2025) ("Exhibit M").

[28] Letter from Norm Eisen, Executive Chair and Founder, et al., to Kevin Krebs, Assistant Director, FOIA/Privacy Unit, EOUSA (July 22, 2025) ("Exhibit N").

Exhibit N at 1.

67. DDF requested a fee waiver under 5 U.S.C. § 552(a)(4)(A) and 28 C.F.R. § 16.10(k). Exhibit N at 2–4.

68. DDF also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and DOJ's implementing regulations at 28 C.F.R. § 16.5(e)(1)(ii), (iv), all of which require DOJ to inform the requester of whether expedited processing will be granted within ten days of receiving the request. Exhibit N at 4–7; 28 C.F.R. § 16.5(4). Pursuant to FOIA and DOJ requirements, 5 U.S.C. § 552(a)(6)(E)(vi), 28 C.F.R. § 16.5(e)(3), DDF included the requisite, certified statement articulating the basis for its request for expedited processing. Exhibit N at 5–7.

69. On July 22, 2025, DDF received confirmation that its request was being sent to EOUSA. A true and correct copy of this confirmation is attached as Exhibit O.[29] On the same day, EOUSA's Assistant Director sent DDF a letter confirming receipt of the July 22, 2025 FOIA request. A true and correct copy of that letter is attached as Exhibit P.[30]

70. FOIA requires federal agencies to respond to a request for records within twenty business days after receiving a request, 5 U.S.C. § 552(a)(6)(A)(i), in the absence of specified "unusual circumstances," *id.* § 552(a)(6)(B). Agencies' responses to FOIA requests must inform the requester whether the agency will comply with such request and the reasons therefore. *Id.*

71. EOUSA informed DDF that DDF's request fell within "unusual circumstances" pursuant to 5 U.S.C. § 552(a)(6)(B)(i)–(iii) and would need to extend the time limit to respond to DDF's request beyond the ten additional days provided by the statute. Exhibit P at 1.

---

[29] FOIA.gov Confirmation (July 22, 2025) ("Exhibit N").
[30] Letter from Kevin Krebs, Assistant Director, EOUSA to Gabriel Lezra, Senior Policy Strategist, DDF (July 22, 2025) ("Exhibit P").

72. EOUSA also informed DDF that it assigned DDF's request to the complex track, rather than the simple or expedited tracks. Exhibit P at 1.

73. EOUSA suggested that DDF modify and narrow the scope of its request to "avoid delay." Exhibit P at 1–2.

74. On July 25, DDF responded to EOUSA's response, again requesting that EOUSA grant both DDF's request to expedite processing and grant a fee waiver. A true and correct copy of this letter is attached as Exhibit Q.[31]

75. On September 8, 2025, DDF called and left a voicemail with the FOIA public liaison, inviting a conversation about discussing the scope of DDF's request. Exhibit R at 2 ¶ 4. To date, DDF has not received a response to this call. *Id.*

76. To date, EOUSA has failed to produce a single record in response to Plaintiff's request.

77. To date, EOUSA has not issued an expedited processing decision to Plaintiff under 28 C.F.R. § 16.5(e)(1)(iv).

78. To date, EOUSA has not issued a fee waiver decision to Plaintiff.

***DDF's Second FOIA Request to EOUSA***

79. On July 28, 2025, DDF submitted a request to EOUSA seeking to uncover the requested information in furtherance of the public interest. A true and correct copy of the request is attached as Exhibit S.[32]

80. Specifically, DDF requested the following records:

---

[31] Gabriel Lezra, Senior Policy Strategist, DDF, to Kevin Krebs, Assistant Director, Freedom of Information and Privacy Staff, EOUSA (July 25, 2025) ("Exhibit Q").

[32] Letter from Norm Eisen, Executive Chair and Founder, et al., to Kevin Krebs, Assistant Director, FOIA/Privacy Unit, EOUSA (July 28, 2025) ("Exhibit S").

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Exhibit S at 1–2.

81. DDF requested a fee waiver under 5 U.S.C. § 552(a)(4)(A) and 28 C.F.R. § 16.10(k). Exhibit S at 2–5.

82. DDF also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and DOJ's implementing regulations at 28 C.F.R. § 16.5(e)(1)(ii), (iv), all of which require OAG/ODAG to inform the requester of whether expedited processing will be granted within ten days of receiving the request. Exhibit S at 5–7. Pursuant to FOIA and DOJ requirements, 5 U.S.C. § 552(a)(6)(E)(vi), 28 C.F.R. § 16.5(e)(3), DDF included the requisite, certified statement articulating the basis for its request for expedited processing. Exhibit S at 5–8.

83. On July 28, DDF received confirmation from FOIA.gov that DDF's request was being sent to EOUSA. A true and correct copy of this confirmation is attached as Exhibit T.[33]

84. FOIA requires federal agencies to respond to a request for records within twenty business days after receiving a request, 5 U.S.C. § 552(a)(6)(A)(i), in the absence of specified "unusual circumstances," *id.* § 552(a)(6)(B). Agencies' responses to FOIA requests must inform the requester whether the agency will comply with such request and the reasons therefore. *Id.*

85. On July 28, 2025, EOUSA sent DDF a letter confirming receipt of DDF's FOIA request. A true and correct copy of this letter is attached as Exhibit U.[34]

86. EOUSA informed DDF that DDF "requested information which is not information maintained by EOUSA or by the individual United States Attorney's Offices, but is

[33] FOIA.gov Confirmation (July 28, 2025) ("Exhibit T").
[34] Letter from Kevin Krebs, Assistant Director, EOUSA to Gabriel Lezra, Senior Policy Strategist, DDF (July 28, 2025) ("Exhibit U").

likely maintained by a separate component of the DOJ." Exhibit U at 1. EOUSA informed DDF that EOUSA was routing a copy of DDF's request to OIP and FBI. Exhibit U at 1–2.

87. On July 29, 2025, EOUSA sent DDF another letter confirming receipt of DDF's FOIA request. A true and correct copy of this letter is attached as Exhibit V.[35]

88. On July 29, 2025, EOUSA informed DDF that DDF's request fell within "unusual circumstances" to 5 U.S.C. § 552(a)(6)(B)(i)–(iii) and would need to extend the time limit to respond to DDF's request beyond the ten additional days provided by the statute. Exhibit V at 1.

89. EOUSA informed DDF that it assigned DDF's request to the complex track, rather than the simple or expedited tracks. Exhibit V at 1.

90. EOUSA suggested that DDF narrow the scope of its request to try to speed up EOUSA's response process. Exhibit V at 1–2.

91. On August 7, 2025, DDF submitted an appeal to OIP. A true and accurate copy of the appeal is attached as Exhibit W.[36]

92. On September 3, 2025, OIP sent a letter to DDF indicating that it had remanded DDF's request to EOUSA for further processing. A true and correct copy of this letter is attached as Exhibit X.[37]

93. On September 8, 2025, DDF contacted and left a voicemail for the FOIA public liaison, inviting a conversation about discussing the scope of DDF's request. Exhibit R at 2 ¶ 4. To date, DDF has not received a response to this call. *Id.*

---

[35] Letter from Kevin Krebs, Assistant Director, EOUSA to Norm Eisen, Executive Chair and Founder, DDF (July 29, 2025) ("Exhibit V").
[36] Letter from Gabriel Lezra, Senior Strategist, DDF to Director of OIP (Aug. 7, 2025) ("Exhibit W").
[37] Letter from Christina Troiani, Chief, Administrative Appeals Staff, OIP to Gabriel Lezra, Senior Strategist, DDF (Sep. 3, 2025) ("Exhibit X").

94. To date, EOUSA has not responded to DDF to discuss narrowing the scope of DDF's request.

95. To date, EOUSA has failed to produce a single record in response to Plaintiff's request.

96. To date, EOUSA has not issued an expedited processing decision to Plaintiff under 28 C.F.R. § 16.5(e)(1)(ii), (iv).

97. To date, EOUSA has not issued a fee waiver decision to Plaintiff.

***DDF's First FOIA Request to FBI***

98. On July 22, 2025, DDF sent a FOIA request to FBI seeking to uncover information in furtherance of the public interest. A true and correct copy of the request is attached as Exhibit Y.[38]

99. Specifically, DDF requested the following records:

1. All records relating to the Department of Justice's investigation(s) of Jeffrey Epstein that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, "Mar-a-Lago," or any code name, code word, pseudonym, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Jeffrey Epstein.

2. All records relating to the Department of Justice's investigation(s) of Ghislaine Maxwell that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, "Mar-a-Lago," or any code name, code word, pseudonym, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Ghislaine Maxwell.

100. DDF requested a fee waiver under 5 U.S.C. § 552(a)(4)(A) and 28 C.F.R. § 16.10(k). Exhibit Y at 2–5.

---

[38] Letter from Norman Eisen, Executive Chair and Founder, et al., to Michael G. Seidel, Section Chief, Record/Information Dissemination Section, FBI (July 22, 2025) ("Exhibit Y").

101. DDF also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and DOJ's implementing regulations at 28 C.F.R. § 16.5(e)(1)(ii), (iv), all of which require FBI to inform the requester of whether expedited processing will be granted within ten days of receiving the request. Exhibit Y at 4–7. Pursuant to FOIA and DOJ requirements, 5 U.S.C. § 552(a)(6)(E)(vi), 28 C.F.R. § 16.5(e)(3), DDF included the requisite, certified statement articulating the basis for its request for expedited processing. Exhibit Y at 4–7.

102. On July 22, 2025, DDF received confirmation from FBI indicating that DDF's request was being sent to FBI. A true and correct copy of this confirmation is attached as Exhibit Z.[39]

103. On July 31, 2025, FBI sent a letter to DDF acknowledging receipt of DDF's request. A true and correct copy of this letter is attached as Exhibit AA.[40]

104. On July 31, 2025, FBI sent a letter to DDF indicating that "unusual circumstances" applied to the processing of DDF's request. A true and correct copy of this request is attached as Exhibit AB.[41]

105. FBI informed DDF that DDF could contact FBI to discuss reducing the scope of DDF's request, thereby accelerating the processing of DDF's request. Exhibit AB at 1.

106. On September 3, 2025, DDF emailed FBI to request a meeting to discuss potentially reducing the scope of DDF's request. A true and correct copy of this email is attached as Exhibit AC.[42]

---

[39] FOIA.gov Submission Confirmation (July 22, 2025) ("Exhibit Z").
[40] Letter from FBI Record/Information Dissemination Section, Information Management Division to Gabriel Lezra, Senior Strategist, DDF (July 31, 2025) ("Exhibit AA").
[41] Letter from FBI Record/Information Dissemination Section, Information Management Division to Gabriel Lezra, Senior Strategist, DDF (July 31, 2025) ("Exhibit AB").
[42] Email from Taryn Wilgus Null, Senior Counsel, DDF, to foipaqusetions@fbi.gov, FBI (Sep. 3, 2025) ("Exhibit AC").

107. On September 3, 2025, FBI emailed DDF informing DDF that their request would be forwarded to the FBI's negotiation team and an FBI representative would contact DDF. A true and correct copy of this email is included as Exhibit AD.[43]

108. To date, FBI has not contacted DDF further to discuss the scope of DDF's request.

109. To date, FBI has failed to produce a single record in response to Plaintiff's request.

110. To date, FBI has not issued an expedited processing decision to Plaintiff under 28 C.F.R. § 16.5(e)(1)(ii), (iv).

111. To date, FBI has not issued a fee waiver decision to Plaintiff.

***DDF's Second FOIA Request to FBI***

112. On July 28, 2025, DDF sent a FOIA request to FBI seeking to uncover the requested information in furtherance of public interest. A true and correct copy of this request is attached as Exhibit AE.[44]

113. Specifically, DDF requested the following records:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency

---

[43] Email from Foipaquestions@fbi.gov to Taryn Wilgus Null, Senior Counsel, DDF (Sep. 3, 2025) ("Exhibit AD").
[44] Letter from Norman Eisen, Executive Chair and Founder, et al., to Michael G. Seidel, Section Chief, Record/Information Dissemination Section, FBI (July 28, 2025) ("Exhibit AE").

personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Exhibit AE at 1–2.

114. DDF requested a fee waiver under 5 U.S.C. § 552(a)(4)(A) and 28 C.F.R. § 16.10(k). Exhibit AE at 2–5.

115. DDF also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and DOJ's implementing regulations at 28 C.F.R. § 16.5(e)(1)(ii), (iv), all of which require FBI to inform the requester of whether expedited processing will be granted within ten days of receiving the request. Exhibit AE at 5–7. Pursuant to FOIA and DOJ requirements, 5 U.S.C.

§ 552(a)(6)(E)(vi), 28 C.F.R. § 16.5(e)(3), DDF included the requisite, certified statement articulating the basis for its request for expedited processing. Exhibit AE at 5–8.

116. On July 28, 2025, DDF received confirmation through the FOIA Portal, confirming that DDF's request was being sent to FBI. A true and correct copy of this confirmation is attached as Exhibit AF.[45]

117. On August 12, 2025, FBI sent DDF a letter acknowledging receipt of DDF's request. A true and correct copy of this letter is attached as Exhibit AG.[46]

118. On August 12, 2025, FBI informed DDF that DDF's request fell within "unusual circumstances" pursuant to 5 U.S.C. § 552(a)(6)(B)(i)–(iii) and would need to extend the time limit to respond to DDF's request beyond the ten additional days provided by the statute. A true and correct copy of that letter is attached as Exhibit AH.[47]

119. FBI informed DDF that DDF could reduce the scope of its request, thereby accelerating FBI's response process. Exhibit AG at 1.

120. On September 3, 2025, DDF emailed FBI about narrowing the scope of the request. Exhibit AC at 1.

121. On September 3, 2025, FBI responded to DDF's email, indicating that a representative from the FBI would contact DDF to discuss narrowing the scope of DDF's request. Exhibit AD at 1.

122. To date, FBI has not contacted DDF further about narrowing the scope of DDF's request.

---

[45] FOIA.gov Submission Confirmation (July 28, 2025) ("Exhibit AF").
[46] Letter from Record/Information Dissemination Section, Information Management Division to Gabriel Lezra, Senior Strategist, DDF (Aug. 12, 2025) ("Exhibit AG").
[47] Letter from Record/Information Dissemination Section, Information Management Division to Gabriel Lezra, Senior Strategist, DDF (Aug. 12, 2025) ("Exhibit AH").

123. To date, FBI has failed to produce a single record in response to Plaintiff's request.

124. To date, FBI has not issued an expedited processing decision to Plaintiff under 28 C.F.R. § 16.5(e)(1)(ii), (iv).

125. To date, FBI has not issued a fee waiver decision to Plaintiff.

***DDF's Second FOIA Request to OAG/ODAG***

126. On August 6, 2025, DDF sent a FOIA request to the OAG and ODAG seeking to uncover information in furtherance of the public interest. A true and correct copy of these requests are attached as Exhibit AI and Exhibit AJ, respectively.[48]

127. Specifically, DDF requested the following records:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, concerning the transfer of Ghislaine Maxwell to Federal Prison Camp (FPC) Bryan, or her redesignation of the place of imprisonment to FPC Bryan. This includes any communication to or from, or determinations made by, Attorney General Pam Bondi, Deputy Attorney General Todd Blanche, Federal Bureau of Prisons Director William K. Marshall III, or any employee or contractor of the Department of Justice, including the Bureau of Prisons and the Bureau's Designation Sentence Computation Center, concerning Ms. Maxwell's transfer or redesignation of place of imprisonment.

2. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, including copies of any determination, and any supporting documentation forming the basis of any determination, made by the Department of Justice, including the Bureau of Prisons, concerning waiver of the Bureau of Prisons policy that Ghislaine

[48] Letter from Norman Eisen, Executive Chair and Founder, et al., to Andrew Fiorillo, Acting Chief, Initial Request Staff, U.S. Department of Justice, Office of the Attorney General (Aug. 6, 2025) ("Exhibit AI")); Letter from Norman Eisen, Executive Chair and Founder, et al., to Andrew Fiorillo, Acting Chief, Initial Request Staff, U.S. Department of Justice, Office of the Deputy Attorney General (Aug. 6, 2025) ("Exhibit AJ")

> Maxwell, as a convicted sex offender, be housed in at least a Low security level institution.

Exhibit AI at 1–2; Exhibit AJ at 1–2.

128. DDF requested a fee waiver under 5 U.S.C. § 552(a)(4)(A) and 28 C.F.R. § 16.10(k). Exhibit AI 2–5; Exhibit AJ at 2–5.

129. DDF also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and DOJ's implementing regulations at 28 C.F.R. § 16.5(e)(1)(ii), (iv), all of which require OAG/ODAG to inform the requester of whether expedited processing will be granted within ten days of receiving the request. Exhibit AI at 5–7; Exhibit AJ at 5–7. Pursuant to FOIA and DOJ requirements, 5 U.S.C. § 552(a)(6)(E)(vi), 28 C.F.R. § 16.5(e)(3), DDF included the requisite, certified statement articulating the basis for its request for expedited processing. Exhibit AI at 5–8; Exhibit AJ at 5–8.

130. On August 6, 2025, DDF concurrently submitted a request to OPA of DOJ seeking OPA's approval of expedited processing pursuant to 28 C.F.R. § 16.5(e)(1)(ii), (iv). A true and correct copy of this request is attached as Exhibit AK.[49]

131. On August 15, 2025, OIP's Acting Chief sent DDF a letter confirming receipt of the August 6, 2025 FOIA request and denying DDF's request for expedited processing under 28 C.F.R. § 16.5(e)(1)(ii). A true and correct copy of that letter is attached as Exhibit AL.[50]

132. OIP informed DDF that it forwarded DDF's request for expedited processing under 28 C.F.R. § 16.5(e)(1)(iv) to the Director of Public Affairs. Exhibit AL at 1.

---

[49] Letter from Norman Eisen, Executive Chair and Founder, et al., to Andrew Fiorillo, Acting Chief, Initial Request Staff, U.S. Department of Justice, Office of Public Affairs (Aug. 6, 2025) ("Exhibit AK").

[50] Letter from Andrew D. Fiorillo, Acting Chief, Initial Request Staff, U.S. Department of Justice, Office of Public Affairs, to Gabriel Lezra, Senior Policy Strategist, DDF (Aug. 15, 2025) ("Exhibit AL").

133. OIP informed DDF that DDF's request fell within "unusual circumstances" pursuant to 5 U.S.C. § 552(a)(6)(B)(i)–(iii) and would need to extend the time limit to respond to DDF's request beyond the ten additional days provided by the statute. Exhibit AL at 1–2.

134. OIP assigned DDF's request to the complex track and suggested that DDF narrow the scope of their request to try to speed up OIP's response process. Exhibit AL at 1–2.

135. On November 14, DDF called and left a voicemail for the OIP Acting FOIA Public Liaison to check on the status of DDF's request. Exhibit R at 2 ¶ 7. OIP never responded to this voicemail. *Id.*

136. To date, OAG, ODAG, and OIP have failed to produce a single record in response to Plaintiff's request.

137. To date, OAG, ODAG, and OIP have not issued an expedited processing decision to Plaintiff under 28 C.F.R. § 16.5(e)(1)(iv).

138. To date, OAG, ODAG, and OIP have not issued a fee waiver decision to Plaintiff.

***DDF's Request to BOP***

139. On August 6, 2025, DDF sent a FOIA request to the Bureau of Prisons (BOP) seeking to uncover the requested information in furtherance of the public interest. A true and correct copy of the request is attached as Exhibit AM.[51]

140. Specifically, DDF requested the following records:

> 1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, concerning the transfer of Ghislaine Maxwell to Federal Prison Camp (FPC) Bryan, or her redesignation of the place of imprisonment to FPC Bryan. This includes

[51] Letter from Norman Eisen, Executive Chair and Founder, et al., to Eugene Baime, Supervisory Attorney, FOIA/Privacy Act Requests, Federal Bureau of Prisons (Aug. 6, 2025) ("Exhibit AM").

any communication to or from, or determinations made by, Attorney General Pam Bondi, Deputy Attorney General Todd Blanche, Federal Bureau of Prisons Director William K. Marshall III, or any employee or contractor of the Department of Justice, including the Bureau of Prisons and the Bureau's Designation Sentence Computation Center, concerning Ms. Maxwell's transfer or redesignation of place of imprisonment.

2. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, including copies of any determination, and any supporting documentation forming the basis of any determination, made by the Department of Justice, including the Bureau of Prisons, concerning waiver of the Bureau of Prisons policy that Ghislaine Maxwell, as a convicted sex offender, be housed in at least a Low security level institution.

Exhibit AM at 1–2.

141. DDF requested a fee waiver under 5 U.S.C. § 552(a)(4)(A) and 28 C.F.R. § 16.10(k). Exhibit AM at 2–5.

142. DDF also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and DOJ's implementing regulations at 28 C.F.R. § 16.5(e)(1)(ii), (iv), all of which require OAG/ODAG to inform the requester of whether expedited processing will be granted within ten days of receiving the request. Exhibit AM at 5–7. Pursuant to FOIA and DOJ requirements, 5 U.S.C. § 552(a)(6)(E)(vi), 28 C.F.R. § 16.5(e)(3), DDF included the requisite, certified statement articulating the basis for its request for expedited processing. Exhibit AM at 5–8.

143. On September 23, 2025, BOP emailed DDF confirming receipt of the August 6, 2025 FOIA request, informing DDF that DDF's request for expedited processing is under review. A true and correct copy of this email is attached as Exhibit AN.[52]

---

[52] Email from bop-ogc-efoia-s@bop.gov to Gabriel Lezra, Senior Policy Strategist, DDF (Sep. 23, 2025) ("Exhibit AN").

144. BOP also informed DDF that DDF's request fell within "unusual circumstances" pursuant to 5 U.S.C. § 552(a)(6)(B)(i)–(iii) and would need to extend the time limit to respond to DDF's request beyond the ten additional days provided by the statute. Exhibit AN at 1.

145. BOP provided DDF the standard language for a complex request. Exhibit AN at 1. BOP informed DDF that BOP expected processing the request to take approximately 9 months. Exhibit AN at 1.

146. BOP informed DDF that it could contact BOP to narrow the scope of DDF's request to speed up processing. Exhibit AN at 1.

147. On September 24, 2025, DDF contacted BOP to schedule a time to discuss DDF's request. A true and correct copy of this email is attached as Exhibit AO.[53]

148. On September 25, 2025, DDF had a call with the BOP FOIA office. Exhibit R at 2 ¶ 6. BOP informed DDF that DDF's request has been sent to the field office, which is the subject matter expert for this request and that they will not know how long a response will take until the records are sent back to the BOP FOIA office. *Id.* BOP also informed DDF that the request for expedited processing has to be adjudicated and that they will be in touch about it. *Id.*

149. On November 14, 2025, DDF emailed BOP to check on the status of DDF's request. A true and correct copy of this email is attached as Exhibit AP.[54] Later that day, DDF received an automated response from BOP stating that "FOIA/PA Section has received your email and will

[53] Email from Taryn Wilgus Null, Senior Counsel, DDF to bop-ogc-efoia-s@bop.gov (Sep. 24, 2025) ("Exhibit AO").
[54] Email from Taryn Wilgus Null, Senior Counsel, DDF to bop-ogc-efoia-s@bop.gov (Nov. 14, 2025) ("Exhibit AP").

respond to you as quickly as possible." Exhibit AQ at 1. A true and correct copy of this response is attached as Exhibit AQ.[55] DDF has not heard anything further from BOP.

150. To date, BOP has failed to produce a single record in response to Plaintiff's request.

151. To date, BOP has not issued an expedited processing decision to Plaintiff under 28 C.F.R. § 16.5(e)(1)(iv).

152. To date, BOP has not issued a fee waiver decision to Plaintiff.

***The National Significance of President Trump's Role in the Epstein Files***

153. The requested records relate to matters of significant national public interest concerning President Trump's interactions with Epstein and Maxwell in relation to the sex crimes that they perpetrated.

154. President Trump's interactions with Epstein and Maxwell, specifically any interactions that would merit mention in the Epstein files, raise serious ethical concerns regarding the federal government's decisions about whether to publicize the files. These concerns have been heightened by Deputy Attorney General Todd Blanche's recent meetings with Maxwell in jail to question her about information that might be contained in the requested files.[56] President Trump's relationship with Epstein and Maxwell is not fully understood, nor is the role that this relationship played in the federal government's decision not to publicize the files.

155. The requested records would inform the public of any involvement that President Trump had with Epstein and Maxwell that was sufficient to merit a mention in the files, including

[55] Email from bop-ogc-efoia-s@bop.gov to Taryn Wilgus Null, Senior Counsel, DDF (Nov. 14, 2025) ("Exhibit AQ").
[56] *See, e.g.*, Rebecca Beitsch, *Maxwell attorney after second meeting with DOJ: 'The truth will come out,'* The Hill (July 25, 2025), https://thehill.com/homenews/administration/5420763-ghislaine-maxwell-interview-blanche/.

information regarding any sex crimes that were perpetrated and any crimes or related events that may have taken place at his home in Mar-a-Lago.

156. The requested records would also shed light on the federal government's decision not to publicize the files despite President Trump's 2024 campaign promises to do so. Specifically, the requested records may reveal whether any mention of President Trump or Mar-a-Lago in the files may have affected President Trump's decision not to publicly release the Epstein files after repeatedly pledging to do so.

157. The contribution to the public's understanding that would be served by releasing the requested files is significant. The public has a right to know how the federal government is making decisions about whether and how to publicize information about serious crimes that were committed, and whether a friendship between the President and criminals Epstein and Maxwell has led the federal government to withhold information that would have otherwise been made public.

158. Given that DDF is a nonpartisan, non-profit section 501(c)(3) organization, the request is entirely for non-commercial purposes. DDF does not seek these records for the purposes of commercial, trade, or profit interests. DDF requests these records for educational purposes—the organization intends to study the records responsive to these requests and to share its results with the public through investigative analyses, publications, press releases, or other mechanisms, including on DDF's website at https://www.democracydefendersfund.org.

***Expedient Disclosure of the Requested Records is Warranted***

159. This is a case of obvious "urgency to inform the public concerning actual or alleged Federal Government activity," 5 U.S.C. § 522(6)(E)(v), 28 C.F.R. § 16.5(e)(1)(ii), that is a "matter

of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv).

160. The urgency is clear even under DOJ's own standards for expedited processing: the existence of numerous articles published on a given subject can be helpful in establishing the requirement that there by an "urgency to inform the public on the topic." 28 C.F.R. § 16.5(e)(3). Over the past eight months alone, hundreds of news articles on this Administration's handling of the Epstein files have been published.[57]

---

[57] *See, e.g.*, Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375726865112; Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html; Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, The New York Times (July 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html; Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (July 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?g aa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (July 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial Board, Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (July 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa at; *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025), https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (July 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//.

161. High-profile actions by public officials further underscore this urgency. On August 5, 2025, a bi-partisan coalition of House members issued a subpoena requesting the same documents DDF has requested.[58] In early August, the President assembled the Vice President and high-level DOJ officials behind closed doors to discuss how to strategically address allegations that he is named in the Epstein Files.[59] DOJ recently agreed to share with Congress documents from the Epstein investigation,[60] and has since released over 33,000 pages of materials.[61] It is speculated that this release only contains 1% of the documents DOJ maintains regarding Epstein, and many of the released files were claimed to already be in the public record.[62] Recently, the House Oversight Committee released several documents from Epstein's estate including a redacted copy of a 238-page "birthday book" given to Epstein in 2003 for his fiftieth birthday.[63] The book contains a letter allegedly signed by President Trump.[64] Victims of Epstein's crimes met with

---

[58] *Chairman Comer Subpoenas Bill and Hillary Clinton, Former U.S. Attorneys General and FBI Directors, and Records Related to Jeffrey Epstein*, Committee on Oversight and Government Reform (Aug. 5, 2025), https://oversight.house.gov/release/chairman-comer-subpoenas-bill-and-hillary-clinton-former-u-s-attorneys-general-and-fbi-directors-and-records-related-to-jeffrey-epstein/.

[59] Alayna Treene, Josh Campbell, Paula Reid, Kristen Holmes, & Kaitlan Collins, *Top Trump officials will discuss Epstein strategy at Wednesday dinner hosted by Vance*, CNN (Aug. 6, 2025), https://edition.cnn.com/2025/08/05/politics/trump-blanche-epstein-maxwell-vance-bondi-patel-meeting.

[60] Jeremy Roebuck, *DOJ to begin sharing Epstein files with Congress on Friday, House member says*, Washington Post (Aug. 19, 2025), https://www.washingtonpost.com/national-security/2025/08/18/epstein-maxwell-documents-house-committee-subpoena-justice-bondi/.

[61] Emily Brooks, *Republicans release first batch of Epstein files*, The Hill (Sep. 2, 2025), https://thehill.com/homenews/house/5482688-republicans-epstein-files-doj/.

[62] Francesca Chambers, Joey Garrison, Michael Loria & Josh Meyer, *First Bloc of Jeffery Epstein documents released by House; Epstein victims due to testify*, USA Today (Sep. 2, 2025), https://www.usatoday.com/story/news/politics/2025/09/02/house-oversight-committee-release-epstein-files/85946963007/.

[63] Stuart Lau & Sarah Smith, *What's in the book of birthday message to Epstein*, BBC (Sep. 9, 2025), https://www.bbc.com/news/articles/cr5q68j2169o.

[64] Caitlin Yilek & Kaia Hubbard, *House panel releases more records from Jeffrey Epstein's estate, including letter allegedly written by Trump*, CNN (Sep. 8, 2025),

lawmakers recently, and have called for the release of all of the files held by the Department.[65] While President Trump recently signed legislation requiring DOJ to release the Epstein Files within 30 days, obstacles to near-complete transparency remain.[66] The legislation contains exceptions for which DOJ can withhold documentation, including records that can jeopardize an active federal investigation.[67]

162. It is imperative that these records be released so that the public has an unadulterated and transparent understanding of what is in the files, and not just what high-level officials want the public to hear.

163. Indeed, recently, DOJ moved to unseal the grand jury transcripts from the Epstein indictment, citing "extensive public interest in the basis for the [FBI Memo's] conclusions" and noting that "transparency to the American public is of the utmost importance."[68]

164. DOJ's 2024 Annual FOIA Report indicates that CRM, as of the time of the report, had 1,024 pending FOIA requests, with the oldest outstanding dating back to 2015.[69] The Annual Report indicates that BOP had 5,974 pending FOIA requests with the oldest outstanding dating back to 2015, EOUSA had 1,753 pending FOIA requests with the oldest outstanding dating back

---

https://www.cbsnews.com/live-updates/jeffrey-epstein-donald-trump-birthday-message-house-oversight/.

[65] Stephen Groves, *Epstein survivors implore Congress to act as push for disclosure Builds*, AP News (Sep. 3, 2025), https://apnews.com/article/jeffrey-epstein-survivors-congress-trump-5d980740245f935c994a90b8ce824642.

[66] Luke Broadwater, *Trump Approves the Release of the Epstein Files, but Loopholes Remain*, N.Y. Times (Nov. 17, 2025), https://www.nytimes.com/2025/11/19/us/politics/trump-epstein-files-loopholes.html.

[67] *Id.*

[68] United States' Motion to Unseal Grand Jury Transcripts at 1, *United States v. Epstein*, No. 1:19-cr-490 (S.D.N.Y. July 18, 2025), ECF No. 61, https://www.courtlistener.com/docket/15887848/61/united-states-v-epstein/.

[69] DOJ, Annual Freedom of Information Act Report (2024) at 55, 59, https://www.justice.gov/oip/department-justice-annual-foia-report-fy-2024 ("Exhibit AR").

to 2017, and FBI had 6,804 pending FOIA requests with the oldest outstanding dating back to 2014. Exhibit AR at 55-56, 58, 60-61. The Annual Report also indicates that it can take CRM 2,194 days, or more than *six* years to respond to requests. *Id.* at 43. The numbers are similar for the other components – 1,690 for BOP, 1,928 for EOUSA, and 2,734 for FBI. *Id.*at 43–44.

165. Without expedited processing, DOJ's response to DDF's FOIA requests is likely to take years, significantly undermining, if not eliminating, the purpose and value of the response.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

166. To date, CRM has failed to notify DDF of any determination regarding its FOIA requests, including the scope of any responsive records the agency intends to produce or withhold and the reasons for any withholdings within the statutory timeline. CRM has also failed to produce the requested records or demonstrate that the requested records are lawfully exempt from production within the statutory timeline. Additionally, CRM has failed to respond to DDF's requests for fee waivers within the statutory timeline.

167. OAG and ODAG have estimated that they will take 650 days to respond to DDF's July 28, 2025 request. OIP denied DDF's requests for expedited processing under 28 C.F.R. § 16.5(e)(1)(ii). Although OIP informed DDF on August 7, 2025, and August 15, 2025, that it forwarded DDF's requests for expedited processing under 28 C.F.R. § 16.5(e)(1)(iv) to the Director of Public Affairs, to date, the Director of Public Affairs has not responded to this request. Additionally, OAG and ODAG have failed to respond to DDF's request for fee waivers within the statutory timeline or produce the requested records.

168. To date, FBI has failed to notify DDF of any determination regarding its FOIA requests, including the scope of any responsive records the agency intends to produce or withhold and the reasons for any withholdings within the statutory timeline. FBI has also failed to produce

the requested records or demonstrate that the requested records are lawfully exempt from production within the statutory timeline. Additionally, FBI has failed to respond to DDF's requests for fee waivers within the statutory timeline. FBI has also failed to respond to DDF's requests for expedited processing.

169. To date, EOUSA has failed to notify DDF of any determination regarding its FOIA requests, including the scope of any responsive records the agency intends to produce or withhold and the reasons for any withholdings within the statutory timeline. EOUSA has also failed to produce the requested records or demonstrate that the requested records are lawfully exempt from production within the statutory timeline. Additionally, EOUSA has failed to respond to DDF's requests for fee waivers within the statutory timeline. EOUSA has also failed to respond to DDF's requests for expedited processing.

170. To date, BOP has failed to notify DDF of any determination regarding its FOIA requests, including the scope of any responsive records the agency intends to produce or withhold and the reasons for any withholdings within the statutory timeline. BOP has also failed to produce the requested records or demonstrate that the requested records are lawfully exempt from production within the statutory timeline. BOP has failed to respond to DDF's requests for fee waivers within the statutory timeline. BOP has also failed to respond to DDF's request for expedited processing.

171. Through the failure of CRM, FBI, EOUSA, OAG, ODAG, and BOP to respond to DDF's FOIA requests within the time period required by law, DDF has exhausted its administrative remedies and now seeks immediate judicial review. *See* 5 U.S.C. § 552(a)(6)(C)(i).

## CAUSES OF ACTION

### COUNT I

**Violation of the Freedom of Information Act, 5 U.S.C. § 552**
**Failure to Conduct Adequate Searches for Responsive Records**

172. Plaintiff reasserts and re-alleges each and every allegation set forth above as if each was set forth herein.

173. DDF properly requested records within the possession, custody, and control of the Defendant.

174. DOJ is an agency subject to and within the meaning of FOIA, and it must therefore make reasonable efforts to search for requested records.

175. DOJ has failed to promptly and adequately search for records responsive to DDF's FOIA requests.

176. DOJ's failure to conduct adequate searches for responsive records violates FOIA.

177. DDF has exhausted the applicable administrative remedies with respect to Defendant's wrongful failure to make reasonable efforts to search for the requested records.

178. DDF is therefore entitled to injunctive and declaratory relief requiring DOJ to promptly make reasonable efforts to search for records responsive to DDF's FOIA requests.

### COUNT II

**Violation of the Freedom of Information Act, 5 U.S.C. § 552**
**Wrongful Withholding of Non-Exempt Responsive Records**

179. Plaintiff reasserts and re-alleges each and every allegation set forth above as if each was set forth herein.

180. DDF properly requested records within the possession, custody, and control of Defendant.

181. DOJ is an agency subject to and within the meaning of FOIA, and it must release non-exempt portions of records requested under FOIA.

182. DOJ is wrongfully withholding non-exempt agency records requested by DDF by failing to produce non-exempt records responsive to its FOIA requests.

183. DOJ is wrongfully withholding non-exempt agency records requested by DDF by failing to segregate exempt information in otherwise non-exempt records responsive to DDF's FOIA requests.

184. DOJ's failure to provide all non-exempt responsive records violates FOIA.

185. DDF has exhausted the applicable administrative remedies with respect to Defendants' wrongful failure to make reasonable efforts to search for the requested records.

186. DDF is therefore entitled to declaratory and injunctive relief requiring DOJ to promptly produce all non-exempt records responsive to its FOIA requests and provide indexes justifying the withholding of any responsive records withheld under claim of exemption.

## COUNT III

**Violation of the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(A)**
**Failure to Grant Requests for Waiver of Fees**

187. Plaintiff reasserts and re-alleges each and every allegation set forth above as if each was set forth herein.

188. DDF timely requested fee waivers for the production of responsive records because it intends to use these records to educate and inform the general public on the Epstein Files that mention President Trump and Mar-a-Lago as well as the federal government's conduct in relation to the Epstein Files and Ghislaine Maxwell, and DDF is a non-commercial requester.

189. DOJ failed to respond to DDF's requests for fee waiver within the statutory time frame.

190. DDF has exhausted the applicable administrative remedies with respect to Defendants' wrongful failure to make reasonable efforts to search for the requested records.

191. DDF is therefore entitled to declaratory and injunctive relief as to Plaintiff's requests for a fee waiver.

## COUNT IV

### Violation of the Freedom of Information Act, 5 U.S.C. § 552
### Failure to Grant Expedited Processing

192. Plaintiff reasserts and re-alleges each and every allegation set forth above as if each was set forth herein.

193. By failing to grant Plaintiff's requests for expedited processing on Plaintiff's FOIA requests concerning matters of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence, 28 C.F.R. § 16.5(e)(1)(iv), and national urgent need to inform the public, 5 U.S.C. § 552(a)(6)(E)(iii), Defendant has violated FOIA.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff requests that this Court:

(1) Order DOJ to conduct a search or searches reasonably calculated to uncover all records responsive to DDF's FOIA requests;

(2) Order DOJ to produce, within twenty days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to DDF's FOIA requests with indexes justifying the withholding of any responsive records withheld under claim of exemption;

(3) Enjoin DOJ from continuing to withhold any and all non-exempt records responsive to DDF's FOIA requests;

(4) Order DOJ to grant DDF's fee waiver requests in connection with its FOIA requests;

(5) Provide for expedited proceedings in this action;

(6) Award DDF the costs of this proceeding, including reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(7) Grant DDF such other relief as the Court deems just and proper.

Dated: December 30, 2025

Respectfully submitted,

*/s/ Taryn Wilgus Null*

Taryn Wilgus Null (# 985724)
Norman L. Eisen (# 435051)
Tianna Mays (# 90005882)
Pooja Chaudhuri (# 888314523)
Jacob Kovacs-Goodman (# 90032363)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE, No. 15180
Washington, DC 20003
(202) 594-9958
Norman@democracydefenders.org
Taryn@democracydefenders.org
Tianna@democracydefenders.org
Pooja@democracydefenders.org
Jacob@democracydefenders.org

*Attorneys for Plaintiff*

# EXHIBIT A

Democracy Defenders Fund

July 22, 2025

Christina Butler
Chief, FOIA/PA Unit
Criminal Division, Department of Justice
950 Constitution Ave, NW
Washington, DC 20530-0001

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from the inception of the Department of Justice's investigations of Jeffrey Epstein and/or Ghislaine Maxwell to when this request is processed, of:

1. All records relating to the Department of Justice's investigation(s) of Jeffrey Epstein that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, "Mar-a-Lago," or any code name, code word, pseudonym, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Jeffrey Epstein.

2. All records relating to the Department of Justice's investigation(s) of Ghislaine Maxwell that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, "Mar-a-Lago," or any code name, code word, pseudonym, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Ghislaine Maxwell.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(A) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester'".[5] DDF's request meets all elements.

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of records concerning the Department's investigations into alleged criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including investigations conducted by the Criminal Division, the U.S. Attorney's Office for the Southern District of Florida, the U.S. Attorney's Office for the Southern District of New York and the Federal Bureau of Investigation ("FBI"), including any records the Department may have that name President Trump in relation to these matters. Even though President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[6] he promised repeatedly during his 2024 Presidential campaign that he would release these

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Forc*e, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).
[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/17/us/politics/timeline-trump-epstein.html.

files.[7] But, the fact that the Department has yet to release the investigation files has outraged many of Trump's supporters.[8] The existence and extent of such records is also currently a question of immense media speculation.[9]

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to investigations involving Jeffery Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[10] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[11] For instance, in February 2025, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[12] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[13] This has caused immense confusion amongst the public, which has been the subject of ongoing news media coverage.[14] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[15] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

---

[7] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga

[8] Luke Broadwater and Erica L. Green, *Trump's New Strategy on Epstein Fallout: Blame the Democrats*, *New York Times* (Jul. 16, 2025), https://www.nytimes.com/2025/07/16/us/politics/trump-epstein-attacks-supporters.html.

[9] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.

[10] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[11] *See*, *e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[12] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.

[13] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[14] *See*, *e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

[15] Larry Neumesiter, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and issuance of op-eds.[16] DDF maintains a dedicated website where it provides information related to its activities which can be accessed by the public.[17] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as a representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[18] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information."[19] The outrageous nature of the alleged

[16] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.
[17] *See* https://www.democracydefendersfund.org/news-resources.
[18] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).
[19] 5 C.F.R. 16.5(e)(1)(ii).

activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[20] and if so, whether that possibility may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[21]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[22] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[23] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

---

[20] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.
[21] *See*, *e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.
[22] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.
[23] Democracy Defenders Fund, https://www.democracydefendersfund.org/.

**2. The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox News,[24] New York Times,[25] Wall Street Journal,[26] and Washington Post,[27] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[28]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These

---

[24] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[25] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[26] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[27] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[28] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC: Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- ‘Parent-child’ relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[29] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[30] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

---

[29] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[30] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

# EXHIBIT AA

**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

July 31, 2025

GABRIEL WOFFORD LEZRA
DEMOCRACY DEFENDERS FUND
600 PENNSYLVANIA AVENUE SE
WASHINGTON, DC 20003

FOIPA Request No.: 1675761-000
Subject: EPSTEIN, JEFFREY EDWARD
(MENTIONS OF DONALD TRUMP AND
MAR-A-LAGO)

Dear Gabriel Lezra:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI. Below you will find check boxes and informational paragraphs about your request, as well as specific determinations required by these statutes. Please read each one carefully.

- [x] Your request has been received at FBI Headquarters for processing.

- [x] You submitted your request via the FBI's eFOIPA system.

  - [x] Future correspondence about your FOIPA request will be provided in an email link unless the record file type is not supported by the eFOIPA system.

  - [ ] Correspondence for requests containing audio, video, or high-resolution photographs cannot be sent through the eFOIPA system. Future correspondence about your FOIPA request will be delivered through standard mail.

- [ ] The subject of your request is currently being processed and documents subject to the FOIPA will be released to you upon completion.

- [ ] Release of responsive records subject to the FOIPA will be posted to the FBI's electronic FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.

- [x] Your request for a public interest fee waiver is under consideration and you will be advised of the decision if fees are applicable. If your fee waiver is not granted, you will be responsible for applicable fees per your designated requester fee category below.

- [x] For the purpose of assessing any fees, we have determined:

  - [ ] As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

  - [x] As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

  - [ ] As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

Please check the status of your FOIPA request at www.vault.fbi.gov by clicking on "Check Status of your FOI/PA Request." Status updates are adjusted weekly. The status of newly assigned requests may not be available until the next weekly update. If the FOIPA has been closed, the notice will indicate that appropriate correspondence has been mailed to the address on file.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Record/Information Dissemination Section
Information Management Division

# EXHIBIT AB

**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

July 31, 2025

GABRIEL WOFFORD LEZRA
DEMOCRACY DEFENDERS FUND
600 PENNSYLVANIA AVENUE SE
WASHINGTON, DC 20003

FOIPA Request No.: 1675761-000
Subject: EPSTEIN, JEFFREY EDWARD

Dear Gabriel Lezra:

Please be advised that "unusual circumstances" apply to the processing of your request. See 5 U.S.C. § 552 (a)(6)(B)(iii). "Unusual circumstances" include one or more of the following scenarios:

- There is a need to search for and collect records from field offices and/or other offices that are separate from the FBI Record/Information Dissemination Section (RIDS).
- There is a need to search for, collect, and examine a voluminous amount of separate and distinct records.
- There is a need for consultation with another agency or two or more DOJ components.

These "unusual circumstances" will delay our ability to make a determination on your request within 20 days (excluding weekend and legal public holidays). Additionally, the payment of pertinent fees may apply to your request. See 5 U.S.C. § 552 (a)(4)(A)(viii).

The application of "unusual circumstances" is not a determination of how the FBI will respond to your substantive request, this letter provides notice that these "unusual circumstances" apply to processing and delay the determination of your request. See 5 U.S.C. §§ 552 (a)(6)(A)(viii); (a)(6)(B).

You have the opportunity to reduce the scope of your request; this will accelerate the process and could potentially place your request in a quicker processing queue. This may also reduce search and duplication costs and allow for a more timely receipt of your information. The FBI uses a multi-queue processing system to fairly assign and process new requests. Simple request queue cases (50 pages or less) usually require the least time to process.

Please advise in writing if you would like to discuss reducing the scope of your request. Provide a telephone number, if one is available, where you can be reached between 8:00 a.m. and 5:00 p.m., Eastern Standard Time. Mail your response to: **Initial Processing Operations Unit; Record/Information Dissemination Section; Information Management Division; Federal Bureau of Investigation; 200 Constitution Drive; Winchester, VA 22602**. You may also email your response to: foipaquestions@fbi.gov.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP’s website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI’s dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Record/Information Dissemination Section
Information Management Division

# EXHIBIT AC

Gmail

**Riley Pynnonen <riley@democracydefenders.org>**

---

## FOIPA Request Nos.: 1675761-000 & 1677041-000

---

**Taryn Wilgus Null** <taryn@democracydefenders.org> Wed, Sep 3, 2025 at 1:27 PM
To: foipaquestions@fbi.gov
Cc: Ginny Canter <ginny@democracydefenders.org>, Gabe Lezra <gabe@democracydefenders.org>, Chris Swartz <chris@democracydefenders.org>, Riley Pynnonen <riley@democracydefenders.org>, Pooja Chaudhuri <pooja@democracydefenders.org>, Sana Sinha <sana@democracydefenders.org>

Hi there,

I am responding to the July 31, 2025 letter in response to FOIPA Request No.: 1675761-000 and the August 12, 2025 letter in response to FOIPA Request No.: 1677041-000. I would like to have a discussion about potentially reducing the scope of these requests. I can be reached at 301-741-9316 but it would be best if you could reply all to this email to schedule a call, given that some of my colleagues should be included in any conversation about the scope of the requests.

Thank you,
Taryn

**Taryn Wilgus Null** (she/her)
*Senior Counsel*

**Democracy Defenders Fund**
Email: taryn@democracydefenders.org
Phone: (301) 741-9316

democracydefendersfund.org Democracy Defenders Fund

# EXHIBIT AD

Gmail

Riley Pynnonen <riley@democracydefenders.org>

## Fwd: [EXTERNAL EMAIL] - FOIPA Request Nos.: 1675761-000 & 1677041-000

---------- Forwarded message ---------
From: **FOIPAQUESTIONS@FBI.GOV** <FOIPAQUESTIONS@fbi.gov>
Date: Wed, Sep 3, 2025 at 1:57 PM
Subject: RE: [EXTERNAL EMAIL] - FOIPA Request Nos.: 1675761-000 & 1677041-000
To: Taryn Wilgus Null <taryn@democracydefenders.org>

Good afternoon,

Thank you for considering narrowing the scope of your request. Your email will be forwarded to our negotiation team and a representative will be in contact. Please allow 2-3 weeks for this initial contact.

Respectfully,

Public Information Officer

FBI - Information Management Division

200 Constitution Drive

Winchester, VA 22602

O: (540) 868-4593

E: foipaquestions@fbi.gov

Do you have further questions about the FOI/PA process? Visit us at http://www.fbi.gov/foia

Please check the status of your request online at https://vault.fbi.gov/fdps-1/@@search-fdps Status updates are performed on a weekly basis.

Note: This is a non-emergency email address. If this is an emergency, please call 911 directly. If you need to report a tip for immediate action, please contact FBI Tips at http://tips.fbi.gov/ or reach out to your local field office.

---

**From:** Taryn Wilgus Null <taryn@democracydefenders.org>
**Sent:** Wednesday, September 3, 2025 1:27 PM
**To:** FOIPAQUESTIONS <FOIPAQUESTIONS@FBI.GOV>
**Cc:** Ginny Canter <ginny@democracydefenders.org>; Gabe Lezra <gabe@democracydefenders.org>; Chris Swartz <chris@democracydefenders.org>; Riley Pynnonen <riley@democracydefenders.org>; Pooja Chaudhuri <pooja@democracydefenders.org>; Sana Sinha <sana@democracydefenders.org>
**Subject:** [EXTERNAL EMAIL] - FOIPA Request Nos.: 1675761-000 & 1677041-000

Hi there,

I am responding to the July 31, 2025 letter in response to FOIPA Request No.: 1675761-000 and the August 12, 2025 letter in response to FOIPA Request No.: 1677041-000. I would like to have a discussion about potentially reducing the scope of these requests. I can be reached at 301-741-9316 but it would be best if you could reply all to this email to schedule a call, given that some of my colleagues should be included in any conversation about the scope of the requests.

Thank you,

Taryn

**Taryn Wilgus Null** (she/her)
*Senior Counsel*

**Democracy Defenders Fund**
Email: taryn@democracydefenders.org
Phone: (301) 741-9316

democracydefendersfund.org

# EXHIBIT AE

Democracy Defenders Fund

July 28, 2025

Michael G. Seidel
Section Chief
Record/Information Dissemination Section
200 Constitution Drive
Winchester, VA 22602

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from January 20, 2025, to when this request is processed, of:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General

Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Forc*e, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).

activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of documents and communications related to criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including records the Department may have that name clients and associates of Epstein and records that may name President Trump in relation to these matters. These records may also reveal to the public a potential attempt to cover up negative or potentially criminal conduct, including by President Trump. The existence and extent of such records, and the government's response to their collection and dissemination, are currently a question of immense media speculation.[6] In February 2025, Attorney General Bondi said in an interview with Fox News that the Epstein client list was, "sitting on my desk right now to review."[7] It was recently reported that Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President.[8] Then in July, the Department issued a memo noting, "this systematic review revealed no incriminating 'client list."[9] However, the Wall Street Journal has reported that the Attorney General personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] Given contradictory statements made by the Department, and the fact that President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[11] disclosure of these records would conclusively show whether the Department has the information it now purports that it does not have, and, if such records exist, whether Donald Trump's name appears in any of the documents related to Jeffery Epstein. This release is also important to understand whether any undue political influence by the President has affected the Department's ability or willingness to release documents related to Jeffrey Epstein. Prior to being elected to a second term, the President promised repeatedly during his campaign that he would release these files.[12] Yet, in the face of increased pressure to release the full array of documents, the President has continued to evade the issue.[13] Disclosure of these documents is therefore necessary to provide a

---

[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.
[7] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025),
https://www.bbc.com/news/articles/ckgl4dl334go.
[8] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trum*p, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/
[9] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.
[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1
[11] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/17/us/politics/timeline-trump-epstein.html.
[12] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga
[13] Chris Cameron, Trump Really Wants to Stop Talking About Epstein: A Timeline, NY Times (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-epstein-distraction-timeline.html.

full record of what communications occurred, and whether any such communications might have resulted in abnormalities in the Department's statements or actions concerning the existence of Epstein's "Client List."

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to the investigations involving Jeffrey Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[14] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[15] As noted above, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[16] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[17] This has caused immense confusion amongst the public, which has been the subject of ongoing new media coverage.[18] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[19] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and the issuance of op-eds.[20] DDF maintains a dedicated website

---

[14] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[15] *See*, *e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[16] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.

[17] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[18] *See*, *e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

[19] Larry Neumesiter, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

[20] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from*

where it provides information related to its activities, which can be accessed by the public.[21] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[22] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[23] and if so, whether that may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[24]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

---

*Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.

[21] *See* https://www.democracydefendersfund.org/news-resources.

[22] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

[23] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[24] *See*, *e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[25] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[26] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

2. **The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox

[25] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.

[26] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

News,[27] New York Times,[28] Wall Street Journal,[29] and Washington Post,[30] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[31]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

---

[27] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[28] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[29] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[30] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[31] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC: Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- ‘Parent-child’ relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[32] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[33] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

---

[32] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[33] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

# EXHIBIT AF

An official website of the United States government
Here's how you know

UNITED STATES DEPARTMENT of JUSTICE

MENU

# FOIA.gov

**Thank you for visiting FOIA.gov, the government's central website for FOIA.** We'll continue to make improvements to the site and look forward to your input. Please submit feedback to National.FOIAPortal@usdoj.gov.

**Submission ID:** 2296021

# Success!

## Your FOIA request has been created and is being sent to the Federal Bureau of Investigation.

You'll hear back from the agency confirming receipt in the coming weeks using the contact information you provided. If you have questions about your request, feel free to reach out to the agency FOIA personnel using the information provided below.

### Contact the agency

FOIA Requester Service Center

540-868-4593

Shannon Hammer, FOIA Public Liaison

540-868-2101

Michael G. Seidel, Section Chief, Record/Information Dissemination Section
200 Constitution Drive
Winchester, VA 22602

# Request summary

Request submitted on**July 28, 2025**.

The confirmation ID for your request is **2296021**.

The confirmation ID is only for identifying your request on FOIA.gov and acts as a receipt to show that you submitted a request using FOIA.gov. This number does not replace the information you'll receive from the agency to track your request. In case there is an issue submitting your request to the agency you selected, you can use this number to help.

## Contact information

**Name**
Gabriel Lezra

**Mailing address**
600 Pennsylvania Ave SE
Washington, 20003

**Phone number**
9176752509

**Company/organization**
Democracy Defenders Fund

**Email**
gabe@statedemocracydefenders.org

---

## Additional information

DDF. FBI FOIA EPSTEIN COMMUNICATIONS (July 28 25).pdf

**What is the subject of your request?**
other

**Country**
US

**Signature (typed)**
Gabriel Lezra

**I am making this request on behalf of**
organization

**State**
DC

**Address Type**
nondomestic

**By providing an electronic signature below I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. Section 552(a)(3) by a fine of not more than $5,000.**
yes

**Today's date**
07/28/2025

**Your request**
See attached.

---

## Fees

**What type of requester are you?**
media

**Fee waiver**
option1

**Fee waiver justification**
See attached.

**The amount of money you're willing to pay in fees, if any**

0

---

## Request expedited processing

**Expedited processing**

yes

**Justification for expedited processing**

See attached.

FOIA.gov

**CONTACT**

Office of Information Policy (OIP)
U.S. Department of Justice
441 G St, NW, 6th Floor
Washington, DC 20530
E-mail: National.FOIAPortal@usdoj.gov

Hero image credit CC3.0

- FREQUENTLY ASKED QUESTIONS
- DEVELOPER RESOURCES
- AGENCY API SPEC
- FOIA CONTACT DOWNLOAD
- FOIA DATASET DOWNLOAD
- ACCESSIBILITY
- PRIVACY POLICY
- POLICIES & DISCLAIMERS
- JUSTICE.GOV
- USA.GOV

# EXHIBIT AG

**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

August 12, 2025

GABRIEL WOFFORD LEZRA
DEMOCRACY DEFENDERS FUND
600 PENNSYLVANIA AVENUE SE
WASHINGTON, DC 20003

FOIPA Request No.: 1677041-000
Subject: All communications between or among DOJ officials and FBI officials regarding Jeffrey Epstein
(On or after January 20, 2025)

Dear Gabriel Lezra:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI. Below you will find check boxes and informational paragraphs about your request, as well as specific determinations required by these statutes. Please read each one carefully.

- ☑ Your request has been received at FBI Headquarters for processing.
- ☑ You submitted your request via the FBI's eFOIPA system.
  - ☑ Future correspondence about your FOIPA request will be provided in an email link unless the record file type is not supported by the eFOIPA system.
  - ☐ Correspondence for requests containing audio, video, or high-resolution photographs cannot be sent through the eFOIPA system. Future correspondence about your FOIPA request will be delivered through standard mail.
- ☐ The subject of your request is currently being processed and documents subject to the FOIPA will be released to you upon completion.
- ☐ Release of responsive records subject to the FOIPA will be posted to the FBI's electronic FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.
- ☑ Your request for a public interest fee waiver is under consideration and you will be advised of the decision if fees are applicable. If your fee waiver is not granted, you will be responsible for applicable fees per your designated requester fee category below.
- ☑ For the purpose of assessing any fees, we have determined:
  - ☐ As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).
  - ☑ As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).
  - ☐ As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

Please check the status of your FOIPA request at www.vault.fbi.gov by clicking on "Check Status of your FOI/PA Request." Status updates are adjusted weekly. The status of newly assigned requests may not be available until the next weekly update. If the FOIPA has been closed, the notice will indicate that appropriate correspondence has been mailed to the address on file.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Record/Information Dissemination Section
Information Management Division

# EXHIBIT AH

**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

August 12, 2025

GABRIEL WOFFORD LEZRA
DEMOCRACY DEFENDERS FUND
600 PENNSYLVANIA AVENUE SE
WASHINGTON, DC 20003

FOIPA Request No.: 1677041-000
Subject: All communications between or among DOJ officials and FBI officials regarding Jeffrey Epstein
(On or after January 20, 2025)

Dear Gabriel Lezra:

Please be advised that "unusual circumstances" apply to the processing of your request. See 5 U.S.C. § 552 (a)(6)(B)(iii). "Unusual circumstances" include one or more of the following scenarios:

- There is a need to search for and collect records from field offices and/or other offices that are separate from the FBI Record/Information Dissemination Section (RIDS).
- There is a need to search for, collect, and examine a voluminous amount of separate and distinct records.
- There is a need for consultation with another agency or two or more DOJ components.

These "unusual circumstances" will delay our ability to make a determination on your request within 20 days (excluding weekend and legal public holidays). Additionally, the payment of pertinent fees may apply to your request. See 5 U.S.C. § 552 (a)(4)(A)(viii).

The application of "unusual circumstances" is not a determination of how the FBI will respond to your substantive request, this letter provides notice that these "unusual circumstances" apply to processing and delay the determination of your request. See 5 U.S.C. §§ 552 (a)(6)(A)(viii); (a)(6)(B).

You have the opportunity to reduce the scope of your request; this will accelerate the process and could potentially place your request in a quicker processing queue. This may also reduce search and duplication costs and allow for a more timely receipt of your information. The FBI uses a multi-queue processing system to fairly assign and process new requests. Simple request queue cases (50 pages or less) usually require the least time to process.

Please advise in writing if you would like to discuss reducing the scope of your request. Provide a telephone number, if one is available, where you can be reached between 8:00 a.m. and 5:00 p.m., Eastern Standard Time. Mail your response to: **Initial Processing Operations Unit; Record/Information Dissemination Section; Information Management Division; Federal Bureau of Investigation; 200 Constitution Drive; Winchester, VA 22602**. You may also email your response to: foipaquestions@fbi.gov.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Record/Information Dissemination Section
Information Management Division

# EXHIBIT AI

Democracy Defenders Fund

August 6, 2025

Andrew Fiorillo,
Acting Chief, Initial Request Staff
U.S. Department of Justice
Office of the Attorney General
6th Floor
441 G St, NW
Washington, DC 20530-0001

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from July 1, 2025, to when this request is processed, of:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, concerning the transfer of Ghislaine Maxwell to Federal Prison Camp (FPC) Bryan, or her redesignation of the place of imprisonment to FPC Bryan. This includes any communication to or from, or determinations made by, Attorney General Pam Bondi, Deputy Attorney General Todd Blanche, Federal Bureau of Prisons Director William K. Marshall III, or any employee or contractor of the Department of Justice, including the Bureau of Prisons and the Bureau's Designation Sentence Computation Center, concerning Ms. Maxwell's transfer or redesignation of place of imprisonment.

2. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, including copies of any determination, and any supporting documentation forming the basis of any determination, made by the Department of Justice, including the Bureau of Prisons, concerning waiver of the Bureau of Prisons policy that Ghislaine Maxwell, as a convicted sex offender, be housed in at least a Low security level institution.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the "operations" and "activities" of the Department of Justice. Specifically, release of these records will provide needed transparency concerning how and why the Department decided to transfer Ghislaine Maxwell to FPC Bryan. Ghislaine Maxwell was a close confidant to Jeffery Epstein and is currently serving a 20-year sentence for sex trafficking.[6] She is likely one of the few people who have information that could be used to

---

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Forc*e, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).
[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] Department of Justice, *Press Release: Ghislaine Maxwell Sentenced To 20 Years In Prison For Conspiring With Jeffrey Epstein To Sexually Abuse Minors* (June 28, 2022), https://www.justice.gov/usao-sdny/pr/ghislaine-maxwell-sentenced-20-years-prison-conspiring-jeffrey-epstein-sexually-abuse.

pinpoint the clients and close associates of Jeffery Epstein, some of whom may have engaged in, facilitated, or been aware of, illegal sexual activity with underage girls.

In the run up to the 2024 election, President Trump announced that he would release documents related to Epstein's investigation and his "client list".[7] Following President Trump's inauguration, the Department reportedly undertook a major review of the Epstein files, with the apparent goal of releasing information about Epstein's associates. However, and despite AG Bondi's assertion that she had the Epstein list "on [her] desk,", the Department issued a memo stating that their, "systematic review" of the Epstein files "revealed no incriminating 'client list."[8] At the same time, it was recently reported Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President[9] and personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] No further documents have been made public.

Against this backdrop, Deputy Attorney General Blanche—one of President Trump's former personal attorneys—met with Ms. Maxwell and her attorney for two days in July behind closed doors where he reportedly asked her a series of questions concerning individuals who may have been connected to Epstein's crimes.[11] Reports now suggest that she may have received qualified immunity[12], and has been transferred from a Low security institution to a minimum-security Federal Prison Camp.[13]

This arrangement is abnormal for several reasons. First, Ms. Maxwell is currently serving a 20-year sentence for sex trafficking. Sex offenders are required by the Bureau of Prisons' Program Statement 5100.008 to be housed in a Low level security institution unless a waiver is provided.[14] It is unclear why Maxwell would have been eligible to transfer to a minimum-security prison camp, given the horrendous activities she was convicted of

---

[7] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga

[8] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[9] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trum*p, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/

[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1

[11] Aaron Katersky, et al., *Ghislaine Maxwell Received Limited Immunity During Meetings With Deputy Attorney General: Sources*, ABC News (July 25, 2025), https://abcnews.go.com/US/deputy-ag-blanche-set-meet-2nd-day-ghislaine/story?id=124064062.

[12] Aaron Katersky, et al., *Ghislaine Maxwell Received Limited Immunity During Meetings With Deputy Attorney General: Sources*, ABC News (July 25, 2025), https://abcnews.go.com/US/deputy-ag-blanche-set-meet-2nd-day-ghislaine/story?id=124064062.

[13] Kaitlan Collins, et al., *Ghislaine Maxwell Moved to Federal Prison Camp in Texas*, CNN (Aug. 1, 2025), https://www.cnn.com/2025/08/01/politics/ghislaine-maxwell-federal-prison-texas.

[14] Department of Justice, Bureau of Prisons, Program Statement § 5100.008, Ch. 5, pp. 8 (2025), https://www.bop.gov/PublicInfo/execute/policysearch?todo=query&series=5000#

perpetrating. Second, Maxwell is likely one of the only people capable of substantiating information about Epstein's clients and associates. Absent releasing the Department's investigative files, she represents one of the only ways the public has to obtain information concerning whether the President (or any other government official) knew about, or was involved in, Epstein's activities. Third, the arrangement is particularly ripe for coercion and abuse of authority. Maxwell is in prison. She, as any person, would be motivated to take actions that would return her liberty (or at least make her time in prison less unpleasant). Her attorney has expressly stated that she is "eager to receive clemency"–something only the President could do.[15]

The public deserves to know why the Department decided to transfer Maxwell to minimal-security housing and why it decided it was appropriate to waive Bureau of Prisons' policy to do so. This decision is yet another irregularity in a series[16] of irregularities[17] surrounding the investigation and disclosure of information concerning Jeffery Epstein's abuse of young girls. Disclosure of these documents is therefore necessary to provide a full record of what communications occurred, when they occurred, and whether any such communications might have resulted in abnormalities in the Department's treatment of Maxwell, and, by extension, its investigation of Epstein's crimes and the people in his orbit..

Second, disclosure of the information will significantly aid the public's understanding of the decisions the Department undertook when it authorized Maxwell's transfer, and whether any basis for her transfer was inappropriately linked to information she may have provided to the Department. To date, President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records. This is mainly due to the repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list."[18] The Department's bumbling and confused handling of the matter has further undermined public confidence. Its numerous contradictory statements related to the investigation,,[19] for instance, have caused immense confusion amongst the public.[20] Yet instead of releasing the files, the Department called on the President's former attorney to meet with the single individual who could potentially identify who might be named in the Epstein files. Release of the documents requested is therefore necessary to aid the public in

---

[15] Aaron Katersky, *Ghislaine Maxwell Offers to Testify Before Congress on Jeffrey Epstein if She Ii Pardoned*, ABC News (July 29, 2025), https://abcnews.go.com/US/ghislaine-maxwell-offers-testify-congress-jeffrey-epstein-pardoned/story?id=124180072

[16] Ryan Lucas, *Todd Blanche's Past Hangs Over Him as Top DOJ Official on Epstein Case*, NPR (Jul. 29, 2025), https://www.npr.org/2025/07/29/nx-s1-5484129/todd-blanche-epstein-ghislaine-maxwell-trump.

[17] Dhruv Mehrotra, *The FBI's Jeffrey Epstein Prison Video Had Nearly 3 Minutes Cut Out*, Wired (July 16, 2025), https://www.wired.com/story/the-fbis-jeffrey-epstein-prison-video-had-nearly-3-minutes-cut-out/.

[18] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[19] *See*, *e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[20] *See*, *e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

its understanding of the Department's handling of this situation. It is particularly important that the public understand whether the Department has offered Maxwell, a convicted sex offender who trafficked multiple young girls, concessions as a result of any agreement she made with Deputy Attorney General Blanche—and if such an offer did take place, the public must know why.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and the issuance of op-eds.[21] DDF maintains a dedicated website where it provides information related to its activities, which can be accessed by the public.[22] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[23] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous

---

[21] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.

[22] *See* https://www.democracydefendersfund.org/news-resources.

[23] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[24] and if so, whether that may be hindering public disclosure. Now, one of Epstein's closest confidants, a sex offender serving a 20-year prison term, has been transferred to a minimum-security prison following her meeting with the Deputy Attorney General. This matter is of the greatest urgency given the Department of Justice's horrendous treatment of Epstein and Maxwell's victims, including the Office of the U.S. Attorney for the Southern District of Florida's failure to notify Epstein and Maxwell's victims prior to entering into a September 24, 2007, non-prosecution agreement with Epstein that ended that federal investigation;[25] the Bureau of Prison's failure to provide adequate security to Epstein where he died while being held for pre-trial detention at the Metropolitan Correctional Center in New York, New York in August 2019 forever depriving the victims of their opportunity to testify against Epstein;[26] and now by the Department's inexplicable decision to transfer Maxwell to a minimal security facility within days of meeting with the Deputy Attorney General, notwithstanding her conviction for sex trafficking minors.[27] Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[28]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's decision to move Maxwell to what has been referred to as "Club Fed."[29]

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[30] Through a combination of investigative

---

[24] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[25] Brendan Pierson, *Appeals Court Upholds Jeffery Epstein's Non-Prosecution Deal*, Reuters (Apr. 14, 2020), https://www.reuters.com/article/world/us/appeals-court-upholds-jeffrey-epsteins-non-prosecution-deal-idUSKCN21W2G8/.

[26] Department of Justice, Office of the Inspector General, Investigation and Review of the Federal Bureau of Prisons' Custody, Care, and Supervision of Jeffery Epstein at the Metropolitan Correctional Center in New York, New York (June 2023), https://oig.justice.gov/sites/default/files/reports/23-085.pdf.

[27] Kaitlan Collins, et al., *Ghislaine Maxwell Moved to Federal Prison Camp in Texas*, CNN (Aug. 1, 2025), https://www.cnn.com/2025/08/01/politics/ghislaine-maxwell-federal-prison-texas.

[28] *See*, *e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

[29] Josh Fiallo, *Trump Sends Maxwell to Club Fed with Puppies, Anti-Aging–and Easy Escapes*, The Daily Beast (Aug. 4, 2025), https://www.thedailybeast.com/an-inside-look-at-ghislaine-maxwells-new-life-at-club-fed-in-bryan-texas/.

[30] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Mus

reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[31] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

2. **The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox News,[32] New York Times,[33] Wall Street Journal,[34] and Washington Post,[35] have all released

k.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.

[31] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

[32] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[33] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[34] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[35] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025),

multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[36] Now one of Jefferey Epstein's closest confidants who facilitated his sex abuse has been moved to minimum-security prison just days after meeting with the Deputy Attorney General and President Trump's former attorney.[37]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed about the Department's actions and to provide reasons for the irregular set of circumstances involving Maxwell. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

---

https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[36] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

[37] Kaitlan Collins, et al., *Ghislaine Maxwell Moved to Federal Prison Camp in Texas*, CNN (Aug. 1, 2025), https://www.cnn.com/2025/08/01/politics/ghislaine-maxwell-federal-prison-texas.

CC: Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage

agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- 'Parent-child' relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[38] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[39] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

---

[38] *See* 5 U.S.C. § 552(b). *See also* Kathleen E. Marchsteiner & Meghan M. Stuessy, Cong. Rsch. Serv., R47984, The Federal Advisory Committee Act (FACA): Overview and Considerations for Congress (2024), https://www.congress.gov/crs-product/R47984.

[39] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@democracydefenders.org. Please send the requested records to me at either gabe@democracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

# EXHIBIT AJ

Democracy Defenders Fund

August 6, 2025

Andrew Fiorillo,
Acting Chief, Initial Request Staff
U.S. Department of Justice
Office of the Deputy Attorney General
6th Floor
441 G St, NW
Washington, DC 20530-0001

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from July 1, 2025, to when this request is processed, of:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, concerning the transfer of Ghislaine Maxwell to Federal Prison Camp (FPC) Bryan, or her redesignation of the place of imprisonment to FPC Bryan. This includes any communication to or from, or determinations made by, Attorney General Pam Bondi, Deputy Attorney General Todd Blanche, Federal Bureau of Prisons Director William K. Marshall III, or any employee or contractor of the Department of Justice, including the Bureau of Prisons and the Bureau's Designation Sentence Computation Center, concerning Ms. Maxwell's transfer or redesignation of place of imprisonment.

2. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, including copies of any determination, and any supporting documentation forming the basis of any determination, made by the Department of Justice, including the Bureau of Prisons, concerning waiver of the Bureau of Prisons policy that Ghislaine Maxwell, as a convicted sex offender, be housed in at least a Low security level institution.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the "operations" and "activities" of the Department of Justice. Specifically, release of these records will provide needed transparency concerning how and why the Department decided to transfer Ghislaine Maxwell to FPC Bryan. Ghislaine Maxwell was a close confidant to Jeffery Epstein and is currently serving a 20-year sentence for sex trafficking.[6] She is likely one of the few people who have information that could be used to

---

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Forc*e, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).
[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] Department of Justice, *Press Release: Ghislaine Maxwell Sentenced To 20 Years In Prison For Conspiring With Jeffrey Epstein To Sexually Abuse Minors* (June 28, 2022), https://www.justice.gov/usao-sdny/pr/ghislaine-maxwell-sentenced-20-years-prison-conspiring-jeffrey-epstein-sexually-abuse.

pinpoint the clients and close associates of Jeffery Epstein, some of whom may have engaged in, facilitated, or been aware of, illegal sexual activity with underage girls.

In the run up to the 2024 election, President Trump announced that he would release documents related to Epstein's investigation and his "client list".[7] Following President Trump's inauguration, the Department reportedly undertook a major review of the Epstein files, with the apparent goal of releasing information about Epstein's associates. However, and despite AG Bondi's assertion that she had the Epstein list "on [her] desk,", the Department issued a memo stating that their, "systematic review" of the Epstein files "revealed no incriminating 'client list."[8] At the same time, it was recently reported Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President[9] and personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] No further documents have been made public.

Against this backdrop, Deputy Attorney General Blanche—one of President Trump's former personal attorneys—met with Ms. Maxwell and her attorney for two days in July behind closed doors where he reportedly asked her a series of questions concerning individuals who may have been connected to Epstein's crimes.[11] Reports now suggest that she may have received qualified immunity[12], and has been transferred from a Low security institution to a minimum-security Federal Prison Camp.[13]

This arrangement is abnormal for several reasons. First, Ms. Maxwell is currently serving a 20-year sentence for sex trafficking. Sex offenders are required by the Bureau of Prisons' Program Statement 5100.008 to be housed in a Low level security institution unless a waiver is provided.[14] It is unclear why Maxwell would have been eligible to transfer to a minimum-security prison camp, given the horrendous activities she was convicted of

---

[7] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga

[8] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[9] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trum*p, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/

[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1

[11] Aaron Katersky, et al., *Ghislaine Maxwell Received Limited Immunity During Meetings With Deputy Attorney General: Sources*, ABC News (July 25, 2025), https://abcnews.go.com/US/deputy-ag-blanche-set-meet-2nd-day-ghislaine/story?id=124064062.

[12] Aaron Katersky, et al., *Ghislaine Maxwell Received Limited Immunity During Meetings With Deputy Attorney General: Sources*, ABC News (July 25, 2025), https://abcnews.go.com/US/deputy-ag-blanche-set-meet-2nd-day-ghislaine/story?id=124064062.

[13] Kaitlan Collins, et al., *Ghislaine Maxwell Moved to Federal Prison Camp in Texas*, CNN (Aug. 1, 2025), https://www.cnn.com/2025/08/01/politics/ghislaine-maxwell-federal-prison-texas.

[14] Department of Justice, Bureau of Prisons, Program Statement § 5100.008, Ch. 5, pp. 8 (2025), https://www.bop.gov/PublicInfo/execute/policysearch?todo=query&series=5000#

perpetrating. Second, Maxwell is likely one of the only people capable of substantiating information about Epstein's clients and associates. Absent releasing the Department's investigative files, she represents one of the only ways the public has to obtain information concerning whether the President (or any other government official) knew about, or was involved in, Epstein's activities. Third, the arrangement is particularly ripe for coercion and abuse of authority. Maxwell is in prison. She, as any person, would be motivated to take actions that would return her liberty (or at least make her time in prison less unpleasant). Her attorney has expressly stated that she is "eager to receive clemency"–something only the President could do.[15]

The public deserves to know why the Department decided to transfer Maxwell to minimal-security housing and why it decided it was appropriate to waive Bureau of Prisons' policy to do so. This decision is yet another irregularity in a series[16] of irregularities[17] surrounding the investigation and disclosure of information concerning Jeffery Epstein's abuse of young girls. Disclosure of these documents is therefore necessary to provide a full record of what communications occurred, when they occurred, and whether any such communications might have resulted in abnormalities in the Department's treatment of Maxwell, and, by extension, its investigation of Epstein's crimes and the people in his orbit..

Second, disclosure of the information will significantly aid the public's understanding of the decisions the Department undertook when it authorized Maxwell's transfer, and whether any basis for her transfer was inappropriately linked to information she may have provided to the Department. To date, President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records. This is mainly due to the repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list."[18] The Department's bumbling and confused handling of the matter has further undermined public confidence. Its numerous contradictory statements related to the investigation,,[19] for instance, have caused immense confusion amongst the public.[20] Yet instead of releasing the files, the Department called on the President's former attorney to meet with the single individual who could potentially identify who might be named in the Epstein files. Release of the documents requested is therefore necessary to aid the public in

---

[15] Aaron Katersky, *Ghislaine Maxwell Offers to Testify Before Congress on Jeffrey Epstein if She Ii Pardoned*, ABC News (July 29, 2025), https://abcnews.go.com/US/ghislaine-maxwell-offers-testify-congress-jeffrey-epstein-pardoned/story?id=124180072

[16] Ryan Lucas, *Todd Blanche's Past Hangs Over Him as Top DOJ Official on Epstein Case*, NPR (Jul. 29, 2025), https://www.npr.org/2025/07/29/nx-s1-5484129/todd-blanche-epstein-ghislaine-maxwell-trump.

[17] Dhruv Mehrotra, *The FBI's Jeffrey Epstein Prison Video Had Nearly 3 Minutes Cut Out*, Wired (July 16, 2025), https://www.wired.com/story/the-fbis-jeffrey-epstein-prison-video-had-nearly-3-minutes-cut-out/.

[18] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[19] *See*, *e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[20] *See*, *e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

its understanding of the Department's handling of this situation. It is particularly important that the public understand whether the Department has offered Maxwell, a convicted sex offender who trafficked multiple young girls, concessions as a result of any agreement she made with Deputy Attorney General Blanche—and if such an offer did take place, the public must know why.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and the issuance of op-eds.[21] DDF maintains a dedicated website where it provides information related to its activities, which can be accessed by the public.[22] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[23] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous

---

[21] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.
[22] *See* https://www.democracydefendersfund.org/news-resources.
[23] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[24] and if so, whether that may be hindering public disclosure. Now, one of Epstein's closest confidants, a sex offender serving a 20-year prison term, has been transferred to a minimum-security prison following her meeting with the Deputy Attorney General. This matter is of the greatest urgency given the Department of Justice's horrendous treatment of Epstein and Maxwell's victims, including the Office of the U.S. Attorney for the Southern District of Florida's failure to notify Epstein and Maxwell's victims prior to entering into a September 24, 2007, non-prosecution agreement with Epstein that ended that federal investigation;[25] the Bureau of Prison's failure to provide adequate security to Epstein where he died while being held for pre-trial detention at the Metropolitan Correctional Center in New York, New York in August 2019 forever depriving the victims of their opportunity to testify against Epstein;[26] and now by the Department's inexplicable decision to transfer Maxwell to a minimal security facility within days of meeting with the Deputy Attorney General, notwithstanding her conviction for sex trafficking minors.[27] Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[28]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's decision to move Maxwell to what has been referred to as "Club Fed."[29]

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[30] Through a combination of investigative

---

[24] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[25] Brendan Pierson, *Appeals Court Upholds Jeffery Epstein's Non-Prosecution Deal*, Reuters (Apr. 14, 2020), https://www.reuters.com/article/world/us/appeals-court-upholds-jeffrey-epsteins-non-prosecution-deal-idUSKCN21W2G8/.

[26] Department of Justice, Office of the Inspector General, Investigation and Review of the Federal Bureau of Prisons' Custody, Care, and Supervision of Jeffery Epstein at the Metropolitan Correctional Center in New York, New York (June 2023), https://oig.justice.gov/sites/default/files/reports/23-085.pdf.

[27] Kaitlan Collins, et al., *Ghislaine Maxwell Moved to Federal Prison Camp in Texas*, CNN (Aug. 1, 2025), https://www.cnn.com/2025/08/01/politics/ghislaine-maxwell-federal-prison-texas.

[28] *See*, *e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

[29] Josh Fiallo, *Trump Sends Maxwell to Club Fed with Puppies, Anti-Aging–and Easy Escapes*, The Daily Beast (Aug. 4, 2025), https://www.thedailybeast.com/an-inside-look-at-ghislaine-maxwells-new-life-at-club-fed-in-bryan-texas/.

[30] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Mus

reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[31] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

**2. The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox News,[32] New York Times,[33] Wall Street Journal,[34] and Washington Post,[35] have all released

---

k.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.

[31] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

[32] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[33] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[34] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[35] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025),

multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[36] Now one of Jefferey Epstein's closest confidants who facilitated his sex abuse has been moved to minimum-security prison just days after meeting with the Deputy Attorney General and President Trump's former attorney.[37]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed about the Department's actions and to provide reasons for the irregular set of circumstances involving Maxwell. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

---

https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[36] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

[37] Kaitlan Collins, et al., *Ghislaine Maxwell Moved to Federal Prison Camp in Texas*, CNN (Aug. 1, 2025), https://www.cnn.com/2025/08/01/politics/ghislaine-maxwell-federal-prison-texas.

CC: Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage

agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- ‘Parent-child’ relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[38] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[39] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

---

[38] *See* 5 U.S.C. § 552(b). *See also* Kathleen E. Marchsteiner & Meghan M. Stuessy, Cong. Rsch. Serv., R47984, The Federal Advisory Committee Act (FACA): Overview and Considerations for Congress (2024), https://www.congress.gov/crs-product/R47984.

[39] *See* Mead Data Central v. U.S. Dep’t of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@democracydefenders.org. Please send the requested records to me at either gabe@democracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

# EXHIBIT AK

August 6, 2025

Andrew Fiorillo,
Acting Chief, Initial Request Staff
U.S. Department of Justice
Office of Public Affairs
6th Floor
441 G St, NW
Washington, DC 20530-0001

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from July 1, 2025, to when this request is processed, of:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, concerning the transfer of Ghislaine Maxwell to Federal Prison Camp (FPC) Bryan, or her redesignation of the place of imprisonment to FPC Bryan. This includes any communication to or from, or determinations made by, Attorney General Pam Bondi, Deputy Attorney General Todd Blanche, Federal Bureau of Prisons Director William K. Marshall III, or any employee or contractor of the Department of Justice, including the Bureau of Prisons and the Bureau's Designation Sentence Computation Center, concerning Ms. Maxwell's transfer or redesignation of place of imprisonment.

2. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, including copies of any determination, and any supporting documentation forming the basis of any determination, made by the Department of Justice, including the Bureau of Prisons, concerning waiver of the Bureau of Prisons policy that Ghislaine Maxwell, as a convicted sex offender, be housed in at least a Low security level institution.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the "operations" and "activities" of the Department of Justice. Specifically, release of these records will provide needed transparency concerning how and why the Department decided to transfer Ghislaine Maxwell to FPC Bryan. Ghislaine Maxwell was a close confidant to Jeffery Epstein and is currently serving a 20-year sentence for sex trafficking.[6] She is likely one of the few people who have information that could be used to

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Forc*e, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).
[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] Department of Justice, *Press Release: Ghislaine Maxwell Sentenced To 20 Years In Prison For Conspiring With Jeffrey Epstein To Sexually Abuse Minors* (June 28, 2022), https://www.justice.gov/usao-sdny/pr/ghislaine-maxwell-sentenced-20-years-prison-conspiring-jeffrey-epstein-sexually-abuse.

pinpoint the clients and close associates of Jeffery Epstein, some of whom may have engaged in, facilitated, or been aware of, illegal sexual activity with underage girls.

In the run up to the 2024 election, President Trump announced that he would release documents related to Epstein's investigation and his "client list".[7] Following President Trump's inauguration, the Department reportedly undertook a major review of the Epstein files, with the apparent goal of releasing information about Epstein's associates. However, and despite AG Bondi's assertion that she had the Epstein list "on [her] desk,", the Department issued a memo stating that their, "systematic review" of the Epstein files "revealed no incriminating 'client list."[8] At the same time, it was recently reported Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President[9] and personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] No further documents have been made public.

Against this backdrop, Deputy Attorney General Blanche—one of President Trump's former personal attorneys—met with Ms. Maxwell and her attorney for two days in July behind closed doors where he reportedly asked her a series of questions concerning individuals who may have been connected to Epstein's crimes.[11] Reports now suggest that she may have received qualified immunity[12], and has been transferred from a Low security institution to a minimum-security Federal Prison Camp.[13]

This arrangement is abnormal for several reasons. First, Ms. Maxwell is currently serving a 20-year sentence for sex trafficking. Sex offenders are required by the Bureau of Prisons' Program Statement 5100.008 to be housed in a Low level security institution unless a waiver is provided.[14] It is unclear why Maxwell would have been eligible to transfer to a minimum-security prison camp, given the horrendous activities she was convicted of

---

[7] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga
[8] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.
[9] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trum*p, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/
[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1
[11] Aaron Katersky, et al., *Ghislaine Maxwell Received Limited Immunity During Meetings With Deputy Attorney General: Sources*, ABC News (July 25, 2025), https://abcnews.go.com/US/deputy-ag-blanche-set-meet-2nd-day-ghislaine/story?id=124064062.
[12] Aaron Katersky, et al., *Ghislaine Maxwell Received Limited Immunity During Meetings With Deputy Attorney General: Sources*, ABC News (July 25, 2025), https://abcnews.go.com/US/deputy-ag-blanche-set-meet-2nd-day-ghislaine/story?id=124064062.
[13] Kaitlan Collins, et al., *Ghislaine Maxwell Moved to Federal Prison Camp in Texas*, CNN (Aug. 1, 2025), https://www.cnn.com/2025/08/01/politics/ghislaine-maxwell-federal-prison-texas.
[14] Department of Justice, Bureau of Prisons, Program Statement § 5100.008, Ch. 5, pp. 8 (2025), https://www.bop.gov/PublicInfo/execute/policysearch?todo=query&series=5000#

perpetrating. Second, Maxwell is likely one of the only people capable of substantiating information about Epstein's clients and associates. Absent releasing the Department's investigative files, she represents one of the only ways the public has to obtain information concerning whether the President (or any other government official) knew about, or was involved in, Epstein's activities. Third, the arrangement is particularly ripe for coercion and abuse of authority. Maxwell is in prison. She, as any person, would be motivated to take actions that would return her liberty (or at least make her time in prison less unpleasant). Her attorney has expressly stated that she is "eager to receive clemency"–something only the President could do.[15]

The public deserves to know why the Department decided to transfer Maxwell to minimal-security housing and why it decided it was appropriate to waive Bureau of Prisons' policy to do so. This decision is yet another irregularity in a series[16] of irregularities[17] surrounding the investigation and disclosure of information concerning Jeffery Epstein's abuse of young girls. Disclosure of these documents is therefore necessary to provide a full record of what communications occurred, when they occurred, and whether any such communications might have resulted in abnormalities in the Department's treatment of Maxwell, and, by extension, its investigation of Epstein's crimes and the people in his orbit..

Second, disclosure of the information will significantly aid the public's understanding of the decisions the Department undertook when it authorized Maxwell's transfer, and whether any basis for her transfer was inappropriately linked to information she may have provided to the Department. To date, President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records. This is mainly due to the repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list."[18] The Department's bumbling and confused handling of the matter has further undermined public confidence. Its numerous contradictory statements related to the investigation,,[19] for instance, have caused immense confusion amongst the public.[20] Yet instead of releasing the files, the Department called on the President's former attorney to meet with the single individual who could potentially identify who might be named in the Epstein files. Release of the documents requested is therefore necessary to aid the public in

---

[15] Aaron Katersky, *Ghislaine Maxwell Offers to Testify Before Congress on Jeffrey Epstein if She Ii Pardoned*, ABC News (July 29, 2025), https://abcnews.go.com/US/ghislaine-maxwell-offers-testify-congress-jeffrey-epstein-pardoned/story?id=124180072

[16] Ryan Lucas, *Todd Blanche's Past Hangs Over Him as Top DOJ Official on Epstein Case*, NPR (Jul. 29, 2025), https://www.npr.org/2025/07/29/nx-s1-5484129/todd-blanche-epstein-ghislaine-maxwell-trump.

[17] Dhruv Mehrotra, *The FBI's Jeffrey Epstein Prison Video Had Nearly 3 Minutes Cut Out*, Wired (July 16, 2025), https://www.wired.com/story/the-fbis-jeffrey-epstein-prison-video-had-nearly-3-minutes-cut-out/.

[18] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[19] *See*, *e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[20] *See*, *e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

its understanding of the Department's handling of this situation. It is particularly important that the public understand whether the Department has offered Maxwell, a convicted sex offender who trafficked multiple young girls, concessions as a result of any agreement she made with Deputy Attorney General Blanche—and if such an offer did take place, the public must know why.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and the issuance of op-eds.[21] DDF maintains a dedicated website where it provides information related to its activities, which can be accessed by the public.[22] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[23] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous

---

[21] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.

[22] *See* https://www.democracydefendersfund.org/news-resources.

[23] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[24] and if so, whether that may be hindering public disclosure. Now, one of Epstein's closest confidants, a sex offender serving a 20-year prison term, has been transferred to a minimum-security prison following her meeting with the Deputy Attorney General. This matter is of the greatest urgency given the Department of Justice's horrendous treatment of Epstein and Maxwell's victims, including the Office of the U.S. Attorney for the Southern District of Florida's failure to notify Epstein and Maxwell's victims prior to entering into a September 24, 2007, non-prosecution agreement with Epstein that ended that federal investigation;[25] the Bureau of Prison's failure to provide adequate security to Epstein where he died while being held for pre-trial detention at the Metropolitan Correctional Center in New York, New York in August 2019 forever depriving the victims of their opportunity to testify against Epstein;[26] and now by the Department's inexplicable decision to transfer Maxwell to a minimal security facility within days of meeting with the Deputy Attorney General, notwithstanding her conviction for sex trafficking minors.[27] Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[28]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's decision to move Maxwell to what has been referred to as "Club Fed."[29]

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[30] Through a combination of investigative

---

[24] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[25] Brendan Pierson, *Appeals Court Upholds Jeffery Epstein's Non-Prosecution Deal*, Reuters (Apr. 14, 2020), https://www.reuters.com/article/world/us/appeals-court-upholds-jeffrey-epsteins-non-prosecution-deal-idUSKCN21W2G8/.

[26] Department of Justice, Office of the Inspector General, Investigation and Review of the Federal Bureau of Prisons' Custody, Care, and Supervision of Jeffery Epstein at the Metropolitan Correctional Center in New York, New York (June 2023), https://oig.justice.gov/sites/default/files/reports/23-085.pdf.

[27] Kaitlan Collins, et al., *Ghislaine Maxwell Moved to Federal Prison Camp in Texas*, CNN (Aug. 1, 2025), https://www.cnn.com/2025/08/01/politics/ghislaine-maxwell-federal-prison-texas.

[28] *See*, *e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

[29] Josh Fiallo, *Trump Sends Maxwell to Club Fed with Puppies, Anti-Aging–and Easy Escapes*, The Daily Beast (Aug. 4, 2025), https://www.thedailybeast.com/an-inside-look-at-ghislaine-maxwells-new-life-at-club-fed-in-bryan-texas/.

[30] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Mus

reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[31] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

2. **The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox News,[32] New York Times,[33] Wall Street Journal,[34] and Washington Post,[35] have all released

---

k.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest*', Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.

[31] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

[32] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[33] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[34] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[35] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025),

multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[36] Now one of Jefferey Epstein's closest confidants who facilitated his sex abuse has been moved to minimum-security prison just days after meeting with the Deputy Attorney General and President Trump's former attorney.[37]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed about the Department's actions and to provide reasons for the irregular set of circumstances involving Maxwell. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

---

https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[36] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

[37] Kaitlan Collins, et al., *Ghislaine Maxwell Moved to Federal Prison Camp in Texas*, CNN (Aug. 1, 2025), https://www.cnn.com/2025/08/01/politics/ghislaine-maxwell-federal-prison-texas.

CC: Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and

Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- 'Parent-child' relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[38] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[39] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

---

[38] *See* 5 U.S.C. § 552(b). *See also* Kathleen E. Marchsteiner & Meghan M. Stuessy, Cong. Rsch. Serv., R47984, The Federal Advisory Committee Act (FACA): Overview and Considerations for Congress (2024), https://www.congress.gov/crs-product/R47984.
[39] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@democracydefenders.org. Please send the requested records to me at either gabe@democracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

# EXHIBIT AL

**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

August 15, 2025

Gabriel Lezra
Democracy Defenders Fund
600 Pennsylvania Ave., SE
Washington, DC 20003
gabe@democracydefenders.org

Re: FOIA-2025-06302
FOIA-2025-06303
FOIA-2025-06304
ADF:ERH

Dear Gabriel Lezra:

This is to acknowledge receipt of your Freedom of Information Act (FOIA) requests dated received in this Office on August 6, 2025, in which you requested records of the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), and Public Affairs (PAO) concerning the transfer of Ghislaine Maxwell to Federal Prison Camp Bryan, and any waiver of the Bureau of Prisons' policy that convicted sex offenders be housed in at least a low security level institution.

On the same day, your organization submitted three requests seeking the same records from OAG, ODAG, and PAO. As a matter of administrative efficiency, we are aggregating your requests under the tracking number FOIA-2025-06302.

You have requested expedited processing of your request pursuant to the Department's standard permitting expedition for requests involving "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." See 28 C.F.R. § 16.5(e)(1)(ii) (2018). Based on the information you have provided, I have determined that your request for expedited processing under this standard should be denied. This Office cannot identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally.

You have also requested expedited processing of your request pursuant to the Department's standard involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." See 28 C.F.R. § 16.5(e)(1)(iv) (2018). Pursuant to Department policy, we directed your request to the Director of Public Affairs, who makes the decision whether to grant or deny expedited processing under this standard. See id. § 16.5(e)(2). Please be advised that as of the date of this letter, a decision on your expedition request is still pending. Once a determination has been made, we will promptly notify you. Nevertheless, please be advised that your request has been assigned to an analyst in this Office and our processing of it has been initiated.

The records you seek require a search in and/or consultation with another Office, and so your request falls within "unusual circumstances." See 5 U.S.C. § 552 (a)(6)(B)(i)-(iii)

(2018). Because of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute. For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request. At this time we have assigned your request to the complex track.

Please be advised that the records search options available are dynamic and can be adjusted according to the types of records you are seeking. In general, there are five categories of records search options available to you:

| | | |
|---|---|---|
| 1 | Official Correspondence | This category includes final, signed communications, memoranda, policies, and guidelines. |
| 2 | Emails and Attachments | This category includes emails sent or received by Department officials and records attached thereto. |
| 3 | Calendars | This category includes the electronic calendar of Department officials. |
| 4 | Standalone Documents | This category includes both electronic computer records and non-electronic (i.e. paper) records of Department officials to the extent that such records were not attached to an email.[1] |
| 5 | Classified Records | This category includes both electronic and non-electronic (i.e. paper) classified records maintained by Department officials. |

The time required to complete our records search will vary significantly depending on the types of records that need to be searched in order to fulfill your request. Furthermore, there are distinct and significant differences between the search time required to complete certain categories of records searches. For example, a records search focused on category 1 records (Official Correspondence) requires the least amount of time to complete. A records search seeking records from categories 2 and/or 3 requires significantly more time than that of category 1. Whereas a search seeking records from categories 4 and/or 5 is the most time-consuming search option and requires substantially more time to complete than a search focused on records of categories 2 and/or 3.

Additional factors, including the timeframe of your request and the number of Department officials who need to be searched in order to fulfill your request, can make a substantial difference in the time it takes to complete our records search. Generally speaking, requests seeking records prior to January 20, 2017, will require additional search time, and the more Department officials that are subject to the records search, the longer it will take to complete.

At this time and in an effort to facilitate our response to your request, we are focusing our records search on official correspondence (i.e. category 1) and emails and attachments that may be responsive to your request (category 2). Based on our experience, the vast majority of

[1] This category does not include Official Correspondence (i.e. category 1 records).

records responsive to FOIA requests consist of category 2 records, and it is not common for there to be standalone documents (category 4) that are not also located as attachments to emails. If you are interested in either adding additional categories of records to your search or focusing your search on records other than categories 1 and 2, please notify this Office as soon as possible. [2] You may also agree to an alternative formulation of your request, including a different scope or date range. Please include the administrative tracking number associated with this request in all your correspondence.

Any decision with regard to the application of fees or any request for a fee waiver will be made only after we determine whether fees will be implicated for this request.

We regret the necessity of this delay, but we assure you that your request will be processed as soon as possible. If you have any questions or wish to discuss the processing of your request, you may contact this Office by telephone at the above number, by e-mail at doj.oip.foia@usdoj.gov, or you may write to the Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001. Lastly, you may contact our Acting FOIA Public Liaison, Eric Hotchkiss, at the telephone number listed above to discuss any aspect of your request.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, MD 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with this Office's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically submitted within ninety days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." If possible, please provide a copy of your original request and this response letter with your appeal.

Sincerely,

for
Andrew D. Fiorillo
Acting Chief, Initial Request Staff
on behalf of
Sean O'Neill
Chief of Staff

---

[2] Notwithstanding your selection, not all of these categories would be appropriate for each request.

# EXHIBIT AM

Democracy Defenders Fund

August 6, 2025

Eugene Baime
Supervisory Attorney
FOIA/Privacy Act Requests
Federal Bureau of Prisons
Department of Justice
Room 924, HOLC Building
320 First Street, N.W.
Washington, DC 20534

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from July 1, 2025, to when this request is processed, of:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, concerning the transfer of Ghislaine Maxwell to Federal Prison Camp (FPC) Bryan, or her redesignation of the place of imprisonment to FPC Bryan. This includes any communication to or from, or determinations made by, Attorney General Pam Bondi, Deputy Attorney General Todd Blanche, Federal Bureau of Prisons Director William K. Marshall III, or any employee or contractor of the Department of Justice, including the Bureau of Prisons and the Bureau's Designation Sentence Computation Center, concerning Ms. Maxwell's transfer or redesignation of place of imprisonment.

2. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, including copies of any determination, and any supporting documentation forming the basis of any determination, made by the Department of Justice, including the Bureau of Prisons,

concerning waiver of the Bureau of Prisons policy that Ghislaine Maxwell, as a convicted sex offender, be housed in at least a Low security level institution.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the "operations" and "activities" of the Department of Justice. Specifically, release of these records will provide needed transparency concerning how and why the Department decided to transfer Ghislaine Maxwell to FPC Bryan. Ghislaine Maxwell was a close confidant to Jeffery Epstein and is currently serving a 20-year sentence for sex trafficking.[6] She is likely one of the few people who have information that could be used to

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Forc*e, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).
[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] Department of Justice, *Press Release: Ghislaine Maxwell Sentenced To 20 Years In Prison For Conspiring With Jeffrey Epstein To Sexually Abuse Minors* (June 28, 2022),

pinpoint the clients and close associates of Jeffery Epstein, some of whom may have engaged in, facilitated, or been aware of, illegal sexual activity with underage girls.

In the run up to the 2024 election, President Trump announced that he would release documents related to Epstein's investigation and his "client list".[7] Following President Trump's inauguration, the Department reportedly undertook a major review of the Epstein files, with the apparent goal of releasing information about Epstein's associates. However, and despite AG Bondi's assertion that she had the Epstein list "on [her] desk,", the Department issued a memo stating that their, "systematic review" of the Epstein files "revealed no incriminating 'client list."[8] At the same time, it was recently reported Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President[9] and personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] No further documents have been made public.

Against this backdrop, Deputy Attorney General Blanche—one of President Trump's former personal attorneys—met with Ms. Maxwell and her attorney for two days in July behind closed doors where he reportedly asked her a series of questions concerning individuals who may have been connected to Epstein's crimes.[11] Reports now suggest that she may have received qualified immunity[12], and has been transferred from a Low security institution to a minimum-security Federal Prison Camp.[13]

This arrangement is abnormal for several reasons. First, Ms. Maxwell is currently serving a 20-year sentence for sex trafficking. Sex offenders are required by the Bureau of Prisons' Program Statement 5100.008 to be housed in a Low level security institution unless a waiver is provided.[14] It is unclear why Maxwell would have been eligible to transfer to a

---

https://www.justice.gov/usao-sdny/pr/ghislaine-maxwell-sentenced-20-years-prison-conspiring-jeffrey-epstein-sexually-abuse.

[7] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga

[8] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[9] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trum*p, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/

[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1

[11] Aaron Katersky, et al., *Ghislaine Maxwell Received Limited Immunity During Meetings With Deputy Attorney General: Sources*, ABC News (July 25, 2025), https://abcnews.go.com/US/deputy-ag-blanche-set-meet-2nd-day-ghislaine/story?id=124064062.

[12] Aaron Katersky, et al., *Ghislaine Maxwell Received Limited Immunity During Meetings With Deputy Attorney General: Sources*, ABC News (July 25, 2025), https://abcnews.go.com/US/deputy-ag-blanche-set-meet-2nd-day-ghislaine/story?id=124064062.

[13] Kaitlan Collins, et al., *Ghislaine Maxwell Moved to Federal Prison Camp in Texas*, CNN (Aug. 1, 2025), https://www.cnn.com/2025/08/01/politics/ghislaine-maxwell-federal-prison-texas.

[14] Department of Justice, Bureau of Prisons, Program Statement § 5100.008, Ch. 5, pp. 8 (2025), https://www.bop.gov/PublicInfo/execute/policysearch?todo=query&series=5000#

minimum-security prison camp, given the horrendous activities she was convicted of perpetrating. Second, Maxwell is likely one of the only people capable of substantiating information about Epstein's clients and associates. Absent releasing the Department's investigative files, she represents one of the only ways the public has to obtain information concerning whether the President (or any other government official) knew about, or was involved in, Epstein's activities. Third, the arrangement is particularly ripe for coercion and abuse of authority. Maxwell is in prison. She, as any person, would be motivated to take actions that would return her liberty (or at least make her time in prison less unpleasant). Her attorney has expressly stated that she is "eager to receive clemency"–something only the President could do.[15]

The public deserves to know why the Department decided to transfer Maxwell to minimal-security housing and why it decided it was appropriate to waive Bureau of Prisons' policy to do so. This decision is yet another irregularity in a series[16] of irregularities[17] surrounding the investigation and disclosure of information concerning Jeffery Epstein's abuse of young girls. Disclosure of these documents is therefore necessary to provide a full record of what communications occurred, when they occurred, and whether any such communications might have resulted in abnormalities in the Department's treatment of Maxwell, and, by extension, its investigation of Epstein's crimes and the people in his orbit..

Second, disclosure of the information will significantly aid the public's understanding of the decisions the Department undertook when it authorized Maxwell's transfer, and whether any basis for her transfer was inappropriately linked to information she may have provided to the Department. To date, President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records. This is mainly due to the repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list."[18] The Department's bumbling and confused handling of the matter has further undermined public confidence. Its numerous contradictory statements related to the investigation,,[19] for instance, have caused immense confusion amongst the public.[20] Yet instead of releasing the files, the Department called on the President's former attorney to meet with the single individual who could potentially identify who might be named in

---

[15] Aaron Katersky, *Ghislaine Maxwell Offers to Testify Before Congress on Jeffrey Epstein if She Ii Pardoned*, ABC News (July 29, 2025),
https://abcnews.go.com/US/ghislaine-maxwell-offers-testify-congress-jeffrey-epstein-pardoned/story?id=124180072

[16] Ryan Lucas, *Todd Blanche's Past Hangs Over Him as Top DOJ Official on Epstein Case*, NPR (Jul. 29, 2025), https://www.npr.org/2025/07/29/nx-s1-5484129/todd-blanche-epstein-ghislaine-maxwell-trump.

[17] Dhruv Mehrotra, *The FBI's Jeffrey Epstein Prison Video Had Nearly 3 Minutes Cut Out*, Wired (July 16, 2025), https://www.wired.com/story/the-fbis-jeffrey-epstein-prison-video-had-nearly-3-minutes-cut-out/.

[18] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[19] *See*, *e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025),
https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[20] *See*, *e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025),
https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

the Epstein files. Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of this situation. It is particularly important that the public understand whether the Department has offered Maxwell, a convicted sex offender who trafficked multiple young girls, concessions as a result of any agreement she made with Deputy Attorney General Blanche—and if such an offer did take place, the public must know why.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and the issuance of op-eds.[21] DDF maintains a dedicated website where it provides information related to its activities, which can be accessed by the public.[22] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[23] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person

[21] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.
[22] *See* https://www.democracydefendersfund.org/news-resources.
[23] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[24] and if so, whether that may be hindering public disclosure. Now, one of Epstein's closest confidants, a sex offender serving a 20-year prison term, has been transferred to a minimum-security prison following her meeting with the Deputy Attorney General. This matter is of the greatest urgency given the Department of Justice's horrendous treatment of Epstein and Maxwell's victims, including the Office of the U.S. Attorney for the Southern District of Florida's failure to notify Epstein and Maxwell's victims prior to entering into a September 24, 2007, non-prosecution agreement with Epstein that ended that federal investigation;[25] the Bureau of Prison's failure to provide adequate security to Epstein where he died while being held for pre-trial detention at the Metropolitan Correctional Center in New York, New York in August 2019 forever depriving the victims of their opportunity to testify against Epstein;[26] and now by the Department's inexplicable decision to transfer Maxwell to a minimal security facility within days of meeting with the Deputy Attorney General, notwithstanding her conviction for sex trafficking minors.[27] Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[28]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's decision to move Maxwell to what has been referred to as "Club Fed."[29]

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[30] Through a combination of investigative

---

[24] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[25] Brendan Pierson, *Appeals Court Upholds Jeffery Epstein's Non-Prosecution Deal*, Reuters (Apr. 14, 2020), https://www.reuters.com/article/world/us/appeals-court-upholds-jeffrey-epsteins-non-prosecution-deal-idUSKCN21W2G8/.

[26] Department of Justice, Office of the Inspector General, Investigation and Review of the Federal Bureau of Prisons' Custody, Care, and Supervision of Jeffery Epstein at the Metropolitan Correctional Center in New York, New York (June 2023), https://oig.justice.gov/sites/default/files/reports/23-085.pdf.

[27] Kaitlan Collins, et al., *Ghislaine Maxwell Moved to Federal Prison Camp in Texas*, CNN (Aug. 1, 2025), https://www.cnn.com/2025/08/01/politics/ghislaine-maxwell-federal-prison-texas.

[28] *See*, *e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

[29] Josh Fiallo, *Trump Sends Maxwell to Club Fed with Puppies, Anti-Aging–and Easy Escapes*, The Daily Beast (Aug. 4, 2025), https://www.thedailybeast.com/an-inside-look-at-ghislaine-maxwells-new-life-at-club-fed-in-bryan-texas/.

[30] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Mus

reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[31] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

**2. The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox News,[32] New York Times,[33] Wall Street Journal,[34] and Washington Post,[35] have all released

---

k.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest*', Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.

[31] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

[32] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[33] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[34] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[35] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025),

multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[36] Now one of Jefferey Epstein's closest confidants who facilitated his sex abuse has been moved to minimum-security prison just days after meeting with the Deputy Attorney General and President Trump's former attorney.[37]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed about the Department's actions and to provide reasons for the irregular set of circumstances involving Maxwell. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

---

https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[36] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

[37] Kaitlan Collins, et al., *Ghislaine Maxwell Moved to Federal Prison Camp in Texas*, CNN (Aug. 1, 2025), https://www.cnn.com/2025/08/01/politics/ghislaine-maxwell-federal-prison-texas.

CC: Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- ‘Parent-child’ relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[38] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[39] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@democracydefenders.org. Please send the requested records to me at either gabe@democracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

---

[38] *See* 5 U.S.C. § 552(b). *See also* Kathleen E. Marchsteiner & Meghan M. Stuessy, Cong. Rsch. Serv., R47984, The Federal Advisory Committee Act (FACA): Overview and Considerations for Congress (2024), https://www.congress.gov/crs-product/R47984.

[39] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

# EXHIBIT AN

Gmail

**Riley Pynnonen <riley@democracydefenders.org>**

# Fwd: FOIA Request 2025-06779

**'Gabe Lezra' via Epstein FOIA** <epstein-foia@statedemocracydefenders.org> Wed, Sep 24, 2025 at 6:48 AM
Reply-To: Gabe Lezra <gabe@democracydefenders.org>
To: Epstein FOIA <epstein-foia@statedemocracydefenders.org>, FOIA <foia@democracydefenders.org>

---------- Forwarded message ---------
From: <bop-ogc-efoia-s@bop.gov>
Date: Tue, Sep 23, 2025 at 3:26 PM
Subject: FOIA Request 2025-06779
To: <gabe@democracydefenders.org>

Dear Gabriel Lezra,

This is to acknowledge receipt of your Freedom of Information Act (FOIA) request. The Federal Bureau of Prisons (BOP) assigned your request FOIA Request Number 2025-06779. *Please note, your request for expedited processing is under review and the below is our standard language for complex processing.*

The records you seek require a field office to search for and collect records and/or we expect any records responsive to your request will be voluminous and require significant time to review, and/or your request requires consultation with at least one other agency with a substantial interest in your request. Because of these unusual circumstances, we are extending the time limit to respond to your request beyond the ten additional days provided by the statute. *See* 5 U.S.C. § 552 (a)(6)(B)(i)-(iii) (2018).

For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request. At this time, we have assigned your request to the complex track. We anticipate processing your request will take up to 9 months. In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records so it can be placed in a different processing track. You can also agree to an alternative time frame for processing, should records be located, or you may wish to await the completion of our records search to discuss either of these options. Any decision regarding the application of fees will be made only after we determine whether fees will be implicated for this request.

We regret the necessity of this delay, but assure you your request will be processed as soon as possible. If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact this Office by e-mail at bop-ogc-efoia-s@bop.gov by telephone at (202) 616-7750, or by writing to the above address. You may also contact our FOIA Public Liaison, Ms. Kara Christenson, at the same email or telephone number to discuss any aspect of your request. You can also check the status of your request online at http://www.bop.gov/foia/index.jsp#tabs-6.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448.

Sincerely,

FOIA Staff
Federal Bureau of Prisons
U.S. Department of Justice

--

Democracy
Defenders
Action

**Gabriel (Gabe) Lezra** (he/him/el)
**Senior Policy Strategist**
**Democracy Defenders Action** (c4)

--
You received this message because you are subscribed to the Google Groups "Epstein FOIA" group.
To unsubscribe from this group and stop receiving emails from it, send an email to epstein-foia+unsubscribe@statedemocracydefenders.org.
To view this discussion visit https://groups.google.com/a/statedemocracydefenders.org/d/msgid/epstein-foia/CAAcvZ_w1ba-Kk%3Dt79w38GEUyQOYn-tmO5wb5X7hODfcE9ThLjA%40mail.gmail.com.
For more options, visit https://groups.google.com/a/statedemocracydefenders.org/d/optout.

# EXHIBIT AO

Gmail **Riley Pynnonen <riley@democracydefenders.org>**

# FOIA Request Number 2025-06779

**'Taryn Wilgus Null' via Epstein FOIA** <epstein-foia@statedemocracydefenders.org> Wed, Sep 24, 2025 at 10:46 AM
Reply-To: Taryn Wilgus Null <taryn@democracydefenders.org>
To: bop-ogc-efoia-s@bop.gov
Cc: Epstein FOIA <epstein-foia@statedemocracydefenders.org>

Hi there,

We received an email acknowledging the above-referenced FOIA request and would like to schedule a time to discuss the request. When are you available for a call?

Thank you,
Taryn

**Taryn Wilgus Null** (she/her)
*Senior Counsel*

**Democracy Defenders Fund**
Email: taryn@democracydefenders.org
Phone: (301) 741-9316

democracydefendersfund.org Democracy Defenders Fund

--
You received this message because you are subscribed to the Google Groups "Epstein FOIA" group.
To unsubscribe from this group and stop receiving emails from it, send an email to epstein-foia+unsubscribe@statedemocracydefenders.org.
To view this discussion visit https://groups.google.com/a/statedemocracydefenders.org/d/msgid/epstein-foia/CAEAfanrmVcQFBiEMPee8QBaFYMDxEvKxWeHZTk3kiK5gbVVvsA%40mail.gmail.com.
For more options, visit https://groups.google.com/a/statedemocracydefenders.org/d/optout.

# EXHIBIT AP

Gmail

Riley Pynnonen <riley@democracydefenders.org>

# FOIA Request Number 2025-06779

**'Taryn Wilgus Null' via Epstein FOIA** <epstein-foia@statedemocracydefenders.org> Fri, Nov 14, 2025 at 11:17 AM
Reply-To: Taryn Wilgus Null <taryn@democracydefenders.org>
To: bop-ogc-efoia-s@bop.gov
Cc: Epstein FOIA <epstein-foia@statedemocracydefenders.org>

Hi there,

I had a very helpful conversation with Will Cott (I think) from the BOP FOIA office on September 25, and am writing to check in again on the status of the above-referenced FOIA request. Can someone please call me at 301-741-9316?

Thank you,
Taryn

**Taryn Wilgus Null** (she/her)
*Senior Counsel*

**Democracy Defenders Fund**
Email: taryn@democracydefenders.org
Phone: (301) 741-9316

democracydefendersfund.org Democracy Defenders Fund

On Wed, Sep 24, 2025 at 10:46 AM Taryn Wilgus Null <taryn@democracydefenders.org> wrote:

> Hi there,
>
> We received an email acknowledging the above-referenced FOIA request and would like to schedule a time to discuss the request. When are you available for a call?
>
> Thank you,
> Taryn
>
> **Taryn Wilgus Null** (she/her)
> *Senior Counsel*
>
> **Democracy Defenders Fund**

Email: taryn@democracydefenders.org
Phone: (301) 741-9316

democracydefendersfund.org Democracy Defenders Fund

--
You received this message because you are subscribed to the Google Groups "Epstein FOIA" group.
To unsubscribe from this group and stop receiving emails from it, send an email to epstein-foia+unsubscribe@statedemocracydefenders.org.
To view this discussion visit https://groups.google.com/a/statedemocracydefenders.org/d/msgid/epstein-foia/CAEAfanoQ1mYEWPPm2P%3Da_SquKE3JZktvewkBj%2B7Y665%2BRMY-dA%40mail.gmail.com.
[Quoted text hidden]

# EXHIBIT AQ

Gmail

Riley Pynnonen <riley@democracydefenders.org>

# Fwd: Automatic reply: [EXTERNAL] Re: FOIA Request Number 2025-06779

Mon, Dec 1, 2025 at 11:09 AM

---------- Forwarded message ---------
From: **BOP-OGC-EFOIA-S (BOP)** <BOP-OGC-EFOIA-S@bop.gov>
Date: Fri, Nov 14, 2025 at 11:18 AM
Subject: Automatic reply: [EXTERNAL] Re: FOIA Request Number 2025-06779
To: Taryn Wilgus Null <taryn@democracydefenders.org>

Greetings,

The Federal Bureau of Prisons (BOP), FOIA/PA Section has received your email and will respond to you as quickly as possible. Meanwhile, if you would like more information about the FOIA and/or BOP's FOIA process, please visit: https://www.bop.gov/foia/index.jsp#tabs-0.

We appreciate your patience.

Sincerely,
FOIA/Privacy Act Section
Federal Bureau of Prisons
U.S. Department of Justice

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

# EXHIBIT AR

U.S. Department of
JUSTICE

# Fiscal Year 2024 Annual Freedom of Information Act Report



March 6, 2025

Office of Information Policy

# I. BASIC INFORMATION REGARDING REPORT

1. *Name, title, address, and telephone number of person(s) to be contacted with questions about the Report.*

   Lindsay Steel
   Chief, FOIA Compliance Staff
   Office of Information Policy
   United States Department of Justice
   441 G Street, NW, 6th Floor
   Washington, DC 20530-0001
   (202) 514-3642
   Lindsay.Steel@usdoj.gov

2. *Provide an electronic link for access to the Report on the agency Web site.*

   http://www.justice.gov/oip/reports-1#s1

3. *Explain how to obtain a copy of the Report in paper form.*

   Contact Lindsay Steel at the address, telephone number, or e-mail listed above.

## II. MAKING A FOIA REQUEST

1. *Names, addresses, and telephone numbers of all individual agency components that receive FOIA requests.*

   For the names, addresses, and telephone numbers, visit: https://www.foia.gov/agency-search.html.

2. *Brief description of why some requests are not granted and an overview of certain general categories of the agency's records to which the FOIA exemptions apply.*

   The Department of Justice is the Executive Branch's principal law enforcement authority. As a result, many of the records maintained by the Department of Justice involve law enforcement matters. The Department of Justice invokes the FOIA's two privacy exemptions, more than the rest of the other exemptions combined, to prevent unwarranted invasions of the personal privacy of individuals mentioned in law enforcement records. The Department of Justice also protects the identities of confidential informants who provide information to investigators, as well as details about investigative techniques and procedures. In the general litigation context, the Department of Justice protects information covered by the civil discovery privileges.

3. *Electronic link to agency FOIA regulations.*

   The Department of Justice FOIA Regulations contained in 28 C.F.R. §§ 16.1-16.12 (2023) can be accessed at http://www.justice.gov/oip/doj-foia-regulations.

## III. DEFINITIONS, EXEMPTIONS, AND COMPONENT ACRONYMS

1. *Definitions of terms used in this Report:*

a. **Administrative Appeal** – a request to a federal agency asking that it review at a higher administrative level a FOIA determination made by the agency at the initial request level.

b. **Average Number** – the number obtained by dividing the sum of a group of numbers by the quantity of numbers in the group. For example, of 3, 7, and 14, the average number is 8.

c. **Backlog** – the number of requests or administrative appeals that are pending at an agency at the end of the fiscal year that are beyond the statutory time period for a response.

d. **Component** – for agencies that process requests on a decentralized basis, a "component" is an entity, also sometimes referred to as an Office, Division, Bureau, Center, or Directorate, within the agency that processes FOIA requests. The FOIA now requires that agencies include in their Annual FOIA Report data for both the agency overall and for each principal component of the agency.

e. **Consultation** – the procedure whereby the agency responding to a FOIA request first forwards a record to another agency or component within the same agency for its review because that other agency has an interest in the document. Once the agency in receipt of the consultation finishes its review of the record, it responds back to the agency or component within the same agency that forwarded it. That agency, in turn, will then respond to the FOIA requester.

f. **Exemption 3 Statute** – a federal statute that exempts information from disclosure and which the agency relies on to withhold information under subsection (b)(3) of the FOIA.

g. **FOIA Request** – a FOIA request is generally a request to a federal agency for access to records concerning another person (i.e., a "third-party" request), or concerning an organization, or a particular topic of interest. FOIA requests also include requests made by requesters seeking records concerning themselves (i.e., "first-party" requests)

when those requesters are not subject to the Privacy Act, such as non-U.S. citizens. Moreover, because all first-party requesters should be afforded the benefit of both the access provisions of the FOIA as well as those of the Privacy Act, FOIA requests also include any first-party requests where an agency determines that it must search beyond its Privacy Act "systems of records" or where a Privacy Act exemption applies, and the agency looks to FOIA to afford the greatest possible access. All requests which require the agency to utilize the FOIA in responding to the requester are included in this Report. Additionally, a FOIA request includes records referred to the agency for processing and direct response to the requester. It does not, however, include records for which the agency has received a consultation from another agency. (Consultations are reported separately in Section XII of this Report.)

h. **Full Grant** – an agency decision to disclose all records in full in response to a FOIA request.

i. **Full Denial** – an agency decision not to release any records in response to a FOIA request because the records are exempt in their entireties under one or more of the FOIA exemptions, or because of a procedural reason, such as when no records could be located.

j. **Median Number** – the middle, not average, number. For example, of 3, 7, and 14, the median number is 7.

k. **Multi-Track Processing** – a system in which simple requests requiring relatively minimal review are placed in one processing track and more voluminous and complex requests are placed in one or more other tracks. Requests granted expedited processing are placed in yet another track. Requests in each track are processed on a first in/first out basis.

   i. **Expedited Processing** – an agency will process a FOIA request on an expedited basis when a requester satisfies the requirements for expedited processing as set forth in the statute and in agency regulations.

   ii. **Simple Request** – a FOIA request that an agency using multi-track processing places in its fastest (non-expedited) track based on the low volume and/or simplicity of the records requested.

iii. **Complex Request** – a FOIA request that an agency using multi-track processing places in a slower track based on the high volume and/or complexity of the records requested.

l. **Partial Grant/Partial Denial** – in response to a FOIA request, an agency decision to disclose portions of the records and to withhold other portions that are exempt under the FOIA, or to otherwise deny a portion of the request for a procedural reason.

m. **Pending Request or Pending Administrative Appeal** – a request or administrative appeal for which an agency has not taken final action in all respects.

n. **Perfected Request** – a request for records which reasonably describes such records and is made in accordance with published rules stating the time, place, fees (if any) and procedures to be followed.

o. **Processed Request or Processed Administrative Appeal** – a request or administrative appeal for which an agency has taken final action in all respects.

p. **Range in Number of Days** – the lowest and highest number of days to process requests or administrative appeals.

q. **Time Limits** – the time period in the statute for an agency to respond to a FOIA request (ordinarily twenty working days from receipt of a perfected FOIA request).

2. *Descriptions of the nine FOIA exemptions:*

a. **Exemption 1**: classified national defense and foreign relations information

b. **Exemption 2**: information that is related solely to the internal personnel rules and practices of an agency

**c.** **Exemption 3**: information that is prohibited from disclosure by another federal law

**d.** **Exemption 4**: trade secrets and other confidential business information

**e.** **Exemption 5**: inter-agency or intra-agency communications that are protected by legal privileges

**f.** **Exemption 6**: information involving matters of personal privacy

g. **Exemption 7**: records or information compiled for law enforcement purposes, to the extent that the production of those records (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions, or (F) could reasonably be expected to endanger the life or physical safety of any individual

h. **Exemption 8**: information relating to the supervision of financial institutions

i. **Exemption 9**: geological information on wells

3. Agency Component Abbreviations

| Component Abbreviation | Component Name |
|---|---|
| ATJ | Office for Access to Justice |
| Antitrust | Antitrust Division |
| ATF | Bureau of Alcohol, Tobacco, Firearms, and Explosives |
| BOP | Federal Bureau of Prisons |
| Civil | Civil Division |
| Civil Rights | Civil Rights Division |
| COPS | Office of Community Oriented Policing Services |
| Criminal | Criminal Division |
| CRS | Community Relations Service |
| DEA | Drug Enforcement Administration |
| ENRD | Environment and Natural Resources Division |
| EOIR | Executive Office for Immigration Review |
| EOUSA | Executive Office for United States Attorneys |
| EOUST | Executive Office for United States Trustees |
| FBI | Federal Bureau of Investigation |
| FCSC | Foreign Claims Settlement Commission |
| JMD | Justice Management Division |
| NSD | National Security Division |
| OCDETF | Executive Office for Organized Crime Drug Enforcement Task Forces |
| OIG | Office of the Inspector General |
| OIP | Office of Information Policy |
| OJP | Office of Justice Programs |
| OLC | Office of Legal Counsel |

| | |
|---|---|
| OPR | Office of Professional Responsibility |
| OSG | Office of the Solicitor General |
| OVW | Office on Violence Against Women |
| PARDON | Office of the Pardon Attorney |
| PRAO | Professional Responsibility Advisory Office |
| Tax | Tax Division |
| USMS | United States Marshals Service |
| USNCB | United States National Central Bureau INTERPOL |
| USPC | United States Parole Commission |

## IV. EXEMPTION 3 STATUTES

| Statute | Type of Information Withheld | Case Citation | Agency / Component | Number of Times Relied upon by Agency / Component | Total Number of Times Relied upon by Agency Overall |
|---|---|---|---|---|---|
| 5 U.S.C. app. § 107(a)(2) | Confidential financial disclosure report pertaining to certain government employees | Meyerhoff v. EPA, 958 F.2d 1498, 1500- 02 (9th Cir. 1992); Boyd v. Exec. Off. for U.S. Attys, 161 F. Supp. 3d 1, 7 (D.D.C. 2015); Seife v. NIH, 874 F. Supp. 2d 248, 254 (S.D.N.Y. 2012). | Criminal | 2 | 3 |
| | | | EOUST | 1 | |
| 10 U.S.C. § 130(a) | Certain "technical data with military or space application in the possession of, or under the control of, the Department of Defense" | Newport Aeronautical Sales v. Dep't of the Air Force, 684 F.3d 160, 167-68 (D.C. Cir. 2012); Chenkin v. Dep't of the Army, No. 93-494, 1994 U.S. Dist. LEXIS 20907, at *8 (M.D. Pa. Jan. 14, 1994), aff'd, 61 F.3d 894 (3d Cir. 1995) (unpublished table decision). | FBI | 4 | 5 |
| | | | OIP | 1 | |
| 10 U.S.C. § 130b | Personally identifiable information pertaining to | Freedom Watch, Inc. v. NSA, 197 F. Supp. 3d 165, | FBI | 2 | 2 |

| | | | | | |
|---|---|---|---|---|---|
| | "any member of the armed forces assigned to an overseas unit, a sensitive unit, or a routinely deployable unit" and "any employee of the Department of Defense or of the Coast Guard whose duty station is with any such unit" | 174 (D.D.C. 2016); Hiken v. DOD, 521 F. Supp. 2d 1047, 1062 (N.D. Cal. 2007); O'Keefe v. DOD, 463 F. Supp. 2d 317, 325 (E.D.N.Y. 2006); Windel v. United States, No. A02-306, 2005 WL 846206, at *2 (D. Alaska Apr. 11, 2005). | | | |
| 10 U.S.C. § 130c | Certain "sensitive information of foreign governments" and certain international organizations | ACLU v. DOD, 389 F. Supp. 2d 547, 553-54 (S.D.N.Y. 2005); Nat'l Inst. of Mil. Just. v. DOD, 404 F. Supp. 2d 325, 335-37 (D.D.C. 2005), aff'd on other grounds, 512 F.3d 677 (D.C. Cir. 2008); Gerstein v. DOD, No. 03-5193, slip op. at 8 (N.D. Ca. Dec. 21, 2004). | FBI | 2 | 2 |
| 10 U.S.C. § 424 | Organization or any function of, and certain information pertaining to, employees of the Defense Intelligence Agency, the National Reconnaissance Office, and the National | Hamdan v. DOJ, 797 F.3d 759, 776 (9th Cir. 2015); Freedom Watch, Inc. v. NSA, 197 F. Supp. 3d 165, 174 (D.D.C. 2016); Wickwire Gavin, P.C. v. Def. Intel. Agency, 330 F. Supp. 2d | FBI | 4 | 4 |

| | | | | | |
|---|---|---|---|---|---|
| | Geospatial-Intelligence Agency | 592, 602 (E.D. Va. 2004). | | | |
| 10 U.S.C. § 1102(f) | Medical quality assurance records created by or for the Department of Defense as part of a medical quality assurance program | Goodrich v. Dep't of the Air Force, 404 F. Supp. 2d 48, 50-51 (D.D.C. 2005); Dayton Newspapers, Inc. v. Dep't of the Air Force, 107 F. Supp. 2d 912, 917 (S.D. Ohio 1999). | FBI | 1 | 1 |
| 10 U.S.C. § 3309 (formerly at 10 U.S.C. § 2305(g)) | Certain contractor proposals | Roman v. NSA, Nos. 09-2947, 09-4281, 09-3344, 09-2504, 09-5633, 2012 WL 569747, at *7 (E.D.N.Y. Feb. 22, 2012); Margolin v. NASA, No. 09-CV-00421-LRHVPC, 2011 WL 1303221, at *6 (D. Nev. Mar. 31, 2011). | FBI | 5 | 5 |
| 13 U.S.C. §§ 8(b), 9(a) | Certain census data | Baldrige v. Shapiro, 455 U.S. 345, 354-55 (1982). | FBI | 4 | 4 |
| 13 U.S.C. § 301(g) | Certain shippers' export declarations or successor documents | Afr. Fund v. Mosbacher, No. 92 Civ. 289, 1993 WL 183736, at *5 (S.D.N.Y. May 26, 1993); Young Conservative Found., Inc. v. U.S. Dep't of Commerce, | FBI | 3 | 3 |

| | | | | | |
|---|---|---|---|---|---|
| | | No. 85-3982, 1987 WL 9244, at *2-3 (D.D.C. Mar. 25, 1987). | | | |
| 15 U.S.C. § 6801 | Nonpublic personal information of customers of financial institutions | Hodes v. HUD, 532 F. Supp. 2d 108, 117 (D.D.C. 2008). | FBI | 1 | 1 |
| 15 U.S.C. § 18a(h) | Information submitted in connection with the premerger notification provisions of the Hart-Scott-Rodino Antitrust Improvements Act of 1976. | N/A | Antitrust | 7 | 8 |
| | | | FBI | 1 | |
| 15 U.S.C. § 1314(g) | "Any documentary material, answers to written interrogatories, or transcripts of oral testimony" provided pursuant to certain civil investigative demands pertaining to antitrust investigations | Motion Picture Ass'n of Am. v. DOJ, No. 80 Civ. 6612, slip op. at 1 (S.D.N.Y. Oct. 6, 1981). | Antitrust | 2 | 3 |
| | | | FBI | 1 | |
| 54 U.S.C. § 100707 (formerly at 16 U.S.C. § 5937) | Information pertaining to: "endangered, threatened, rare, or commercially valuable" National Park System resources; "mineral | Hornbostel v. U.S. Dep't of the Interior, 305 F. Supp. 2d 21, 30 (D.D.C. 2003), summary affirmance granted, No. 03- 5257, 2004 | FBI | 2 | 2 |

| | | | | | |
|---|---|---|---|---|---|
| | or paleontological objects within units of the National Park System"; or "objects of cultural patrimony within units of the National Park System" | WL 1900562 (D.C. Cir. Aug. 25, 2004); Sw. Ctr. for Biological Diversity v. USDA, 170 F. Supp. 2d 931, 945 (D. Ariz. 2000), aff'd, 314 F.3d 1060, 1062 (9th Cir. 2002); Pease v. U.S. Dep't of Interior, No. 1:99CV113, slip op. at 2, 4 (D. Vt. Sept. 17, 1999). | | | |
| 18 U.S.C. § 798 | Certain classified information pertaining to the communication intelligence and cryptographic devices of the United States or any foreign government | Larson v. Dep't of State, 565 F.3d 857, 868-69 (D.C. Cir. 2009); N.Y. Times Co. v. DOJ, No. 14 Civ 03776, 2016 WL 5946711, at *6 (S.D.N.Y. Aug. 18, 2016); Adejumobi v. NSA, No. 07-1237, 2007 WL 4247878, at *3 (M.D. Fla. Dec. 3, 2007), aff'd per curiam, 287 F. App'x 770 (11th Cir. 2008); Winter v. NSA, 569 F. Supp. 545, 546-48 (S.D. Cal. 1983). | FBI | 1 | 1 |
| 18 U.S.C. §§ 2510, et seq. | Wiretap requests and the contents of any wire, oral, or electronic communication obtained through wiretaps | Payne v. DOJ, No. 96-30840, 1997 WL 450139, at *3 (5th Cir. July 11, 1997); Lam Lek Chong v. DEA, 929 | DEA | 26 | 156 |
| | | | EOUSA | 1 | |
| | | | FBI | 127 | |

| | | | | | |
|---|---|---|---|---|---|
| | | F.2d 729, 732-33 (D.C. Cir. 1991). | OCDETF | 2 | |
| 18 U.S.C. § 3123(d) | Certain court "order[s] authorizing or approving the installation and use of a pen register or a trap and trace device"; information pertaining to "the existence of the pen register or trap and trace device or the existence of the investigation" | Labow v. DOJ, 831 F.3d 523, 527-28 (D.C. Cir. 2016); ACLU v. DOJ, 2014 WL 4954121, at *11 (N.D. Cal. Sept. 30, 2014); Manna v. DOJ, 815 F. Supp. 798, 812 (D.N.J. 1993), aff'd on other grounds, 51 F.3d 1158 (3d Cir. 1995). | DEA | 15 | 93 |
| | | | FBI | 77 | |
| | | | OCDETF | 1 | |
| 18 U.S.C. § 3509(d) | Certain records containing identifying information pertaining to children involved in criminal proceedings | Corley v. DOJ, 998 F.3d 981, 982-85 (D.C. Cir. 2021). | EOUSA | 3 | 126 |
| | | | FBI | 123 | |
| 18 U.S.C. § 3521(b)(1)(g) | "[T]he identity or location of the person relocated or protected, or any other matter concerning the person or the program after weighing [various factors]," subject to certain exceptions | Bonadonna v. DOJ, 791 F. Supp. 2d 269, 270 (D. Mass. 2010), aff'd, No. 10 1595, 2011 WL 4770189 (1st Cir. Jan. 7, 2011). | FBI | 6 | 12 |
| | | | USMS | 6 | |
| 18 U.S.C. § 5038(a) | Records of juvenile delinquency proceedings | Lavado v. DEA, No. 90-5262, 1991 WL 119586, at *1 | FBI | 19 | 19 |

| | | | | | |
|---|---|---|---|---|---|
| | | (D.C. Cir. June 28, 1991). | | | |
| 26 U.S.C. §§ 6103, 6105 | Certain tax return information, to include Taxpayer Identification Numbers of third parties, and certain tax convention information | Nosal v. IRS, 523 F. Supp. 3d 72, 79 (D.D.C. 2021); Church of Scientology v. IRS, 484 U.S. 9, 15 (1987) (26 U.S.C. § 6103); Elec. Priv. Info. Ctr. v. IRS, 910 F.3d 1232, 1237 (D.C. Cir. 2018); Leonard v. U.S. Dep'of Treasury, 590 F. App'x. 141, 143-44 (3d Cir. 2014) (per curiam); Pac. Fisheries, Inc. v. IRS, 395 F. App'x. 438, 440 (9th Cir. 2010) (unpublished disposition) (26 U.S.C. §§ 6103, 6105). | ATF | 248 | 323 |
| | | | EOUSA | 1 | |
| | | | FBI | 48 | |
| | | | Tax | 26 | |
| 28 U.S.C. § 652(d) | "[C]onfidential dispute resolution communications" | Yelder v. DOD, 577 F. Supp. 2d 342, 346-47 (D.D.C. 2008). | ENRD | 1 | 1 |
| 31 U.S.C. § 3730(b)(2) | Records pertaining to civil actions for false claims against the United States Government | N/A | EOUSA | 1 | 2 |
| | | | FBI | 1 | |
| 31 U.S.C. § 5319 | Reports pertaining to | Yunes v. DOJ, 263 F. Supp. | DEA | 3 | 32 |

| | | | | | |
|---|---|---|---|---|---|
| | monetary instruments transactions filed under subchapter II of chapter 53 of title 31 and records of those reports | 3d 82, 87 (D.D.C. 2017)); Council on Am.-Islamic Rels., Cal. v. FBI, 749 F. Supp. 2d 1104, 1117 (S.D. Cal. 2010); Berger v. IRS, 487 F. Supp. 2d 482, 496-97 (D.N.J. 2007), affd on other grounds, 288 F. App'x 829 (3d Cir. 2008). | FBI | 28 | |
| | | | OCDETF | 1 | |
| 39 U.S.C. § 410(c)(2) | Commercial information which would not be disclosed under good business practice | Wickwire Gavin, P.C. v. USPS, 356 F.3d 588, 589, 597 (4th Cir. 2004); Am. Postal Workers Union, AFL-CIO v. USPS, 742 F. Supp. 2d 76, 81-83 (D.D.C. 2010); Reid v. USPS, No. 05-294, 2006 WL 1876682, at *5-9 (S.D. Ill. July 5, 2006); Robinett v. USPS, No. 02-1094, 2002 WL 1728582, at *5 (E.D. La. July 24, 2002). | FBI | 1 | 1 |
| 41 U.S.C. § 4702 (formerly at 41 U.S.C. § 253b(m)(1)) | Contractor proposals that are in the possession or control of an executive agency and that have not been set forth or incorporated by reference | Sinkfield v. HUD, No. 10-885, 2012 U.S. Dist. LEXIS 35233, at *13-15 (S.D. Ohio Mar. 15, 2012); Margolin v. NASA, No. 09- CV-00421, 2011 WL 1303221, at *6 (D. | BOP | 5 | 9 |
| | | | JMD | 4 | |

| | | | | | |
|---|---|---|---|---|---|
| | into contracts | Nev. Mar. 31, 2011); Hornbostel v. U.S. Dep't of the Interior, 305 F. Supp. 2d 21, 30 (D.D.C. 2003), summary affirmance granted, No. 03-5257, 2004 WL 1900562 (D.C. Cir. Aug. 25, 2004). | | | |
| 41 U.S.C. § 2102 (amending 41 U.S.C. § 423(a)(1)) | Contractor bid or proposal information; source selection information | Legal & Safety Employer Research, Inc. v. U.S. Dep't of the Army, No. Civ. S001748, 2001 WL 34098652, at *3-4 (E.D. Cal. May 4, 2001) (dictum). | BOP | 2 | 4 |
| | | | USMS | 2 | |
| 42 U.S.C. § 300aa-12(d)(4)(A) | "Except as provided in subparagraph (B), information submitted to a special master or the court in a proceeding on a petition [for compensation under the National Vaccine Injury Compensation Program] . . . without the express written consent of the person who submitted the information" | Long v. DOJ, 778 F. Supp. 2d 222, 234 (N.D.N.Y. 2011). | Civil | 19 | 19 |
| 42 U.S.C. § 2000g-2b | Conciliation assistance data received by the Community | N/A | CRS | 14 | 14 |

| | | | | | |
|---|---|---|---|---|---|
| | Relations Service | | | | |
| 34 U.S.C. § 10231 (formerly at 42 U.S.C. § 3789g) | Data received by the Bureau of Justice Statistics and used only for statistical or research purposes | N/A | OJP | 4 | 4 |
| 42 U.S.C. § 14132(b)(3) | Certain "stored DNA samples and DNA analyses" | Moore v. Nat'l DNA Index System, 662 F. Supp. 2d 136, 140 (D.D.C. 2009). | FBI | 3 | 3 |
| 49 U.S.C. § 114(r) (formerly at 49 U.S.C. § 114(s)) | Information obtained or developed in carrying out security under the authority of the Aviation and Transportation Security Act or under chapter 449 of this title | Magassa v. TSA, No. 19-01953, 2022 WL 971207, at *5 (D.D.C Mar. 31, 2022); Skurow v. DHS, 892 F. Supp. 2d 319, 329-30 (D.D.C. 2012); Gordon v. FBI, 390 F. Supp. 2d 897, 900 (N.D. Cal. 2004). | FBI | 2 | 2 |
| 50 U.S.C. § 3605 (formerly at 50 U.S.C. § 402 note) | Information pertaining to the functions or organization of NSA; certain information pertaining to NSA employees | ACLU v. DOJ, 681 F.3d 61, 72-75 (2d Cir. 2012); Elec. Priv. Info. Ctr. v. NSA, 678 F.3d 926, 931 (D.C. Cir. 2012); Houghton v. NSA, 378 F. App'x 235, 238-39 (3d Cir. 2010) (per curiam); Lahr v. NTSB, 569 F.3d 964, 985 (9th Cir. 2009). | FBI | 1 | 2 |
| | | | OLC | 1 | |

| | | | | | |
|---|---|---|---|---|---|
| 50 U.S.C. § 3507 (formerly at 50 U.S.C. § 403g) | Intelligence sources and methods; certain information pertaining to Agency employees, specifically: "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency" | Assassination Archives & Rsch. Ctr. v. CIA, No. 18-5280, 2019 WL 691517 (D.C. Cir. Feb. 15, 2019) (per curiam); ACLU v. DOJ, 681 F.3d 61, 72-75 (2d Cir. 2012); Berman v. CIA, 501 F.3d 1136, 1137-38, 1140 (9th Cir. 2007); Makky v. Chertoff, 489 F. Supp. 2d 421, 442 (D.N.J. 2007), aff'd on other grounds, 541 F. 3d 205 (3d Cir. 2008). | FBI | 13 | 14 |
| | | | OLC | 1 | |
| 50 U.S.C. § 3024(i)(1) (formerly at 50 U.S.C. § 403-1(i)(1)) | Intelligence sources and methods | CIA v. Sims, 471 U.S. 159, 167 (1985). | FBI | 1737 | 1744 |
| | | | JMD | 2 | |
| | | | OIP | 4 | |
| | | | OLC | 1 | |
| 50 U.S.C. § 3141(a) (formerly at 50 U.S.C. § 431) | [O]perational files of the Central Intelligence Agency | CIA v. Sims, 471 U.S. 159, 167, 174 n.19 (1985) (dictum); Wolf v. CIA, 569 F. Supp. 2d 1, 8 (D.D.C. 2008). | FBI | 1 | 1 |
| 50 U.S.C. § 3143 (formerly at 50 U.S.C. § 432a) | Operational files of the National Reconnaissance Office | Aftergood v. Nat'l Reconnaissance Off., 441 F. Supp. 2d 37, 46 (D.D.C. | FBI | 1 | 1 |

| | | | | | |
|---|---|---|---|---|---|
| | | 2006). | | | |
| 50 U.S.C. § 1702(a)(1) | Authorizes the President to "regulate . . . prevent or prohibit . . . importation or exportation of . . . any property in which any foreign country or a national thereof has any interest . . . by any person, or with respect to any property, subject to the jurisdiction of the United States" | Wis. Project on Nuclear Arms Control v. U.S. Dep't of Com., 317 F.3d 275, 284 (D.C. Cir. 2003). | FBI | 2 | 2 |
| Fed. R. Crim. P. 6(e) | Certain records that would reveal some secret aspect pertaining to grand jury proceedings | Sussman v. USMS, 494 F.3d 1106, 1113 (D.C. Cir. 2007); Sorin v. DOJ, No. 18-99, 2018 WL 6431027 (2d Cir. Dec. 6, 2018) (per curium); Widi v. McNeil, No. 12-CV-00188, 2016 WL 4394724, at *23 (D. Me. Aug 16, 2016); Durham v. U.S. Att'y Gen., No. 06-843, 2008 WL 620744, at *2 (E.D. Tex. Mar. 3, 2008); Cozen O'Connor v. U.S. Dep't of Treasury, 570 F. Supp. 2d 749, 776 (E.D. Pa. 2008). | DEA | 1 | 675 |
| | | | ENRD | 1 | |
| | | | EOUSA | 79 | |
| | | | FBI | 578 | |
| | | | JMD | 1 | |
| | | | NSD | 5 | |
| | | | OIP | 9 | |
| | | | OPR | 1 | |

| | | | | | |
|---|---|---|---|---|---|
| Fed. R. Crim. P. 32 | Presentence reports and recommendations | DOJ v. Julian, 486 U.S. 1, 9 (1988). | FBI | 1 | 1 |
| 5 U.S.C. § 13107 (formerly at 5 U.S.C. app § 105) | Financial disclosure reports and applications to inspect financial disclosure reports | NA | JMD | 3 | 3 |
| 5. U.S.C. § 407 (formerly at 5 U.S.C. app. 3 § 7(b)) | Names of employees who provide information or complaints to the Inspector General | Wash. Post Co. v. Special Inspector Gen. for Afg. Reconstr., 486 F. Supp. 3d 141, 166 (D.D.C. 2020). | OIG | 1 | 1 |
| 6 U.S.C. § 1504(d)(3)(B) | A cyber threat indicator or defensive measure shared with the Federal Government under the Cybersecurity Information Sharing Act of 2015 | N/A | FBI | 4 | 4 |
| 18 U.S.C. § 208(d)(1) | Providing that "a copy of any determination granting an exemption under subsection (b)(1) or (b)(3) [from application of penalties for acts affecting personal financial interests determined to constitute bribery, graft, or conflicts of interest] shall be made available to the public," but | Seife v. NIH, 874 F. Supp. 2d 248, 256 (S.D.N.Y. 2012). | EOUSA | 2 | 2 |

| | | | | | |
|---|---|---|---|---|---|
| | exempting from this disclosure requirement "any information contained in the determination that would be exempt from disclosure under section 552 of title 5" | | | | |
| 21 U.S.C. §§ 1903-1905 | All records generated or obtained in the implementation of the King Pin Act | N/A | DEA | 1 | 1 |
| Fed. R. Crim. P. 6(e), enacted by Act of July 30, 1977, Pub. L. No. 95-78, 91 Stat. 319 | Certain records that would reveal some secret aspect pertaining to grand jury proceedings. | N/A | Criminal | 1 | 1 |
| Fed. R. Crim. P. 6(e), enacted by Act of July 30, 1977, Pub. L. No. 95-78, §2, 91 Stat. 319 | Certain records that would reveal some secret aspect pertaining to grand jury proceedings | N/A | OCDETF | 1 | 1 |
| Pub. L. No. 112-55,125 Stat. 552,609-10 | Certain firearms database information | Everytown for Gun Safety Support Fund v. ATF, 984 F.3d 30 (2d Cir. 2020) | ATF | 251 | 251 |
| Pub. L. No. 112-55,125 Stat. 552,609-10 | Certain firearms database information | City of Chi. v. U.S. Dep't of the Treasury,423 F.3d 777,781-82 (7th Cir. 2005); P.W. Arms,Inc. v. United | ATF | 6 | 6 |

| | | | | | |
|---|---|---|---|---|---|
| | | States,No. 15-1990-JCC,2017 WL 319250,at *4 (W.D. Wash. Jan. 23,2017); Williams v. ATF,No. PWG-15-1969,2017 WL 3978580,at *5-6 (D. Md. Sept. 8,2017); Abdeljabbar v. ATF,74 F. Supp. 3d 158,173 (D.D.C. 2014). | | | |
| Treaty Between the United States of America and the Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters, U.S.-F.R.G., Oct. 14, 2003, S. TREATY DOC. NO. 108-27 (2004) | Evidence obtained by way of a treaty with a confidentiality clause. | N/A | Criminal | 1 | 1 |

**V.A. FOIA REQUESTS -- RECEIVED, PROCESSED AND PENDING FOIA REQUESTS**

| Agency / Component | Number of Requests Pending as of Start of Fiscal Year | Number of Requests Received in Fiscal Year | Number of Requests Processed in Fiscal Year | Number of Requests Pending as of End of Fiscal Year |
|---|---|---|---|---|
| ATJ | 0 | 76 | 61 | 15 |
| Antitrust | 157 | 383 | 351 | 189 |
| ATF* | 752 | 2141 | 2145 | 748 |
| BOP* | 6,406 | 5,897 | 6,329 | 5,974 |
| Civil* | 514 | 564 | 296 | 782 |
| Civil Rights* | 458 | 414 | 483 | 389 |
| COPS* | 7 | 237 | 234 | 10 |
| Criminal* | 983 | 1,296 | 1,236 | 1,043 |
| CRS | 21 | 120 | 131 | 10 |
| DEA* | 2,014 | 1,612 | 3,337 | 289 |
| ENRD | 44 | 244 | 239 | 49 |
| EOIR* | 25,624 | 87,842 | 109,163 | 4,303 |
| EOUSA* | 1,900 | 3,610 | 3,757 | 1,753 |
| EOUST | 5 | 99 | 100 | 4 |
| FBI** | 8,731 | 18,218 | 20,145 | 6,804 |
| FCSC | 0 | 76 | 76 | 0 |
| JMD* | 184 | 263 | 381 | 66 |
| NSD* | 323 | 499 | 379 | 443 |
| OCDETF* | 5 | 92 | 80 | 17 |
| OIG* | 251 | 533 | 428 | 356 |
| OIP* | 1,402 | 3,001 | 2,876 | 1,527 |
| OJP* | 497 | 608 | 509 | 596 |
| OLC* | 647 | 169 | 103 | 713 |
| OPR | 38 | 160 | 153 | 45 |

| | | | | |
|---|---|---|---|---|
| OSG* | 39 | 117 | 96 | 60 |
| OVW* | 66 | 144 | 107 | 103 |
| PARDON* | 66 | 78 | 84 | 60 |
| PRAO | 0 | 57 | 53 | 4 |
| Tax | 44 | 186 | 52 | 178 |
| USMS* | 365 | 3,300 | 3,293 | 372 |
| USNCB | 6 | 190 | 187 | 9 |
| USPC* | 23 | 301 | 316 | 8 |
| AGENCY OVERALL | 51,572 | 132,527 | 157,180 | 26,919 |

* After reviewing their databases, the following components updated the number of requests pending as of the start of the Fiscal Year: ATF, BOP, Civil, Civil Rights, COPS, Criminal, DEA, EOIR, EOUSA, JMD, NSD, OCDETF, OIG, OIP, OJP, OLC, OSG, OVW, PARDON, USMS, USPC.

** The FBI adjusted the number pending at the start of the Fiscal Year to reflect first-party requests that were exempt from Privacy Act accessed and processed under the FOIA in Fiscal Year 2024.

## V.B.(1). DISPOSITION OF FOIA REQUESTS -- ALL PROCESSED REQUESTS

| Agency / Component | Number of Full Grants | Number of Partial Grants / Partial Denials | Number of Full Denials Based on Exemptions | Number of Full Denials Based on Reasons Other than Exemptions | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | No Records | All Records Referred to Another Component or Agency | Request Withdrawn | Fee-Related Reason | Records not Reasonably Described | Improper FOIA Request for Other Reason | Not Agency Record | Duplicate Request | Other *Explain in Chart Below | TOTAL |
| ATJ | 4 | 0 | 0 | 37 | 4 | 1 | 0 | 1 | 8 | 1 | 5 | 0 | 61 |
| Antitrust | 25 | 53 | 25 | 44 | 11 | 21 | 0 | 13 | 3 | 1 | 1 | 154 | 351 |
| ATF | 58 | 679 | 390 | 436 | 13 | 121 | 0 | 96 | 219 | 0 | 113 | 20 | 2,145 |
| BOP | 1,894 | 2,537 | 362 | 238 | 9 | 705 | 2 | 61 | 322 | 89 | 110 | 0 | 6,329 |
| Civil | 6 | 22 | 2 | 13 | 1 | 6 | 0 | 8 | 113 | 0 | 3 | 122 | 296 |
| Civil Rights | 83 | 85 | 28 | 114 | 25 | 108 | 1 | 16 | 17 | 1 | 5 | 0 | 483 |
| COPS | 74 | 31 | 0 | 108 | 0 | 6 | 0 | 0 | 4 | 0 | 11 | 0 | 234 |
| Criminal | 23 | 33 | 205 | 75 | 4 | 36 | 0 | 138 | 298 | 0 | 8 | 416 | 1,236 |
| CRS | 7 | 27 | 1 | 84 | 2 | 0 | 0 | 3 | 2 | 0 | 1 | 4 | 131 |
| DEA | 93 | 570 | 1,455 | 281 | 25 | 178 | 53 | 233 | 241 | 59 | 113 | 36 | 3,337 |
| ENRD | 44 | 55 | 3 | 95 | 4 | 6 | 12 | 2 | 0 | 1 | 0 | 17 | 239 |
| EOIR | 60,168 | 118 | 17 | 19,952 | 14 | 2,593 | 1 | 21 | 24,515 | 88 | 1,676 | 0 | 109,163 |
| EOUSA | 4 | 773 | 650 | 326 | 110 | 158 | 15 | 285 | 799 | 30 | 479 | 128 | 3,757 |
| EOUST | 6 | 10 | 15 | 39 | 0 | 3 | 3 | 9 | 15 | 0 | 0 | 0 | 100 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FBI | 1,044 | 6,105 | 1,318 | 7,158 | 24 | 368 | 149 | 56 | 3,201 | 27 | 117 | 578 | 20,145 |
| FCSC | 5 | 5 | 0 | 66 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 76 |
| JMD | 45 | 127 | 7 | 111 | 38 | 14 | 0 | 11 | 20 | 0 | 8 | 0 | 381 |
| NSD | 71 | 21 | 10 | 179 | 1 | 18 | 1 | 2 | 65 | 0 | 11 | 0 | 379 |
| OCDETF | 4 | 15 | 6 | 31 | 5 | 0 | 0 | 3 | 12 | 4 | 0 | 0 | 80 |
| OIG | 48 | 108 | 36 | 136 | 11 | 35 | 0 | 27 | 25 | 0 | 2 | 0 | 428 |
| OIP | 197 | 165 | 45 | 209 | 7 | 183 | 21 | 3 | 271 | 1 | 278 | 1,496 | 2,876 |
| OJP | 71 | 113 | 8 | 78 | 9 | 39 | 0 | 22 | 134 | 18 | 17 | 0 | 509 |
| OLC | 13 | 16 | 1 | 33 | 1 | 3 | 0 | 0 | 3 | 0 | 3 | 30 | 103 |
| OPR | 10 | 11 | 6 | 60 | 0 | 9 | 0 | 5 | 12 | 0 | 3 | 37 | 153 |
| OSG | 15 | 10 | 0 | 65 | 2 | 2 | 0 | 0 | 0 | 1 | 1 | 0 | 96 |
| OVW | 11 | 48 | 0 | 21 | 0 | 5 | 0 | 0 | 14 | 0 | 3 | 5 | 107 |
| PARDON | 19 | 15 | 1 | 39 | 1 | 0 | 0 | 3 | 4 | 1 | 1 | 0 | 84 |
| PRAO | 0 | 2 | 2 | 41 | 8 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 53 |
| Tax | 3 | 2 | 24 | 10 | 1 | 3 | 0 | 0 | 3 | 0 | 6 | 0 | 52 |
| USMS | 347 | 1,760 | 40 | 198 | 9 | 20 | 14 | 17 | 392 | 9 | 487 | 0 | 3,293 |
| USNCB | 5 | 27 | 9 | 103 | 0 | 0 | 0 | 0 | 43 | 0 | 0 | 0 | 187 |
| USPC | 160 | 18 | 1 | 124 | 0 | 2 | 1 | 0 | 1 | 8 | 0 | 1 | 316 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AGENCY OVERALL | 64,557 | 13,560 | 4,667 | 30,504 | 339 | 4,643 | 273 | 1,035 | 30,756 | 339 | 3,462 | 3,045 | 157,180 |

## V.B.(2). DISPOSITION OF FOIA REQUESTS -- "OTHER" REASONS FOR "FULL DENIALS BASED ON REASONS OTHER THAN EXEMPTIONS"

| Agency / Component | Description of "Other" Reasons for Denials from Chart B(1) | Number of Times "Other" Reason Was Relied Upon | TOTAL |
|---|---|---|---|
| ATJ | N/A | 0 | 0 |
| Antitrust | Aggregate Cases | 152 | 154 |
| | Court Sealed | 1 | |
| | Unable to Locate or Contact Requester | 1 | |
| ATF | Unable to Locate or Contact Requester | 20 | 20 |
| BOP | N/A | 0 | 0 |
| Civil | Aggregate Cases | 117 | 122 |
| | Directed Requester to Publicly Available Information | 3 | |
| | Unable to Locate or Contact Requester | 2 | |
| Civil Rights | N/A | 0 | 0 |
| COPS | N/A | 0 | 0 |
| Criminal | Directed Requester to Another Entity Subject to the FOIA | 408 | 416 |
| | Litigation | 1 | |
| | Referred Not Responsive | 1 | |
| | Unable to Locate or Contact Requester | 6 | |
| CRS | Directed Requester to Another Entity Subject to the FOIA | 2 | 4 |
| | Unable to Locate or Contact Requester. | 2 | |
| DEA | Aggregate Cases | 1 | 36 |
| | Unable to Locate or Contact Requester | 35 | |
| ENRD | Aggregate Cases | 5 | 17 |

| | | | |
|---|---|---|---|
| | Directed Requester to Publicly Available Information | 4 | |
| | Unable to Locate or Contact Requester | 8 | |
| EOIR | N/A | 0 | 0 |
| EOUSA | Court Sealed | 11 | 128 |
| | Directed Requester to Another Entity Subject to the FOIA | 53 | |
| | FOIA Rights Waived | 23 | |
| | Unable to Locate or Contact Requester | 41 | |
| EOUST | N/A | 0 | 0 |
| FBI | Court Sealed | 1 | 578 |
| | Directed Requester to Another Entity Subject to the FOIA | 11 | |
| | Referred Not Responsive | 3 | |
| | Unable to Locate or Contact Requester | 549 | |
| | Unable to Provide Records to Inmate Requester | 14 | |
| FCSC | N/A | 0 | 0 |
| JMD | N/A | 0 | 0 |
| NSD | N/A | 0 | 0 |
| OCDETF | N/A | 0 | 0 |
| OIG | N/A | 0 | 0 |
| OIP | Aggregate Cases | 354 | 1,496 |
| | Court Sealed | 1 | |
| | Directed Requester to Another Entity Subject to the FOIA | 1,056 | |
| | Directed Requester to Publicly Available Information | 76 | |
| | Referred Not Responsive | 7 | |
| | Unable to Locate or Contact Requester | 2 | |
| OJP | N/A | 0 | 0 |
| OLC | Aggregate Cases | 28 | 30 |

| | | | |
|---|---|---|---|
| | Directed Requester to Another Entity Subject to the FOIA | 2 | |
| OPR | Directed Requester to Another Entity Subject to the FOIA | 37 | 37 |
| OSG | N/A | 0 | 0 |
| OVW | Directed Requester to Another Entity Subject to the FOIA | 5 | 5 |
| PARDON | N/A | 0 | 0 |
| PRAO | N/A | 0 | 0 |
| Tax | N/A | 0 | 0 |
| USMS | N/A | 0 | 0 |
| USNCB | N/A | 0 | 0 |
| USPC | Unable to Provide Records to Inmate Requester | 1 | 1 |
| AGENCY OVERALL | | | 3,045 |

## V.B.(3). DISPOSITION OF FOIA REQUESTS -- NUMBER OF TIMES EXEMPTIONS APPLIED

| Agency / Component | Ex. 1 | Ex. 2 | Ex. 3 | Ex. 4 | Ex. 5 | Ex. 6 | Ex. 7(A) | Ex. 7(B) | Ex. 7(C) | Ex. 7(D) | Ex. 7(E) | Ex. 7(F) | Ex. 8 | Ex. 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ATJ | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Antitrust | 0 | 0 | 9 | 2 | 7 | 44 | 27 | 0 | 2 | 4 | 1 | 0 | 0 | 0 |
| ATF | 0 | 14 | 502 | 178 | 57 | 707 | 170 | 1 | 674 | 1 | 232 | 6 | 0 | 0 |
| BOP | 0 | 11 | 6 | 26 | 136 | 2,706 | 38 | 2 | 2,701 | 2 | 451 | 690 | 0 | 0 |
| Civil | 0 | 0 | 19 | 0 | 23 | 23 | 0 | 0 | 19 | 0 | 0 | 0 | 0 | 0 |
| Civil Rights | 0 | 1 | 0 | 6 | 53 | 61 | 34 | 0 | 56 | 1 | 18 | 0 | 1 | 0 |
| COPS | 0 | 0 | 0 | 0 | 1 | 31 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 |
| Criminal | 1 | 0 | 4 | 1 | 14 | 141 | 92 | 0 | 143 | 3 | 6 | 0 | 0 | 0 |
| CRS | 0 | 0 | 14 | 0 | 16 | 24 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DEA | 23 | 115 | 38 | 121 | 236 | 1,299 | 220 | 5 | 1,336 | 201 | 1,029 | 706 | 0 | 1 |
| ENRD | 0 | 0 | 2 | 15 | 27 | 45 | 9 | 0 | 4 | 0 | 2 | 0 | 0 | 0 |
| EOIR | 0 | 5 | 0 | 2 | 48 | 128 | 2 | 0 | 9 | 0 | 5 | 0 | 0 | 0 |
| EOUSA | 1 | 0 | 82 | 8 | 273 | 1,306 | 92 | 0 | 1,199 | 23 | 47 | 29 | 0 | 0 |
| EOUST | 0 | 0 | 1 | 2 | 2 | 20 | 2 | 0 | 2 | 0 | 3 | 0 | 0 | 0 |
| FBI | 349 | 199 | 2,387 | 138 | 1,555 | 5,809 | 738 | 31 | 5,821 | 2,397 | 5,440 | 161 | 3 | 0 |
| FCSC | 0 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JMD | 2 | 3 | 10 | 37 | 32 | 125 | 4 | 0 | 10 | 1 | 20 | 2 | 0 | 0 |
| NSD | 16 | 0 | 5 | 4 | 5 | 19 | 4 | 0 | 14 | 3 | 7 | 1 | 0 | 0 |
| OCDETF | 0 | 0 | 4 | 0 | 9 | 20 | 4 | 0 | 20 | 10 | 17 | 4 | 0 | 0 |
| OIG | 3 | 0 | 1 | 0 | 8 | 127 | 11 | 0 | 120 | 2 | 5 | 5 | 0 | 0 |
| OIP | 27 | 0 | 14 | 2 | 96 | 188 | 35 | 0 | 64 | 2 | 49 | 34 | 0 | 0 |
| OJP | 0 | 0 | 4 | 74 | 10 | 110 | 2 | 0 | 35 | 1 | 11 | 1 | 0 | 0 |
| OLC | 1 | 0 | 1 | 2 | 13 | 14 | 0 | 0 | 3 | 0 | 1 | 0 | 0 | 0 |
| OPR | 0 | 0 | 1 | 0 | 5 | 17 | 0 | 0 | 10 | 0 | 0 | 0 | 0 | 0 |
| OSG | 0 | 0 | 0 | 0 | 5 | 9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OVW | 0 | 0 | 0 | 0 | 14 | 47 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PARDON | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PRAO | 0 | 0 | 0 | 0 | 1 | 2 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Tax | 0 | 0 | 26 | 0 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 |
| USMS | 0 | 14 | 8 | 14 | 52 | 1,505 | 15 | 0 | 1,509 | 3 | 993 | 773 | 0 | 0 |
| USNCB | 0 | 0 | 0 | 0 | 0 | 26 | 9 | 0 | 25 | 15 | 16 | 0 | 0 | 0 |
| USPC | 0 | 0 | 0 | 0 | 1 | 19 | 0 | 0 | 18 | 12 | 0 | 0 | 0 | 0 |
| AGENCY OVERALL | 423 | 362 | 3,138 | 632 | 2,701 | 14,580 | 1,509 | 39 | 13,798 | 2,681 | 8,353 | 2,412 | 4 | 1 |

## VI.A. ADMINISTRATIVE APPEALS OF INITIAL DETERMINATIONS OF FOIA REQUESTS -- RECEIVED, PROCESSED, AND PENDING ADMINISTRATIVE APPEALS

| Agency / Component | Number of Appeals Pending as of Start of Fiscal Year | Number of Appeals Received in Fiscal Year | Number of Appeals Processed in Fiscal Year | Number of Appeals Pending as of End of Fiscal Year |
|---|---|---|---|---|
| OIP* | 372 | 2,577 | 2,479 | 470 |
| AGENCY OVERALL | 372 | 2,577 | 2,479 | 470 |

* After reviewing its database, OIP updated the number of appeals pending as of the start of the Fiscal Year.

## VI.B. DISPOSITION OF ADMINISTRATIVE APPEALS -- ALL PROCESSED APPEALS

| Agency / Component | Number Affirmed on Appeal | Number Partially Affirmed & Partially Reversed/Remanded on Appeal | Number Completely Reversed/Remanded on Appeal | Number of Appeals Closed for Other Reasons | TOTAL |
|---|---|---|---|---|---|
| OIP | 1,291 | 76 | 437 | 673 | 2,477 |
| AGENCY OVERALL | 1,291 | 76 | 437 | 673 | 2,477 |

**VI.C.(1). REASONS FOR DENIAL ON APPEAL -- NUMBER OF TIMES EXEMPTIONS APPLIED**

| Agency / Component | Ex. 1 | Ex. 2 | Ex. 3 | Ex. 4 | Ex. 5 | Ex. 6 | Ex. 7(A) | Ex. 7(B) | Ex. 7(C) | Ex. 7(D) | Ex. 7(E) | Ex. 7(F) | Ex. 8 | Ex. 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OIP | 17 | 0 | 94 | 1 | 63 | 447 | 116 | 0 | 427 | 87 | 265 | 52 | 0 | 0 |
| AGENCY OVERALL | 17 | 0 | 94 | 1 | 63 | 447 | 116 | 0 | 427 | 87 | 265 | 52 | 0 | 0 |

## VI.C.(2). REASONS FOR DENIAL ON APPEAL - REASONS OTHER THAN EXEMPTIONS

| Agency / Component | No Records | Records Referred at Initial Request Level | Request Withdrawn | Fee-Related Reason | Records not Reasonably Described | Improper Request for Other Reasons | Not Agency Record | Duplicate Request or Appeal | Request in Litigation | Appeal Based Solely on Denial of Request for Expedited Processing | Other *Explain in chart below |
|---|---|---|---|---|---|---|---|---|---|---|---|
| OIP | 217 | 0 | 3 | 11 | 133 | 56 | 0 | 50 | 33 | 0 | 894 |
| AGENCY OVERALL | 217 | 0 | 3 | 11 | 133 | 56 | 0 | 50 | 33 | 0 | 894 |

## VI.C.(3). REASONS FOR DENIAL ON APPEAL -- "OTHER" REASONS

| Agency / Component | Description of "Other" Reasons for Denials from Chart C(2) | Number of Times "Other" Reason Was Relied Upon | TOTAL |
|---|---|---|---|
| OIP | Affirmed Administrative Consolidation or Splitting of Request | 10 | 910 |
| | Affirmed Use of Unusual Circumstances | 2 | |
| | Agency Performed Adequate Search | 245 | |
| | Appeal Withdrawn | 21 | |
| | Component Has No Request | 14 | |
| | Exclusion Issue Raised | 33 | |
| | Improper Appeal | 102 | |
| | Moot | 224 | |
| | No Component Response to Adjudicate | 179 | |
| | Records Under Court Seal | 7 | |
| | Affirm Track Placement | 6 | |
| | Unable to Locate or Contact Requester | 1 | |
| | Untimely | 66 | |
| AGENCY OVERALL | | | 910 |

## VI.C.(4). RESPONSE TIME FOR ADMINISTRATIVE APPEALS

| Agency / Component | Median Number of Days | Average Number of Days | Lowest Number of Days | Highest Number of Days |
|---|---|---|---|---|
| OIP | 56 | 68.82 | 0 | 339 |
| AGENCY OVERALL | 56 | 68.82 | 0 | 339 |

### VI.C.(5). TEN OLDEST PENDING ADMINISTRATIVE APPEALS

| Agency / Component | | 10th Oldest Appeal | 9th | 8th | 7th | 6th | 5th | 4th | 3rd | 2nd | Oldest Appeal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| OIP | Date of Appeal | 03/01/2024 | 02/29/2024 | 02/23/2024 | 02/23/2024 | 01/31/2024 | 01/24/2024 | 01/19/2024 | 01/16/2024 | 01/16/2024 | 01/09/2024 |
| | Number of Days Pending | 147 | 148 | 152 | 152 | 168 | 173 | 176 | 179 | 179 | 183 |
| AGENCY OVERALL | Date of Appeal | 03/01/2024 | 02/29/2024 | 02/23/2024 | 02/23/2024 | 01/31/2024 | 01/24/2024 | 01/19/2024 | 01/16/2024 | 01/16/2024 | 01/09/2024 |
| | Number of Days Pending | 147 | 148 | 152 | 152 | 168 | 173 | 176 | 179 | 179 | 183 |

## VII.A. FOIA REQUESTS - RESPONSE TIME FOR ALL PROCESSED PERFECTED REQUESTS

| Agency / Component | SIMPLE | | | | COMPLEX | | | | EXPEDITED PROCESSING | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Median Number of Days | Average Number of Days | Lowest Number of Days | Highest Number of Days | Median Number of Days | Average Number of Days | Lowest Number of Days | Highest Number of Days | Median Number of Days | Average Number of Days | Lowest Number of Days | Highest Number of Days |
| ATJ | 45 | 47.15 | < 1 | 154 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Antitrust | 4 | 7.94 | <1 | 65 | 13 | 119.86 | 1 | 1,497 | N/A | N/A | N/A | N/A |
| ATF | 27 | 109.22 | < 1 | 2,006 | 46 | 685.52 | < 1 | 2,504 | 8 | 16.38 | < 1 | 92 |
| BOP | 7 | 8.86 | < 1 | 123 | 240 | 411.47 | < 1 | 1,690 | 309 | 349.79 | 5 | 1,628 |
| Civil | 14 | 30.8 | 7 | 591 | 263 | 366 | < 1 | 1174 | 910 | 910 | 910 | 910 |
| Civil Rights | 20 | 23.95 | 2 | 97 | 451 | 503.88 | 13 | 1533 | N/A | N/A | N/A | N/A |
| COPS | 3 | 6.13 | < 1 | 60 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Criminal | 6 | 39.52 | < 1 | 1,231 | 65 | 296.83 | 1 | 2,194 | 409 | 442.83 | 251 | 817 |
| CRS | 37 | 52.5 | < 1 | 223 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| DEA | 4 | 7.5 | < 1 | 120 | 328 | 407.29 | < 1 | 1,696 | 858.5 | 731.5 | 91 | 1,243 |
| ENRD | 10 | 10.24 | 1 | 24 | 42 | 98.67 | 1 | 699 | 741.5 | 741.5 | 711 | 772 |
| EOIR | 17 | 83.08 | < 1 | 1,021 | 16 | 43.86 | < 1 | 522 | 21 | 70.43 | < 1 | 726 |
| EOUSA | 11 | 24.62 | < 1 | 875 | 21 | 223.29 | < 1 | 1,928 | 19 | 29.57 | 7 | 90 |
| EOUST | 1 | 2.71 | < 1 | 18 | 4 | 7.71 | < 1 | 18 | 10 | 7.67 | 2 | 11 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FBI | 3 | 19.73 | < 1 | 627 | 84 | 330.5 | < 1 | 2,734 | 46 | 459.88 | 5 | 2,464 |
| FCSC | 1 | 3.11 | < 1 | 19 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| JMD | 4 | 8.39 | < 1 | 142 | 144 | 318.13 | < 1 | 1,800 | N/A | N/A | N/A | N/A |
| NSD | 27 | 69.85 | < 1 | 1,121 | 805.5 | 849.27 | < 1 | 2,189 | N/A | N/A | N/A | N/A |
| OCDETF | 5 | 13.49 | < 1 | 110 | 17 | 34.43 | 5 | 146 | N/A | N/A | N/A | N/A |
| OIG | 5 | 6.84 | < 1 | 26 | 179.5 | 331.52 | 8 | 1,876 | N/A | N/A | N/A | N/A |
| OIP | 1 | 6.4 | < 1 | 1,202 | 681 | 650.57 | < 1 | 1,824 | 503 | 620.61 | < 1 | 1,752 |
| OJP | 5 | 8.43 | < 1 | 131 | 160 | 322.07 | < 1 | 1,821 | 338 | 485 | 3 | 1,041 |
| OLC | 12 | 25.15 | 2 | 353 | 28 | 287.81 | 3 | 2,663 | 815 | 866.29 | 10 | 2,646 |
| OPR | 5 | 15.24 | < 1 | 317 | 26 | 168.51 | 1 | 1,840 | N/A | N/A | N/A | N/A |
| OSG | 20 | 26.77 | < 1 | 94 | 75.5 | 188.04 | 12 | 1,239 | 80 | 70.71 | 16 | 142 |
| OVW | 30 | 66.34 | < 1 | 380 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| PARDON | 46 | 143.57 | < 1 | 1,395 | 171 | 619.81 | 8 | 1,621 | N/A | N/A | N/A | N/A |
| PRAO | 7 | 7.69 | < 1 | 17 | 33 | 33 | 33 | 33 | N/A | N/A | N/A | N/A |
| Tax | 3 | 9.21 | < 1 | 73 | 92.5 | 194.5 | < 1 | 622 | N/A | N/A | N/A | N/A |
| USMS | 8 | 10.8 | < 1 | 185 | 12 | 92.49 | < 1 | 1,260 | 303 | 325.93 | 11 | 896 |
| USNCB | 6 | 7.15 | < 1 | 76 | 348 | 348 | 348 | 348 | N/A | N/A | N/A | N/A |
| USPC | 5 | 12.85 | < 1 | 270 | 20 | 33.21 | < 1 | 271 | 57.5 | 57.5 | < 1 | 114 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AGENCY OVERALL | 13 | 72.24 | < 1 | 2,006 | 111 | 336.72 | < 1 | 2,734 | 51.5 | 238.46 | < 1 | 2,646 |

**VII.B. PROCESSED REQUESTS - RESPONSE TIME FOR PERFECTED REQUESTS IN WHICH INFORMATION WAS GRANTED**

| Agency / Component | SIMPLE | | | | COMPLEX | | | | EXPEDITED PROCESSING | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Median Number of Days | Average Number of Days | Lowest Number of Days | Highest Number of Days | Median Number of Days | Average Number of Days | Lowest Number of Days | Highest Number of Days | Median Number of Days | Average Number of Days | Lowest Number of Days | Highest Number of Days |
| ATJ | 29 | 27.75 | 8 | 45 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Antitrust | 4 | 10.5 | <1 | 65 | 113 | 362.04 | 1 | 1,497 | N/A | N/A | N/A | N/A |
| ATF | 68 | 147.41 | < 1 | 2,006 | 1,442 | 1,278.9 | 57 | 2,504 | 31.5 | 40.75 | 8 | 92 |
| BOP | 7 | 9 | < 1 | 123 | 189 | 332.39 | < 1 | 1,690 | 285 | 350.51 | 5 | 1,628 |
| Civil | 82 | 94 | 14 | 209 | 249 | 307.2 | 21 | 1,174 | N/A | N/A | N/A | N/A |
| Civil Rights | 26.5 | 32.88 | 6 | 97 | 148.5 | 307.55 | 15 | 1,533 | N/A | N/A | N/A | N/A |
| COPS | 7 | 8.7 | < 1 | 60 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Criminal | 37.5 | 168.71 | 1 | 1,219 | 556 | 734.43 | 34 | 2,194 | 251 | 251 | 251 | 251 |
| CRS | 85.5 | 88 | 5 | 223 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| DEA | 7 | 16.76 | < 1 | 120 | 440.5 | 534.22 | 1 | 1,696 | 927.5 | 898.5 | 797 | 942 |
| ENRD | 12 | 11.26 | 3 | 20 | 54 | 129.59 | 1 | 521 | 741.5 | 741.5 | 711 | 772 |
| EOIR | 26 | 96.52 | < 1 | 1,015 | 31 | 61.08 | < 1 | 483 | 20 | 60.86 | < 1 | 586 |
| EOUSA | 12 | 28.15 | < 1 | 875 | 256 | 503.13 | < 1 | 1,907 | 43 | 46.67 | 7 | 90 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EOUST | 1 | 2.2 | < 1 | 8 | 13 | 11.2 | 2 | 17 | 11 | 11 | 11 | 11 |
| FBI | 36 | 56.03 | < 1 | 627 | 216 | 411.76 | < 1 | 2,734 | 1,292 | 1,327.71 | 131 | 2,464 |
| FCSC | 1 | 3 | < 1 | 13 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| JMD | 8.5 | 14.47 | < 1 | 142 | 198.5 | 367.45 | < 1 | 1,800 | N/A | N/A | N/A | N/A |
| NSD | 16.5 | 42.57 | < 1 | 738 | 1,239.5 | 1,029.05 | < 1 | 2,189 | N/A | N/A | N/A | N/A |
| OCDETF | 8 | 17.92 | < 1 | 98 | 29 | 29.86 | 9 | 69 | N/A | N/A | N/A | N/A |
| OIG | 5 | 7.73 | < 1 | 26 | 208 | 318.6 | 22 | 1,876 | N/A | N/A | N/A | N/A |
| OIP | 6.5 | 31.79 | < 1 | 827 | 364 | 586.84 | 3 | 1,805 | 538.5 | 687.21 | 5 | 1,752 |
| OJP | 8 | 9.12 | < 1 | 44 | 147 | 293.31 | < 1 | 1,720 | 398 | 514.2 | 3 | 1,041 |
| OLC | 15 | 46.14 | 6 | 353 | 752 | 1,033.11 | 215 | 2,663 | 618 | 837.67 | 10 | 2,646 |
| OPR | 14 | 58.56 | 3 | 317 | 137 | 540.4 | 20 | 1,840 | N/A | N/A | N/A | N/A |
| OSG | 33 | 34.27 | 3 | 94 | 229 | 360.2 | 19 | 1,239 | N/A | N/A | N/A | N/A |
| OVW | 27 | 65.47 | < 1 | 380 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| PARDON | 72.5 | 305.44 | < 1 | 1,395 | 1,445.5 | 1,012 | 75 | 1,621 | N/A | N/A | N/A | N/A |
| PRAO | 13 | 13 | 10 | 16 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Tax | 12 | 12 | 10 | 14 | 476 | 483.67 | 353 | 622 | N/A | N/A | N/A | N/A |
| USMS | 8 | 10.74 | < 1 | 185 | 22 | 129.31 | < 1 | 1,239 | 306 | 347.77 | 11 | 896 |
| USNCB | 11 | 14.35 | 2 | 76 | 348 | 348 | 348 | 348 | N/A | N/A | N/A | N/A |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| USPC | 13.5 | 16.15 | < 1 | 270 | 20 | 28.73 | < 1 | 229 | N/A | N/A | N/A | N/A |
| AGENCY OVERALL | 25 | 90.71 | < 1 | 2,006 | 194 | 374.87 | < 1 | 2734 | 41 | 195.72 | < 1 | 2,646 |

## VII.C. PROCESSED SIMPLE REQUESTS - RESPONSE TIME IN DAY INCREMENTS

| Agency / Component | <1-20 Days | 21-40 Days | 41-60 Days | 61-80 Days | 81-100 Days | 101-120 Days | 121-140 Days | 141-160 Days | 161-180 Days | 181-200 Days | 201-300 Days | 301-400 Days | 401+ Days | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ATJ | 12 | 9 | 12 | 8 | 3 | 0 | 2 | 1 | 0 | 0 | 0 | 0 | 0 | 47 |
| Antitrust | 75 | 3 | 3 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 82 |
| ATF | 664 | 228 | 103 | 67 | 74 | 56 | 32 | 25 | 30 | 21 | 68 | 37 | 121 | 1,526 |
| BOP | 1,500 | 53 | 13 | 7 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1,579 |
| Civil | 120 | 2 | 3 | 1 | 2 | 0 | 2 | 2 | 3 | 1 | 3 | 0 | 1 | 140 |
| Civil Rights | 75 | 48 | 14 | 8 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 147 |
| COPS | 221 | 8 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 230 |
| Criminal | 429 | 90 | 36 | 8 | 2 | 3 | 3 | 2 | 2 | 5 | 5 | 2 | 14 | 601 |
| CRS | 53 | 12 | 16 | 9 | 13 | 9 | 8 | 1 | 2 | 0 | 3 | 0 | 0 | 126 |
| DEA | 606 | 12 | 6 | 3 | 3 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 631 |
| ENRD | 118 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 119 |
| EOIR | 45,233 | 10,957 | 3,523 | 2,272 | 2,030 | 1,718 | 1,542 | 1,212 | 1,223 | 1,178 | 4,975 | 3,334 | 4,743 | 83,940 |
| EOUSA | 570 | 69 | 15 | 10 | 6 | 12 | 4 | 4 | 2 | 4 | 13 | 1 | 2 | 712 |
| EOUST | 56 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 56 |
| FBI | 6,053 | 793 | 456 | 261 | 197 | 112 | 70 | 56 | 41 | 27 | 46 | 12 | 4 | 8,128 |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FCSC | 76 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 76 |
| JMD | 104 | 5 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 111 |
| NSD | 87 | 49 | 18 | 12 | 15 | 8 | 7 | 3 | 6 | 3 | 3 | 4 | 6 | 221 |
| OCDETF | 41 | 7 | 1 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 51 |
| OIG | 166 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 168 |
| OIP | 1,946 | 50 | 18 | 10 | 3 | 5 | 0 | 1 | 1 | 0 | 2 | 2 | 5 | 2,043 |
| OJP | 137 | 2 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 141 |
| OLC | 33 | 7 | 4 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 46 |
| OPR | 82 | 4 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 | 1 | 0 | 91 |
| OSG | 31 | 19 | 6 | 3 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 61 |
| OVW | 31 | 17 | 4 | 7 | 9 | 6 | 8 | 1 | 0 | 0 | 5 | 2 | 0 | 90 |
| PARDON | 10 | 10 | 7 | 5 | 3 | 4 | 1 | 1 | 1 | 0 | 0 | 1 | 3 | 46 |
| PRAO | 52 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 52 |
| Tax | 25 | 2 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 29 |
| USMS | 1,273 | 181 | 5 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 1,462 |
| USNCB | 140 | 1 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 143 |
| USPC | 198 | 50 | 5 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 256 |
| AGENCY OVERALL | 60,217 | 12,691 | 4,272 | 2,698 | 2,371 | 1,936 | 1,682 | 1,310 | 1,312 | 1,240 | 5,126 | 3,397 | 4,899 | 103,151 |

## VII.C. PROCESSED COMPLEX REQUESTS - RESPONSE TIME IN DAY INCREMENTS

| Agency / Component | <1-20 Days | 21-40 Days | 41-60 Days | 61-80 Days | 81-100 Days | 101-120 Days | 121-140 Days | 141-160 Days | 161-180 Days | 181-200 Days | 201-300 Days | 301-400 Days | 401+ Days | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ATJ | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Antitrust | 166 | 11 | 9 | 6 | 10 | 10 | 3 | 1 | 2 | 1 | 4 | 6 | 23 | 252 |
| ATF | 92 | 8 | 5 | 2 | 0 | 0 | 2 | 2 | 2 | 0 | 1 | 1 | 88 | 203 |
| BOP | 633 | 317 | 229 | 189 | 121 | 77 | 87 | 104 | 93 | 68 | 286 | 218 | 1,656 | 4,078 |
| Civil | 2 | 2 | 1 | 0 | 1 | 1 | 1 | 2 | 0 | 2 | 6 | 3 | 9 | 30 |
| Civil Rights | 4 | 6 | 16 | 21 | 23 | 16 | 11 | 10 | 8 | 7 | 17 | 9 | 155 | 303 |
| COPS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Criminal | 8 | 42 | 32 | 9 | 9 | 5 | 3 | 2 | 3 | 3 | 5 | 5 | 42 | 168 |
| CRS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DEA | 134 | 155 | 130 | 87 | 83 | 52 | 42 | 41 | 48 | 61 | 243 | 208 | 936 | 2,220 |
| ENRD | 25 | 30 | 22 | 8 | 7 | 3 | 0 | 5 | 0 | 1 | 2 | 1 | 12 | 116 |
| EOIR | 208 | 59 | 22 | 19 | 12 | 13 | 15 | 9 | 1 | 1 | 14 | 1 | 2 | 376 |
| EOUSA | 584 | 96 | 55 | 26 | 29 | 23 | 15 | 19 | 11 | 6 | 60 | 43 | 214 | 1,181 |
| EOUST | 17 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17 |
| FBI | 2,874 | 845 | 397 | 217 | 173 | 175 | 128 | 124 | 124 | 107 | 473 | 301 | 2,796 | 8,734 |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FCSC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| JMD | 12 | 27 | 21 | 22 | 10 | 7 | 19 | 9 | 7 | 2 | 20 | 7 | 76 | 239 |
| NSD | 4 | 1 | 1 | 3 | 1 | 1 | 1 | 1 | 0 | 3 | 11 | 4 | 53 | 84 |
| OCDETF | 8 | 2 | 1 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 14 |
| OIG | 3 | 24 | 21 | 23 | 12 | 7 | 3 | 4 | 7 | 6 | 17 | 16 | 65 | 208 |
| OIP | 52 | 36 | 40 | 8 | 8 | 7 | 2 | 7 | 1 | 3 | 12 | 12 | 282 | 470 |
| OJP | 6 | 35 | 17 | 15 | 7 | 8 | 8 | 5 | 8 | 11 | 22 | 24 | 35 | 201 |
| OLC | 14 | 15 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 3 | 1 | 8 | 42 |
| OPR | 20 | 12 | 0 | 0 | 0 | 0 | 3 | 0 | 1 | 0 | 1 | 1 | 7 | 45 |
| OSG | 3 | 5 | 3 | 4 | 1 | 0 | 3 | 0 | 1 | 0 | 3 | 1 | 4 | 28 |
| OVW | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PARDON | 3 | 1 | 2 | 3 | 3 | 1 | 0 | 1 | 3 | 1 | 1 | 0 | 12 | 31 |
| PRAO | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Tax | 4 | 0 | 1 | 0 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 4 | 16 |
| USMS | 886 | 192 | 35 | 24 | 21 | 23 | 13 | 13 | 8 | 9 | 31 | 34 | 119 | 1,408 |
| USNCB | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| USPC | 30 | 15 | 6 | 1 | 2 | 1 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 57 |
| AGENCY OVERALL | 5,792 | 1,937 | 1,066 | 688 | 538 | 432 | 360 | 360 | 328 | 291 | 1,234 | 899 | 6,598 | 20,523 |

**VII.C. PROCESSED EXPEDITED REQUESTS - RESPONSE TIME IN DAY INCREMENTS**

| Agency / Component | <1-20 Days | 21-40 Days | 41-60 Days | 61-80 Days | 81-100 Days | 101-120 Days | 121-140 Days | 141-160 Days | 161-180 Days | 181-200 Days | 201-300 Days | 301-400 Days | 401+ Days | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ATJ | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Antitrust | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ATF | 12 | 3 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 16 |
| BOP | 11 | 7 | 15 | 0 | 2 | 1 | 2 | 2 | 0 | 1 | 13 | 6 | 49 | 109 |
| Civil | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 |
| Civil Rights | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| COPS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Criminal | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 1 | 3 | 6 |
| CRS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DEA | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 9 | 12 |
| ENRD | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 2 |
| EOIR | 153 | 45 | 25 | 19 | 10 | 4 | 4 | 10 | 2 | 6 | 20 | 1 | 12 | 311 |
| EOUSA | 4 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7 |
| EOUST | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| FBI | 5 | 7 | 3 | 0 | 0 | 2 | 1 | 0 | 0 | 0 | 0 | 1 | 7 | 26 |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FCSC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| JMD | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| NSD | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OCDETF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OIG | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OIP | 4 | 1 | 3 | 1 | 1 | 13 | 0 | 1 | 1 | 0 | 2 | 1 | 36 | 64 |
| OJP | 2 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 | 5 | 11 |
| OLC | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 5 | 7 |
| OPR | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OSG | 1 | 1 | 1 | 1 | 2 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 7 |
| OVW | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PARDON | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PRAO | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Tax | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| USMS | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 2 | 5 | 14 |
| USNCB | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| USPC | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| AGENCY OVERALL | 198 | 67 | 49 | 21 | 18 | 21 | 8 | 14 | 3 | 8 | 43 | 14 | 134 | 598 |

## VII.D. PENDING REQUESTS -- ALL PENDING PERFECTED REQUESTS

| Agency / Component | SIMPLE | | | COMPLEX | | | EXPEDITED PROCESSING | | |
|---|---|---|---|---|---|---|---|---|---|
| | Number Pending | Median Number of Days | Average Number of Days | Number Pending | Median Number of Days | Average Number of Days | Number Pending | Median Number of Days | Average Number of Days |
| ATJ | 15 | 73 | 91.73 | 0 | N/A | N/A | 0 | N/A | N/A |
| Antitrust | 4 | 146 | 179.5 | 183 | 328 | 419.91 | 1 | 299 | 299 |
| ATF | 0 | N/A | N/A | 742 | 170 | 360.63 | 4 | 120 | 117 |
| BOP | 54 | 9 | 68.61 | 5,749 | 388 | 474.59 | 171 | 634 | 654.53 |
| Civil | 62 | 20 | 88.56 | 562 | 354 | 350.24 | 4 | 412.5 | 491 |
| Civil Rights | 82 | 20 | 37.01 | 307 | 446 | 470.42 | 0 | N/A | N/A |
| COPS | 8 | 4 | 24 | 0 | N/A | N/A | 0 | N/A | N/A |
| Criminal | 193 | 437 | 538.58 | 810 | 815.5 | 833.09 | 21 | 1,170 | 963.95 |
| CRS | 10 | 27.5 | 63.8 | 0 | N/A | N/A | 0 | N/A | N/A |
| DEA | 23 | 3 | 4.61 | 207 | 57 | 225.25 | 4 | 728.5 | 693 |
| ENRD | 9 | 2 | 2 | 40 | 51 | 149.2 | 0 | N/A | N/A |
| EOIR | 4,180 | 16 | 47.7 | 29 | 20 | 74.45 | 9 | 19 | 58.89 |
| EOUSA | 36 | 22 | 81.94 | 1,699 | 557 | 657.88 | 18 | 514 | 425.11 |
| EOUST | 0 | N/A | N/A | 1 | 2 | 2 | 0 | N/A | N/A |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| FBI | 1,562 | 104 | 206.93 | 5,208 | 395 | 532.59 | 34 | 508.5 | 685.79 |
| FCSC | 0 | N/A | N/A | 0 | N/A | N/A | 0 | N/A | N/A |
| JMD | 0 | N/A | N/A | 66 | 132 | 275.45 | 0 | N/A | N/A |
| NSD | 272 | 65.5 | 390.5 | 128 | 554 | 758.03 | 1 | 54 | 54 |
| OCDETF | 3 | 10 | 11 | 14 | 4.5 | 53.86 | 0 | N/A | N/A |
| OIG | 4 | 86 | 297 | 352 | 164 | 254.97 | 0 | N/A | N/A |
| OIP | 175 | 419 | 617.97 | 1,263 | 398 | 553.12 | 89 | 372 | 522.76 |
| OJP | 8 | 8 | 41.88 | 570 | 275.5 | 504.14 | 18 | 783 | 658.44 |
| OLC | 56 | 236 | 341.36 | 549 | 1,327 | 1,252.47 | 108 | 1,252 | 1,291.14 |
| OPR | 0 | N/A | N/A | 45 | 372 | 505.04 | 0 | N/A | N/A |
| OSG | 9 | 58 | 82 | 47 | 40 | 126.51 | 4 | 166 | 161.5 |
| OVW | 77 | 202 | 289.65 | 11 | 996 | 1,067.91 | 1 | 352 | 352 |
| PARDON | 28 | 249.5 | 311.93 | 28 | 170.5 | 225.07 | 0 | N/A | N/A |
| PRAO | 3 | 3 | 2.67 | 1 | 11 | 11 | 0 | N/A | N/A |
| Tax | 0 | N/A | N/A | 172 | 127 | 157.02 | 0 | N/A | N/A |
| USMS | 44 | 9 | 11.82 | 287 | 86 | 139.76 | 6 | 344.5 | 391.5 |
| USNCB | 2 | 1 | 1 | 3 | 119 | 96.33 | 0 | N/A | N/A |
| USPC | 6 | 4 | 3.83 | 2 | 9.5 | 9.5 | 0 | N/A | N/A |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Agency Overall | 6,925 | 32 | 131.71 | 1,9075 | 387 | 525.74 | 493 | 609 | 751.3 |

**VII.E. PENDING REQUESTS -- TEN OLDEST PENDING PERFECTED REQUESTS**

| Agency / Component | | 10th Oldest Request | 9th | 8th | 7th | 6th | 5th | 4th | 3rd | 2nd | Oldest Request |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ATJ | Date of Receipt | 08/19/2024 | 06/14/2024 | 06/14/2024 | 06/13/2024 | 03/24/2024 | 02/23/2024 | 01/27/2024 | 01/27/2024 | 10/27/2023 | 10/22/2023 |
| | Number of Days Pending | 29 | 73 | 73 | 74 | 131 | 152 | 170 | 170 | 231 | 235 |
| Antitrust | Date of Receipt | 10/03/2019 | 09/12/2019 | 09/06/2019 | 08/27/2019 | 07/29/2019 | 07/19/2019 | 06/24/2019 | 03/08/2019 | 03/05/2019 | 02/01/2019 |
| | Number of Days Pending | 1,245 | 1,260 | 1,264 | 1,271 | 1,292 | 1,298 | 1,316 | 1,391 | 1,394 | 1,415 |
| ATF | Date of Receipt | 10/04/2017 | 10/04/2017 | 05/30/2017 | 02/24/2017 | 01/17/2017 | 06/15/2016 | 03/15/2016 | 01/14/2016 | 12/31/2015 | 07/23/2015 |
| | Number of Days Pending | 1,745 | 1,745 | 1,834 | 1,900 | 1,927 | 2,073 | 2,138 | 2,179 | 2,188 | 2,298 |
| BOP | Date of Receipt | 12/18/2017 | 11/21/2017 | 11/13/2017 | 11/13/2017 | 11/10/2017 | 09/26/2017 | 05/22/2017 | 02/27/2017 | 07/21/2016 | 08/28/2015 |
| | Number of Days | 1,695 | 1,713 | 1,719 | 1,719 | 1,719 | 1,751 | 1,839 | 1,899 | 2,048 | 2,272 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Pending | | | | | | | | | | |
| Civil | Date of Receipt | 07/26/2021 | 07/14/2021 | 07/09/2021 | 06/24/2021 | 06/22/2021 | 06/11/2021 | 06/10/2021 | 01/27/2021 | 01/14/2021 | 12/22/2020 |
| | Number of Days Pending | 796 | 804 | 807 | 817 | 819 | 825 | 826 | 920 | 927 | 941 |
| Civil Rights | Date of Receipt | 02/25/2020 | 02/18/2020 | 02/13/2020 | 02/11/2020 | 01/27/2020 | 12/10/2019 | 10/24/2019 | 08/22/2019 | 05/17/2019 | 05/06/2019 |
| | Number of Days Pending | 1,150 | 1,155 | 1,157 | 1,159 | 1,170 | 1,200 | 1,231 | 1,274 | 1,341 | 1,350 |
| COPS | Date of Receipt | N/A | N/A | 09/25/2024 | 09/24/2024 | 09/24/2024 | 09/24/2024 | 09/24/2024 | 08/14/2024 | 08/02/2024 | 05/02/2024 |
| | Number of Days Pending | 0 | 0 | 1 | 4 | 4 | 4 | 4 | 32 | 40 | 103 |
| Criminal | Date of Receipt | 06/23/2016 | 06/17/2016 | 06/16/2016 | 06/16/2016 | 05/25/2016 | 04/27/2016 | 03/17/2016 | 10/28/2015 | 10/21/2015 | 09/25/2015 |
| | Number of Days Pending | 2,067 | 2,071 | 2,072 | 2,072 | 2,087 | 2,107 | 2,136 | 2,231 | 2,236 | 2,253 |
| CRS | Date of Receipt | 09/27/2024 | 09/25/2024 | 09/24/2024 | 08/29/2024 | 08/28/2024 | 08/13/2024 | 08/02/2024 | 07/15/2024 | 01/27/2024 | 08/03/2023 |

| | Number of Days Pending | 1 | 3 | 4 | 21 | 22 | 33 | 40 | 54 | 170 | 290 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DEA | Date of Receipt | 03/05/2020 | 11/05/2019 | 12/05/2019 | 11/05/2019 | 10/01/2019 | 05/29/2019 | 05/20/2019 | 05/08/2019 | 10/31/2018 | 07/17/2018 |
| | Number of Days Pending | 1,143 | 1,191 | 1,203 | 1,223 | 1,247 | 1,334 | 1,340 | 1,348 | 1,476 | 1,550 |
| ENRD | Date of Receipt | 01/24/2024 | 10/31/2023 | 09/19/2023 | 03/27/2023 | 03/27/2023 | 07/18/2022 | 04/07/2022 | 01/10/2022 | 11/30/2021 | 11/12/2021 |
| | Number of Days Pending | 173 | 200 | 255 | 380 | 380 | 528 | 621 | 682 | 709 | 720 |
| EOIR | Date of Receipt | 10/27/2021 | 10/11/2021 | 10/04/2021 | 10/04/2021 | 09/28/2021 | 09/23/2021 | 08/16/2021 | 06/23/2021 | 04/22/2021 | 01/21/2021 |
| | Number of Days Pending | 731 | 742 | 746 | 747 | 751 | 754 | 770 | 818 | 849 | 924 |
| EOUSA | Date of Receipt | 05/19/2017 | 05/19/2017 | 05/17/2017 | 05/12/2017 | 05/12/2017 | 05/11/2017 | 05/01/2017 | 04/11/2017 | 04/04/2017 | 03/22/2017 |
| | Number of Days Pending | 1,840 | 1,840 | 1,842 | 1,845 | 1,845 | 1,846 | 1,848 | 1,868 | 1,873 | 1,882 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| EOUST | Date of Receipt | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 09/26/2024 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| FBI | Date of Receipt | 11/17/2014 | 11/14/2014 | 11/10/2014 | 10/21/2014 | 10/08/2014 | 09/23/2014 | 09/23/2014 | 08/19/2014 | 07/30/2014 | 04/29/2014 |
| | Number of Days Pending | 2,468 | 2,469 | 2,472 | 2,486 | 2,494 | 2,505 | 2,505 | 2,529 | 2,543 | 2,607 |
| FCSC | Date of Receipt | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| JMD | Date of Receipt | 12/07/2021 | 11/22/2021 | 11/17/2021 | 06/29/2021 | 04/12/2021 | 02/23/2021 | 02/01/2021 | 10/30/2020 | 03/03/2020 | 10/26/2017 |
| | Number of Days Pending | 704 | 714 | 717 | 814 | 868 | 902 | 917 | 976 | 1,145 | 1,730 |
| NSD | Date of Receipt | 05/18/2017 | 05/10/2017 | 05/05/2017 | 04/03/2017 | 12/15/2016 | 10/20/2016 | 04/12/2016 | 03/09/2016 | 11/23/2015 | 03/31/2015 |
| | Number | 1,841 | 1,847 | 1,850 | 1,874 | 1,947 | 1,985 | 2,118 | 2,142 | 2,214 | 2,378 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | of Days Pending | | | | | | | | | | |
| OCDETF | Date of Receipt | 09/21/2024 | 09/16/2024 | 09/16/2024 | 09/16/2024 | 09/11/2024 | 08/31/2024 | 08/30/2024 | 01/08/2024 | 12/11/2023 | 07/20/2023 |
| | Number of Days Pending | 5 | 10 | 10 | 10 | 13 | 19 | 20 | 184 | 202 | 300 |
| OIG | Date of Receipt | 07/09/2020 | 07/08/2020 | 04/09/2020 | 02/24/2020 | 02/05/2020 | 12/17/2019 | 12/16/2019 | 05/14/2019 | 10/18/2018 | 02/21/2018 |
| | Number of Days Pending | 1,055 | 1,056 | 1,118 | 1,151 | 1,163 | 1,195 | 1,196 | 1,344 | 1,485 | 1,652 |
| OIP | Date of Receipt | 08/14/2017 | 08/03/2017 | 07/26/2017 | 07/25/2017 | 07/24/2017 | 07/10/2017 | 05/11/2017 | 05/04/2017 | 02/06/2017 | 01/10/2017 |
| | Number of Days Pending | 1,781 | 1,788 | 1,794 | 1,795 | 1,796 | 1,806 | 1,846 | 1,851 | 1,913 | 1,931 |
| OJP | Date of Receipt | 12/19/2017 | 12/12/2017 | 11/24/2017 | 10/20/2017 | 10/03/2017 | 09/20/2017 | 06/15/2017 | 05/12/2017 | 03/06/2017 | 03/01/2016 |
| | Number of Days Pending | 1,694 | 1,699 | 1,711 | 1,734 | 1,746 | 1,755 | 1,822 | 1,845 | 1,894 | 2,148 |
| OLC | Date of | 08/27/2014 | 08/27/2014 | 07/31/2014 | 07/14/2014 | 06/11/2014 | 06/03/2014 | 04/29/2014 | 04/18/2014 | 04/09/2014 | 02/27/2014 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Receipt | | | | | | | | | | |
| | Number of Days Pending | 2,523 | 2,523 | 2,542 | 2,555 | 2,577 | 2,583 | 2,600 | 2,614 | 2,621 | 2,650 |
| OPR | Date of Receipt | 10/18/2021 | 06/11/2021 | 05/06/2021 | 12/14/2020 | 10/16/2020 | 10/28/2019 | 06/17/2019 | 08/10/2018 | 07/01/2016 | 07/01/2016 |
| | Number of Days Pending | 738 | 825 | 850 | 947 | 963 | 1,229 | 1,321 | 1,532 | 2,061 | 2,061 |
| OSG | Date of Receipt | 08/24/2021 | 09/18/2023 | 06/06/2023 | 07/24/2023 | 07/06/2023 | 06/20/2022 | 02/21/2023 | 05/06/2022 | 01/05/2022 | 11/04/2021 |
| | Number of Days Pending | 248 | 259 | 259 | 298 | 310 | 359 | 404 | 600 | 685 | 725 |
| OVW | Date of Receipt | 06/25/2019 | 06/25/2019 | 04/11/2019 | 01/28/2019 | 07/19/2017 | 02/17/2016 | 02/17/2016 | 02/17/2016 | 02/17/2016 | 09/19/2016 |
| | Number of Days Pending | 1,315 | 1,315 | 1,367 | 1,419 | 1,799 | 1,809 | 1,809 | 1,809 | 1,809 | 2,007 |
| PARDON | Date of Receipt | 01/20/2023 | 12/05/2022 | 10/30/2022 | 10/13/2022 | 07/19/2022 | 07/19/2022 | 05/01/2022 | 07/12/2021 | 01/12/2021 | 11/26/2020 |
| | Number of Days | 425 | 456 | 479 | 491 | 522 | 522 | 604 | 806 | 929 | 953 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Pending | | | | | | | | | | |
| PRAO | Date of Receipt | N/A | N/A | N/A | N/A | N/A | N/A | 09/27/2024 | 09/25/2024 | 09/24/2024 | 09/13/2024 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 3 | 4 | 11 |
| Tax | Date of Receipt | 03/23/2023 | 03/20/2023 | 02/22/2023 | 10/11/2022 | 09/12/2022 | 08/25/2022 | 03/03/2022 | 01/31/2022 | 01/12/2022 | 09/13/2018 |
| | Number of Days Pending | 382 | 385 | 403 | 493 | 513 | 524 | 646 | 668 | 680 | 1,509 |
| USMS | Date of Receipt | 05/03/2022 | 04/19/2022 | 03/25/2022 | 12/14/2021 | 01/06/2022 | 11/08/2021 | 10/29/2021 | 10/19/2021 | 08/04/2021 | 01/01/2021 |
| | Number of Days Pending | 603 | 613 | 630 | 679 | 684 | 723 | 729 | 737 | 789 | 935 |
| USNCB | Date of Receipt | N/A | N/A | N/A | N/A | N/A | 09/30/2024 | 09/27/2024 | 09/23/2024 | 03/26/2024 | 02/05/2024 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 5 | 119 | 165 |
| USPC | Date of Receipt | N/A | N/A | 09/27/2024 | 09/25/2024 | 09/25/2024 | 09/24/2024 | 09/24/2024 | 09/24/2024 | 09/19/2024 | 09/06/2024 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Number of Days Pending | 0 | 0 | 1 | 3 | 3 | 4 | 4 | 4 | 7 | 16 |
| | Number of Days Pending | 29 | 73 | 73 | 74 | 131 | 152 | 170 | 170 | 231 | 235 |
| AGENCY OVERALL | Date | 07/31/2014 | 07/30/2014 | 07/14/2014 | 06/11/2014 | 06/03/2014 | 04/29/2014 | 04/29/2014 | 04/18/2014 | 04/09/2014 | 02/27/2014 |
| | Number of Days Pending | 2,542 | 2,543 | 2,555 | 2,577 | 2,583 | 2,600 | 2,607 | 2,614 | 2,621 | 2,650 |

## VIII.A. REQUESTS FOR EXPEDITED PROCESSING

| Agency / Component | Number Granted | Number Denied | Median Number of Days to Adjudicate | Average Number of Days to Adjudicate | Number Adjudicated Within Ten Calendar Days |
|---|---|---|---|---|---|
| ATJ | 0 | 0 | N/A | N/A | 0 |
| Antitrust | 0 | 11 | 5 | 5.82 | 9 |
| ATF | 28 | 261 | 2 | 5.81 | 249 |
| BOP | 65 | 110 | 5 | 8.22 | 147 |
| Civil | 0 | 3 | 15 | 50.67 | 1 |
| Civil Rights | 0 | 0 | N/A | N/A | 0 |
| COPS | 0 | 0 | N/A | N/A | 0 |
| Criminal | 3 | 32 | 14 | 33.66 | 17 |
| CRS | 0 | 0 | N/A | N/A | 0 |
| DEA | 0 | 128 | 8 | 37.36 | 68 |
| ENRD | 0 | 6 | 7.5 | 7.33 | 6 |
| EOIR | 249 | 2,174 | 2 | 7.49 | 2,192 |
| EOUSA | 9 | 103 | 3 | 5.33 | 98 |
| EOUST | 3 | 4 | 1 | 2.14 | 7 |
| FBI | 31 | 789 | 1 | 5.04 | 745 |
| FCSC | 0 | 0 | N/A | N/A | 0 |
| JMD | 0 | 6 | 4 | 7.33 | 5 |
| NSD | 1 | 5 | 18 | 16.33 | 1 |
| OCDETF | 0 | 0 | N/A | N/A | 0 |
| OIG | 0 | 5 | 7 | 8 | 3 |
| OIP | 71 | 145 | 4 | 7.2 | 173 |
| OJP | 14 | 38 | 4 | 13.92 | 42 |
| OLC | 6 | 10 | 16.5 | 18.56 | 6 |
| OPR | 0 | 2 | 7.5 | 7.5 | 2 |

| | | | | | |
|---|---|---|---|---|---|
| OSG | 1 | 0 | 28 | 28 | 0 |
| OVW | 0 | 0 | N/A | N/A | 0 |
| PARDON | 0 | 0 | N/A | N/A | 0 |
| PRAO | 0 | 0 | N/A | N/A | 0 |
| Tax | 0 | 0 | N/A | N/A | 0 |
| USMS | 15 | 236 | 5 | 91.96 | 151 |
| USNCB | 0 | 0 | N/A | N/A | 0 |
| USPC | 0 | 0 | N/A | N/A | 0 |
| AGENCY OVERALL | 496 | 4,068 | 2 | 12.73 | 3,922 |

## VIII.B. REQUESTS FOR FEE WAIVER

| Agency / Component | Number Granted | Number Denied | Median Number of Days to Adjudicate | Average Number of Days to Adjudicate |
|---|---|---|---|---|
| ATJ | 0 | 0 | N/A | N/A |
| Antitrust | 0 | 0 | N/A | N/A |
| ATF | 0 | 0 | N/A | N/A |
| BOP | 7 | 1 | 7 | 25.75 |
| Civil | 0 | 0 | N/A | N/A |
| Civil Rights | 0 | 0 | N/A | N/A |
| COPS | 0 | 0 | N/A | N/A |
| Criminal | 0 | 0 | N/A | N/A |
| CRS | 0 | 0 | N/A | N/A |
| DEA | 0 | 9 | 47 | 78.22 |
| ENRD | 31 | 21 | 1 | 1 |
| EOIR | 1,489 | 29 | 1 | 11.87 |
| EOUSA | 4 | 30 | 1.5 | 47.03 |
| EOUST | 0 | 5 | 1 | 1.2 |
| FBI | 11 | 1,692 | 1 | 12.85 |
| FCSC | 0 | 0 | N/A | N/A |
| JMD | 0 | 0 | N/A | N/A |
| NSD | 0 | 0 | N/A | N/A |
| OCDETF | 0 | 0 | N/A | N/A |
| OIG | 0 | 0 | N/A | N/A |
| OIP | 0 | 0 | N/A | N/A |
| OJP | 0 | 0 | N/A | N/A |
| OLC | 0 | 0 | N/A | N/A |
| OPR | 0 | 0 | N/A | N/A |
| OSG | 0 | 0 | N/A | N/A |

| | | | | |
|---|---|---|---|---|
| OVW | 0 | 0 | N/A | N/A |
| PARDON | 0 | 0 | N/A | N/A |
| PRAO | 0 | 0 | N/A | N/A |
| Tax | 0 | 0 | N/A | N/A |
| USMS | 593 | 231 | 1 | 10.48 |
| USNCB | 0 | 0 | N/A | N/A |
| USPC | 0 | 0 | N/A | N/A |
| AGENCY OVERALL | 2,135 | 2,018 | 1 | 12.31 |

## IX. FOIA PERSONNEL AND COSTS

| Agency / Component | PERSONNEL | | | COSTS | | |
|---|---|---|---|---|---|---|
| | Number of "Full-Time FOIA Employees" | Number of "Equivalent Full-Time FOIA Employees" | Total Number of "Full-Time FOIA Staff" | Processing Costs | Litigations-Related Costs | Total Costs |
| ATJ | 0 | 2 | 2 | $71,297.00 | $712.90 | $72,009.90 |
| Antitrust | 3 | 3.6 | 6.6 | $1,275,223.18 | $51,387.81 | $1,326,610.99 |
| ATF | 20 | 1 | 21 | $5,312,471.37 | $106,836.00 | $5,419,307.37 |
| BOP | 8 | 9 | 17 | $2,505,409.00 | $557,395.00 | $3,062,804.00 |
| Civil | 3 | 1.26 | 4.26 | $536,832.00 | $2,608,913.00 | $3,145,745.00 |
| Civil Rights | 11 | 0 | 11 | $2,169,272.00 | $393,543.00 | $2,562,815.00 |
| COPS | 1 | 0 | 1 | $122,000.00 | $0.00 | $122,000.00 |
| Criminal | 10 | 3.6 | 13.6 | $1,677,900.02 | $1,363,772.25 | $3,041,672.27 |
| CRS | 1 | 0.5 | 1.5 | $184,422.00 | $50,000.00 | $234,422.00 |
| DEA | 11 | 5 | 16 | $1,716,832.00 | $770,618.00 | $2,487,450.00 |
| ENRD | 2 | 1.38 | 3.38 | $851,273.70 | $87,576.38 | $938,850.08 |
| EOIR | 33 | 32 | 65 | $6,127,550.48 | $15,325.00 | $6,142,875.48 |

| | | | | | | |
|---|---|---|---|---|---|---|
| EOUSA | 29 | 0.85 | 29.85 | $4,276,009.50 | $5,900,000.00 | $10,176,009.50 |
| EOUST | 1 | 0.7 | 1.7 | $365,120.22 | $0.00 | $365,120.22 |
| FBI | 247 | 8 | 255 | $52,559,186.44 | $1,697,816.00 | $54,257,002.44 |
| FCSC | 0 | 0.03 | 0.03 | $3,900.00 | $0.00 | $3,900.00 |
| JMD | 4 | 1.88 | 5.88 | $731,322.00 | $80,704.00 | $812,026.00 |
| NSD | 2 | 1.75 | 3.75 | $630,848.00 | $255,063.00 | $885,911.00 |
| OCDETF | 1 | 0 | 1 | $194,837.00 | $3,507.00 | $198,344.00 |
| OIG | 6 | 2 | 8 | $723,252.00 | $180,813.00 | $904,065.00 |
| OIP | 35 | 1.89 | 36.89 | $7,235,778.00 | $1,887,506.00 | $9,123,284.00 |
| OJP | 4 | 1.5 | 5.5 | $1,101,320.96 | $52,487.58 | $1,153,808.54 |
| OLC | 0 | 2.18 | 2.18 | $269,479.65 | $146,044.70 | $415,524.35 |
| OPR | 2 | 2.25 | 4.25 | $294,594.80 | $86,472.20 | $381,067.00 |
| OSG | 2 | 2 | 4 | $301,197.48 | $1,105.84 | $302,303.32 |
| OVW | 0 | 0.75 | 0.75 | $250,000.00 | $0.00 | $250,000.00 |
| PARDON | 1 | 1.4 | 2.4 | $185,881.00 | $0.00 | $185,881.00 |
| PRAO | 0 | 0.25 | 0.25 | $68,785.00 | $0.00 | $68,785.00 |
| Tax | 0 | 0.95 | 0.95 | $235,170.46 | $963,641.33 | $1,198,811.79 |
| USMS | 7 | 6 | 13 | $2,239,223.07 | $311,750.00 | $2,550,973.07 |

| | | | | | | |
|---|---|---|---|---|---|---|
| USNCB | 1 | 0.01 | 1.01 | $233,575.00 | $0.00 | $233,575.00 |
| USPC | 1 | 0 | 1 | $210,758.00 | $0.00 | $210,758.00 |
| AGENCY OVERALL | 446 | 93.73 | 539.73 | $94,660,721.33 | $17,572,989.99 | $112,233,711.32 |

## X. FEES COLLECTED FOR PROCESSING REQUESTS

| Agency / Component | Total Amount of Fees Collected | Percentage of Total Costs |
|---|---|---|
| ATJ | $0.00 | 0.00% |
| Antitrust | $0.00 | 0.00% |
| ATF | $0.00 | 0.00% |
| BOP | $0.00 | 0.00% |
| Civil | $0.00 | 0.00% |
| Civil Rights | $0.00 | 0.00% |
| COPS | $0.00 | 0.00% |
| Criminal | $0.00 | 0.00% |
| CRS | $0.00 | 0.00% |
| DEA | $1,723.60 | 0.07% |
| ENRD | $4,850.00 | 0.52% |
| EOIR | $0.00 | 0.00% |
| EOUSA | $17,895.00 | 0.18% |
| EOUST | $460.00 | 0.13% |
| FBI | $8,862.80 | 0.02% |
| FCSC | $0.00 | 0.00% |

| | | |
|---|---|---|
| JMD | $0.00 | 0.00% |
| NSD | $0.00 | 0.00% |
| OCDETF | $0.00 | 0.00% |
| OIG | $0.00 | 0.00% |
| OIP | $0.00 | 0.00% |
| OJP | $0.00 | 0.00% |
| OLC | $0.00 | 0.00% |
| OPR | $0.00 | 0.00% |
| OSG | $0.00 | 0.00% |
| OVW | $0.00 | 0.00% |
| PARDON | $0.00 | 0.00% |
| PRAO | $0.00 | 0.00% |
| Tax | $0.00 | 0.00% |
| USMS | $2,213.42 | 0.09% |
| USNCB | $0.00 | 0.00% |
| USPC | $12.00 | 0.01% |
| AGENCY OVERALL | $36,016.82 | 0.03% |

**XI.A. NUMBER OF TIMES SUBSECTION (C) USED**

| Agency / Component | Number of Times Subsection Used |
|---|---|
| ATJ | 0 |
| Antitrust | 0 |
| ATF | 0 |
| BOP | 0 |
| Civil | 0 |
| Civil Rights | 0 |
| COPS | 0 |
| Criminal | 0 |
| CRS | 0 |
| DEA | 7 |
| ENRD | 0 |
| EOIR | 0 |
| EOUSA | 0 |
| EOUST | 0 |
| FBI | 41 |
| FCSC | 0 |

| | |
|---|---|
| JMD | 0 |
| NSD | 0 |
| OCDETF | 0 |
| OIG | 0 |
| OIP | 0 |
| OJP | 0 |
| OLC | 0 |
| OPR | 0 |
| OSG | 0 |
| OVW | 0 |
| PARDON | 0 |
| PRAO | 0 |
| Tax | 0 |
| USMS | 0 |
| USNCB | 0 |
| USPC | 0 |
| AGENCY OVERALL | 48 |

## XI.B. NUMBER OF SUBSECTION (A)(2) POSTINGS

| Agency / Component | Number of Records Posted by the FOIA Office | Number of Records Posted by Program Offices |
|---|---|---|
| ATJ | 0 | 0 |
| Antitrust | 1 | 973 |
| ATF | 94 | 46 |
| BOP | 18 | 100 |
| Civil | 134 | 1 |
| Civil Rights | 4 | 8,362 |
| COPS | 0 | 32 |
| Criminal | 4 | 16 |
| CRS | 0 | 0 |
| DEA | 0 | 2,000 |
| ENRD | 0 | 134 |
| EOIR | 59,010 | 62 |
| EOUSA | 0 | 0 |
| EOUST | 6 | 39 |
| FBI | 13 | 25 |

| | | |
|---|---|---|
| FCSC | 0 | 0 |
| JMD | 0 | 217 |
| NSD | 0 | 0 |
| OCDETF | 0 | 0 |
| OIG | 84 | 118 |
| OIP | 182 | 540 |
| OJP | 3 | 22,334 |
| OLC | 25 | 0 |
| OPR | 4 | 0 |
| OSG | 0 | 147 |
| OVW | 0 | 0 |
| PARDON | 0 | 0 |
| PRAO | 0 | 0 |
| Tax | 12 | 265 |
| USMS | 1 | 1 |
| USNCB | 1 | 0 |
| USPC | 0 | 0 |
| AGENCY OVERALL | 59,596 | 35,412 |

## XII.A. BACKLOGS OF FOIA REQUESTS AND ADMINISTRATIVE APPEALS

| Agency / Component | Number of Backlogged Requests as of End of Fiscal Year | Number of Backlogged Appeals as of End of Fiscal Year |
|---|---|---|
| ATJ | 10 | 0 |
| Antitrust | 170 | 0 |
| ATF | 610 | 0 |
| BOP | 5,679 | 0 |
| Civil | 576 | 0 |
| Civil Rights | 339 | 0 |
| COPS | 3 | 0 |
| Criminal | 971 | 0 |
| CRS | 7 | 0 |
| DEA | 119 | 0 |
| ENRD | 23 | 0 |
| EOIR | 1,521 | 0 |
| EOUSA | 1,601 | 0 |
| EOUST | 0 | 0 |
| FBI | 6,052 | 0 |
| FCSC | 0 | 0 |

| | | |
|---|---|---|
| JMD | 56 | 0 |
| NSD | 326 | 0 |
| OCDETF | 3 | 0 |
| OIG | 262 | 0 |
| OIP | 1,423 | 211 |
| OJP | 530 | 0 |
| OLC | 688 | 0 |
| OPR | 42 | 0 |
| OSG | 45 | 0 |
| OVW | 74 | 0 |
| PARDON | 56 | 0 |
| PRAO | 0 | 0 |
| Tax | 149 | 0 |
| USMS | 230 | 0 |
| USNCB | 2 | 0 |
| USPC | 0 | 0 |
| AGENCY OVERALL | 21,567 | 211 |

## XII.B. CONSULTATIONS ON FOIA REQUESTS -- RECEIVED, PROCESSED, AND PENDING CONSULTATIONS

| Agency / Component | Number of Consultations Received from Other Agencies that were Pending at the Agency as of Start of the Fiscal Year | Number of Consultations Received from Other Agencies During the Fiscal Year | Number of Consultations Received from Other Agencies that were Processed by the Agency During the Fiscal Year | Number of Consultations Received from Other Agencies that were Pending at the Agency as of End of the Fiscal Year |
|---|---|---|---|---|
| ATJ | 0 | 0 | 0 | 0 |
| Antitrust | 3 | 24 | 19 | 8 |
| ATF* | 7 | 91 | 94 | 4 |
| BOP* | 5 | 31 | 32 | 4 |
| Civil* | 89 | 112 | 113 | 88 |
| Civil Rights | 3 | 90 | 87 | 6 |
| COPS | 0 | 14 | 14 | 0 |
| Criminal* | 84 | 49 | 34 | 99 |
| CRS | 0 | 21 | 21 | 0 |
| DEA* | 188 | 108 | 279 | 17 |
| ENRD | 3 | 53 | 52 | 4 |

| | | | | |
|---|---|---|---|---|
| EOIR | 0 | 14 | 14 | 0 |
| EOUSA* | 103 | 283 | 247 | 139 |
| EOUST | 0 | 5 | 5 | 0 |
| FBI* | 73 | 153 | 151 | 75 |
| FCSC | 0 | 0 | 0 | 0 |
| JMD | 1 | 77 | 78 | 0 |
| NSD* | 36 | 157 | 179 | 14 |
| OCDETF | 0 | 21 | 18 | 3 |
| OIG | 0 | 0 | 0 | 0 |
| OIP* | 106 | 181 | 158 | 129 |
| OJP | 1 | 46 | 45 | 2 |
| OLC* | 26 | 54 | 57 | 23 |
| OPR | 0 | 19 | 19 | 0 |
| OSG* | 5 | 24 | 22 | 7 |
| OVW | 0 | 0 | 0 | 0 |
| PARDON | 0 | 0 | 0 | 0 |
| PRAO | 1 | 19 | 19 | 1 |
| Tax* | 3 | 17 | 7 | 13 |

| | | | | |
|---|---|---|---|---|
| USMS* | 5 | 109 | 108 | 6 |
| USNCB | 0 | 5 | 5 | 0 |
| USPC* | 1 | 3 | 4 | 0 |
| AGENCY OVERALL | 743 | 1,780 | 1,881 | 642 |

*After reviewing their databases, the following components updated the number of consultations pending as of the start of the Fiscal Year: ATF, BOP, Civil, Criminal, DEA, EOUSA, FBI, NSD, OIP, OLC, OSG, Tax, USMS, and USPC.

## XII.C. CONSULTATIONS ON FOIA REQUESTS -- TEN OLDEST CONSULTATIONS RECEIVED FROM OTHER AGENCIES AND PENDING AT THE AGENCY

| Agency / Component | | 10th Oldest Consultation | 9th | 8th | 7th | 6th | 5th | 4th | 3rd | 2nd | Oldest Consultations |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ATJ | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Antitrust | Date | N/A | N/A | 07/31/2024 | 05/31/2024 | 05/15/2024 | 03/20/2024 | 12/27/2023 | 12/20/2023 | 10/31/2023 | 04/27/2023 |
| | Number of Days Pending | 0 | 0 | 42 | 83 | 94 | 134 | 191 | 195 | 229 | 357 |
| ATF | Date | N/A | N/A | N/A | N/A | N/A | N/A | 09/20/2024 | 09/17/2024 | 07/30/2024 | 06/28/2024 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 6 | 9 | 43 | 64 |
| BOP | Date | N/A | N/A | N/A | N/A | N/A | N/A | 09/24/2024 | 09/13/2024 | 05/07/2024 | 11/30/2023 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 11 | 100 | 209 |
| Civil | Date | 05/19/2023 | 05/01/2023 | 03/31/2023 | 03/29/2023 | 03/02/2023 | 01/25/2023 | 01/24/2023 | 01/23/2023 | 12/01/2022 | 10/27/2022 |
| | Number of Days | 341 | 355 | 376 | 378 | 397 | 422 | 423 | 424 | 458 | 481 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Pending | | | | | | | | | | |
| Civil Rights | Date | N/A | N/A | N/A | N/A | 09/30/2024 | 09/27/2024 | 09/16/2024 | 09/03/2024 | 02/15/2024 | 01/17/2024 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 1 | 1 | 10 | 19 | 157 | 178 |
| COPS | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Criminal | Date | 03/26/2021 | 03/23/2021 | 12/23/2020 | 12/22/2020 | 12/21/2020 | 11/25/2020 | 11/16/2020 | 03/04/2020 | 12/30/2019 | 12/30/2019 |
| | Number of Days Pending | 879 | 882 | 940 | 941 | 942 | 959 | 966 | 1,144 | 1,188 | 1,188 |
| CRS | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DEA | Date | 05/30/2023 | 11/08/2022 | 04/20/2022 | 11/10/2021 | 10/01/2021 | 04/07/2021 | 02/24/2021 | 01/23/2020 | 01/16/2020 | 06/24/2019 |
| | Number of Days Pending | 335 | 473 | 612 | 721 | 748 | 871 | 901 | 1,172 | 1,176 | 1,316 |
| ENRD | Date | N/A | N/A | N/A | N/A | N/A | N/A | 09/17/202 | 09/16/202 | 08/08/20 | 06/27/202 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 4 | 4 | 24 | 4 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 9 | 10 | 36 | 65 |
| EOIR | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| EOUSA | Date | 10/13/2022 | 10/04/2022 | 05/24/2022 | 05/23/2022 | 05/10/2022 | 02/07/2022 | 02/02/2022 | 01/06/2022 | 06/16/2021 | 05/16/2021 |
| | Number of Days Pending | 491 | 497 | 588 | 589 | 598 | 663 | 666 | 684 | 822 | 843 |
| EOUST | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| FBI | Date | 08/11/2023 | 06/02/2023 | 05/19/2023 | 03/15/2023 | 03/15/2023 | 03/15/2023 | 03/14/2023 | 03/10/2023 | 02/21/2023 | 01/11/2023 |
| | Number of Days Pending | 284 | 332 | 341 | 388 | 388 | 388 | 389 | 391 | 404 | 431 |
| FCSC | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | of Days Pending | | | | | | | | | | |
| JMD | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| NSD | Date | 03/16/2023 | 02/09/2023 | 05/20/2022 | 10/26/2021 | 10/18/2021 | 09/08/2021 | 05/05/2021 | 03/03/2021 | 02/25/2021 | 02/02/2021 |
| | Number of Days Pending | 387 | 411 | 590 | 732 | 738 | 765 | 851 | 896 | 900 | 916 |
| OCDETF | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 09/30/2024 | 09/25/2024 | 09/10/2024 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 3 | 14 |
| OIG | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OIP | Date | 09/29/2021 | 09/07/2021 | 08/06/2021 | 07/15/2021 | 06/02/2021 | 05/26/2021 | 05/14/2021 | 04/16/2021 | 03/05/2021 | 04/23/2020 |
| | Number of Days Pending | 750 | 766 | 787 | 803 | 832 | 836 | 844 | 864 | 894 | 1,108 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| OJP | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 09/24/2024 | 04/24/2020 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 1,107 |
| OLC | Date | 01/05/2024 | 12/20/2023 | 12/12/2023 | 12/04/2023 | 11/29/2023 | 11/09/2023 | 10/31/2023 | 10/27/2023 | 10/10/2023 | 08/22/2023 |
| | Number of Days Pending | 185 | 195 | 201 | 207 | 210 | 222 | 229 | 231 | 244 | 277 |
| OPR | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OSG | Date | N/A | N/A | N/A | 07/25/2024 | 07/08/2024 | 05/30/2024 | 05/08/2024 | 05/06/2024 | 12/07/2023 | 12/04/2023 |
| | Number of Days Pending | 0 | 0 | 0 | 46 | 59 | 84 | 99 | 101 | 204 | 207 |
| OVW | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PARDON | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | of Days Pending | | | | | | | | | | |
| PRAO | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 09/23/2024 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| Tax | Date | 02/16/2024 | 01/31/2024 | 11/21/2023 | 10/31/2023 | 10/23/2023 | 10/23/2023 | 10/20/2023 | 03/09/2023 | 06/28/2022 | 04/01/2022 |
| | Number of Days Pending | 156 | 168 | 215 | 229 | 235 | 235 | 236 | 392 | 565 | 625 |
| USMS | Date | N/A | N/A | N/A | N/A | 09/30/2024 | 09/24/2024 | 09/10/2024 | 09/06/2024 | 08/01/2024 | 07/26/2024 |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 1 | 4 | 14 | 16 | 41 | 45 |
| USNCB | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| USPC | Date | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Number of Days Pending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| AGENCY OVERALL | Date | 11/25/2020 | 11/16/2020 | 04/24/2020 | 04/23/2020 | 03/04/2020 | 01/23/2020 | 01/16/2020 | 12/30/2019 | 12/30/2019 | 06/24/2019 |
| | Number of Days Pending | 959 | 966 | 1,107 | 1,108 | 1,144 | 1,172 | 1,176 | 1,188 | 1,188 | 1,316 |

## XII.D.(1). COMPARISON OF NUMBERS OF REQUESTS FROM PREVIOUS AND CURRENT ANNUAL REPORT -- REQUESTS RECEIVED AND PROCESSED

| Agency / Component | NUMBER OF REQUESTS RECEIVED | | NUMBER OF REQUESTS PROCESSED | |
|---|---|---|---|---|
| | Number Received During Fiscal Year from Last Year's Annual Report | Number Received During Fiscal Year from Current Annual Report | Number Processed During Fiscal Year from Last Year's Annual Report | Number Processed During Fiscal Year from Current Annual Report |
| ATJ | 3 | 76 | 2 | 61 |
| Antitrust | 172 | 383 | 145 | 351 |
| ATF | 1,734 | 2,141 | 1,774 | 2,145 |
| BOP | 5,146 | 5,897 | 4,229 | 6,329 |
| Civil | 474 | 564 | 118 | 296 |
| Civil Rights | 377 | 414 | 314 | 483 |
| COPS | 180 | 237 | 176 | 234 |
| Criminal | 1,049 | 1,296 | 966 | 1,236 |
| CRS | 53 | 120 | 36 | 131 |
| DEA | 1,634 | 1,612 | 1,646 | 3,337 |
| ENRD | 148 | 244 | 150 | 239 |
| EOIR | 70,475 | 87,842 | 104,290 | 109,163 |
| EOUSA | 3,247 | 3,610 | 3,289 | 3,757 |

| | | | | |
|---|---|---|---|---|
| EOUST | 64 | 99 | 62 | 100 |
| FBI | 18,803 | 18,218 | 19,359 | 20,145 |
| FCSC | 28 | 76 | 28 | 76 |
| JMD | 297 | 263 | 298 | 381 |
| NSD | 402 | 499 | 439 | 379 |
| OCDETF | 59 | 92 | 65 | 80 |
| OIG | 284 | 533 | 294 | 428 |
| OIP | 2,209 | 3,001 | 2,318 | 2,876 |
| OJP | 460 | 608 | 360 | 509 |
| OLC | 127 | 169 | 99 | 103 |
| OPR | 116 | 160 | 117 | 153 |
| OSG | 73 | 117 | 81 | 96 |
| OVW | 79 | 144 | 37 | 107 |
| PARDON | 49 | 78 | 5 | 84 |
| PRAO | 25 | 57 | 26 | 53 |
| Tax | 94 | 186 | 72 | 52 |
| USMS | 2,606 | 3,300 | 2,807 | 3,293 |
| USNCB | 172 | 190 | 167 | 187 |

| | | | | |
|---|---|---|---|---|
| USPC | 295 | 301 | 296 | 316 |
| AGENCY OVERALL | 110,934 | 132,527 | 144,065 | 157,180 |

## XII.D.(2). COMPARISON OF NUMBERS OF REQUESTS FROM PREVIOUS AND CURRENT ANNUAL REPORT -- BACKLOGGED REQUESTS

| Agency / Component | Number of Backlogged Requests as of End of the Fiscal Year from Previous Annual Report | Number of Backlogged Requests as of End of the Fiscal Year from Current Annual Report |
|---|---|---|
| ATJ | 1 | 10 |
| Antitrust | 135 | 170 |
| ATF | 642 | 610 |
| BOP | 6,003 | 5,679 |
| Civil | 375 | 576 |
| Civil Rights | 427 | 339 |
| COPS | 0 | 3 |
| Criminal | 878 | 971 |
| CRS | 7 | 7 |
| DEA | 1,707 | 119 |
| ENRD | 28 | 23 |
| EOIR | 21,623 | 1,521 |
| EOUSA | 1,920 | 1,601 |
| EOUST | 0 | 0 |
| FBI | 6,727 | 6,052 |
| FCSC | 0 | 0 |
| JMD | 159 | 56 |
| NSD | 288 | 326 |
| OCDETF | 1 | 3 |
| OIG | 226 | 262 |
| OIP | 1,283 | 1,423 |
| OJP | 431 | 530 |
| OLC | 638 | 688 |
| OPR | 34 | 42 |

| | | |
|---|---|---|
| OSG | 21 | 45 |
| OVW | 50 | 74 |
| PARDON | 33 | 56 |
| PRAO | 0 | 0 |
| Tax | 24 | 149 |
| USMS | 263 | 230 |
| USNCB | 2 | 2 |
| USPC | 1 | 0 |
| AGENCY OVERALL | 43,927 | 21,567 |

## XII.E.(1). COMPARISON OF NUMBERS OF ADMINISTRATIVE APPEALS FROM PREVIOUS AND CURRENT ANNUAL REPORT -- APPEALS RECEIVED AND PROCESSED

| Agency / Component | NUMBER OF APPEALS RECEIVED | | NUMBER OF APPEALS PROCESSED | |
|---|---|---|---|---|
| | Number Received During Fiscal Year from Last Year's Annual Report | Number Received During Fiscal Year from Current Annual Report | Number Processed During Fiscal Year from Last Year's Annual Report | Number Processed During Fiscal Year from Current Annual Report |
| OIP | 2,044 | 2,577 | 2,126 | 2,479 |
| AGENCY OVERALL | 2,044 | 2,577 | 2,126 | 2,479 |

## XII.E.(2). COMPARISON OF NUMBERS OF ADMINISTRATIVE APPEALS FROM PREVIOUS AND CURRENT ANNUAL REPORT -- BACKLOGGED APPEALS

| Agency / Component | Number of Backlogged Appeals as of End of the Fiscal Year from Previous Annual Report | Number of Backlogged Appeals as of End of the Fiscal Year from Current Annual Report |
|---|---|---|
| OIP | 240 | 211 |
| AGENCY OVERALL | 240 | 211 |

# EXHIBIT B

An official website of the United States government
Here's how you know

UNITED STATES DEPARTMENT of JUSTICE

MENU

# FOIA.gov

**Thank you for visiting FOIA.gov, the government's central website for FOIA.** We'll continue to make improvements to the site and look forward to your input. Please submit feedback to National.FOIAPortal@usdoj.gov.

**Submission ID:** 2289646

# Success!

## Your FOIA request has been created and is being sent to the Office of Public Affairs.

You'll hear back from the agency confirming receipt in the coming weeks using the contact information you provided. If you have questions about your request, feel free to reach out to the agency FOIA personnel using the information provided below.

### Contact the agency

FOIA Requester Service Center

202-514-3642

Eric Hotchkiss, Acting FOIA Public Liaison

202-514-3642

Andrew Fiorillo, Acting Chief, Initial Request Staff, 6th Floor
441 G St, NW
Washington, DC 20530-0001

# Request summary

Request submitted on**July 23, 2025**.

The confirmation ID for your request is **2289646**.

The confirmation ID is only for identifying your request on FOIA.gov and acts as a receipt to show that you submitted a request using FOIA.gov. This number does not replace the information you'll receive from the agency to track your request. In case there is an issue submitting your request to the agency you selected, you can use this number to help.

## Contact information

**Name**
Gabriel Lezra

**Mailing address**
600 Pennsylvania Ave., S.E.
Washington, DC 20003
United States

**Phone number**
9176752509

**Company/organization**
Democracy Defenders Fund

**Email**
gabe@statedemocracydefenders.org

---

## Your request

This is a request in support of our fee waiver and expedited processing requests set forth in the attached request previously sent to the EOUSA, Tracking Number EOUSA-2025-005055, and the FBI, and Department's Criminal Division and are incorporated by reference as though fully set forth herein. We do not have official tracking numbers for

our requests to the FBI and Criminal Division, but the confirmation numbers are as follows: FBI - 2286601; and Criminal Division: 2286566.

## Additional information

EOUSA Copy of Crim. Epstein Records Request. DDF (July 21 25) (1).pdf

## Fees

**What type of requester are you?**
media

**Fee waiver**
yes

**Fee waiver justification**
Support for fee waiver is set forth in the attached request previously sent to the EOUSA, Tracking Number EOUSA-2025-0050505, and is incorporated by reference as though fully set forth herein. We sent identical requests to the FBI, and the Department's Criminal Division, which are also incorporated by reference as though fully set forth herein.

**The amount of money you're willing to pay in fees, if any**
0

## Request expedited processing

**Expedited processing**
yes

**Justification for expedited processing**
Support for expedited processing is set forth in the attached request previously sent to the EOUSA, Tracking Number EOUSA-2025-0050505, and is incorporated by reference as though fully set forth herein. We sent identical requests to the FBI, and the Department's Criminal Division, which are also incorporated by reference as though fully set forth herein.

FOIA.gov

## CONTACT

Office of Information Policy (OIP)
U.S. Department of Justice
441 G St, NW, 6th Floor
Washington, DC 20530
E-mail: National.FOIAPortal@usdoj.gov

Hero image credit CC3.0

- FREQUENTLY ASKED QUESTIONS
- DEVELOPER RESOURCES
- AGENCY API SPEC
- FOIA CONTACT DOWNLOAD
- FOIA DATASET DOWNLOAD
- ACCESSIBILITY
- PRIVACY POLICY
- POLICIES & DISCLAIMERS
- JUSTICE.GOV
- USA.GOV

An official website of the United States government
Here's how you know

UNITED STATES DEPARTMENT of JUSTICE

# FOIA.gov

MENU

**Thank you for visiting FOIA.gov, the government's central website for FOIA.** We'll continue to make improvements to the site and look forward to your input. Please submit feedback to National.FOIAPortal@usdoj.gov.

**Submission ID:** 2289646

# Success!

## Your FOIA request has been created and is being sent to the Office of Public Affairs.

You'll hear back from the agency confirming receipt in the coming weeks using the contact information you provided. If you have questions about your request, feel free to reach out to the agency FOIA personnel using the information provided below.

### Contact the agency

FOIA Requester Service Center

202-514-3642

Eric Hotchkiss, Acting FOIA Public Liaison

202-514-3642

Andrew Fiorillo, Acting Chief, Initial Request Staff, 6th Floor
441 G St, NW
Washington, DC 20530-0001

# Request summary

Request submitted on**July 23, 2025**.

The confirmation ID for your request is **2289646**.

The confirmation ID is only for identifying your request on FOIA.gov and acts as a receipt to show that you submitted a request using FOIA.gov. This number does not replace the information you'll receive from the agency to track your request. In case there is an issue submitting your request to the agency you selected, you can use this number to help.

## Contact information

**Name**
Gabriel Lezra

**Mailing address**
600 Pennsylvania Ave., S.E.
Washington, DC 20003
United States

**Phone number**
9176752509

**Company/organization**
Democracy Defenders Fund

**Email**
gabe@statedemocracydefenders.org

---

## Your request

This is a request in support of our fee waiver and expedited processing requests set forth in the attached request previously sent to the EOUSA, Tracking Number EOUSA-2025-005055, and the FBI, and Department's Criminal Division and are incorporated by reference as though fully set forth herein. We do not have official tracking numbers for

our requests to the FBI and Criminal Division, but the confirmation numbers are as follows: FBI - 2286601; and Criminal Division: 2286566.

## Additional information

EOUSA Copy of Crim. Epstein Records Request. DDF (July 21 25) (1).pdf

## Fees

**What type of requester are you?**
media

**Fee waiver**
yes

**Fee waiver justification**
Support for fee waiver is set forth in the attached request previously sent to the EOUSA, Tracking Number EOUSA-2025-0050505, and is incorporated by reference as though fully set forth herein. We sent identical requests to the FBI, and the Department's Criminal Division, which are also incorporated by reference as though fully set forth herein.

**The amount of money you're willing to pay in fees, if any**
0

## Request expedited processing

**Expedited processing**
yes

**Justification for expedited processing**
Support for expedited processing is set forth in the attached request previously sent to the EOUSA, Tracking Number EOUSA-2025-0050505, and is incorporated by reference as though fully set forth herein. We sent identical requests to the FBI, and the Department's Criminal Division, which are also incorporated by reference as though fully set forth herein.

FOIA.gov

## CONTACT

Office of Information Policy (OIP)
U.S. Department of Justice
441 G St, NW, 6th Floor
Washington, DC 20530
E-mail: National.FOIAPortal@usdoj.gov

Hero image credit CC3.0

- FREQUENTLY ASKED QUESTIONS
- DEVELOPER RESOURCES
- AGENCY API SPEC
- FOIA CONTACT DOWNLOAD
- FOIA DATASET DOWNLOAD
- ACCESSIBILITY
- PRIVACY POLICY
- POLICIES & DISCLAIMERS
- JUSTICE.GOV
- USA.GOV

# EXHIBIT C

Gmail

Riley Pynnonen <riley@statedemocracydefenders.org>

# Please Confirm FOIA Receipt

1 message

**Gabe Lezra** <gabe@statedemocracydefenders.org> Thu, Jul 24, 2025 at 4:10 PM
To: crm.foia@usdoj.gov
Bcc: riley@statedemocracydefenders.org

Dear FOIA Officer-

On January 22, 2025, Democracy Defenders Fund submitted a FOIA request to your office via the government-wide FOIA portal, confirmation #2286566. The request, and the FOIA portal receipt, are reattached below. To date, we have not received a response acknowledging receipt of this FOIA. We kindly request that you please confirm your receipt of this FOIA request and provide the FOIA tracking number as soon as possible.

Kind regards,

--

Democracy Defenders Action

**Gabriel (Gabe) Lezra** (he/him/el)
**Democracy Defenders Action** (c4)
**Email**: gabe@statedemocracydefenders.org

**2 attachments**

**DOJ Copy of Crim. Epstein Records Request. DDF (July 21 25) (2).pdf**
490K

**FOIA.gov - Freedom of Information Act_ Create a request (3).pdf**
215K

# EXHIBIT D

Gmail

Riley Pynnonen <riley@statedemocracydefenders.org>

# Please Confirm FOIA Receipt

**Gabe Lezra** <gabe@democracydefenders.org> Tue, Aug 12, 2025 at 12:24 PM
To: Riley Pynnonen <riley@statedemocracydefenders.org>

---------- Forwarded message ---------
From: **FOIA, CRM (CRM)** <CRM.FOIA@usdoj.gov>
Date: Thu, Jul 24, 2025 at 4:20 PM
Subject: RE: [EXTERNAL] Please Confirm FOIA Receipt
To: gabe@statedemocracydefenders.org <gabe@statedemocracydefenders.org>

Mr. Lezra,

The Criminal Division is in receipt of your request dated July 22, 2025, and it is assigned case number CRM-302309194.

Sincerely,

FOIA/PA Unit

Criminal Division

U.S. Department of Justice

---

**From:** Gabe Lezra <gabe@statedemocracydefenders.org>
**Sent:** Thursday, July 24, 2025 4:10 PM

**To:** FOIA, CRM (CRM) <CRM.FOIA@CRM.USDOJ.GOV>
**Subject:** [EXTERNAL] Please Confirm FOIA Receipt

Dear FOIA Officer-

On January 22, 2025, Democracy Defenders Fund submitted a FOIA request to your office via the government-wide FOIA portal, confirmation #2286566. The request, and the FOIA portal receipt, are reattached below. To date, we have not received a response acknowledging receipt of this FOIA. We kindly request that you please confirm your receipt of this FOIA request and provide the FOIA tracking number as soon as possible.

Kind regards,

--

**Gabriel (Gabe) Lezra** (he/him/el)
**Democracy Defenders Action** (c4)
**Email**: gabe@statedemocracydefenders.org

--

Democracy Defenders Action

**Gabriel (Gabe) Lezra** (he/him/el)
**Senior Policy Strategist**
**Democracy Defenders Action (c4)**
**Email**: gabe@sdemocracydefenders.org

# EXHIBIT E

Democracy Defenders Fund

October 10, 2025

Christina Butler
Chief, FOIA/PA Unit
Criminal Division, Department of Justice
950 Constitution Ave, NW
Washington, DC 20530-0001

Re: Freedom of Information Act Request

Dear Ms. Butler:

Democracy Defenders Fund ("DDF") is writing to follow up on its request for expedited processing of its Freedom of Information Act ("FOIA") requests submitted on July 22, 2025 and July 28, 2025. These requests concern records related to the Administration's handling of the Epstein Files (FOIA requests attached as Exhibits A and B).

On July 22, DDF submitted a FOIA request (Tracking # CRW-302309194) seeking files from DOJ's investigations of Epstein and Maxwell that relate to the President. On July 28, DDF submitted a FOIA request (FOIA Confirmation # 2295986) seeking records and communications from senior DOJ officials, with a focus on the Administration's handling of the files. DDF sought expedited processing for both requests pursuant to DOJ's implementing regulations at 28 C.F.R. § 16.5(e)(1)(ii) (which mirrors 5 U.S.C. § 552(6)(E)) and 28 C.F.R. § 16.5(e)(1)(iv).

DDF has to date received no determination regarding these expedition requests. DDF has demonstrated that it is entitled to expedited processing under 28 C.F.R. § 16.5(e)(1)(iv) because its requests concern a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence" and under 28 C.F.R. § 16.5(e)(1)(ii), which mirrors 5 U.S.C. § 552(6)(E), because DDF is "primarily engaged in disseminating information" and has demonstrated an "urgency to inform the public concerning actual or alleged Federal Government activity."

DDF cited in its July 22 and 28 FOIA requests around two dozen articles on the Trump administration's handling of the Epstein matter. Since DDF's submission of its FOIA request, the Administration's handling of this matter has continued to receive extensive media coverage which, in turn, continues to raise questions about government integrity and an urgency to inform

the public which DDF first described in its initial requests to expedite.[1] We ask that you grant, on the basis of the record before you, DDF's requests to expedite its FOIAs.

Sincerely,
/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder
/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director
/s/
Gabriel Lezra
Senior Strategist

---

[1] *For a further sampling, see, e.g.,* Shayna Jacobs & Michael Kranish, *How Trump's Personal Attorney Wound Up Investigating the Epstein Case at DOJ*, Wash. Post (July 31, 2025), https://www.washingtonpost.com/politics/2025/07/31/todd-blanche-trump-epstein-interview/; Associated Press, *Ghislaine Maxwell, Epstein's Former Girlfriend, Transferred to a Prison Camp in Texas*, NPR (Aug. 1, 2025), https://www.npr.org/2025/08/01/g-s1-80655/ghislaine-maxwell-epstein-prison-transfer; Jason Leopold, *FBI Redacted Trump's Name in Epstein Files for Privacy Reasons*, Bloomberg (Aug. 1, 2025), https://www.bloomberg.com/news/newsletters/2025-08-01/epstein-files-trump-s-name-was-redacted-by-the-fbi; Mimi Rocah, *The "Epstein Files": What We Should (and Should Not) Focus On*, The Contrarian (Aug. 4, 2025), https://contrarian.substack.com/p/the-epstein-files-what-we-should; Subpoena from Representative James Comer, Chairman, House Committee on Oversight and Government Reform to Attorney General Bondi (Aug. 5, 2025), https://oversight.house.gov/release/chairman-comer-subpoenas-bill-and-hillary-clinton-former-u-s-attorneys-general-and-fbi-directors-and-records-related-to-jeffrey-epstein/; Margaret Sullivan, *Ghislaine Maxwell's transfer to a 'country club' prison is outrageous,* The Guardian (Aug. 20, 2025), https://www.theguardian.com/commentisfree/2025/aug/20/ghislaine-maxwell-prison-transfer-epstein; Mimi Rocah, *The Sham Ghislaine Maxwell Proffer Is a Shameful Whitewash of Accountability*, The Contrarian (Aug. 26, 2025), https://contrarian.substack.com/p/the-sham-ghislaine-maxwell-proffer; Discharge Petition No. 9, 118th Cong. (Sept. 2, 2025), https://clerk.house.gov/DischargePetition/2025090209; Senator Ron Wyden Letter to Treasury Secretary Bessent (Sept. 3, 2025), https://www.finance.senate.gov/imo/media/doc/letter_from_senator_wyden_to_secretary_bessent_on_epstein_documentspdf.pdf; Stephen Groves, *Epstein Survivors Implore Congress to Act as Push For disclosure Builds*, AP News (Sept. 3, 2025), https://apnews.com/article/jeffrey-epstein-survivors-congress-trump-5d980740245f935c994a90b8ce824642; Jennifer Rubin, *Undaunted: Survivors of Epstein–Maxwell Spoke Out*, The Contrarian (Sept. 5, 2025), https://contrarian.substack.com/p/undaunted-survivors-of-epstein-maxwell; House Comm. on Oversight & Gov't Reform, *Oversight Committee Releases Records Provided by the Epstein Estate; Chairman Comer Provides Statement* (Sept. 8, 2025), https://oversight.house.gov/release/oversight-committee-releases-records-provided-by-the-epstein-estate-chairman-comer-provides-statement/; Luke Broadwater, *Latest Revelations Complicate Trump's Sweeping Denials About Epstein*, N.Y. Times (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trumps-epstein-response.html; Arthur Aidala, *Ghislaine Maxwell Lawyer Makes Stunning Quid Pro Quo Confession*, New Republic (Sept. 9, 2025), https://newrepublic.com/post/200178/ghislaine-maxwell-lawyer-quid-pro-quo; Kate Santaliz, *Mike Johnson Faces Bipartisan Heat Over Delayed Vote on Epstein Files*, Axios (Oct. 7, 2025), https://www.axios.com/2025/10/07/mike-johnson-government-shutdown-epstein-files; Annie Karni, *Inside the Capitol, a Heated Spat Over the Shutdown and Epstein*, N.Y. Times (Oct. 8, 2025), https://www.nytimes.com/2025/10/08/us/politics/mike-johnson-spat-democrats-shutdown-epstein.html.

# EXHIBIT F

Democracy Defenders Fund

July 28, 2025

Christina Butler
Chief, FOIA/PA Unit
Criminal Division, Department of Justice
950 Constitution Ave, NW
Washington, DC 20530-0001

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from January 20, 2025, to when this request is processed, of:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General

Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).

activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of documents and communications related to criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including records the Department may have that name clients and associates of Epstein and records that may name President Trump in relation to these matters. These records may also reveal to the public a potential attempt to cover up negative or potentially criminal conduct, including by President Trump. The existence and extent of such records, and the government's response to their collection and dissemination, are currently a question of immense media speculation.[6] In February 2025, Attorney General Bondi said in an interview with Fox News that the Epstein client list was, "sitting on my desk right now to review."[7] It was recently reported that Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President.[8] Then in July, the Department issued a memo noting, "this systematic review revealed no incriminating 'client list."[9] However, the Wall Street Journal has reported that the Attorney General personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] Given contradictory statements made by the Department, and the fact that President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[11] disclosure of these records would conclusively show whether the Department has the information it now purports that it does not have, and, if such records exist, whether Donald Trump's name appears in any of the documents related to Jeffery Epstein. This release is also important to understand whether any undue political influence by the President has affected the Department's ability or willingness to release documents related to Jeffrey Epstein. Prior to being elected to a second term, the President promised repeatedly during his campaign that he would release these files.[12] Yet, in the face of increased pressure to release the full array of documents, the President has continued to evade the issue.[13] Disclosure of these documents is therefore necessary to provide a

---

[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.
[7] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025),
https://www.bbc.com/news/articles/ckgl4dl334go.
[8] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trum*p, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/
[9] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.
[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1
[11] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/17/us/politics/timeline-trump-epstein.html.
[12] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga
[13] Chris Cameron, Trump Really Wants to Stop Talking About Epstein: A Timeline, NY Times (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-epstein-distraction-timeline.html.

full record of what communications occurred, and whether any such communications might have resulted in abnormalities in the Department's statements or actions concerning the existence of Epstein's "Client List."

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to the investigations involving Jeffrey Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[14] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[15] As noted above, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[16] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[17] This has caused immense confusion amongst the public, which has been the subject of ongoing new media coverage.[18] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[19] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and the issuance of op-eds.[20] DDF maintains a dedicated website

---

[14] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[15] *See*, *e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[16] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.

[17] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[18] *See*, *e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

[19] Larry Neumesiter, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

[20] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from*

where it provides information related to its activities, which can be accessed by the public.[21] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[22] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[23] and if so, whether that may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[24]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

---

*Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.

[21] *See* https://www.democracydefendersfund.org/news-resources.

[22] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

[23] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[24] *See*, *e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[25] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[26] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

2. **The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox

[25] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.

[26] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

News,[27] New York Times,[28] Wall Street Journal,[29] and Washington Post,[30] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[31]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

---

[27] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[28] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[29] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[30] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[31] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC: Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- ‘Parent-child’ relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[32] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[33] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

[32] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[33] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

# EXHIBIT G

An official website of the United States government
Here's how you know

UNITED STATES DEPARTMENT of JUSTICE

# FOIA.gov

MENU

**Thank you for visiting FOIA.gov, the government's central website for FOIA.** We'll continue to make improvements to the site and look forward to your input. Please submit feedback to National.FOIAPortal@usdoj.gov.

**Submission ID:** 2295986

# Success!

## Your FOIA request has been created and is being sent to the Criminal Division.

You'll hear back from the agency confirming receipt in the coming weeks using the contact information you provided. If you have questions about your request, feel free to reach out to the agency FOIA personnel using the information provided below.

### Contact the agency

FOIA Requester Service Center

202-616-0307

Alison Epstein, FOIA Public Liaison

202-616-0307

Christina Butler
Chief, FOIA/PA Unit
Criminal Division, Department of Justice
950 Constitution Ave, NW
Washington, DC 20530-0001

crm.foia@usdoj.gov

# Request summary

Request submitted on**July 28, 2025**.

The confirmation ID for your request is **2295986**.

The confirmation ID is only for identifying your request on FOIA.gov and acts as a receipt to show that you submitted a request using FOIA.gov. This number does not replace the information you'll receive from the agency to track your request. In case there is an issue submitting your request to the agency you selected, you can use this number to help.

## Contact information

**Name**
Gabriel Lezra

**Mailing address**
600 Pennsylvania Ave. S.E.
Washington, D.C. 20003
United States

**Phone number**
9176752509

**Company/organization**
Democracy Defenders Fund

**Email**
gabe@statedemocracydefenders.org

## Your request

See attached.

## Additional information

DDF. CRIM FOIA EPSTEIN COMMUNICATIONS (July 28 25).pdf

## Fees

**What type of requester are you?**
media

**Fee waiver**
yes

**Fee waiver justification**
See attached.

## Request expedited processing

**Expedited processing**
yes

**Justification for expedited processing**
See attached.

FOIA.gov

**CONTACT**

Office of Information Policy (OIP)

U.S. Department of Justice
441 G St, NW, 6th Floor
Washington, DC 20530
E-mail: National.FOIAPortal@usdoj.gov

Hero image credit CC3.0

# EXHIBIT H

Democracy Defenders Fund

July 28, 2025

Andrew Fiorillo,
Acting Chief, Initial Request Staff
Office of the Attorney General
and Office of the Deputy Attorney General
6th Floor
441 G St, NW
Washington, DC 20530-0001

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from January 20, 2025, to when this request is processed, of:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the

---

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Forc*e, 566 F.2d 242, 261 (D.C. Cir. 1977).

government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of documents and communications related to criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including records the Department may have that name clients and associates of Epstein and records that may name President Trump in relation to these matters. These records may also reveal to the public a potential attempt to cover up negative or potentially criminal conduct, including by President Trump. The existence and extent of such records, and the government's response to their collection and dissemination, are currently a question of immense media speculation.[6] In February 2025, Attorney General Bondi said in an interview with Fox News that the Epstein client list was, "sitting on my desk right now to review."[7] It was recently reported that Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President.[8] Then in July, the Department issued a memo noting, "this systematic review revealed no incriminating 'client list."[9] However, the Wall Street Journal has reported that the Attorney General personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] Given contradictory statements made by the Department, and the fact that President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[11] disclosure of these records would conclusively show whether the Department has the information it now purports that it does not have, and, if such records exist, whether Donald Trump's name appears in any of the documents related to Jeffery Epstein. This release is also important to understand whether any undue political influence by the President has affected the Department's ability or willingness to release documents related to Jeffrey Epstein. Prior to being elected to a second term, the President promised repeatedly during his campaign that he would release these files.[12] Yet, in the face of increased pressure to release the full array of documents, the President has

---

[4] 28 C.F.R. 16.10(k)(1).
[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.
[7] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025),
https://www.bbc.com/news/articles/ckgl4dl334go.
[8] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trump*, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/
[9] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.
[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1
[11] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/17/us/politics/timeline-trump-epstein.html.
[12] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga

continued to evade the issue.[13] Disclosure of these documents is therefore necessary to provide a full record of what communications occurred, and whether any such communications might have resulted in abnormalities in the Department's statements or actions concerning the existence of Epstein's "Client List."

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to the investigations involving Jeffrey Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[14] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[15] As noted above, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[16] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[17] This has caused immense confusion amongst the public, which has been the subject of ongoing new media coverage.[18] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[19] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional

---

[13] Chris Cameron, Trump Really Wants to Stop Talking About Epstein: A Timeline, NY Times (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-epstein-distraction-timeline.html.
[14] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.
[15] *See*, *e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.
[16] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.
[17] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.
[18] *See*, *e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.
[19] Larry Neumesiter, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

broadcast media, podcasts, and the issuance of op-eds.[20] DDF maintains a dedicated website where it provides information related to its activities, which can be accessed by the public.[21] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[22] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[23] and if so, whether that may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[24]–under FOIA's expedited processing

[20] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.

[21] *See* https://www.democracydefendersfund.org/news-resources.

[22] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

[23] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[24] *See*, *e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[25] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[26] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

2. **The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox

---

[25] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.
[26] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

News,[27] New York Times,[28] Wall Street Journal,[29] and Washington Post,[30] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[31]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

[27] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[28] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[29] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[30] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[31] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC: Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- ‘Parent-child’ relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[32] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[33] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

[32] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[33] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

# EXHIBIT I

Democracy Defenders Fund

July 28, 2025

Director, Office of Public Affairs
Department of Justice
950 Pennsylvania Avenue NW.
Washington, DC 20530-0001
Attention: Andrew Fiorillo, Acting Chief, Initial Request Staff

RE: Freedom of Information Act Request; Expedited Processing Request Notice

Dear FOIA Officer:

Democracy Defenders Fund ("DDF") submitted the enclosed request for records to the FOIA offices of the Office of the Attorney General, Office of the Deputy Attorney General, and identical requests for records to the Criminal Division, Federal Bureau of Investigations, and the Executive Office of the U.S. Attorneys today, July 28, 2025. Each request seeks expedited processing pursuant to 28 C.F.R. 16.5(e)(1)(ii) and (e)(iv). Pursuant to 28 C.F.R. 16.5(e)(2), we are concurrently submitting these requests with the Office of Public Affairs for approval of expedited processing pursuant to 28 C.F.R. 16.5(e)(1)(iv). The basis for expedited processing is set forth in the enclosures. DDF respectfully requests your prompt response to this matter.

If you have any questions about this request or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.
Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

Enclosures

Democracy Defenders Fund

July 28, 2025

Andrew Fiorillo,
Acting Chief, Initial Request Staff
Office of the Attorney General
and Office of the Deputy Attorney General
6th Floor
441 G St, NW
Washington, DC 20530-0001

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from January 20, 2025, to when this request is processed, of:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Forc*e, 566 F.2d 242, 261 (D.C. Cir. 1977).

government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of documents and communications related to criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including records the Department may have that name clients and associates of Epstein and records that may name President Trump in relation to these matters. These records may also reveal to the public a potential attempt to cover up negative or potentially criminal conduct, including by President Trump. The existence and extent of such records, and the government's response to their collection and dissemination, are currently a question of immense media speculation.[6] In February 2025, Attorney General Bondi said in an interview with Fox News that the Epstein client list was, "sitting on my desk right now to review."[7] It was recently reported that Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President.[8] Then in July, the Department issued a memo noting, "this systematic review revealed no incriminating 'client list."[9] However, the Wall Street Journal has reported that the Attorney General personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] Given contradictory statements made by the Department, and the fact that President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[11] disclosure of these records would conclusively show whether the Department has the information it now purports that it does not have, and, if such records exist, whether Donald Trump's name appears in any of the documents related to Jeffery Epstein. This release is also important to understand whether any undue political influence by the President has affected the Department's ability or willingness to release documents related to Jeffrey Epstein. Prior to being elected to a second term, the President promised repeatedly during his campaign that he would release these files.[12] Yet, in the face of increased pressure to release the full array of documents, the President has

[4] 28 C.F.R. 16.10(k)(1).

[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).

[6] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.

[7] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.

[8] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trum*p, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/

[9] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1

[11] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/17/us/politics/timeline-trump-epstein.html.

[12] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga

continued to evade the issue.[13] Disclosure of these documents is therefore necessary to provide a full record of what communications occurred, and whether any such communications might have resulted in abnormalities in the Department's statements or actions concerning the existence of Epstein's "Client List."

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to the investigations involving Jeffrey Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[14] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[15] As noted above, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[16] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[17] This has caused immense confusion amongst the public, which has been the subject of ongoing new media coverage.[18] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[19] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional

---

[13] Chris Cameron, Trump Really Wants to Stop Talking About Epstein: A Timeline, NY Times (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-epstein-distraction-timeline.html.

[14] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[15] *See*, *e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[16] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.

[17] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[18] *See*, *e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

[19] Larry Neumesiter, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

broadcast media, podcasts, and the issuance of op-eds.[20] DDF maintains a dedicated website where it provides information related to its activities, which can be accessed by the public.[21] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[22] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[23] and if so, whether that may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[24]–under FOIA's expedited processing

---

[20] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.

[21] *See* https://www.democracydefendersfund.org/news-resources.

[22] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

[23] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[24] *See*, *e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[25] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[26] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

**2. The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox

---

[25] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.

[26] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

News,[27] New York Times,[28] Wall Street Journal,[29] and Washington Post,[30] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[31]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

---

[27] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[28] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[29] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[30] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[31] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC: Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- ‘Parent-child’ relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[32] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[33] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

[32] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[33] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

Democracy Defenders Fund

July 28, 2025

Christina Butler
Chief, FOIA/PA Unit
Criminal Division, Department of Justice
950 Constitution Ave, NW
Washington, DC 20530-0001

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from January 20, 2025, to when this request is processed, of:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General

Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Forc*e, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).

activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of documents and communications related to criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including records the Department may have that name clients and associates of Epstein and records that may name President Trump in relation to these matters. These records may also reveal to the public a potential attempt to cover up negative or potentially criminal conduct, including by President Trump. The existence and extent of such records, and the government's response to their collection and dissemination, are currently a question of immense media speculation.[6] In February 2025, Attorney General Bondi said in an interview with Fox News that the Epstein client list was, "sitting on my desk right now to review."[7] It was recently reported that Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President.[8] Then in July, the Department issued a memo noting, "this systematic review revealed no incriminating 'client list."[9] However, the Wall Street Journal has reported that the Attorney General personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] Given contradictory statements made by the Department, and the fact that President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[11] disclosure of these records would conclusively show whether the Department has the information it now purports that it does not have, and, if such records exist, whether Donald Trump's name appears in any of the documents related to Jeffery Epstein. This release is also important to understand whether any undue political influence by the President has affected the Department's ability or willingness to release documents related to Jeffrey Epstein. Prior to being elected to a second term, the President promised repeatedly during his campaign that he would release these files.[12] Yet, in the face of increased pressure to release the full array of documents, the President has continued to evade the issue.[13] Disclosure of these documents is therefore necessary to provide a

---

[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.
[7] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025),
https://www.bbc.com/news/articles/ckgl4dl334go.
[8] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trum*p, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/
[9] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.
[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1
[11] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/17/us/politics/timeline-trump-epstein.html.
[12] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga
[13] Chris Cameron, Trump Really Wants to Stop Talking About Epstein: A Timeline, NY Times (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-epstein-distraction-timeline.html.

full record of what communications occurred, and whether any such communications might have resulted in abnormalities in the Department's statements or actions concerning the existence of Epstein's "Client List."

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to the investigations involving Jeffrey Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[14] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[15] As noted above, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[16] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[17] This has caused immense confusion amongst the public, which has been the subject of ongoing new media coverage.[18] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[19] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and the issuance of op-eds.[20] DDF maintains a dedicated website

---

[14] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[15] *See*, *e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[16] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.

[17] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[18] *See*, *e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

[19] Larry Neumesiter, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

[20] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from*

where it provides information related to its activities, which can be accessed by the public.[21] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[22] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[23] and if so, whether that may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[24]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

---

*Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.

[21] *See* https://www.democracydefendersfund.org/news-resources.

[22] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

[23] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[24] *See*, *e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[25] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[26] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

2. **The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox

[25] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.
[26] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

News,[27] New York Times,[28] Wall Street Journal,[29] and Washington Post,[30] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[31]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

---

[27] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[28] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[29] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[30] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[31] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC: Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- ‘Parent-child’ relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[32] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[33] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

---

[32] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[33] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

Democracy Defenders Fund

July 28, 2025

Michael G. Seidel
Section Chief
Record/Information Dissemination Section
200 Constitution Drive
Winchester, VA 22602

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from January 20, 2025, to when this request is processed, of:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General

Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Forc*e, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).

activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of documents and communications related to criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including records the Department may have that name clients and associates of Epstein and records that may name President Trump in relation to these matters. These records may also reveal to the public a potential attempt to cover up negative or potentially criminal conduct, including by President Trump. The existence and extent of such records, and the government's response to their collection and dissemination, are currently a question of immense media speculation.[6] In February 2025, Attorney General Bondi said in an interview with Fox News that the Epstein client list was, "sitting on my desk right now to review."[7] It was recently reported that Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President.[8] Then in July, the Department issued a memo noting, "this systematic review revealed no incriminating 'client list."[9] However, the Wall Street Journal has reported that the Attorney General personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] Given contradictory statements made by the Department, and the fact that President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[11] disclosure of these records would conclusively show whether the Department has the information it now purports that it does not have, and, if such records exist, whether Donald Trump's name appears in any of the documents related to Jeffery Epstein. This release is also important to understand whether any undue political influence by the President has affected the Department's ability or willingness to release documents related to Jeffrey Epstein. Prior to being elected to a second term, the President promised repeatedly during his campaign that he would release these files.[12] Yet, in the face of increased pressure to release the full array of documents, the President has continued to evade the issue.[13] Disclosure of these documents is therefore necessary to provide a

---

[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.
[7] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025),
https://www.bbc.com/news/articles/ckgl4dl334go.
[8] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trump*, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/
[9] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.
[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1
[11] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/17/us/politics/timeline-trump-epstein.html.
[12] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga
[13] Chris Cameron, Trump Really Wants to Stop Talking About Epstein: A Timeline, NY Times (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-epstein-distraction-timeline.html.

full record of what communications occurred, and whether any such communications might have resulted in abnormalities in the Department's statements or actions concerning the existence of Epstein's "Client List."

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to the investigations involving Jeffrey Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[14] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[15] As noted above, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[16] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[17] This has caused immense confusion amongst the public, which has been the subject of ongoing new media coverage.[18] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[19] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and the issuance of op-eds.[20] DDF maintains a dedicated website

---

[14] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[15] *See*, *e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[16] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.

[17] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[18] *See*, *e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

[19] Larry Neumesiter, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

[20] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from*

where it provides information related to its activities, which can be accessed by the public.[21] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[22] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[23] and if so, whether that may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[24]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

---

*Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.

[21] *See* https://www.democracydefendersfund.org/news-resources.

[22] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

[23] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[24] *See*, *e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[25] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[26] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

2. **The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox

---

[25] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.

[26] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

News,[27] New York Times,[28] Wall Street Journal,[29] and Washington Post,[30] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[31]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

---

[27] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[28] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[29] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[30] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[31] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC: Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- ‘Parent-child’ relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[32] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[33] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

[32] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[33] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

Democracy Defenders Fund

July 28, 2025

Kevin Krebs
Assistant Director, FOIA/Privacy Unit
Executive Office of the U.S. Attorneys
175 N Street, NE, Suite 5.400
Washington, DC 20530-0001

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from January 20, 2025, to when this request is processed, of:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General

Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).

activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of documents and communications related to criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including records the Department may have that name clients and associates of Epstein and records that may name President Trump in relation to these matters. These records may also reveal to the public a potential attempt to cover up negative or potentially criminal conduct, including by President Trump. The existence and extent of such records, and the government's response to their collection and dissemination, are currently a question of immense media speculation.[6] In February 2025, Attorney General Bondi said in an interview with Fox News that the Epstein client list was, "sitting on my desk right now to review."[7] It was recently reported that Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President.[8] Then in July, the Department issued a memo noting, "this systematic review revealed no incriminating 'client list."[9] However, the Wall Street Journal has reported that the Attorney General personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] Given contradictory statements made by the Department, and the fact that President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[11] disclosure of these records would conclusively show whether the Department has the information it now purports that it does not have, and, if such records exist, whether Donald Trump's name appears in any of the documents related to Jeffery Epstein. This release is also important to understand whether any undue political influence by the President has affected the Department's ability or willingness to release documents related to Jeffrey Epstein. Prior to being elected to a second term, the President promised repeatedly during his campaign that he would release these files.[12] Yet, in the face of increased pressure to release the full array of documents, the President has continued to evade the issue.[13] Disclosure of these documents is therefore necessary to provide a

---

[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.
[7] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025),
https://www.bbc.com/news/articles/ckgl4dl334go.
[8] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trum*p, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/
[9] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.
[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1
[11] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/17/us/politics/timeline-trump-epstein.html.
[12] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga
[13] Chris Cameron, Trump Really Wants to Stop Talking About Epstein: A Timeline, NY Times (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-epstein-distraction-timeline.html.

full record of what communications occurred, and whether any such communications might have resulted in abnormalities in the Department's statements or actions concerning the existence of Epstein's "Client List."

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to the investigations involving Jeffrey Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[14] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[15] As noted above, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[16] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[17] This has caused immense confusion amongst the public, which has been the subject of ongoing new media coverage.[18] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[19] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and the issuance of op-eds.[20] DDF maintains a dedicated website

---

[14] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[15] *See*, *e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[16] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.

[17] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[18] *See*, *e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

[19] Larry Neumesiter, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

[20] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from*

where it provides information related to its activities, which can be accessed by the public.[21] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[22] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[23] and if so, whether that may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[24]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

---

*Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.

[21] *See* https://www.democracydefendersfund.org/news-resources.

[22] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

[23] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[24] *See*, *e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[25] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[26] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

**2. The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox

---

[25] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.

[26] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

News,[27] New York Times,[28] Wall Street Journal,[29] and Washington Post,[30] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[31]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

---

[27] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[28] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[29] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[30] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[31] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC: Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- 'Parent-child' relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[32] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[33] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

[32] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[33] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

# EXHIBIT J

**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

August 7, 2025

Gabriel Lezra
Democracy Defenders Fund
gabe@statedemocracydefenders.org

Re: FOIA-2025-06084
ADF:ERH

Dear Gabriel Lezra:

This is to acknowledge receipt of your Freedom of Information Act (FOIA) request dated and received in this Office on July 28, 2025, in which you requested records of the Offices of the Attorney General and Deputy Attorney General concerning Jeffrey Epstein and Ghislaine Maxwell since January 20, 2025.

You have requested expedited processing of your request pursuant to the Department's standard permitting expedition for requests involving "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." See 28 C.F.R. § 16.5(e)(1)(ii) (2018). Based on the information you have provided, I have determined that your request for expedited processing under this standard should be denied. This Office cannot identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally.

You have also requested expedited processing of your request pursuant to the Department's standard involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." See 28 C.F.R. § 16.5(e)(1)(iv) (2018). Pursuant to Department policy, we directed your request to the Director of Public Affairs, who makes the decision whether to grant or deny expedited processing under this standard. See id. § 16.5(e)(2). Please be advised that as of the date of this letter, a decision on your expedition request is still pending. Once a determination has been made, we will promptly notify you. Nevertheless, please be advised that your request has been assigned to an analyst in this Office and our processing of it has been initiated.

To the extent that your request requires a search in another Office, consultations with other Department components or another agency, and/or involves a voluminous amount of material, your request falls within "unusual circumstances." See 5 U.S.C. § 552 (a)(6)(B)(i)-(iii) (2018). Accordingly, we will need to extend the time limit to respond to your request beyond the ten additional days provided by the statute. For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request. At this time, we have assigned your request

to the complex track. In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records so that it can be placed in a different processing track. You can also agree to an alternative time frame for processing, should records be located, or you may wish to await the completion of our records search to discuss either of these options. Any decision with regard to the application of fees will be made only after we determine whether fees will be implicated for this request.

If you have any questions or wish to discuss the processing of your request, you may contact this Office by telephone at the above number, by e-mail at doj.oip.foia@usdoj.gov, or you may write to the Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001. Lastly, you may contact our Acting FOIA Public Liaison, Eric Hotchkiss, at the telephone number listed above to discuss any aspect of your request.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, MD 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with this Office's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically submitted within ninety days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." If possible, please provide a copy of your original request and this response letter with your appeal.

Sincerely,



for
Andrew D. Fiorillo
Acting Chief, Initial Request Staff
on behalf of
Sean O'Neill
Chief of Staff

# EXHIBIT K

Gmail

Riley Pynnonen <riley@democracydefenders.org>

# FOIA-2025-06084

**Taryn Wilgus Null** <taryn@democracydefenders.org> Mon, Sep 8, 2025 at 12:50 PM
To: doj.oip.foia@usdoj.gov
Cc: Ginny Canter <ginny@democracydefenders.org>, Gabe Lezra <gabe@democracydefenders.org>, Chris Swartz <chris@democracydefenders.org>, Riley Pynnonen <riley@democracydefenders.org>, Pooja Chaudhuri <pooja@democracydefenders.org>, Sana Sinha <sana@democracydefenders.org>, Jacob Kovacs-Goodman <jacob@democracydefenders.org>

Hi there,

I am responding to the August 7, 2025 letter in response to FOIA-2025-06084. I would like to have a discussion about potentially reducing the scope of this request. I can be reached at 301-741-9316 but it would be best if you could reply all to this email to schedule a call, given that some of my colleagues should be included in any conversation about the scope of the requests.

Thank you,
Taryn

**Taryn Wilgus Null** (she/her)
*Senior Counsel*

**Democracy Defenders Fund**
Email: taryn@democracydefenders.org
Phone: (301) 741-9316

democracydefendersfund.org Democracy Defenders Fund

# EXHIBIT L

Gmail

Riley Pynnonen <riley@democracydefenders.org>

# FOIA-2025-06084

**Taryn Wilgus Null** <taryn@democracydefenders.org> Wed, Sep 17, 2025 at 10:09 AM
To: "Hotchkiss, Eric (OIP)" <Eric.Hotchkiss@usdoj.gov>
Cc: "ginny@democracydefenders.org" <ginny@democracydefenders.org>, "gabe@democracydefenders.org" <gabe@democracydefenders.org>, "chris@democracydefenders.org" <chris@democracydefenders.org>, "riley@democracydefenders.org" <riley@democracydefenders.org>, "pooja@democracydefenders.org" <pooja@democracydefenders.org>, "sana@democracydefenders.org" <sana@democracydefenders.org>, "jacob@democracydefenders.org" <jacob@democracydefenders.org>

Thank you, Eric, and thank you again for your time this morning. We will look forward to receiving the supplemental acknowledgment letter addressing the Office of Public Affairs expedition determination.

Thanks,
Taryn

**Taryn Wilgus Null** (she/her)
*Senior Counsel*

**Democracy Defenders Fund**
Email: taryn@democracydefenders.org
Phone: (301) 741-9316

democracydefendersfund.org

On Wed, Sep 17, 2025 at 10:03 AM Hotchkiss, Eric (OIP) <Eric.Hotchkiss@usdoj.gov> wrote:

> Hi again Taryn,
>
> Thanks for talking with me this morning. This is to memorialize our conversation. First, you clarified that you had also submitted your request to the Federal Bureau of Investigation. We agreed that your request was seeking records from the Offices of the Attorney General and Deputy Attorney General. I provided an estimate for our response of 650 days which is based solely on our average processing time for a complex request (as reported in our FY24 annual FOIA report here: https://www.justice.gov/oip/department-justice-annual-foia-report-fy-2024). This estimate is based on limited information and subject to change. Finally, I advised that you should expect to receive our supplemental acknowledgment letter addressing the Office of Public Affairs expedition determination under DOJ's standard iv soon.

Please let me know if you have any questions.

Thank you for your time,

Eric

---

**From:** Hotchkiss, Eric (OIP)
**Sent:** Monday, September 15, 2025 10:14 AM
**To:** 'Taryn Wilgus Null' <taryn@democracydefenders.org>
**Cc:** ginny@democracydefenders.org; gabe@democracydefenders.org; chris@democracydefenders.org; riley@democracydefenders.org; pooja@democracydefenders.org; sana@democracydefenders.org; jacob@democracydefenders.org
**Subject:** RE: [EXTERNAL] FOIA-2025-06084

9:30 would be great. You can call me at 202-616-5456.

Talk to you then,

Eric

---

**From:** Taryn Wilgus Null <taryn@democracydefenders.org>
**Sent:** Monday, September 15, 2025 10:09 AM
**To:** Hotchkiss, Eric (OIP) <Eric.Hotchkiss@usdoj.gov>
**Cc:** ginny@democracydefenders.org; gabe@democracydefenders.org; chris@democracydefenders.org; riley@democracydefenders.org; pooja@democracydefenders.org; sana@democracydefenders.org; jacob@democracydefenders.org
**Subject:** Re: [EXTERNAL] FOIA-2025-06084

Hi Eric,

We are available this Wednesday either 9:30-10:30am or 12-12:30pm.  What would be best for you?

Thank you,

Taryn

**Taryn Wilgus Null** (she/her)
*Senior Counsel*

**Democracy Defenders Fund**
Email: taryn@democracydefenders.org
Phone: (301) 741-9316

democracydefendersfund.org

On Mon, Sep 15, 2025 at 7:51 AM Hotchkiss, Eric (OIP) <Eric.Hotchkiss@usdoj.gov> wrote:

> Good morning Taryn,
>
> I'd be happy to schedule a call to discuss your request. I'm generally available 6-3 M-Th this week with a few exceptions (unavailable Tues 10-12 and Wed 11-12 and 1-2), and the same hours M-F next week. Let me know your availability for a meeting.
>
> Thank you,
>
> Eric Hotchkiss
>
> Senior Government Information Specialist &
>
> Acting FOIA Public Liaison
>
> Department of Justice
>
> Office of Information Policy
>
> Office: 202-616-5456

**From:** Taryn Wilgus Null <taryn@democracydefenders.org>
**Sent:** Monday, September 8, 2025 12:50 PM
**To:** DOJ.OIP.FOIA (SMO) <DOJ.OIP.FOIA@usdoj.gov>
**Cc:** Ginny Canter <ginny@democracydefenders.org>; Gabe Lezra <gabe@democracydefenders.org>; Chris Swartz <chris@democracydefenders.org>; Riley Pynnonen <riley@democracydefenders.org>; Pooja Chaudhuri <pooja@democracydefenders.org>; Sana Sinha <sana@democracydefenders.org>; Jacob Kovacs-Goodman <jacob@democracydefenders.org>
**Subject:** [EXTERNAL] FOIA-2025-06084

Hi there,

I am responding to the August 7, 2025 letter in response to FOIA-2025-06084. I would like to have a discussion about potentially reducing the scope of this request. I can be reached at 301-741-9316 but it would be best if you could reply all to this email to schedule a call, given that some of my colleagues should be included in any conversation about the scope of the requests.

Thank you,

Taryn

**Taryn Wilgus Null** (she/her)
*Senior Counsel*

**Democracy Defenders Fund**
Email: taryn@democracydefenders.org
Phone: (301) 741-9316

democracydefendersfund.org

# EXHIBIT M

Democracy Defenders Fund

October 10, 2025

Andrew Fiorillo,
Acting Chief, Initial Request Staff
Office of the Attorney General
and Office of the Deputy Attorney General
6th Floor
441 G St, NW
Washington, DC 20530-0001

Eric Hotchkiss
Senior Government Information Specialist &
Acting FOIA Public Liaison
Department of Justice
Office of Information Policy

Re: Freedom of Information Act Request

Dear Mr. Fiorillo and Mr. Hotchkiss,

Democracy Defenders Fund ("DDF") is writing to follow-up on its FOIA and request to expedite that FOIA (submitted on July 28, 2025, Tracking # FOIA-2025-06084), concerning the Trump Administration's handling of the Jeffrey Epstein matter (FOIA request attached as Exhibit A).

On August 7, 2025, DOJ's Office of Information Policy ("OIP") denied DDF's request for expedited processing under 28 C.F.R. § 16.5(e)(1)(ii), but informed DDF that it had sent its request for expedited processing under 28 C.F.R. § 16.5(e)(1)(iv) to the Director of Public Affairs for a determination. The OIP letter stated: "Please be advised that as of the date of this letter, a decision on your expedition request is still pending." On September 17, 2025, Eric Hotchkiss, a Senior Government Information Specialist & Acting FOIA Public Liaison at OPA, advised that DDF should expect to receive a supplemental acknowledgment letter addressing the Office of Public Affairs expedition determination under DOJ's standard (iv). To date, DDF has not received this expedition determination.

DDF has demonstrated that it is entitled to expedited processing under 28 C.F.R. § 16.5(e)(1)(iv) because its request concerns a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

DDF cited in its July 28 FOIA request around two dozen articles on the Trump administration's handling of the Epstein matter. Since DDF's submission of its FOIA request, the Trump administration's handling of this matter has continued to receive extensive media coverage which, in turn, continues to raise questions about government integrity and an urgency to inform

Democracy Defenders Fund

the public which DDF first described in its initial requests to expedite.[1] We ask that you grant, on the basis of the record before you, DDF's request to expedite its FOIA.

Sincerely,
/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder
/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director
/s/
Gabriel Lezra
Senior Strategist

---

[1] *For a further sampling, see, e.g.,* Shayna Jacobs & Michael Kranish, *How Trump's Personal Attorney Wound Up Investigating the Epstein Case at DOJ*, Wash. Post (July 31, 2025), https://www.washingtonpost.com/politics/2025/07/31/todd-blanche-trump-epstein-interview/; Associated Press, *Ghislaine Maxwell, Epstein's Former Girlfriend, Transferred to a Prison Camp in Texas*, NPR (Aug. 1, 2025), https://www.npr.org/2025/08/01/g-s1-80655/ghislaine-maxwell-epstein-prison-transfer; Jason Leopold, *FBI Redacted Trump's Name in Epstein Files for Privacy Reasons*, Bloomberg (Aug. 1, 2025), https://www.bloomberg.com/news/newsletters/2025-08-01/epstein-files-trump-s-name-was-redacted-by-the-fbi; Mimi Rocah, *The "Epstein Files": What We Should (and Should Not) Focus On*, The Contrarian (Aug. 4, 2025), https://contrarian.substack.com/p/the-epstein-files-what-we-should; Subpoena from Representative James Comer, Chairman, House Committee on Oversight and Government Reform to Attorney General Bondi (Aug. 5, 2025), https://oversight.house.gov/release/chairman-comer-subpoenas-bill-and-hillary-clinton-former-u-s-attorneys-general-and-fbi-directors-and-records-related-to-jeffrey-epstein/; Margaret Sullivan, *Ghislaine Maxwell's transfer to a 'country club' prison is outrageous,* The Guardian (Aug. 20, 2025), https://www.theguardian.com/commentisfree/2025/aug/20/ghislaine-maxwell-prison-transfer-epstein; Mimi Rocah, *The Sham Ghislaine Maxwell Proffer Is a Shameful Whitewash of Accountability*, The Contrarian (Aug. 26, 2025), https://contrarian.substack.com/p/the-sham-ghislaine-maxwell-proffer; Discharge Petition No. 9, 118th Cong. (Sept. 2, 2025), https://clerk.house.gov/DischargePetition/2025090209; Senator Ron Wyden Letter to Treasury Secretary Bessent (Sept. 3, 2025), https://www.finance.senate.gov/imo/media/doc/letter_from_senator_wyden_to_secretary_bessent_on_epstein_documentspdf.pdf; Stephen Groves, *Epstein Survivors Implore Congress to Act as Push For disclosure Builds*, AP News (Sept. 3, 2025), https://apnews.com/article/jeffrey-epstein-survivors-congress-trump-5d980740245f935c994a90b8ce824642; Jennifer Rubin, *Undaunted: Survivors of Epstein–Maxwell Spoke Out*, The Contrarian (Sept. 5, 2025), https://contrarian.substack.com/p/undaunted-survivors-of-epstein-maxwell; House Comm. on Oversight & Gov't Reform, *Oversight Committee Releases Records Provided by the Epstein Estate; Chairman Comer Provides Statement* (Sept. 8, 2025), https://oversight.house.gov/release/oversight-committee-releases-records-provided-by-the-epstein-estate-chairman-comer-provides-statement/; Luke Broadwater, *Latest Revelations Complicate Trump's Sweeping Denials About Epstein*, N.Y. Times (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trumps-epstein-response.html; Arthur Aidala, *Ghislaine Maxwell Lawyer Makes Stunning Quid Pro Quo Confession*, New Republic (Sept. 9, 2025), https://newrepublic.com/post/200178/ghislaine-maxwell-lawyer-quid-pro-quo; Kate Santaliz, *Mike Johnson Faces Bipartisan Heat Over Delayed Vote on Epstein Files*, Axios (Oct. 7, 2025), https://www.axios.com/2025/10/07/mike-johnson-government-shutdown-epstein-files; Annie Karni, *Inside the Capitol, a Heated Spat Over the Shutdown and Epstein*, N.Y. Times (Oct. 8, 2025), https://www.nytimes.com/2025/10/08/us/politics/mike-johnson-spat-democrats-shutdown-epstein.html.

# EXHIBIT N

Democracy Defenders Fund

July 22, 2025

Kevin Krebs
Assistant Director, FOIA/Privacy Unit
Executive Office of the U.S. Attorneys
175 N Street, NE, Suite 5.400
Washington, DC 20530-0001

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from the inception of the Department of Justice's investigations of Jeffrey Epstein and/or Ghislaine Maxwell to when this request is processed, of:

1. All records relating to the Department of Justice's investigation(s) of Jeffrey Epstein that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, "Mar-a-Lago," or any code name, code word, pseudonym, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Jeffrey Epstein.

2. All records relating to the Department of Justice's investigation(s) of Ghislaine Maxwell that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, "Mar-a-Lago," or any code name, code word, pseudonym, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Ghislaine Maxwell.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(A) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester'".[5] DDF's request meets all elements.

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of records concerning the Department's investigations into alleged criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including investigations conducted by the Criminal Division, the U.S. Attorney's Office for the Southern District of Florida, the U.S. Attorney's Office for the Southern District of New York and the Federal Bureau of Investigation ("FBI"), including any records the Department may have that name President Trump in relation to these matters. Even though President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[6] he promised repeatedly during his 2024 Presidential campaign that he would release these

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Forc*e, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).
[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/17/us/politics/timeline-trump-epstein.html.

files.[7] But, the fact that the Department has yet to release the investigation files has outraged many of Trump's supporters.[8] The existence and extent of such records is also currently a question of immense media speculation.[9]

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to investigations involving Jeffery Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[10] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[11] For instance, in February 2025, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[12] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[13] This has caused immense confusion amongst the public, which has been the subject of ongoing news media coverage.[14] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[15] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

---

[7] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga

[8] Luke Broadwater and Erica L. Green, *Trump's New Strategy on Epstein Fallout: Blame the Democrats*, *New York Times* (Jul. 16, 2025), https://www.nytimes.com/2025/07/16/us/politics/trump-epstein-attacks-supporters.html.

[9] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.

[10] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[11] *See, e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[12] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.

[13] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[14] *See, e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

[15] Larry Neumesiter, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

Third, the purpose of the disclosures is not “primarily in the commercial interest of” DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF’s core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and issuance of op-eds.[16] DDF maintains a dedicated website where it provides information related to its activities which can be accessed by the public.[17] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as a representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public” and “uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience.”[18] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an “urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information."[19] The outrageous nature of the alleged

[16] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from Qatar? C’Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.
[17] *See* https://www.democracydefendersfund.org/news-resources.
[18] *Nat’l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).
[19] 5 C.F.R. 16.5(e)(1)(ii).

activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[20] and if so, whether that possibility may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[21]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[22] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[23] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

---

[20] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[21] *See*, *e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

[22] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.

[23] Democracy Defenders Fund, https://www.democracydefendersfund.org/.

**2. The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox News,[24] New York Times,[25] Wall Street Journal,[26] and Washington Post,[27] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[28]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These

---

[24] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[25] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[26] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[27] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[28] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC: Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- ‘Parent-child’ relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[29] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[30] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

---

[29] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[30] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

# EXHIBIT O

An official website of the United States government
Here's how you know

Save identity
✕
To save an identity, unlock 1Password first.
Unlock 1Password

CE
ENU

# FOIA.gov

**Thank you for visiting FOIA.gov, the government's central website for FOIA.** We'll continue to make improvements to the site and look forward to your input. Please submit feedback to National.FOIAPortal@usdoj.gov.

**Submission ID:** 2286616

# Success!

## Your FOIA request has been created and is being sent to the Executive Office for United States Attorneys.

You'll hear back from the agency confirming receipt in the coming weeks using the contact information you provided. If you have questions about your request, feel free to reach out to the agency FOIA personnel using the information provided below.

### Contact the agency

FOIA Requester Service Center

202-252-6020

Arla Witte-Simpson, FOIA Public Liaison

202-252-6036

Kevin Krebs, Assistant Director, FOIA/Privacy Unit
175 N Street, NE, Suite 5.400
Washington, DC 20530-0001

# Request summary

Request submitted on**July 22, 2025**.

The confirmation ID for your request is **2286616**.

The confirmation ID is only for identifying your request on FOIA.gov and acts as a receipt to show that you submitted a request using FOIA.gov. This number does not replace the information you'll receive from the agency to track your request. In case there is an issue submitting your request to the agency you selected, you can use this number to help.

## Contact information

**Name**
Gabriel Lezra

**Mailing address**
600 Pennsylvania Ave SE
Washington, DC 20003
United States

**Phone number**
9176752509

**Company/organization**
Democracy Defenders Fund

**Email**
gabe@statedemocracydefenders.org

---

## Your request

See attached.

---

## Additional information

EOUSA. DDA. Epstein Request..pdf

---

## Fees

**What type of requester are you?**
media

**Fee waiver**
yes

**Fee waiver justification**
See attached.

---

## Request expedited processing

**Expedited processing**
yes

**Justification for expedited processing**
See attached.

FOIA.gov

**CONTACT**

Office of Information Policy (OIP)
U.S. Department of Justice
441 G St, NW, 6th Floor
Washington, DC 20530
E-mail: National.FOIAPortal@usdoj.gov

Hero image credit CC3.0

- FREQUENTLY ASKED QUESTIONS
- DEVELOPER RESOURCES
- AGENCY API SPEC
- FOIA CONTACT DOWNLOAD
- FOIA DATASET DOWNLOAD
- ACCESSIBILITY
- PRIVACY POLICY
- POLICIES & DISCLAIMERS
- JUSTICE.GOV
- USA.GOV

# EXHIBIT P

**U.S. Department of Justice**

Executive Office for United States Attorneys

Freedom of Information and Privacy Staff

*Suite 5.400, 3CON Building*
*175N Street, NE*
*Washington, DC 20530*

*(202) 252-6020*

July 22, 2025

VIA email

Gabriel Lezra
Democracy Defenders Fund
600 Pennsylvania Ave SE
Washington, DC 20003
gabe@statedemocracydefenders.org

Re: Request Number: EOUSA-2025-005055
Subject of Request: Jeffrey Epstein investigation and the name Donald J. Trump

Dear Gabriel Lezra:

This letter acknowledges receipt of your Freedom of Information Act/Privacy Act (FOIA/PA) request in the Executive Office for United States Attorneys (EOUSA). Your request has been assigned tracking number EOUSA-2025-005055. Please refer to this number in any future correspondence with this Office.

The records you seek require a search in one or more field offices and potentially involves voluminous records and/or requires consultation with another agency/component with a substantial interest in the subject-matter and therefore falls within "unusual circumstances." *See* 5 U.S.C.S § 552(a)(6)(B)(i)-(iii). Accordingly, we are extending the time limit to respond to our request beyond the ten additional days provided by the statute. The time needed to process your request will necessarily depend on the complexity of our records search and on the volume and complexity of any records located. For your information, this Office assigns incoming requests to one of three tracks: simple, complex, or expedited. Each request is then handled on a first-in, first-out basis in relation to other requests in the same track. Simple requests usually receive a response in approximately 30 business days, whereas complex requests necessarily take longer. At this time, your request has been assigned to the complex track.

Under FOIA and Department of Justice regulations you may be required to pay certain costs associated with processing your request, including, searching for, reviewing, and duplicating requested records. Consequently, you may incur those costs, unless you have requested and been granted a waiver or reduction in fees. If you have requested a fee waiver, we have not yet made a decision on your request. We will do so after we determine whether the processing of your request will result in any assessable fees. In most instances, the first 100

pages to duplicate and the first two hours to search for records responsive to your request, will be provided to you free of charge. If after making those allowances, we determine that the cost to process your request will amount to more than $25.00, we will notify you in writing at a later date.[1] Requests that are specific, concrete and of limited scope (in time and/or subject matter) generally enable us to respond to you more quickly and possibly assess lower fees. To avoid delay and reduce any potential fees, we respectfully request that you modify and narrow the scope of your request (*See* Attachment).

You may contact our FOIA Public Liaison at the Executive Office for United States Attorneys (EOUSA) for any further assistance and to discuss any aspect of your request. The contact information for EOUSA is 175 N Street, NE, Suite 5.400, Washington, DC 20530; telephone at 202-252-6020. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Kevin Krebs
Assistant Director

Attachment

[1] Search and review fees by professional personnel are charged at $40 per hour and duplication fees are assessed at five cents per page.

**THIS IS NOT A BILL. DO NOT SEND MONEY**

Requester: Gabriel Lezra Request No. EOUSA-2025-005055

**CHOOSE ONE**

____ I wish to narrow my request in an attempt to obtain a faster response and/or reduce fees as follows:

____ I understand that I am entitled to the first 100 pages and two hours of search time for free. Please do not search beyond two hours, nor duplicate beyond 100 pages.

____ I agree to pay up to the following amount for duplication and search time: $____________. **I understand that this payment is required even if no documents are located or released to me**. In the event that documents are located and released to me, I understand that I may be charged duplication fees in addition to search fees.

____I wish to withdraw my request.

_____________________________ ___________________
Signature Date

Please return to:
EOUSA
FOIA/PA
175 N Street, NE, 5th Floor, FOIA Suite
Washington, DC 20530

# EXHIBIT Q

Democracy Defenders Fund

July 25, 2025

**VIA EMAIL ONLY**

Kevin Krebs
Assistant Director
Freedom of Information and Privacy Staff
Executive Office for U.S. Attorneys
Suite 5.400, 3CON Building
175N Street, NE
Washington, DC 20530

RE: Request Number: EOUSA-2025-005055; Fee Waiver Second Request

Dear Assistant Director Krebs,

On July 22, 2025, our organization, Democracy Defenders Fund, submitted a request for the following records:

1. All records relating to the Department of Justice's investigation(s) of Jeffrey Epstein that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, “Mar-a-Lago,” or any code name, code word, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Jeffrey Epstein.

2. All records relating to the Department of Justice's investigation(s) of Ghislaine Maxwell
3. that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, “Mar-a-Lago,” or any code name, code word, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Ghislaine Maxwell.

DDF sought both expedited processing of Request Number EOUSA-2025-005055 and a waiver of the processing fees. DDF’s request was received by your office on July 22, 2025, at 1:11 PM ET. An hour and eleven minutes later, at 2:22 PM ET, DDF received a letter from your office explaining that you were (1) assigning the document to the “complex track” that would result in “extending the time limit to respond . . . beyond the ten additional days provided by the statute” and that responses would “necessarily take longer” than “30 days” and (2) you were not deciding on our fee waiver request.[1] We write to reiterate our request that you immediately grant our request to expedited processing of Request Number EOUSA-2025-005055 and waive the processing fees.

[1] Letter from Kevin Krebbs, Assistant Director, Department of Justice, to Gabriel Lezra, Democracy Defenders Fund (July 22, 2025) (Krebbs Letter).

Because of the national importance of this matter, **DDF requests that the Department approve DDF's previous request for expedited processing and fee waiver immediately. DDF kindly requests you promptly begin the search for records requested under EOUSA-2025-005055.**

Sincerely,

/s/
Gabriel Lezra
Senior Strategist

CC: Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

# EXHIBIT R

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEMOCRACY DEFENDERS FUND,<br><br>*Plaintiff*,<br>v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>*Defendant*. | Civil Action No. 25-cv-02791 (CKK) |

**DECLARATION OF TARYN WILGUS NULL**

1. I, Taryn Wilgus Null, serve as Senior Counsel for Democracy Defenders Fund ("DDF").

2. I have personally reviewed the Freedom of Information Act ("FOIA") requests and DDF's correspondence files related to this matter. I have also reviewed the other relevant materials cited in the requests. As a result, I have personal knowledge of the information contained within this declaration.

3. DDF is a nonprofit organization dedicated to defending the rule of law, fighting corruption, and protecting elections. DDF is primarily engaged in disseminating information to the public about government activity to increase public awareness about potential abuses of power and government corruption. Through a combination of investigative reports, in-depth analyses, press releases, and engagement on digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and op-eds—particularly through *The Contrarian*, a Substack with over half a million subscribers that supports DDF in its work shining a light on government corruption.

4. On September 8, 2025, I called and left a voicemail for the FOIA public liaison, inviting a conversation to discuss the scope of DDF's July 22 and 28 requests to the Executive Office for U.S. Attorneys. I never received a call back.

5. On September 17, 2025, I had a phone call with Eric Hotchkiss, the Acting FOIA Public Liaison for the U.S. Department of Justice Office of Information Policy, to discuss DDF's July 28 FOIA request to OAG and ODAG. In that call, Hotchkiss informed me that OAG and ODAG had received numerous similar requests for information related to Epstein and Maxwell and that a search is being conducted for information responsive to all of those requests. For this reason, narrowing DDF's request would not change the search that OAG and ODAG are conducting since they are simultaneously searching for information responsive to numerous requests and DDF's request is no broader than other requests that have been sent.

6. On September 25, 2025, I had a call with the BOP FOIA office about DDF's August 6's FOIA request to BOP. BOP informed me that DDF's request has been sent to the field office, which is the subject matter expert for this request and that they will not know how long a response will take until the records are sent back to the BOP FOIA office. BOP also informed me that the request for expedited processing has to be adjudicated and that they will be in touch about it.

7. On November 14, 2025, I left a voicemail with Eric Hotchkiss to check on the status of the August 6, 2025 FOIA request that DDF sent to the Office of the Attorney General and Office of the Deputy Attorney General. Hotchkiss never responded to my voicemail.

I declare under penalty of perjury, 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge and belief.

Executed on December 3, 2025

*/s/ Taryn Wilgus Null*
Taryn Wilgus Null

# EXHIBIT S

Democracy Defenders Fund

July 28, 2025

Kevin Krebs
Assistant Director, FOIA/Privacy Unit
Executive Office of the U.S. Attorneys
175 N Street, NE, Suite 5.400
Washington, DC 20530-0001

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from January 20, 2025, to when this request is processed, of:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General

Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Forc*e, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).

activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of documents and communications related to criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including records the Department may have that name clients and associates of Epstein and records that may name President Trump in relation to these matters. These records may also reveal to the public a potential attempt to cover up negative or potentially criminal conduct, including by President Trump. The existence and extent of such records, and the government's response to their collection and dissemination, are currently a question of immense media speculation.[6] In February 2025, Attorney General Bondi said in an interview with Fox News that the Epstein client list was, "sitting on my desk right now to review."[7] It was recently reported that Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President.[8] Then in July, the Department issued a memo noting, "this systematic review revealed no incriminating 'client list."[9] However, the Wall Street Journal has reported that the Attorney General personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] Given contradictory statements made by the Department, and the fact that President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[11] disclosure of these records would conclusively show whether the Department has the information it now purports that it does not have, and, if such records exist, whether Donald Trump's name appears in any of the documents related to Jeffery Epstein. This release is also important to understand whether any undue political influence by the President has affected the Department's ability or willingness to release documents related to Jeffrey Epstein. Prior to being elected to a second term, the President promised repeatedly during his campaign that he would release these files.[12] Yet, in the face of increased pressure to release the full array of documents, the President has continued to evade the issue.[13] Disclosure of these documents is therefore necessary to provide a

---

[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).

[6] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.

[7] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.

[8] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trum*p, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/

[9] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1

[11] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/17/us/politics/timeline-trump-epstein.html.

[12] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga

[13] Chris Cameron, Trump Really Wants to Stop Talking About Epstein: A Timeline, NY Times (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-epstein-distraction-timeline.html.

full record of what communications occurred, and whether any such communications might have resulted in abnormalities in the Department's statements or actions concerning the existence of Epstein's "Client List."

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to the investigations involving Jeffrey Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[14] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[15] As noted above, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[16] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[17] This has caused immense confusion amongst the public, which has been the subject of ongoing new media coverage.[18] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[19] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and the issuance of op-eds.[20] DDF maintains a dedicated website

---

[14] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[15] *See*, *e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[16] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.

[17] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[18] *See*, *e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

[19] Larry Neumesiter, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

[20] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from*

where it provides information related to its activities, which can be accessed by the public.[21] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[22] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[23] and if so, whether that may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[24]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

*Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.

[21] *See* https://www.democracydefendersfund.org/news-resources.

[22] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

[23] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[24] *See*, *e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[25] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[26] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

2. **The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox

[25] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.

[26] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

News,[27] New York Times,[28] Wall Street Journal,[29] and Washington Post,[30] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[31]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

---

[27] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[28] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[29] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[30] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[31] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC: Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- 'Parent-child' relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[32] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[33] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

[32] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[33] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

# EXHIBIT T

An official website of the United States government
Here's how you know

UNITED STATES DEPARTMENT of JUSTICE

# FOIA.gov

MENU

**Thank you for visiting FOIA.gov, the government's central website for FOIA.** We'll continue to make improvements to the site and look forward to your input. Please submit feedback to National.FOIAPortal@usdoj.gov.

**Submission ID:** 2295996

# Success!

## Your FOIA request has been created and is being sent to the Executive Office for United States Attorneys.

You'll hear back from the agency confirming receipt in the coming weeks using the contact information you provided. If you have questions about your request, feel free to reach out to the agency FOIA personnel using the information provided below.

### Contact the agency

FOIA Requester Service Center

202-252-6020

Arla Witte-Simpson, FOIA Public Liaison

202-252-6036

Kevin Krebs, Assistant Director, FOIA/Privacy Unit
175 N Street, NE, Suite 5.400
Washington, DC 20530-0001

# Request summary

Request submitted on**July 28, 2025**.

The confirmation ID for your request is **2295996**.

The confirmation ID is only for identifying your request on FOIA.gov and acts as a receipt to show that you submitted a request using FOIA.gov. This number does not replace the information you'll receive from the agency to track your request. In case there is an issue submitting your request to the agency you selected, you can use this number to help.

## Contact information

**Name**
Gabriel Lezra

**Mailing address**
600 Pennsylvania Ave. S.E.
Washingtong, D.C. 20003
United States

**Phone number**
9176752509

**Company/organization**
Democracy Defenders Fund

**Email**
gabe@statedemocracydefenders.org

---

## Your request

See attached.

---

## Additional information

DDF. EOUSA FOIA EPSTEIN COMMUNICATIONS (July 28 25).pdf

---

## Fees

**What type of requester are you?**
media

**Fee waiver**
yes

**Fee waiver justification**
See attached.

---

## Request expedited processing

**Expedited processing**
yes

**Justification for expedited processing**
See attached.

FOIA.gov

**CONTACT**

Office of Information Policy (OIP)
U.S. Department of Justice
441 G St, NW, 6th Floor
Washington, DC 20530
E-mail: National.FOIAPortal@usdoj.gov

Hero image credit CC3.0

- FREQUENTLY ASKED QUESTIONS
- DEVELOPER RESOURCES
- AGENCY API SPEC
- FOIA CONTACT DOWNLOAD
- FOIA DATASET DOWNLOAD
- ACCESSIBILITY
- PRIVACY POLICY
- POLICIES & DISCLAIMERS
- JUSTICE.GOV
- USA.GOV

# EXHIBIT U

**U.S. Department of Justice**

Executive Office for United States Attorneys

Freedom of Information and Privacy Staff

*Suite 5.400, 3CON Building*
*175N Street, NE*
*Washington, DC 20530*

*(202) 252-6020*

July 28, 2025

Gabriel Lezra
Democracy Defenders Fund
600 Pennsylvania Ave SE
Washington, DC 20003
gabe@statedemocracydefenders.org

Re: Request Number EOUSA-2025-005260
Subject of Request: "Jeffrey Epstein" or "Ghislaine Maxwell," correspondence from Attorney General, Principal AG, FBI, etc.

Dear Gabriel Lezra:

The Executive Office for United States Attorneys (EOUSA) has received your Freedom of Information Act (FOIA) and/or Privacy Act (PA) request and assigned the above number to it. The EOUSA is the official record keeper for all records located in this office and the various United States Attorney's offices.

Please be advised, that the Department of Justice (DOJ) has a decentralized system for processing FOIA/PA requests and each DOJ component maintains and handles FOIA/PA requests for its own records. Additional information regarding the DOJ's administration of the FOIA/PA, including a listing of DOJ components, the types of records each maintains, and their FOIA/PA contact information, is available at www.justice.gov/oip/foia-request.html. For any future DOJ FOIA/PA requests, please direct your letter to the DOJ component you believe has records pertaining to the subject of your request.

You requested information which is not information maintained by the EOUSA or by the individual United States Attorney's Offices, but is likely maintained by a separate component of the DOJ. Accordingly, we are routing the component a copy of your request for processing and direct response to you. You can contact the component using the information below:

Andrew Fiorillo
Acting Chief, Initial Request Staff
Office of Information Policy
Department of Justice
6th Floor
441 G St NW

Washington, DC 20530
Phone: (202) 514-FOIA

Michael G. Seidel, Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
200 Constitution Drive
Winchester, VA 22602
Phone: (540) 868-4593
Online Request Form: https://efoia.fbi.gov

This is the final action on this above-numbered request. If you are not satisfied with EOUSA's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." If possible, please provide a copy of your original request and this response letter with your appeal.

You may contact the EOUSA FOIA Public Liaison for any further assistance and to discuss any aspect of your request. The contact information for EOUSA is 175 N Street, NE, Suite 5.400, Washington, DC 20530; telephone at 202-252-6020. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Kevin Krebs
Assistant Director

# EXHIBIT V

**U.S. Department of Justice**

Executive Office for United States Attorneys

Freedom of Information and Privacy Staff

*Suite 5.400, 3CON Building*
*175N Street, NE*
*Washington, DC 20530*

*(202) 252-6020*

July 29, 2025

VIA

Norman Eisen
Democracy Defenders Fund
600 Pennsylvania Ave., SE
Washington, DC 20003
gabe@statedemocracydefenders.org

Re: Request Number: EOUSA-2025-005347
Subject of Request: investigations of Jeffrey Epstein and/or Ghislaine Maxwell

Dear Norman Eisen:

This letter acknowledges receipt of your Freedom of Information Act/Privacy Act (FOIA/PA) request in the Executive Office for United States Attorneys (EOUSA). Your request has been assigned tracking number EOUSA-2025-005347. Please refer to this number in any future correspondence with this Office.

The records you seek require a search in one or more field offices and potentially involves voluminous records and/or requires consultation with another agency/component with a substantial interest in the subject-matter and therefore falls within "unusual circumstances." *See* 5 U.S.C.S § 552(a)(6)(B)(i)-(iii). Accordingly, we are extending the time limit to respond to our request beyond the ten additional days provided by the statute. The time needed to process your request will necessarily depend on the complexity of our records search and on the volume and complexity of any records located. For your information, this Office assigns incoming requests to one of three tracks: simple, complex, or expedited. Each request is then handled on a first-in, first-out basis in relation to other requests in the same track. Simple requests usually receive a response in approximately 30 business days, whereas complex requests necessarily take longer. At this time, your request has been assigned to the complex track.

Under FOIA and Department of Justice regulations you may be required to pay certain costs associated with processing your request, including, searching for, reviewing, and duplicating requested records. Consequently, you may incur those costs, unless you have requested and been granted a waiver or reduction in fees. If you have requested a fee waiver, we have not yet made a decision on your request. We will do so after we determine whether the processing of your request will result in any assessable fees. In most instances, the first 100

pages to duplicate and the first two hours to search for records responsive to your request, will be provided to you free of charge. If after making those allowances, we determine that the cost to process your request will amount to more than $25.00, we will notify you in writing at a later date.[1] Requests that are specific, concrete and of limited scope (in time and/or subject matter) generally enable us to respond to you more quickly and possibly assess lower fees. To avoid delay and reduce any potential fees, we respectfully request that you modify and narrow the scope of your request (*See* Attachment).

You may contact our FOIA Public Liaison at the Executive Office for United States Attorneys (EOUSA) for any further assistance and to discuss any aspect of your request. The contact information for EOUSA is 175 N Street, NE, Suite 5.400, Washington, DC 20530; telephone at 202-252-6020. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,



Kevin Krebs
Assistant Director

Attachment

[1] Search and review fees by professional personnel are charged at $40 per hour and duplication fees are assessed at five cents per page.

**THIS IS NOT A BILL. DO NOT SEND MONEY**

Requester: Norman Eisen Request No. EOUSA-2025-005347

**CHOOSE ONE**

____ I wish to narrow my request in an attempt to obtain a faster response and/or reduce fees as follows:

____ I understand that I am entitled to the first 100 pages and two hours of search time for free. Please do not search beyond two hours, nor duplicate beyond 100 pages.

____ I agree to pay up to the following amount for duplication and search time: $____________. **I understand that this payment is required even if no documents are located or released to me**. In the event that documents are located and released to me, I understand that I may be charged duplication fees in addition to search fees.

____I wish to withdraw my request.

______________________________ ___________________
Signature Date

Please return to:
EOUSA
FOIA/PA
175 N Street, NE, 5th Floor, FOIA Suite
Washington, DC 20530

# EXHIBIT W

Democracy Defenders Fund

August 7, 2025

Director
Office of Information Policy (OIP)
U.S. Department of Justice
441 G Street NW
6th Floor
Washington, DC 20530

**RE: FOIA APPEAL EOUSA-2025-005260**

Pursuant to 5 U.S.C. § 552(a)(6)(A)(III)(aa) and 28 C.F.R. § 16.8, Democracy Defenders Fund ("DDF") submits this appeal of the Executive Office for the United States Attorneys ("EOUSA"), July 28, 2025, response to the above-referenced Freedom of Information Act ("FOIA") request. EOUSA's response provided that the "requested information . . . is not information maintained by the EOUSA or by the individual United States Attorney's Offices . . .. "[1] As a result, EOUSA routed the above-referenced request to other components of the Department of Justice and appears to have terminated its search for responsive records. DDF respectfully submits this appeal of EOUSA's determination. The conclusion that EOUSA does not maintain responsive agency records is likely incorrect, and EOUSA does not appear to have conducted an adequate search for records, for the reasons detailed below. As a result, DDF requests that EOUSA:

1. Provide an explanation for the search that was undertaken to conclude that the EOUSA has no responsive records;
2. Promptly conduct an adequate search for the requested records and provide a list of search terms or in the alternative, work with DDF to craft search terms;
3. Provide an explanation for why expedited processing pursuant to 28 C.F.R. § 16.5(e)(1)(ii) and (iv) was denied; and
4. Release in full any and all responsive records, or if records are withheld, then provide a reason for why each record is being withheld including any potential FOIA exemption invoked.

**History of FOIA Request**

On July 28, 2025, DDF submitted a request for the following records with EOUSA through FOIA.gov and certified mail:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to

[1] Letter from Kevin Krebs, Assistant Director, Freedom of Information and Privacy Staff, Executive Office for United States Attorneys, to Gabriel Lezra, Democracy Defenders Fund, pp. 1 (July 28, 2025).

"Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondences as well as communications facilitated by or through third parties.

2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

DDF's request extended to any "responsive records regardless of format, medium, or physical characteristics" which included "records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material." As explained in the request, this included "without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions" and "any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails." As part of its records request, DDF also sought expedited processing and a waiver of any applicable processing fee. The Request is attached as **Exhibit A**.

That same day–July 28, 2025–at 10:16 AM, EOUSA sent an email reply to DDF assigning the request Case Number EOUSA-2025-005260. The email is attached as **Exhibit B**. *Eighteen minutes later*, at 10:34 AM, EOUSA electronically sent DDF a letter advising that the "requested information . . . is not information maintained by the EOUSA or by the individual United States Attorney's Offices, but is likely maintained by a separate component of the DOJ." As a result, EOUSA sent DDF's request to the Office of Information Policy and the Federal Bureau of Investigations. EOUSA's letter explains that this transmittal "is the final action" on DDF's request, effectively denying in full DDF's request for a search for responsive records. EOUSA's transmittal email is attached as **Exhibit C** and the letter is attached as **Exhibit D**.

**Failure to Conduct an Adequate Search**

In response to a request for agency records, an agency must make a "good faith effort to conduct a search for the requested records, using methods which can reasonably be expected to produce the information requested."[2] A search is deemed adequate only if it is "reasonably calculated to uncover all relevant documents."[3] In executing a search, an agency has an obligation "to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents."[4] A search is inadequate if there are "positive indications of overlooked materials."[5] As the U.S. Court of Appeals for the District of Columbia explained in 1979, "[i]f [an] agency can lightly avoid its responsibilities by laxity in identification or retrieval of desired materials, the majestic goals of the Act will soon pass beyond reach."[6]

EOUSA's determination that the "requested information . . . is not information maintained by the EOUSA or by the individual United States Attorney's Offices" is inconsistent with the fact that (1) the U.S. Attorney's Office for the Southern District of Florida investigated Jeffrey Epstein, resulting in a highly controversial 2008 non-prosecution agreement with the U.S. Attorney for the Southern District of Florida;[7] (2) the U.S. Attorney's office for the Southern District of New York was responsible for the investigation and prosecution of Jeffrey Epstein in *U.S. v. Epstein* (19-cr-490); and (3) the U.S. Attorney's Office for the Southern District of New York was responsible for investigating and prosecuting Ghislaine Maxwell in the case *U.S. v. Ghislaine Maxwell* (20-cr-330). Given the U.S. Attorney Office's intimate relationship with these case files, it is implausible that EOUSA could categorically conclude, *in eighteen minutes*, without

---

[2] *Baker & Hostetler LLP v. U.S. Dept. of Commerce,* 473 F.3d 312 (D.C. Cir., 2006) (*citing Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995)).

[3] *Ancient Coin Collectors Guild v. U.S. Dep't of State,* 641 F.3d 504, 514 (D.C.Cir. 2011) (citations omitted).

[4] *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999).

[5] *Id. (citing Founding Church of Scientology of Washington, D. C., Inc. v. Nat'l Sec. Agency,* 610 F.2d 824, 837 (D.C. Cir. 1979)).

[6] *Founding Church of Scientology of Washington,* 610 F.2d at 837.

[7] *Exec. Summary of Report: Investigation into the U.S. Att'y's Office for the S. Dist. of Fla.'s Resolution of Its 2006-2008 Fed. Crim. Investigation of Jeffrey Epstein & Its Interactions with Victims during the Investigation*, U.S. Dep't of Justice, Office of Professional Responsibility (Nov. 2020), https://www.justice.gov/archives/opa/press-release/file/1336416/dl; Michael Balsamo & Eric Tucker, *Justice Dept.: 'Poor judgment' used in Epstein plea deal,* AP News (Nov. 12, 2020), https://apnews.com/article/jeffrey-epstein-florida-e2a4431f7319afd037023d9a586aa291.

conducting an adequate search, that *none* of its *10,000* employees[8] could have potentially responsive records containing any of the five categories of information requested, including communications mentioning Jeffrey Epstein or Ghislaine Maxwell or that contain the identities of people who were invited to Epstein's properties.

Federal records law supports the likelihood that EOUSA and the U.S. Attorney's offices may have responsive records. Criminal and civil case files are required to be maintained by EOUSA in accordance with Justice Manual § 3-13.300 and records control schedule RG-0118.N1-118-10-7, which provides that such cases and related materials must be maintained by the U.S. Attorney's offices until appropriate disposition schedules are met.[9] These records retention and disposition policies make clear that EOUSA is the records custodian for these types of records. EOUSA's determination that the "requested information . . . is not information maintained by the EOUSA or by the individual United States Attorney's Offices" is thereby facially inconsistent with EOUSA's legal requirement to maintain these types of records, and an adequate search should have been conducted to determine whether a subset of potentially responsive records may be maintained at EOUSA or at one of the 93 U.S. Attorney's offices.

In addition, the speed with which EOUSA made its determination suggests that it not only failed to adequately search for records, but that it did not search *at all*. EOUSA's perfunctory conclusion that it and the U.S. Attorneys' Offices don't maintain potentially responsive records, unaided by any supporting statement or any indication that EOUSA conducted *any* search prior to making its determination, is clearly inconsistent with the fact that at least two U.S. Attorney Offices have been involved in investigating and prosecuting Jeffrey Epstein and Ghislaine Maxwell. Given the likelihood that at least two U.S. Attorneys' Offices could have responsive records, EOUSA's response seems implausible and indicates a failure "to follow through on obvious leads to discover requested documents."[10]

For this reason, EOUSA should grant DDF's appeal and undertake a "good faith effort to conduct a search for the requested records, using methods which can reasonably be expected to produce the information requested" as is required by the FOIA.[11]

**<u>Request for Expedited Processing of Appeal</u>**

Pursuant to 28 C.F.R. 16.5(e)(1), "appeals shall be processed on an expedited basis whenever it is determined that they involve," inter alia, "[a]n urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information" or "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."[12]

---

[8] Department of Justice, FY 2026 Congressional Budget Submission: U.S. Attorney's Exhibit B (2025), https://www.justice.gov/media/1403436/dl?inline (providing that the U.S. Attorney offices were appropriated for 10,480 FTE in 2025).

[9] *Request for Records Disposition Authority, Job No. N1-118-10-7* (Sept. 2, 2010), https://www.archives.gov/files/records-mgmt/rcs/schedules/departments/department-of-justice/rg-0118/n1-118-10-007_sf115.pdf.

[10] *Valencia–Lucena,* 180 F.3d at 325 (D.C. Cir. 1999).

[11] *Baker & Hostetler LLP,* 473 F.3d 312 (*citing Nation Magazine, Washington Bureau*, 71 F.3d at 890.

[12] 28 C.F.R. § 16.5(e)(1)(ii), (iv).

DDF previously provided extensive evidence of why EOUSA's search for these records should be processed on an expedited basis in its July 28, 2025, request letter. Since that time, the urgency to inform the public about the Department's handling of these records, and whether the President is named therein, has only grown. As the Department itself stated in a motion to unseal grand jury transcripts in *U.S. v. Jeffrey Epstein*, "[s]ince July 6, 2025, there has been extensive public interest in the basis for the Memorandum's conclusions" and "Public officials, lawmakers, pundits, and ordinary citizens remain deeply interested and concerned about the Epstein matter."[13] Likewise, the content and handling of these records is a matter of both widespread and exceptional media interest and poses serious questions about the government's integrity. Dozens of articles have been written concerning Trump and Epstein's relationship over the past few weeks. These articles have been viewed heavily by the public. For example, an article written by the *Wall Street Journal* that contained allegations that President Trump sent Jeffrey Epstein a "bawdy" letter has reportedly become "one of the paper's most-read articles of all time."[14]

As the *Encyclopedia Britannica* recently explained in its article on the "Epstein Files":

> The "Epstein files" is how the world has come to know the thousands of pages of documents related to two criminal investigations into sex trafficking by financier and friend to the rich, famous, and powerful Jeffrey Epstein. What's in those files, who is named and in what context, and whether they should be released to the public became a topic of obsessive conversation on both sides of the political aisle after Epstein's death in 2019. *But in 2025 those questions and others roiled the second administration of U.S. Pres. Donald Trump as even some of Trump's most loyal supporters expressed a sense of betrayal at his administration's reluctance to release information related to the Epstein case*.[15]

In the run-up to the 2024 election, President Trump announced that he would release documents related to Epstein's investigation and his "client list".[16] Following President Trump's inauguration, the Department reportedly undertook a major review of the Epstein files, with the apparent goal of releasing information about Epstein's associates. However, and despite AG Bondi's assertion that she had the Epstein list "on [her] desk,"[17], the Department issued a memo stating that their, "systematic review" of the Epstein files "revealed no incriminating 'client list."[18] At the same time, it was recently reported Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag

---

[13] United States's Motion to Unseal Grand Jury Transcripts at 1, 3, *United States v. Jeffrey Epstein* (S.D.N.Y. 2025) (19-cr-490)

[14] David Gilmour, *WSJ's Bawdy Trump-Epstein Expose Is Record-Smashing Hit, Despite Lawsuit*, MEDIAITE (Aug. 6, 2025), https://www.mediaite.com/media/news/wsjs-bawdy-trump-epstein-expose-is-record-smashing-hit-despite-lawsuit/.

[15] Tracy Grant, *The Epstein Files: A Timeline*, BRITANNIA (Aug. 5, 2025), https://www.britannica.com/topic/The-Epstein-Files-A-Timeline (emphasis added).

[16] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, THE GUARDIAN (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[17] Haley Chi-Sing, *Bondi says Epstein client list 'sitting on my desk right now,' and is reviewing JFK, MLK files*, Fox News (Feb. 21, 2025), https://www.foxnews.com/politics/bondi-says-epstein-client-list-sitting-my-desk-right-now-reviewing-jfk-mlk-files.

[18] Memo on Epstein Investigation, U.S. DEPARTMENT OF JUSTICE, FED. BUREAU OF INVESTIGATION, (Jul. 2025), https://www.justice.gov/opa/media/1407001/dl?inline (last visited Aug. 7, 2025).

mentions of the President[19] and personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[20] No further documents have been made public.

Meanwhile, Deputy Attorney General ("DAG") Blanche visited one of the subjects of DDF's FOIA request—Ghislaine Maxwell—in jail in late July for the purposes of asking her questions concerning information that might be contained in the files DDF has requested.[21] On August 6, 2025, ABC reported that Maxwell stated in her closed-door interview with DAG Blanche that she never saw President Trump do anything of concern.[22] Yet, the inherent coercive nature of the DAG's interview calls into question the credibility of these statements. Disclosure of the records DDF has sought is therefore imperative to either support or debunk Maxwell's statements and provide needed clarity on whether the President is named in these documents, and if so, what the documents say about the President and what (if anything) may have transpired at Mar-a-Lago. Meanwhile, CNN reports that the President, Vice President, the Attorney General, and DAG Blanche were planning to meet on the evening of August 6, 2025, to discuss their strategy concerning the Epstein files.[23] And on August 5, 2025, a bipartisan group of legislators in the House issued several subpoenas requesting documents related to the Epstein files, including those held by EOUSA.[24]

This is a case of obvious "urgency to inform the public about an actual or alleged Federal Government activity" that is a "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." This is made clear by the dozens of news articles, the subpoena request of a bi-partisan coalition of House members for the same documents DDF requested, and revelations that the President, Vice President, and high-level DOJ officials planned to meet behind closed doors to discuss how to strategically address allegations that the President is named in the Epstein Files. It is imperative that these records be released so that the public has an unadulterated and transparent understanding of what is in the files, and not just what high-level officials want them to hear.

---

[19] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trump*, THE HILL (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/.

[20] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, WALL STREET J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1.

[21] Rebecca Beitsch, *Maxwell attorney after second meeting with DOJ: 'The truth will come out,'* THE HILL (July 25, 2025), https://thehill.com/homenews/administration/5420763-ghislaine-maxwell-interview-blanche/.

[22] Katherine Faulders et al., *Ghislaine Maxwell told DOJ Trump never did anything concerning around her: Sources*, ABC NEWS (Aug. 5, 2025), https://abcnews.go.com/US/trump-administration-considers-releasing-transcripts-doj-interview-ghislaine/story?id=124383957.

[23] Alayna Treene, Josh Campbell, Paula Reid, Kristen Holmes, & Kaitlan Collins, *Top Trump officials will discuss Epstein strategy at Wednesday dinner hosted by Vance*, CNN (Aug. 6, 2025), https://edition.cnn.com/2025/08/05/politics/trump-blanche-epstein-maxwell-vance-bondi-patel-meeting.

[24] Stephen Groves, *House committee issues subpoenas for Epstein files, depositions with Clintons*, AP (Aug. 5, 2025), House committee issues subpoenas for Epstein files, depositions with Clintons | AP News.

Finally, as set forth more extensively in DDF's original request of July 28, 2025, we are an entity that is "primarily engaged in the dissemination of information."[25] DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request. Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations. This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

For the foregoing reasons, DDF's appeal meets all criteria for expedited processing and EOUSA should provide expedited review of this appeal.

## Request for Expedited Processing of the Records Search

EOUSA constructively denied DDF's request for expedited processing of the records search through its final determination letter of July 28, 2025. For the reasons set forth in DDF's original July 28, 2025, records request, DDF is entitled to expedited processing of its request that EOUSA search for responsive records. DDF therefore appeals EOUSA's constructive denial of DDF's request for expedited processing of the records search and requests EOUSA grant its request for expedited processing in full for the reasons set forth in our prior correspondence.

## Request for Fee Waiver

EOUSA constructively denied DDF's request for a fee waiver through its final determination letter of July 28, 2025. For the reasons set forth in DDF's original July 28, 2025, records request concerning the basis for DDF's waiver request, DDF is entitled to a full waiver of the fees associated with a search for responsive records. DDF therefore appeals EOUSA's constructive denial of DDF's fee waiver request and requests EOUSA grant its fee waiver in full for the reasons set forth in our prior correspondence.

## Conclusion

Please send any correspondence concerning this appeal to gabe@democracydefenders.org. The undersigned hereby certifies that the statements submitted supporting DDF's request for expedited processing of this appeal are true and correct to the best of my knowledge and belief.

/s/
Gabriel Lezra
Senior Strategist

[25] 28 C.F.R. § 16.5(e)(1)(ii).

# EXHIBIT A

Democracy Defenders Fund

July 28, 2025

Kevin Krebs
Assistant Director, FOIA/Privacy Unit
Executive Office of the U.S. Attorneys
175 N Street, NE, Suite 5.400
Washington, DC 20530-0001

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from January 20, 2025, to when this request is processed, of:

1. Records of all communications, including, but not limited to, letters, faxes, emails, voicemails, direct messages, or any form of electronic message, regardless of whether maintained on an official device or account or a personal device or account, that refer to "Jeffrey Epstein" or "Ghislaine Maxwell," or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell," that were sent from, received by, or transmitted to any Department of Justice official including, but not limited to, Attorney General Pamela Bondi, Deputy Attorney General Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, and FBI Deputy Director Dan Bongino. This includes any attachments, including, but not limited to, meeting agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed by agency personnel. This request includes direct correspondence as well as communications facilitated by or through third parties.

2. Any communications, in any form, including audiovisual media such as digital video, VHS, DVD, or other similar format, discussing or explaining the process of how department officials should approach or address references to Donald Trump or Mar-a-lago appearing in any files related to the Jeffrey Epstein or Ghislaine Maxwell cases, including any communications that describe how to flag, categorize, or memorialize mentions of President Trump. This request includes, but is not limited to, videos circulated on unclassified networks within the Department.

3. Electronic copies of all calendar entries or meeting invitations for any Department officials, including, but not limited to, Attorney General Bondi, Deputy Attorney General

Todd Blanche, Principal Associate Deputy Attorney General Emil Bove, FBI Director Kash Patel, or FBI Deputy Director Dan Bongino, including any calendars maintained on their behalf, that reference "Jeffrey Epstein" or "Ghislaine Maxwell" or any code name, code word, pseudonym, or cryptonym used for identifying "Jeffrey Epstein" or "Ghislaine Maxwell". For any such calendar entries or meeting invites produced, please also provide any related materials, including recordings, transcripts, agendas, minutes, notes, memos, briefing materials, drafts, presentations, or analyses created, received, or reviewed for use during, or in preparation of, such meeting.

4. Any communications, correspondence, or documents listing or containing the identities of people who were clients or associates of Jeffrey Epstein, including any documents listing or containing the identities of people who were invited to Epstein's properties, including invitations, calendar schedules, and flight logs.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes, without limitation, all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position that any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(a) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when it involves the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or

---

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Forc*e, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).

activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" DDF's request meets all elements.[5]

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of documents and communications related to criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including records the Department may have that name clients and associates of Epstein and records that may name President Trump in relation to these matters. These records may also reveal to the public a potential attempt to cover up negative or potentially criminal conduct, including by President Trump. The existence and extent of such records, and the government's response to their collection and dissemination, are currently a question of immense media speculation.[6] In February 2025, Attorney General Bondi said in an interview with Fox News that the Epstein client list was, "sitting on my desk right now to review."[7] It was recently reported that Attorney General Bondi assigned nearly 1,000 FBI officials to comb through tens of thousands of pages of documents related to Epstein to flag mentions of the President.[8] Then in July, the Department issued a memo noting, "this systematic review revealed no incriminating 'client list."[9] However, the Wall Street Journal has reported that the Attorney General personally briefed the President on instances of his name appearing in documents related to Jeffrey Epstein in May.[10] Given contradictory statements made by the Department, and the fact that President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[11] disclosure of these records would conclusively show whether the Department has the information it now purports that it does not have, and, if such records exist, whether Donald Trump's name appears in any of the documents related to Jeffery Epstein. This release is also important to understand whether any undue political influence by the President has affected the Department's ability or willingness to release documents related to Jeffrey Epstein. Prior to being elected to a second term, the President promised repeatedly during his campaign that he would release these files.[12] Yet, in the face of increased pressure to release the full array of documents, the President has continued to evade the issue.[13] Disclosure of these documents is therefore necessary to provide a

---

[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.
[7] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025),
https://www.bbc.com/news/articles/ckgl4dl334go.
[8] Alexander Bolton, *Durbin: FBI Agents were Told to 'Flag' Epstein Records that Mention Trum*p, The Hill (July 18, 2025), https://thehill.com/homenews/senate/5409002-trump-epstein-files-ag-bondi-patel-bongino-fbi-agents-durbin-wall-street-journal/
[9] US Department of Justice, Memo on Epstein Investigation, Jul. 2025,
https://www.justice.gov/opa/media/1407001/dl?inline.
[10] Sadie Gurman, et al., *Justice Department Told Trump in May that His Name is Among Many in the Epstein Files*, Wall Street J. (July 23, 2025), https://www.wsj.com/politics/justice-department-told-trump-name-in-epstein-files-727a8038?mod=hp_trendingnow_article_pos1
[11] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/17/us/politics/timeline-trump-epstein.html.
[12] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga
[13] Chris Cameron, Trump Really Wants to Stop Talking About Epstein: A Timeline, NY Times (July 23, 2025), https://www.nytimes.com/2025/07/23/us/politics/trump-epstein-distraction-timeline.html.

full record of what communications occurred, and whether any such communications might have resulted in abnormalities in the Department's statements or actions concerning the existence of Epstein's "Client List."

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to the investigations involving Jeffrey Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[14] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[15] As noted above, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[16] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[17] This has caused immense confusion amongst the public, which has been the subject of ongoing new media coverage.[18] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[19] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and the issuance of op-eds.[20] DDF maintains a dedicated website

---

[14] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[15] *See*, *e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[16] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.

[17] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[18] *See*, *e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

[19] Larry Neumesiter, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

[20] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from*

where it provides information related to its activities, which can be accessed by the public.[21] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[22] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media, including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal government activity, if made by a person who primarily engaged in disseminating information." 5 C.F.R. 16.5(e)(1)(ii). The outrageous nature of the alleged activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[23] and if so, whether that may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[24]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

---

*Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.

[21] *See* https://www.democracydefendersfund.org/news-resources.

[22] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

[23] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.

[24] *See*, *e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[25] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[26] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

**2. The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox

[25] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.

[26] State Democracy Defenders Fund, https://statedemocracydefenders.org/fund/ (last visited Jan. 23, 2025)

News,[27] New York Times,[28] Wall Street Journal,[29] and Washington Post,[30] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[31]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

---

[27] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[28] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[29] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[30] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[31] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC: Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- ‘Parent-child’ relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[32] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[33] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

[32] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[33] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

# EXHIBIT B

Gmail

Chris Swartz <chris@statedemocracydefenders.org>

# Fwd: Request Acknowledgement by Executive Office for U.S. Attorneys

1 message

**Gabe Lezra** <gabe@statedemocracydefenders.org> Mon, Jul 28, 2025 at 10:18 AM
To: Ginny Canter <ginny@statedemocracydefenders.org>, Chris Swartz <chris@statedemocracydefenders.org>, Riley Pynnonen <riley@statedemocracydefenders.org>, Kerry Mackenzie <kerry@statedemocracydefenders.org>

---------- Forwarded message ---------
From: <noreply@ains.com>
Date: Mon, Jul 28, 2025 at 10:16 AM
Subject: Request Acknowledgement by Executive Office for U.S. Attorneys
To: <gabe@statedemocracydefenders.org>

Dear Gabriel Lezra,

Case Number EOUSA-2025-005260 has been assigned to the request you submitted. In all future correspondence regarding this request please reference case number EOUSA-2025-005260.

Regards,
Executive Office for U.S. Attorneys

--

Democracy Defenders Action

**Gabriel (Gabe) Lezra** (he/him/el)
**Democracy Defenders Action** (c4)
**Email**: gabe@statedemocracydefenders.org

# EXHIBIT C

Gmail

Chris Swartz <chris@statedemocracydefenders.org>

# Fwd: EOUSA-2025-005260 Misdirected Component

1 message

**Gabe Lezra** <gabe@democracydefenders.org> Thu, Aug 7, 2025 at 5:40 PM
To: Chris Swartz <chris@statedemocracydefenders.org>

Democracy Defenders Action

**Gabriel (Gabe) Lezra** (he/him/el)
**Senior Policy Strategist**
**Democracy Defenders Action (c4)**
**Email**: gabe@sdemocracydefenders.org

---------- Forwarded message ---------
From: <FOIA-no-reply@usdoj.gov>
Date: Mon, Jul 28, 2025 at 10:34 AM
Subject: EOUSA-2025-005260 Misdirected Component
To: <gabe@statedemocracydefenders.org>

Please see the attached final action letter. Thank you. EOUSA FOIA

**[REQUESTNUMBER] INTAKE Misdirected Component.pdf**
70K

# EXHIBIT D

**U.S. Department of Justice**

Executive Office for United States Attorneys

Freedom of Information and Privacy Staff

*Suite 5.400, 3CON Building*
*175N Street, NE*
*Washington, DC 20530*

*(202) 252-6020*

July 28, 2025

Gabriel Lezra
Democracy Defenders Fund
600 Pennsylvania Ave SE
Washington, DC 20003
gabe@statedemocracydefenders.org

Re: Request Number EOUSA-2025-005260
Subject of Request: "Jeffrey Epstein" or "Ghislaine Maxwell," correspondence from Attorney General, Principal AG, FBI, etc.

Dear Gabriel Lezra:

The Executive Office for United States Attorneys (EOUSA) has received your Freedom of Information Act (FOIA) and/or Privacy Act (PA) request and assigned the above number to it. The EOUSA is the official record keeper for all records located in this office and the various United States Attorney's offices.

Please be advised, that the Department of Justice (DOJ) has a decentralized system for processing FOIA/PA requests and each DOJ component maintains and handles FOIA/PA requests for its own records. Additional information regarding the DOJ's administration of the FOIA/PA, including a listing of DOJ components, the types of records each maintains, and their FOIA/PA contact information, is available at www.justice.gov/oip/foia-request.html. For any future DOJ FOIA/PA requests, please direct your letter to the DOJ component you believe has records pertaining to the subject of your request.

You requested information which is not information maintained by the EOUSA or by the individual United States Attorney's Offices, but is likely maintained by a separate component of the DOJ. Accordingly, we are routing the component a copy of your request for processing and direct response to you. You can contact the component using the information below:

Andrew Fiorillo
Acting Chief, Initial Request Staff
Office of Information Policy
Department of Justice
6th Floor
441 G St NW

Washington, DC 20530
Phone: (202) 514-FOIA

Michael G. Seidel, Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
200 Constitution Drive
Winchester, VA 22602
Phone: (540) 868-4593
Online Request Form: https://efoia.fbi.gov

This is the final action on this above-numbered request. If you are not satisfied with EOUSA's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." If possible, please provide a copy of your original request and this response letter with your appeal.

You may contact the EOUSA FOIA Public Liaison for any further assistance and to discuss any aspect of your request. The contact information for EOUSA is 175 N Street, NE, Suite 5.400, Washington, DC 20530; telephone at 202-252-6020. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Kevin Krebs
Assistant Director

# EXHIBIT X

**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

Gabriel Lezra

Re: Appeal No. A-2025-02374

Request No. EOUSA-2025-005260

gabe@democracydefenders.org

**VIA: Online Portal - 09/03/2025**

Dear Gabriel Lezra:

You appealed from the action of the Executive Office for United States Attorneys (EOUSA) on your Freedom of Information Act (FOIA) request for certain records concerning Jeffrey Epstein or Ghislaine Maxwell (Item Nos. 1-4). I note that your appeal concerns EOUSA's routing of your request to the Office of Information Policy (OIP) and the Federal Bureau of Investigation (FBI).

After carefully considering your appeal, and as a result of discussions between EOUSA personnel and this Office, I am remanding your request to EOUSA for further processing. You may appeal any future adverse determination made by EOUSA. If you would like to inquire about the status of this remanded request or to receive an estimated date of completion, please contact EOUSA directly at 202-252-6020.

Finally, I note that you requested expedited treatment of your appeal. Because I am closing your underlying appeal, your request for expedited treatment of this appeal is moot.

If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office and speak with the undersigned agency official by calling 202-514-3642.

If you are dissatisfied with my action on your appeal, the FOIA permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

X____________________________
Christina Troiani
Chief, Administrative Appeals Staff

# EXHIBIT Y

Democracy Defenders Fund

July 22, 2025

Michael G. Seidel, Section Chief,
Record/Information Dissemination Section
Federal Bureau of Investigation
200 Constitution Drive
Winchester, VA 22602

Re: Freedom of Information Act Request

Dear FOIA Officer,

Democracy Defenders Fund ("DDF") respectfully submits the following request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and Department of Justice ("DOJ") regulations, 28 C.F.R. part 16.

Specifically, DDF requests all records from the inception of the Department of Justice's investigations of Jeffrey Epstein and/or Ghislaine Maxwell to when this request is processed, of:

1. All records relating to the Department of Justice's investigation(s) of Jeffrey Epstein that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, "Mar-a-Lago," or any code name, code word, pseudonym, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Jeffrey Epstein.

2. All records relating to the Department of Justice's investigation(s) of Ghislaine Maxwell that mention, refer to, or include the name of "Donald J. Trump", "Donald Trump", "President Trump" or other variations of his name, "Mar-a-Lago," or any code name, code word, pseudonym, or other cryptonym that is used to refer to Donald J. Trump or Mar-a-Lago, including records contained in its investigative files of Ghislaine Maxwell.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*.[1] If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[2] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[3] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

**Fee Waiver Request**

Pursuant to 5 U.S.C. 552(a)(4)(A) and 28 C.F.R. 16.10(k), DDF requests a waiver of fees associated with processing this request. Department regulations provide for a waiver of fees when the "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4] Courts have found that a fee waiver is appropriate when the disclosure will "(1) shed light on 'the operations or activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester'".[5] DDF's request meets all elements.

First, the disclosure will shed light on the Department of Justice's possession, retention, handling, and disposition of records concerning the Department's investigations into alleged criminal activity by Jeffrey Epstein and Ghislaine Maxwell involving illegal sexual activity by Epstein with underage girls, including investigations conducted by the Criminal Division, the U.S. Attorney's Office for the Southern District of Florida, the U.S. Attorney's Office for the Southern District of New York and the Federal Bureau of Investigation ("FBI"), including any records the Department may have that name President Trump in relation to these matters. Even though President Trump had a prior long-standing friendship with Epstein before it ended in around 2004,[6] he promised repeatedly during his 2024 Presidential campaign that he would release these

[1] 484 F.2d 820 (D.C. Cir. 1973).
[2] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[3] *See Mead Data Central v. U.S. Dep't of the Air Forc*e, 566 F.2d 242, 261 (D.C. Cir. 1977).
[4] 28 C.F.R. 16.10(k)(1).
[5] *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015).
[6] Luke Broadwater, *A Timeline of What We Know About Trump and Epstein*, New York Times (Jul. 19, 2025), https://www.nytimes.com/2025/07/17/us/politics/timeline-trump-epstein.html.

files.[7] But, the fact that the Department has yet to release the investigation files has outraged many of Trump's supporters.[8] The existence and extent of such records is also currently a question of immense media speculation.[9]

Second, disclosure of the information will significantly aid the public's understanding of the Department's handling of records pertaining to investigations involving Jeffery Epstein. President Trump's failure to release the Epstein files has undermined public confidence in the Department's handling of these records because of repeated promises he made to his supporters during the campaign that he would declassify the Epstein files and release the "Epstein client list".[10] The Department's handling of the matter has further undermined public confidence by making contradictory statements related to the existence of an Epstein "client list".[11] For instance, in February 2025, Attorney General Bondi said in an interview with FOX that the Epstein client list was, "sitting on my desk right now to review."[12] Then in July, the Department issued a memo noting, "This systematic review revealed no incriminating "client list."[13] This has caused immense confusion amongst the public, which has been the subject of ongoing news media coverage.[14] Adding to this confusion, the President recently asked the Department of Justice to release grand jury documents related to the prosecution of Jefferey Epstein, documents that likely will only constitute a small portion of the documents held by the Department.[15] Release of the documents requested is therefore necessary to aid the public in its understanding of the Department's handling of the records and to ensure that the public has access to the full record of relevant documents concerning this investigation.

---

[7] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga

[8] Luke Broadwater and Erica L. Green, *Trump's New Strategy on Epstein Fallout: Blame the Democrats*, *New York Times* (Jul. 16, 2025), https://www.nytimes.com/2025/07/16/us/politics/trump-epstein-attacks-supporters.html.

[9] *See* Devlin Barrett, *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, New York Times (Jul. 18, 2025), https://www.nytimes.com/article/jeffrey-epstein-files-trump.html.

[10] Tess Owen, *How the Trump administration's handling of the Epstein files became a vehicle for QAnon*, The Guardian (Jul. 15, 2025), https://www.theguardian.com/us-news/2025/jul/15/trump-epstein-files-maga.

[11] *See*, *e.g.*, Alexandra Hutzler, *What Trump has said about Jeffrey Epstein over the years, including on 2024 campaign trail*, ABC News (Jul. 16, 2025), https://abcnews.go.com/Politics/trump-jeffrey-epstein-years-including-2024-campaign-trail/story?id=123778541.

[12] Nadine Yusif, *Trump says US attorney general should release any 'credible' information on Epstein*, BBC (Jul. 16, 2025), https://www.bbc.com/news/articles/ckgl4dl334go.

[13] US Department of Justice, Memo on Epstein Investigation, Jul. 2025, https://www.justice.gov/opa/media/1407001/dl?inline.

[14] *See*, *e.g.*, Mike Wendling, *Why the Epstein case looms large in MAGA world*, BBC (Jul. 18, 2025) https://www.bbc.com/news/articles/cy8ge16d2y3o; Jason Lange, *Trump faces backlash as 69% believe Epstein details concealed, Reuters/Ipsos poll finds,* Reuters (Jul. 17, 2025), https://www.reuters.com/world/us/trump-faces-backlash-69-believe-epstein-details-concealed-reutersipsos-poll-2025-07-17/.

[15] Larry Neumesiter, *Request to unseal Epstein grand jury transcripts likely to disappoint, ex-prosecutors say*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-4634e5afceb8b1bb43f23558dfbb1d6c.

Third, the purpose of the disclosures is not "primarily in the commercial interest of" DDF. DDF is a nonprofit organization established under section 501(c)(3) of the Internal Revenue Code. DDF's core mission is to defend the rule of law, fight corruption, and protect elections using a variety of tools including publication of information concerning ongoing activities of the government. DDF regularly speaks on issues related to government activities through traditional broadcast media, podcasts, and issuance of op-eds.[16] DDF maintains a dedicated website where it provides information related to its activities which can be accessed by the public.[17] The purpose of the disclosure is to inform the public on activities of the government.

In addition, DDF requests waiver of fees related to processing this request as a representative of the news media pursuant to 5 U.S.C. 552(a)(4)(A)(ii)(II). DDF routinely collects information of "potential interest to a segment of the public" and "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."[18] As noted above, DDF maintains a dedicated webpage for informing the public about activities related to government activity through a variety of media including press releases, public reports, and op-eds. DDF experts routinely engage with the public and with other members of the new media to publicize important information, including information related to government activities. Pursuant to existing case law, DDF clearly meets the criteria for a fee waiver under section 552(a)(4)(A)(ii)(II).

**Request for Expedited Processing**

In addition, DDF also provides the following amended supplemental information concerning its request for expedited processing:

DDF has requested expedition of this request because:

1. **The request concerns an urgency to inform the public about an actual or alleged Federal Government activity, and DDF is primarily engaged in disseminating information concerning that activity.**

Department regulations provide for expedited processing of any request involving an "urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information."[19] The outrageous nature of the alleged

[16] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* Norman Eisen, Virginia Canter, and Richard Painter, *A Plane from Qatar? C'Mon, Man!*, New York Times (May 14, 2025), https://www.nytimes.com/2025/05/14/opinion/trump-plane-qatar-crypto.html.
[17] *See* https://www.democracydefendersfund.org/news-resources.
[18] *Nat'l Sec. Archive v. Dept. of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).
[19] 5 C.F.R. 16.5(e)(1)(ii).

activity engaged in by Epstein and the failure of the Department to release the files, after both the President and his Attorney General promised to do so, has caused his supporters, the media and the general public much outrage and alarm. The failure to release the documents raises questions about whether President Trump's name may appear in the files due to his past relationship with Epstein,[20] and if so, whether that possibility may be hindering public disclosure. Because this topic is of significant public importance–and the President already appears to be evading disclosure through many public comments[21]–under FOIA's expedited processing provisions, this request is of the utmost urgency and any delay will deprive the public of timely information necessary to evaluate the government's handling of records pertaining to these investigations.

DDF's public dissemination and media outreach are extensive, allowing it to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about the findings of this request.[22] Through a combination of investigative reports, in-depth analyses, press releases, and dynamic engagement on multiple digital and traditional media channels, DDF ensures that critical information reaches a wide spectrum of stakeholders, from policymakers and advocacy groups to individual citizens seeking accountability in government operations.[23] This multifaceted approach amplifies the impact of the information obtained and facilitates informed public discourse on pressing issues.

DDF's communications infrastructure is robust and designed to maximize reach and engagements. With a significant presence across social media platforms, and targeted outreach initiatives, DDF has built a network capable of rapidly disseminating accurate and detailed information regarding government activities. By making these findings relatable and understandable, DDF not only informs but empowers the public to participate meaningfully in conversations about governance and accountability. The necessity of expediting the production of responsive records is underscored by DDF's proven capacity to reach a wide audience and spark meaningful public dialogue.

---

[20] Mike Baker and Michael S. Schmidt, *An Accuser's Story Suggests How Trump Might Appear in the Epstein Files*, The New York Times (July. 20, 2025), https://www.nytimes.com/2025/07/20/us/politics/epstein-employee-trump-investigation.html.
[21] *See*, *e.g.*, Stephen Fowler, *Trump tells supporters not to 'waste time' on Epstein files. They're not happy*, NPR (Jul. 15, 2025), https://www.npr.org/2025/07/14/nx-s1-5467151/trump-epstein-files-doj-fbi-maga.
[22] *See e.g.*, Virginia Canter, et al., *Why we 'Democracy Defenders' are demanding information about DOGE*, MSNBC (Dec. 27, 2024, 3:00AM PT), https://www.msnbc.com/opinion/msnbc-opinion/group-launched-inquiry-musk-ramaswamys-doge-rcna185248; *see also* David A. Fahrenthold, *Two Watchdogs Were Rebuffed From Joining Trump's Cost-Cutting Effort*, The New York Times (Jan. 16, 2025), https://www.nytimes.com/2025/01/16/us/doge-trump-watchdogs.html; *see also* Stephen M. Lepore, *DOGE'S brutal response to former Obama and Clinton aides attempting to join Elon Musk's cost cutting machine*, Daily Mail (Jan. 17, 2025, 1:31 EST), https://www.dailymail.co.uk/news/article-14295275/DOGE-brutal-response-former-Obama-Clinton-aides-Elon-Musk.html; *see also* Travis Gettys, *'Too many to enumerate': Watchdogs open probe into Musk's alleged 'conflicts of interest'*, Rawstory (Dec. 27, 2024), https://www.rawstory.com/musk-doge-ethics/.
[23] Democracy Defenders Fund, https://www.democracydefendersfund.org/.

**2. The request involves a matter of widespread and exceptional media interest involving questions about the President's integrity which affect public confidence.**

DDF requests expedited processing as well under 28 C.F.R. 16.5(e)(1)(iv), which provides that the Department will process requests on an expedited basis if it involves "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."

There is no question that the Department's handling of the Epstein files has generated exceptional widespread media interest. For example, news and media outlets, including Fox News,[24] New York Times,[25] Wall Street Journal,[26] and Washington Post,[27] have all released multiple stories related to the failure of the Department to release the Epstein files. Influential podcasters like Joe Rogan have not only attacked FBI officials for withholding the files, but specifically noted how "cynical" people have become as a result of the Department's failure to release them.[28]

The extensive media coverage serves as both evidence of widespread concern and a stark reminder of what's missing. The requested documents are essential for ensuring the public remains informed. As noted, DDF has a proven ability to reach broad and diverse audiences, which positions this organization as a key disseminator of this missing information. These

---

[24] Ashley Oliver, *10 reasons the DOJ and FBI face backlash over Epstein files flop*, Fox News (July 10, 2025), https://www.foxnews.com/politics/10-reasons-doj-fbi-face-backlash-over-epstein-files-flop; Jacqui Heinrich, *Trump taking hits at mountain of Republicans pushing for Epstein file release*, Fox News (July 16, 2025), https://www.foxnews.com/video/6375808075112; https://www.foxnews.com/video/6375726865112.

[25] Luke Broadwater, *Trump Talks About Anything but Epstein on His Social Media Account*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-social-media.html; Erica L. Green, *How Trump Deflected MAGA's Wrath Over Epstein, at Least for Now*, The New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/us/politics/trump-epstein-maga-base.html;
Michael Gold, *Republicans and Democrats Call for More Information on Epstein Case*, New York Times (Jul. 20, 20225), https://www.nytimes.com/2025/07/20/us/politics/trump-epstein-files.html.

[26] Natalie Andrews, Annie Linskey, and Sadie Gurman, *Trump Calls for Release of "Pertinent" Epstein Grand Jury Material Following WSJ Article,* Wall St. Journal (Jul. 18, 2025), https://www.wsj.com/politics/policy/trump-calls-for-release-of-epstein-documents-following-wsj-article-bc3c3a2b?gaa_at; Annie Linskey and Jasmine Li, *Trump Lashes Out at Supporters for Fixating on "Epstein Hoax."* Wall St. Journal (Jul. 16, 2025), https://www.wsj.com/politics/policy/trump-jeffrey-epstein-files-supporters-4021019d?gaa_at; Editorial, *No Special Counsel for the Epstein Files*, Wall St. Journal (Jul. 17, 2025), https://www.wsj.com/opinion/jeffrey-epstein-files-special-counsel-donald-trump-karoline-leavitt-885590f9?gaa_at.

[27] *Trump's "Epstein Files" Problem*, Washington Post Podcast (Jul. 15, 2025) https://www.washingtonpost.com/podcasts/post-reports/trumps-epstein-files-problem/; Jeremy Roebuck and Mark Berman, *Justice Dept. asks court to release Epstein grand jury testimony*, Washington Post (Jul. 18, 2025), https://www.washingtonpost.com/national-security/2025/07/18/bondi-epstein-files-documents-grand-jury-testimony-doj/; Sarah Ellison, *How MAGA influencers put pressure on Trump, Bondi over Epstein*, Washington Post (Jul. 19, 2025), https://www.washingtonpost.com/politics/2025/07/19/maga-influencers-trump-epstein//

[28] Eboni Boykin-Patterson, *Joe Rogan Rips Patel and Bongino for Letting Him Down on Epstein*, The Daily Beast (Jul. 19, 2025), https://www.thedailybeast.com/joe-rogan-rips-kash-patel-and-dan-bongino-for-letting-him-down-on-epstein/.

insights are especially critical given our extensive knowledge of government corruption and malfeasance.

Immediate compliance with this FOIA request is necessary not only to uphold legal obligations under FOIA but also to address the growing demand for transparency on an issue of national importance that has captured significant national attention. The government's credibility depends on its willingness to timely meet this demand and to allow the public to scrutinize its actions through the lens of complete and accurate information.

The undersigned hereby certify that these statements submitted supporting DDF's request for expedited processing are true and correct to the best of our knowledge and belief.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

CC: Director of Public Affairs, Office of Public Affairs
United States Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530

**Guidance Regarding the Search and Processing of Requested Records:**

In connection with this request for records, we provide the following guidance regarding the scope of the records sought and the search and processing of records:

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

The request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to the request, the request includes all prior messages sent or received in that email chain, as well as any attachments to the email. I have included potential domain names where possible to aid your search.

Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, out of network drives, in paper format, or in personal email accounts.

Please provide the requested documents in the following format: In PDF format, electronically searchable wherever possible;

- Each paper record in a separately saved file;
- ‘Parent-child’ relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; with any other metadata preserved.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars - the request is for the production of any calendar, paper or electronic, whether on government issued or personal devices, used to track or coordinate how these individuals allocate their time on agency business. The search should include any calendars associated with an agency official's individual email account, as well as any official calendars maintained for the official, including by his or her administrative assistant or scheduler.

If it is your position any portion of the requested records is exempt from disclosure, DDF requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records.[29] If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[30] Please be advised that DDF intends to pursue all legal remedies to enforce its right under the FOIA to access these documents. Accordingly, because litigation reasonably is foreseeable, the agency should institute an agency-wide preservation hold on documents potentially responsive to this request.

In the event my fees are not waived, we agree to pay reasonable duplication fees in an amount not to exceed $100, but I request to be notified before processing incurs expenses in excess of that amount.

If you have any questions about this clarification or foresee any problems in fully releasing the requested records, please contact me at gabe@statedemocracydefenders.org. Please send the requested records to me at either gabe@statedemocracydefenders.org or Gabriel Lezra, Democracy Defenders Fund, 600 Pennsylvania Ave., S.E., Washington, D.C. 20003. Thank you for your assistance in this matter.

Sincerely,

/s/
Ambassador Norman Eisen (ret.)
Executive Chair and Founder

/s/
Virginia Canter
Ethics and Anticorruption Chief Counsel and Director

/s/
Gabriel Lezra
Senior Strategist

---

[29] *See* 5 U.S.C. § 552(b), https://crsreports.congress.gov/product/pdf/R/R47984.
[30] *See* Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).

# EXHIBIT Z

An official website of the United States government
Here's how you know

Save identity
✕
To save an identity, unlock 1Password first.
Unlock 1Password

CE
ENU

# FOIA.gov

**Thank you for visiting FOIA.gov, the government's central website for FOIA.** We'll continue to make improvements to the site and look forward to your input. Please submit feedback to National.FOIAPortal@usdoj.gov.

**Submission ID:** 2286601

# Success!

## Your FOIA request has been created and is being sent to the Federal Bureau of Investigation.

You'll hear back from the agency confirming receipt in the coming weeks using the contact information you provided. If you have questions about your request, feel free to reach out to the agency FOIA personnel using the information provided below.

### Contact the agency

FOIA Requester Service Center

540-868-4593

Shannon Hammer, FOIA Public Liaison

540-868-2101

Michael G. Seidel, Section Chief, Record/Information Dissemination Section
200 Constitution Drive
Winchester, VA 22602

# Request summary

Request submitted on**July 22, 2025**.

The confirmation ID for your request is **2286601**.

The confirmation ID is only for identifying your request on FOIA.gov and acts as a receipt to show that you submitted a request using FOIA.gov. This number does not replace the information you'll receive from the agency to track your request. In case there is an issue submitting your request to the agency you selected, you can use this number to help.

## Contact information

**Name**
Gabriel Wofford Lezra

**Mailing address**
600 Pennsylvania Ave SE
Washington, 20003

**Phone number**
9176752509

**Company/organization**
Democracy Defenders Fund

**Email**
gabe@statedemocracydefenders.org

---

## Additional information

FBI. DDA. Epstein Request..pdf

**What is the subject of your request?**
other

**Date of birth**
10/10/1988

**Signature (typed)**
Gabriel Wofford Lezra

**I am making this request on behalf of**
organization

**Address Type**
domestic

**By providing an electronic signature below I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. Section 552(a)(3) by a fine of not more than $5,000.**
yes

**Today's date**
07/22/2025

**Place of birth**
New Haven, CT

**Your request**
See attached.

**State**
DC

---

## Fees

**What type of requester are you?**
media

**Fee waiver**
option1

**Fee waiver justification**
See attached.

## Request expedited processing

**Expedited processing**
yes

**Justification for expedited processing**
See attached.

FOIA.gov

**CONTACT**

Office of Information Policy (OIP)
U.S. Department of Justice
441 G St, NW, 6th Floor
Washington, DC 20530
E-mail: National.FOIAPortal@usdoj.gov

Hero image credit CC3.0

- FREQUENTLY ASKED QUESTIONS
- DEVELOPER RESOURCES
- AGENCY API SPEC
- FOIA CONTACT DOWNLOAD
- FOIA DATASET DOWNLOAD
- ACCESSIBILITY
- PRIVACY POLICY
- POLICIES & DISCLAIMERS
- JUSTICE.GOV
- USA.GOV